# No. 25-1113

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

**MOHSEN MAHDAWI,**

*PETITIONER-APPELLEE,*

**v.**

**DONALD J. TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES; PATRICIA HYDE, IN HER OFFICIAL CAPACITY AS ACTING BOSTON FIELD OFFICE DIRECTOR; VERMONT SUB-OFFICE DIRECTOR OF IMMIGRATION AND CUSTOMS ENFORCEMENT; TODD M. LYONS, IN HIS OFFICIAL CAPACITY AS ACTING DIRECTOR FOR U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; KRISTI NOEM, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE UNITED STATES DEPARTMENT OF HOMELAND SECURITY; MARCO RUBIO, IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE; AND PAMELA BONDI, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE UNITED STATES,**

*RESPONDENTS-APPELLANTS.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

## PETITIONER–APPELLEE'S OPPOSITION TO RESPONDENTS-APPELLANTS' MOTION TO STAY

*(Counsel listed on next page)*

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
Nathan Freed Wessler
Brett Max Kaufman
Brian Hauss
Esha Bhandari
Noor Zafar
Sidra Mahfooz
125 Broad Street, 18th Floor
New York, NY 10004
P: (212) 549-2500
nwessler@aclu.org

**ACLU FOUNDATION OF VERMONT**
Lia Ernst
Monica H. Allard
Hillary A. Rich
P.O. Box 277
Montpelier, VT 05601
P: (802) 223-6304
lernst@acluvt.org
mallard@acluvt.org
hrich@acluvt.org

**MARTIN DELANEY & RICCI LAW GROUP**
Andrew B. Delaney
100 North Main Street
Barre, Vermont 05641
andrew@mdrvt.com
P: 802-479-0568

**CLEAR Project**
**Main Street Legal Services, Inc.**
Ramzi Kassem
Naz Ahmad
Mudassar Hayat Toppa
Shezza Abboushi Dallal
CUNY School of Law
2 Court Square, 5th Floor
Long Island City, NY 11101
Tel.: (718) 340-4558
ramzi.kassem@law.cuny.edu
naz.ahmad@law.cuny.edu
mudassar.toppa@law.cuny.edu
shezza.dallal@law.cuny.edu

**BELDOCK LEVINE & HOFFMAN LLP**
Luna Droubi
Matthew Melewski
Keegan Stephan
99 Park Avenue, PH/26th Floor
New York, New York 10016
P: (212) 277-5875
F: (212) 277-5880
ldroubi@blhny.com
mmelewski@blhny.com
kstephan@blhny.com

**CYRUS D. MEHTA & PARTNERS PLLC**
Cyrus D. Mehta
David A. Isaacson
One Battery Park Plaza, 9th Floor
New York, New York 10004
P: 212-425-0555
F: 212-425-3282
cm@cyrusmehta.com
disaacson@cyrusmehta.com

## TABLE OF CONTENTS

BACKGROUND ................................................................................................ 1

PROCEDURAL HISTORY ............................................................................. 3

LEGAL STANDARD ...................................................................................... 5

ARGUMENT ................................................................................................... 6

   I. A Stay Is Unwarranted .......................................................................... 6

     A. The Government Is Not Likely To Succeed on the Merits ...................... 6

       1. The District Court Has Habeas Jurisdiction ......................................... 6

       2. No INA Provision Bars Habeas Review of Petitioner's Constitutional
         Claims ................................................................................................. 7

         a. The District Court Had Jurisdiction To Review Petitioner's
           Challenge To His Unconstitutional Detention ................................. 8

             (1) Sections 1252(a)(5) and (b)(9) ................................................. 9

             (2) Section 1252(g) ........................................................................ 12

         b. The District Court Has Jurisdiction To Review Petitioners
           Challenge To the Rubio Determination and Policy ....................... 14

             (1) Section 1252(b)(9) ................................................................... 14

             (2) Section 1252(g) ........................................................................ 15

        3. The District Court Properly Extended the TRO ................................. 17

     B. The Equities Overwhelmingly Weigh in Favor of Petitioner. ................ 19

       1. Petitioner Will Be Irreparably Harmed If the Stay Is Granted ........... 19

       2. The public will be harmed if a stay is granted. .................................. 20

       3. Respondents Would Suffer No Harm If A Stay Is Denied .................. 21

   II. Mandamus is Unwarranted ................................................................... 21

CONCLUSION ............................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Aguilar v. ICE*, 510 F.3d 1 (1st Cir. 2007)....................................................9, 10, 18

*Ajlani v. Chertoff*, 545 F.3d 229 (2d Cir. 2008) ............................................13

*Ali v. Mukasey*, 524 F.3d 145 (2d Cir. 2008) ...........................................16

*Alvarez v. U.S. Immig. & Customs Enf't*, 818 F.3d 1194 (11th Cir. 2016)............13

*Asylum Seeker Advoc. Project v. Barr*, 409 F. Supp. 3d 221 (S.D.N.Y. 2019) ......11

*Bello-Reyes v. Gaynor*, 985 F.3d 696 (9th Cir. 2021)...............................13

*Black v. Decker*, 103 F.4th 133 (2d Cir. 2024) ...........................................8

*Boumediene v. Bush*, 553 U.S. 723 (2008)...........................................20

*Delgado v. Quarantillo*, 643 F.3d 52 (2d Cir. 2011) ...............................10

*Demore v. Kim*, 538 U.S. 510 (2003) .....................................................18

*DHS v. Regents of Univ. of Cal.*, 591 U.S. 1 (2020) ...............................15

*E.O.H.C., v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177 (3d Cir. 2020)10, 11

*Elkimya v. Dep't of Homeland Sec.*, 484 F.3d 151 (2d Cir. 2007).......................6, 7

*Ex parte Fahey*, 332 U.S. 258 (1947)...................................................21

*Garcia v. Att'y Gen.*, 553 F.3d 724 (3d Cir. 2009) ...............................16

*German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203 (3d Cir. 2020).8

*Gonzalez v. Immigr. & Customs Enf't*, 975 F.3d 788 (9th Cir. 2020)....................10

*Hechavarria v. Sessions*, 891 F.3d 49 (2d Cir. 2018) ...............................8

*Hilton v. Braunskill*, 481 U.S. 770 (1987)...............................................19

*Humphries v. INS*, 164 F. 3d, 936 (5th Cir. 1999) .................................13

*In re Ivy*, 901 F.2d 7 (2d Cir. 1990) .......................................................22

*In re Roman Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30 (2d Cir. 2014)..22

*In re Zyprexa*, 594 F.3d 113 (2d Cir. 2010) ...........................................................22

*INS v. St. Cyr*, 533 U.S. 289 (2001) .........................................................................9

*Jennings v. Rodriguez*, 583 U.S. 281 (2018)......................................................passim

*Johnson v. Guzman Chavez*, 594 U.S. 523 (2021) .....................................................9

*Khalil v. Joyce*, No. 25-CV-1963, 2025 WL 1232369 (D.N.J. Apr. 29, 2025)14, 15, 16

*Kong v. United States*, 62 F.4th 608 (1st Cir. 2023) ...........................................8, 13

*Kucana v. Holder*, 558 U.S. 233 (2010).................................................................18

*Kwai Fun Wong v. U.S.*, 373 F.3d 952 (9th Cir. 2004)..........................................15

*Madu v. Att'y Gen.*, 470 F.3d 1362 (11th Cir. 2006) .............................................16

*Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001)....................................................3, 6, 7

*Michael v. INS*, 48 F.3d 657 (2d Cir. 1995) ...........................................................18

*Michalski v. Decker*, 279 F. Supp. 3d 487 (S.D.N.Y. 2018) ...................................13

*Nadarajah v. Gonzales*, 443 F.3d 1069 (9th Cir. 2006)............................................8

*Nielsen v. Preap*, 586 U.S. 392 (2019).....................................................................9

*Nken v. Holder*, 556 U.S. 418 (2009).....................................................................5, 6

*Ozturk v. Trump*, No. 25-CV-10695, 2025 WL 1145250 (D. Vt. Apr. 18 2025)...10, 16

*Perez Parra v. Catro*, No. 24-CV-912, 2025 WL 435977 (D.N.M. Feb. 9, 2025).18

*Ragbir v. Homan*, 923 F.3d 53 (2d Cir. 2019) .................................................16, 17

*Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999)....12, 16

*Reyna ex rel. J.F.G. v. Hott*, 921 F.3d 204 (4th Cir. 2019).....................................18

*Tazu v. AG United States*, 975 F.3d 292 (3d Cir. 2020).....................................13, 15

*Thapa v. Gonzales*, 460 F.3d 323 (2d Cir. 2006) ...........................................6

*Torres-Jurado v. Biden*, No. 19-CV-3595, 2023 WL 7130898 (S.D.N.Y. Oct. 29, 2023) .....................................................................................................10

*Trump v. Deutsche Bank AG*, 943 F.3d 627 (2d Cir. 2019) .......................6

*United States v. Gonzales-Roque,* 301 F.3d 39 (2d Cir. 2002) .............14

*United States v. Grote*, 961 F.3d 105 (2d Cir. 2020) ..................................5

*Vacchio v. Ashcroft*, 404 F. 3d 663 (2d Cir. 2005).......................................6

*Van Dinh v. Reno*, 197 F.3d 427 (10th Cir. 1999) ...................................18

*Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020) ..........................18

*You v. Nielsen*, 321 F. Supp. 3d 451 (S.D.N.Y. 2018) .............................10

*Zundel v. Gonzales*, 230 F. App'x 468 (6th Cir. 2007)............................13

**Statutes**

8 U.S.C. § 1231(g)........................................................................................18

8 U.S.C. § 1252(a)(2)(B)(ii)........................................................................18

8 U.S.C. § 1252(a)(5) ....................................................................................9

8 U.S.C. § 1252(b)(9)................................................................................9, 14

8 U.S.C. § 1252(g)................................................................................9, 15, 16

Fed. R. Civ. P. 52(a)(6) ..............................................................................6

## INTRODUCTION

Mohsen Mahdawi—a lawful permanent resident—was detained solely because of what the government concedes was lawful speech. After he filed a habeas petition, the district court released Mr. Mahdawi on bail based on his substantial claims and the extraordinary circumstances of this First Amendment violation. Respondents now ask this Court for permission to re-imprison him while the court decides whether the government is allowed to do so.[1]

Respondents' arguments fail on every front. The government cannot show a likelihood of success on the merits because precedent clearly establishes habeas jurisdiction over unlawful detention claims. Moreover, Mr. Mahdawi and the public will suffer harm if a stay is granted, while the government will suffer no appreciable harm if a stay is denied. The Court should decline to intervene.

## BACKGROUND

Mr. Mahdawi was born and raised in the West Bank. (Op. & Order on Mot. for Release at 1, *Mahdawi v. Trump*, No. 25-CV-389 (D. Vt. Apr. 30, 2025), ECF No. 54 ("Op.").) He entered the United States legally in July 2014 and has been a Legal Permanent Resident for ten years. (*Id.*) He is a Vermont resident. (*Id.*) Since

---

[1] While Respondents use the word "emergency" at the beginning and end of their motion, there is no emergency warranting a stay. The inflammatory hearsay relied on by Respondents was never asserted as a basis for Mr. Mahdawi's detention, and was found not credible by the district court. (Op. at 23–24.) Respondents offer no justification for emergent action.

1

2021, Mr. Mahdawi has been an undergraduate student at Columbia University majoring in philosophy. (*Id.* at 2.) He hopes to graduate this month and attend Columbia's School of International and Public Affairs beginning in September. (*Id.*) As a student at Columbia, Mr. Mahdawi dedicated himself "to understanding how to achieve a lasting peace for Palestinians and Israelis, particularly through the study of conflict resolution." (*Id.*) After Israel took military action in Gaza in 2023, Mr. Mahdawi was "outspoken in opposition to the war." (*Id.*) Over 125 sworn declarations and letters of support attest "to his mild and peaceful nature, his deep intelligence, and his commitment to principles of non-violence and political activism." (*Id.* at 6.)

On March 27, 2025, Mr. Mahdawi received notification from the United States Citizenship and Immigration Services that his naturalization interview was scheduled for April 14, 2025. (*Id.* at 4.) Mr. Mahdawi attended the interview. (*Id.* at 5.) Unbeknownst to him, two weeks earlier, the Secretary of State had secretly issued a memorandum, pursuant to 8 U.S.C. § 1227(a)(4)(C)(ii), declaring Mr. Mahdawi deportable for his "lawful" speech and associations. (Resp. in Opp'n to Mot. for Release, Ex. A, *Mahdawi*, No. 25-CV-389 (D. Vt. Apr. 28, 2025), ECF No. 42-1.)

On April 14, 2025, after Mr. Mahdawi completed the interview, ICE agents, masked and visibly armed, entered the interview and shackled him. (Op. at 5.) He

2

was separated from his attorney and placed into a car, and the government began the process of transferring him over a thousand miles away to Louisiana. (*Id.* at 5–6.) At approximately 3:11 p.m., the district court granted an emergency motion for a temporary restraining order enjoining Mr. Mahdawi's transfer or removal. (Order, *Mahdawi*, No. 25-CV-389 (D. Vt. Apr. 14, 2025), ECF No. 6.) Mr. Mahdawi remained detained at Northwest Correctional Facility in Swanton, Vermont until his release on bail on April 30, 2025. (Op. at 5.)

## PROCEDURAL HISTORY

On April 14, 2025, Petitioner-Appellee filed a Petition for a Writ of Habeas Corpus. (Pet. for Writ of Habeas Corpus, *Mahdawi*, No. 25-CV-389 (D. Vt. Apr. 14, 2025), ECF No. 1.) As discussed, he was granted a temporary restraining order enjoining Respondents from transferring or removing him.[2]

On April 22, ahead of an initial conference, Petitioner filed a Motion for Release pursuant to *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001). (Mot. for Release, *Mahdawi*, No. 25-CV-389 (D. Vt. Apr. 22, 2025), ECF No. 19.) Respondents responded with a Pre-Hearing Submission that was converted into a motion to dismiss. (Prehearing Submission, *Mahdawi*, No. 25-CV-389 (D. Vt. Apr. 22, 2025), ECF No. 25.) The court set a hearing on Petitioner's Motion for Release for April

---

[2] Petitioner initially requested his petition to be assigned as "related" to *Ozturk v. Hyde*, but the court declined. (Order Reassigning Case, *Mahdawi*, No. 25-CV-389 (D. Vt. Apr. 15, 2025), ECF No. 12.)

30, 2025. (Scheduling Order, *Mahdawi*, No. 25-CV-389 (D. Vt. Apr. 23, 2025), ECF No. 33.) The court also set a briefing schedule on the motion to dismiss.[3] (*Id.*) On April 24, 2025, the court extended the TRO "for a period of 90 days or until dismissal of this case or grant of a preliminary injunction, whichever is earliest." (Order Extending TRO, *Mahdawi*, No. 25-CV-389 (D. Vt. Apr. 24, 2025), ECF No. 34.) Following briefing on Petitioner's Motion for Release, on April 30, 2025, the district court held a hearing and ordered Petitioner released on bail. The court found Petitioner raised substantial claims regarding violations of his constitutional rights (Op. at 18), and extraordinary circumstances warranted release (*id.* at 24–25). The court noted Petitioner's "deep connections to colleagues, professors, his faith community, and—it would appear—a great many friends" and that "[h]e presents no danger to his community or others." (*Id.* at 23.[4]) The district court also made a

---

[3] The district court has suspended that briefing schedule pending resolution of this appeal. (Dkt. No. 56).

[4] The district court considered and dismissed the government's claims that Petitioner poses a danger to the community, discounting unsubstantiated, inflammatory hearsay in a decade-old report the federal government contemporaneously investigated and closed. (Op. at 23–24; *see also id.* at 4 ("The court is satisfied that the information in the police report does not support a finding of dangerousness. If the FBI had substantiated the information, some action would have resulted. That nothing took place supports . . . that the two informants were not truthful."). The court similarly dispatched the government's other claims. (*Id.* at 24 (no dangerousness indicated by "referral to a state-run diversion program in 2019 concerning a potential drug offense," which was "expunged in the normal course"); *id.* at 3 (so-called "domestic incident" in 2018 was an "argument that led to no charges," and "[t]oday his ex-wife is a close friend and supporter")).)

4

preliminary determination it had jurisdiction, but did not decide the pending Motion to Dismiss. (*Id.* at 7, 15.) During the hearing, Respondents sought a stay of the district court's order granting release, which the district court denied, finding the government had not made the requisite showing to grant a stay. (*Id.* at 26–28; *see also* Tr. of Apr. 30 Mot. for Release, *Mahdawi*, No. 25-CV-389 (D. Vt. May 2, 2025), ECF No. 57 ("Tr.").)

On April 30, 2025, Respondents filed a Notice of Appeal. (Notice of Appeal, *Mahdawi*, No. 25-CV-389 (D. Vt. Apr. 30, 2025), ECF No. 55.) On May 2, 2025, Respondents filed motions to consolidate this matter with *Ozturk v. Hyde*, 25-1019 (2d Cir. 2025) (Mot. to Consolidate Cases, ECF No. 21), and stay the district court's order of release on bail and extended TRO (Mot. to Stay, ECF No. 20 ("Mot.")).

## LEGAL STANDARD

This Court reviews a district court's denial of a stay pending appeal for abuse of discretion, *United States v. Grote*, 961 F.3d 105, 123 (2d Cir. 2020), and the district court's factual findings relevant to the stay factors must be accepted unless "clearly erroneous." Fed. R. Civ. P. 52(a)(6).

A stay pending appeal represents an "intrusion into the ordinary processes of administration and judicial review." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (cleaned up). An application for stay is evaluated under the traditional multi-factor

test akin to a motion for preliminary injunction. *Id.* at 434, 426.[5]

## ARGUMENT

The Court should deny the government's motion for a stay. The government's arguments fail on the merits and the equities overwhelmingly favor Petitioner.

### I.    A Stay Is Unwarranted

#### A.    The Government Is Not Likely To Succeed on the Merits

##### 1.    The District Court Has Habeas Jurisdiction

This Court has held that federal courts have "inherent authority" to release on bail petitioners challenging immigration detention pending resolution of their habeas claims. *Mapp*, 241 F.3d at 223; *see also Elkimya v. Dep't of Homeland Sec.*, 484 F.3d 151, 154 (2d Cir. 2007) (noting the 2005 Real ID Act did not strip courts of inherent authority to grant bail). This Court has released a petitioner on bail pursuant to *Mapp* where his habeas petition raised substantial constitutional and statutory claims. *See Vacchio v. Ashcroft*, 404 F. 3d 663, 672–73 (2d Cir. 2005). Respondents point to no case in which an appellate court has issued a stay of an order of release *pendente lite* on the grounds argued here. Instead of meaningfully engaging with

---

[5] Even under the "sliding-scale" approach, *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006), which requires only an appeal raises substantial legal questions, the government would need to show that all three of the other traditional factors "tip[] decidedly in [its] favor," *Trump v. Deutsche Bank AG*, 943 F.3d 627, 637 (2d Cir. 2019), *rev'd on other grounds*, 2020 WL 3848061 (July 9, 2020). It cannot do so here.

the court's order, including whether release on bail is "necessary" to make the habeas remedy effective for Petitioner, *Mapp*, 241 F.3d at 226, Respondents couch their stay request in terms of jurisdiction, arguing Petitioner's habeas claims were not properly before the court.

The district court understood, with respect to the claims supporting the *Mapp* motion, that Petitioner challenges "only his arrest and detention—not the removal proceeding." *Id.* at 14.   Thus, the lower court has properly exercised habeas jurisdiction. *Id.* at 15.   The government's insistence that Petitioner's challenge to his arrest and detention is "at bottom, [] a challenge to his removal proceedings" has no basis in fact or law.

## 2.    No INA Provision Bars Habeas Review of Petitioner's Constitutional Claims

In order to grant Petitioner relief pursuant to *Mapp*, it was sufficient for the district court to establish it had jurisdiction over his unlawful detention claims. Respondents cite no contrary authority. (Mot.); *cf. Elkimya*, 484 F.3d at 154.   The Supreme Court and the Second Circuit agree that claims of illegal civil immigration detention are reviewable in habeas.   The district court had jurisdiction to order Petitioner's release under *Mapp* from unconstitutional detention.[6]

---

[6] The district court noted it would reserve further discussion on claims challenging the Rubio Determination and Policy until fuller briefing on the dismissal motion. (Op. at 12, 15.)  Those claims are not at issue here.  But if the Court deems

7

     **a.**     **The District Court Had Jurisdiction To Review Petitioner's Challenge To His Unconstitutional Detention**

The Supreme Court has repeatedly affirmed that district courts have habeas jurisdiction over claims of illegal civil immigration detention. *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018); *Nielsen v. Preap*, 586 U.S. 392, 402 (2019). The Second Circuit has reviewed such claims in habeas. *See, e.g.*, *Black v. Decker*, 103 F.4th 133 (2d Cir. 2024) (habeas challenge to illegal detention during removal proceedings); *Hechavarria v. Sessions*, 891 F.3d 49, 52 (2d Cir. 2018) (same as to detention after removal proceedings ended). So have sister circuits. *See, e.g.*, *Kong v. United States*, 62 F.4th 608, 609 (1st Cir. 2023); *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210 (3d Cir. 2020); *Nadarajah v. Gonzales*, 443 F.3d 1069, 1079 (9th Cir. 2006).

The government cites multiple provisions in the INA—8 U.S.C. §§ 1252(a)(5), (b)(9), (g)—to urge this Court to stay the district court's *Mapp* order. None apply to the detention claim, and the manner in which courts have interpreted these provisions demonstrate why they do not apply to Petitioner's other claims either.

---

it necessary to consider jurisdiction over those claims at this juncture, no INA provision precludes review. *See infra* Part I.A.2.b.

### (1)  Sections 1252(a)(5) and (b)(9)

Sections 1252(b)(9) and (a)(5) do not bar review of Petitioner's unlawful detention claims.   Section 1252(a)(5) applies only to review of final orders of removal.  *See, e.g.*, *INS v. St. Cyr*, 533 U.S. 289, 311, 313 (2001) (1252(a) applies to "[j]udicial review of a final order of removal"); (*see also* Op. at 13–14).  There has been no such order issued in Petitioner's case, and his challenge to detention does not involve review of any such order.   1252(b)(9) generally requires claims "arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter" be raised "only in judicial review of a final order."  8 U.S.C. § 1252(b)(9).  It likewise poses no obstacle to review.

The Supreme Court explained in *Jennings*, 583 U.S. at 281, "the applicability of 1252(b)(9) turns on whether the legal questions that we must decide 'aris[e] from' the actions taken to remove" noncitizens, and construed that phrase narrowly to avoid "extreme" results that would render claims of "excessive detention" "effectively unreviewable."  *Id*. at 293; *see also Nielsen v. Preap*, 586 U.S. 392, 402 (2019) (finding 1252(b)(9) did not preclude review of detention challenge); *Johnson v. Guzman Chavez*, 594 U.S. 523, 533 n.4 (2021) (same).  Indeed, Congress "stated unequivocally" that 1252(b)(9) "should not be read to preclude" "challenges to detention," because detention claims are "independent of removal orders."  *Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007) (quoting H.R. Rep. No. 109-72); *see also*

9

*Gonzalez v. Immigr. & Customs Enf't*, 975 F.3d 788, 810–11 (9th Cir. 2020) (following *Aguilar*).  Under settled precedent, Petitioner's detention does not "arise from" removal proceedings.

From *Jennings*, the Third Circuit derived a simple "now-or-never" principle: "When a detained alien seeks relief that a court of appeals cannot meaningfully provide on petition for review of a final order of removal, 1252(b)(9) does not bar consideration by a district court." *E.O.H.C., v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 180 (3d Cir. 2020); *see also Aguilar*, 510 F.3d at 11 (explaining that reading 1252(b)(9) to cover claims that "cannot be raised efficaciously" on a petition for review would effectively bar "any meaningful judicial review"); *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (district court has jurisdiction where "habeas petition challenged only the constitutionality of the arrest and detention" (citations omitted)).  Courts in this Circuit have repeatedly applied this principle to permit claims challenging illegal arrest and detention.  *See, e.g.*, *Ozturk v. Trump*, No. 25-CV-10695, 2025 WL 1145250 (D. Vt. Apr. 18 2025), at *13 (*Jennings* "explicitly rejected" contention that 1252(b)(9) "arising from" language encompasses detention claims); *You v. Nielsen*, 321 F. Supp. 3d 451, 459 (S.D.N.Y. 2018) (interpreting 1252(a)(5) and (b)(9) to bar petitioner's claims challenging his arrest and detention "would render such claims effectively unreviewable"); *Torres-Jurado v. Biden*, No. 19-CV-3595, 2023 WL 7130898 (S.D.N.Y. Oct. 29, 2023), at

10

*3 (*Jennings* forecloses "reading of § 1252(b)(9)" to "permit ICE to arrest[ and] detain" plaintiff "without any statutory or constitutional constraints"); *see also Asylum Seeker Advoc. Project v. Barr*, 409 F. Supp. 3d 221, 226 (S.D.N.Y. 2019) (*Jennings* rejected reading making detention claims, "which necessarily involve harms that end before the entry of the final order, 'effectively unreviewable'").

Here, Petitioner challenges his unconstitutional detention. "[C]ourts cannot meaningfully provide" review of these claims "alongside review of a final order of removal" and, even assuming they could, "relief may come too late to redress the harm." *E.O.H.C.*, 950 F.3d at 186 (citing *Aguilar*, 510 F.3d at 11). As a result of his retaliatory detention, Petitioner's speech and that of others who similarly seek to speak out in support of Palestinian rights was chilled. Requiring Petitioner to raise constitutional claims at the end of the lengthy PFR process would render them "effectively unreviewable" and accomplish the unlawful object of his detention. *See Jennings*, 583 U.S. at 293. The government's construction of 1252(b)(9) would, moreover, extinguish the ability of permanent residents to challenge their imprisonment for protected First Amendment activity, contrary to Congressional intent. *E.O.H.C.*, 950 F.3d 186 ("[T]he point of the provision is to channel claims into a single petition for review, not to bar claims that do not fit within that process.").

Respondents wrench dicta from *Jennings* to argue 1252(b)(9) encompasses

11

challenges to initial detention (Mot. at 15), but the plurality merely noted its discussion was limited to the prolonged detention claims before it—not purporting to opine on claims that challenged the constitutionality of the initial detention decision. Indeed, the plurality expressly rejected Respondents' expansive interpretation, which would lead to "staggering results." *Jennings*, 583 U.S. at 292.

### (2)    Section 1252(g)

Section 1252(g) is a "narrow" provision that applies to "only three discrete actions that the Attorney General may take: her 'decision or action to *commence* proceedings*, adjudicate* cases*, or execute* removal orders" against "aliens." *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482 (1999) ("*AADC*"); *see also Jennings*, 583 U.S. at 294 (reaffirming 1252(g) "refer[s] to just those three specific actions themselves"). By its terms, 1252(g) does not apply to detention. Applying 1252(g) "in a manner consistent with the actual text," the district court properly found 1252(g) "allows for the exercise of habeas jurisdiction in cases"—such as this—"that do not seek to challenge the removal proceedings but are directed instead at administrative detention alleged to be employed to stifle protected speech." (Op. at 12.) Respondents' claim that Petitioner's challenge to his retaliatory detention is "in substance a challenge to his removal" is meritless. (Mot. at 24.)

Petitioner challenges his unlawful detention based on speech the government

12

disagrees with. Courts have readily found jurisdiction over challenges to the legality of detention. *See, e.g.*, *Bello-Reyes v. Gaynor*, 985 F.3d 696, 698, 700 n.4 (9th Cir. 2021) (1252(g) did not bar a challenge to ICE detention of a noncitizen during removal proceedings in retaliation for political speech); *Kong*, 62 F.4th at 609 (1252(g) does not bar challenge to immigration arrest and detention); *Michalski v. Decker*, 279 F. Supp. 3d 487, 495 (S.D.N.Y. 2018) ("[T]he decision or action to detain an individual under § 1226(a) is independent from the decision or action to commence a removal proceeding.").

The government's argument that Petitioner's detention arises from his removal proceedings stretches the bounds of the text and the facts of this case, and is unsupported by the authority it cites. (Mot. at 9–11.) *Alvarez v. U.S. Immig. & Customs Enf't*, 818 F.3d 1194, 1199-1200 (11th Cir. 2016), involved an after-the-fact Bivens challenge to government action, not an effort to seek release. *Tazu v. AG United States*, 975 F.3d 292, 298 (3d Cir. 2020), was a challenge to the execution of a removal order and the "brief door-to-plane detention" required to execute that order. Its reasoning has no applicability here. *Ajlani v. Chertoff*, 545 F.3d 229 (2d Cir. 2008), is similarly an inapposite challenge to removal proceedings. And neither *Zundel v. Gonzales*, 230 F. App'x 468, 475 (6th Cir. 2007), nor *Humphries v. INS*, 164 F. 3d, 936 (5th Cir. 1999), addressed whether 1252(g) bars review of unlawful detention claims.

13

### b.    The District Court Has Jurisdiction To Review Petitioners Challenge To the Rubio Determination and Policy

The Court need not determine, at this juncture, whether the district court has jurisdiction to review Petitioner's claims challenging the Rubio Determination and Policy.  But the INA does not bar review of those claims either.

### (1)    Section 1252(b)(9)

Section 1252(b)(9) does not channel review of Petitioner's constitutional challenges to the Rubio Determination and the Policy because they are collateral to his immigration case and would not receive "meaningful review" on a PFR.  *See Khalil v. Joyce*, No. 25-CV-1963, 2025 WL 1232369 (D.N.J. Apr. 29, 2025) at *29–43, 59.  As the government has conceded in other litigation (Ltr. from Gov't, *Khalil v. Joyce*, No. 25-CV-1963 (D.N.J. Apr. 10, 2025) ECF No. 185), the Immigration Judge ("IJ") and Board of Immigration Appeals ("BIA") lack power to hear constitutional challenges.  *See also United States v. Gonzales-Roque,* 301 F.3d 39, 47 (2d Cir. 2002) ("[C]onstitutional claims lie outside the BIA's jurisdiction.").  Nor can the immigration courts develop an adequate evidentiary record for the court of appeals to consider the constitutional questions in the first instance.  *See Khalil*, 2025 WL 1232369 at *34; (*see also* (Ltr. from Gov't, *Khalil v. Joyce*, No. 25-CV-1963 (D.N.J. Apr. 10, 2025) ECF No. 185). "[C]ramming judicial review" of Petitioner's constitutional claims "into the review of final removal orders would be absurd."

*Jennings*, 583 U.S. at 293.  Moreover, as with his detention claims, any review in a PFR process would come too late.  If a stay were granted, Petitioner would experience renewed harms flowing from the violation of his First Amendment rights. *See Khalil*, 2025 WL 1232369, at \*46 ("Our law's response to a here-and-now impact on political speech has been the same across the board: no unnecessary delay."); *id*. at 47–50 (collecting cases).

### (2)    Section 1252(g)

Nor does 1252(g) strip habeas jurisdiction over Petitioner's challenges to the Rubio Determination and Policy, because these claims challenge independent actions taken before any decision to commence proceedings.  *See, e.g.*, *Khalil*, 2025 WL 1232369, at \*56–58; *Tazu*, 975 F.3d at 298 (1252(g) does not reach claims challenging government actions taken "before the Attorney general tried to execute [any] order") (citing *Kwai Fun Wong v. U.S.*, 373 F.3d 952, 965 (9th Cir. 2004) (finding 1252(g) does not reach such challenges)).

As to the Rubio Determination, this is not an "action by the Attorney General to commence proceedings."  8 U.S.C. § 1252(g); *see Khalil*, 2025 WL 1232369, at \*58.  Claims against policies that render noncitizens removable, or later may lead to the commencement of proceedings, are not precluded by 1252(g).  *See, e.g.*, *DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 19 (2020) ( 1252(g) did not preclude judicial review of challenge to government's DACA rescission policy, where it could be cast

15

as initial step in commencement of removal proceedings). And Petitioner's challenge to the "very authority" of the government's actions "does not implicate[]" section 1252(g). *Garcia v. Att'y Gen.*, 553 F.3d 724, 729 (3d Cir. 2009); *see also Ali v. Mukasey*, 524 F.3d 145, 150 (2d Cir. 2008) (1252(g) inapplicable where petitioner alleges they were "placed in removal proceedings unlawfully or for reasons that would offend the Constitution"); *Madu v. Att'y Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006) (1252(g) does not bar review of "underlying legal bases for those discretionary decisions"). For the same reasons, (g) does not apply to Petitioner's challenge to the Policy. *See Khalil*, 2025 WL 1232369, at *59.

Respondents' reliance on *AADC* is likewise misplaced. That case "was exclusively about removal, not detention," and concerned selective enforcement against those with pre-existing grounds of removal. *Ozturk*, 2025 WL 1145250, at *14. But Petitioner is a Lawful Permanent Resident who the government is attempting to *render* deportable solely due to his speech. *See Khalil*, 2025 WL 1232369, at *59. Indeed, *AADC* warned against the use of 1252(g) where, as here, the "basis of discrimination is so outrageous." *AADC,* 525 U.S. at 491. Petitioner has "adduced plausible—indeed, strong" and uncontroverted—"evidence" the government retaliated against him based on his speech. *Ragbir v. Homan*, 923 F.3d 53, 73 (2d Cir. 2019). As this Court held in *Ragbir*, "[t]o allow this retaliatory conduct to proceed would broadly chill protected speech, among not only activists

16

subject to . . . deportation but also . . . citizens and other residents who would fear retaliation . . . ." *Id*. at 71.

### 3.    The District Court Properly Extended the TRO

Respondents' argument concerning the issuance of the extended TRO is nothing more than a complaint about potential logistics.  Respondents claim they would find it difficult to facilitate Petitioner's attendance via video teleconference in his immigration court proceedings if he were re-detained and stayed in Vermont. (Mot. at 17.)  Nothing in the record supports this claim.[7]  In fact, had the district court not ordered his release, Respondents were prepared to have Petitioner attend a May 1 immigration court hearing in Louisiana via video teleconference.  (Tr. at 36–40.)

Respondents mischaracterize the district court's TRO as an attempt to interfere with the government's discretion to determine place of detention.  (Mot. at 18–19.)  But the TRO was an exercise of the district court's inherent authority under the All Writs Act ("AWA") to prevent Petitioner's transfer outside of the District, in aid of preserving the court's jurisdiction over the underlying habeas matter.  This Court has recognized the broad authority conferred by the AWA for courts to issue injunctions in aid of preserving their jurisdiction. *See, e.g.*, *Michael v. INS*, 48 F.3d

---

[7] Respondents cite only one document making a passing claim concerning EOIR WebEx capabilities in all ICE facilities in Vermont.  (Mot. to Stay at 17, ECF No. 20.)

17

657, 664 (2d Cir. 1995) (ordering the petitioner returned to its jurisdiction under the AWA "in order to safeguard the court's appellate jurisdiction" and preserve its ability to hear subsequent appeals); *Perez Parra v. Catro*, No. 24-CV-912, 2025 WL 435977 (D.N.M. Feb. 9, 2025) (granting TRO preventing transfer of detained immigrant to U.S. military base at Guantánamo Bay, Cuba). The district court properly extended the TRO pending decision on the habeas petition.

The government's invocation of sections 8 U.S.C. § 1252(a)(2)(B)(ii) and 8 U.S.C. § 1231(g) is misplaced. Section 1252(a)(2)(B)(ii) applies only to those decisions where Congress has "set out the Attorney General's discretionary authority in the statute." *Kucana v. Holder*, 558 U.S. 233, 247 (2010). But nothing in § 1231(g) authorizes or even mentions "transfer," let alone commits transfer decisions to the agency's unreviewable discretion. *See Reyna ex rel. J.F.G. v. Hott*, 921 F.3d 204, 209–10 (4th Cir. 2019) (1252(a)(2)(B)(ii) does not bar review of transfer decisions); *Aguilar*, 510 F.3d at 20 ("section 1231(g) fails to 'specify' that individualized transfer decisions are in the Attorney General's discretion") (rejecting *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999), as the "minority view"). Section 1226(e) is likewise inapplicable because Petitioner's challenge to the legality of his detention and the district court's exercise of its inherent AWA authority are not "discretionary decisions." *Demore v. Kim*, 538 U.S. 510, 516–17 (2003); *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (Section 1226(e)

18

does not "limit habeas jurisdiction over constitutional claims or questions of law").

**B.      The Equities Overwhelmingly Weigh in Favor of Petitioner.**

Both Petitioner and the broader public will be irreparably harmed if the district court's decision is stayed, whereas the government would suffer no harm from complying with the court's order.  The district court has made factual determinations supporting the conclusion the equities weigh in Petitioner's favor.  Absent clear error, these findings cannot be disturbed on appeal.

**1.      Petitioner Will Be Irreparably Harmed If the Stay Is Granted**

A habeas petitioner's interest in release pending appeal is "always substantial."  *Hilton v. Braunskill*, 481 U.S. 770, 777–78 (1987).  As the district court properly noted, "every day that a person is detained is a significant injury" and Petitioner's interest in release "is particularly substantial in this case given the First Amendment concerns" raised.  (Op. at 27  (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, constitutes irreparable injury.")).)  Beyond the loss of First Amendment freedoms posed by re-detention, Petitioner will also be substantially harmed in his pursuit of education. Petitioner seeks to graduate in May of 2025, yet he has outstanding coursework he must complete in order to do so. (Dkt. No. 19-1, Ex. 1-CB.) Without release, Petitioner will be "unable to complete his undergraduate studies." Op. 28. And if Petitioner does not graduate before Fall of 2025, he would not be able to

19

matriculate into the master's program at the School of International and Public Affairs at Columbia University. (Dkt. No. 19-1, Ex. 1-CB.)

### 2.    The public will be harmed if a stay is granted.

Next, a stay is manifestly against the public interest. The district court determined "Mr. Mahdawi's release will benefit his community, which appears to deeply cherish and value him." (Dkt. No. 54 at 28.) And given the "substantial" First Amendment claims raised by Petitioner, his continued detention would "likely have a chilling effect on protected speech, which is squarely against the public interest." (Dkt. No. 54 at 28). To prolong Petitioner's detention, which the government concedes was done on the basis of his speech alone (Tr. at 23), is to prolong the chilling effect of the government's actions.

Additionally, the Supreme Court has emphasized that "the writ of habeas corpus is itself an indispensable mechanism for monitoring the separation of powers" and "the test for determining the scope of this [remedy] must not be subject to manipulation by those whose power it is designed to restrain." *Boumediene v. Bush*, 553 U.S. 723, 765–66 (2008).  To stay the court's proceedings would profoundly compromise public faith in the Great Writ and the judiciary's truth-seeking function as a whole.

Respondents argue there is a "public interest in prompt execution of removal orders" (Mot. at 20), but the district court's decision to release Petitioner on bail

20

pending adjudication of his habeas petition does not implicate the determination of removability. (Op. at 12, 14–15.) The removability proceeding is separate and ongoing. While the government has failed to present any public interest weighing in favor of a stay, both Petitioner and the broader public hold substantial interests in Petitioner's continued release.

### 3. Respondents Would Suffer No Harm If A Stay Is Denied

Respondents suffer no harm from complying with the court's orders. As the district court found, "Mr. Mahdawi is neither a flight risk nor a danger to the community, and his release will not interfere with his removal proceedings." (Op. at 27.) This determination cannot be disturbed on appeal absent clear error, which the government has not argued exists–nor could it.

In fact, given the technological difficulties claimed by Respondents in the event Petitioner is re-detained, Petitioner's continued release may lower the "operational burden on ICE" (Mot. at 20), rather than increase it.

## II. Mandamus is Unwarranted

The exacting mandamus standard is beyond the government's reach. *Ex parte Fahey*, 332 U.S. 258, 259–60 (1947) (mandamus is a "drastic and extraordinary remed[y] . . . reserved for really extraordinary causes").

The government's mandamus claim rehashes its failed jurisdictional arguments. *Supra* Part I.A.2. Moreover, the government cites *no* case where

21

mandamus reversed a determination of habeas or INA jurisdictional issues, and it ignores the "general rule that appellate courts should avoid determining jurisdiction issues on a petition for mandamus." *In re Ivy*, 901 F.2d 7, 10 (2d Cir. 1990); *accord In re Roman Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 37 n.3 (2d Cir. 2014). Claiming the district court usurped executive power (Mot. at 21), is also insufficient to invoke mandamus. "If a rational and substantial legal argument" supports "the questioned jurisdictional ruling," the mandamus inquiry is finished— even if this Court would reverse on ordinary review. *In re Zyprexa*, 594 F.3d 113, 122 n.27 (2d Cir. 2010) (Kaplan, J., concurring) (cleaned up).

## CONCLUSION

The government's extraordinary request to re-detain an individual who was detained solely on the basis of his constitutionally protected speech is as shocking as it is wrong. Respondents-Appellants' motion for a stay should be denied.

Dated: New York, New York                    Respectfully submitted,
        May 5, 2025

       (Signature block on next page.)

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
Nathan Freed Wessler
Brett Max Kaufman
Brian Hauss
Esha Bhandari
Noor Zafar
Sidra Mahfooz
125 Broad Street, 18th Floor
New York, NY 10004
P: (212) 549-2500
nwessler@aclu.org

**CLEAR Project**
**Main Street Legal Services, Inc.**
Ramzi Kassem
Naz Ahmad
Mudassar Hayat Toppa
Shezza Abboushi Dallal
CUNY School of Law
2 Court Square, 5th Floor
Long Island City, NY 11101
Tel.: (718) 340-4558
ramzi.kassem@law.cuny.edu
naz.ahmad@law.cuny.edu
mudassar.toppa@law.cuny.edu
shezza.dallal@law.cuny.edu

**ACLU FOUNDATION OF VERMONT**
Lia Ernst
Monica H. Allard
Hillary A. Rich
P.O. Box 277
Montpelier, VT 05601
P: (802) 223-6304
lernst@acluvt.org

**BELDOCK LEVINE & HOFFMAN LLP**
Luna Droubi
Matthew Melewski
Keegan Stephan
99 Park Avenue, PH/26th Floor
New York, New York 10016
P: (212) 277-5875
F: (212) 277-5880
ldroubi@blhny.com

**MARTIN DELANEY & RICCI LAW GROUP**
Andrew Delaney
100 North Main Street
Barre, Vermont 05641
andrew@mdrvt.com
P: 802-479-0568

**CYRUS D. MEHTA & PARTNERS PLLC**
Cyrus D. Mehta
David A. Isaacson
One Battery Park Plaza, 9th Floor
New York, New York 10004
P: 212-425-0555
F: 212-425-3282

23

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

(1)    This document complies with the Length Limits of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P 32(f), this document contains 5,198 words.

(2)    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared using Microsoft Word, version 2301, in 14-point Times New Roman font.

Dated: New York, New York
        May 5, 2025

Keegan Stephan
Beldock Levine & Hoffman, LLP
99 Park Avenue, PH/26th Fl.
New York, NY 10016
(212) 277-5820
kstephan@blhny.com