# No. 25-1113

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

_____

**MOHSEN MAHDAWI,**

**Petitioner-Appellee,**

**v.**

**DONALD J. TRUMP, ET AL.,**

**Respondents-Appellants.**

_____

**On Appeal from the United States District Court
for the District of Vermont
District Court Case No. 2:25-cv-389**

_____

JOINT APPENDIX – VOLUME I

_____

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney
General

DREW C. ENSIGN
Deputy Assistant Attorney General
Office of Immigration Litigation

MICHAEL P. DRESCHER
Acting United States Attorney
District of Vermont

ALANNA T. DUONG
Senior Litigation Counsel

DHRUMAN Y. SAMPAT
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice
*Attorneys for Respondents-Appellants*

# TABLE OF CONTENTS

Petition for Writ of Habeas Corpus…………………………………………..1

Order on Emergency Stay Motion for TRO………………………………..21

Memorandum of Law in Support of Motion for Release Under *Mapp v. Reno*…………………………………………………………………………..22

Declaration of Attorney Luna Droubi Submitted In Support of Petitioner's Motion for Release Under *Mapp v. Reno*……………………..51

**UNITED STATES DISTRICT COURT**
**DISTRICT OF VERMONT**

| | |
|---|---|
| MOHSEN MAHDAWI,<br><br>                 Petitioner,<br><br>    -against-<br><br>DONALD J. TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES; PATRICIA HYDE, IN HER OFFICIAL CAPACITY AS ACTING BOSTON FIELD OFFICE DIRECTOR, IMMIGRATION AND CUSTOMS ENFORCEMENT, ENFORCEMENT AND REMOVAL OPERATIONS; VERMONT SUB-OFFICE DIRECTOR OF IMMIGRATION AND CUSTOMS ENFORCEMENT, ENFORCEMENT AND REMOVAL OPERATIONS; TODD M. LYONS, IN HIS OFFICIAL CAPACITY AS ACTING DIRECTOR, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; KRISTI NOEM, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE UNITED STATES DEPARTMENT OF HOMELAND SECURITY; MARCO RUBIO, IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE; AND PAMELA BONDI, IN HER OFFICIAL CAPACITY AS U.S. ATTORNEY GENERAL,<br><br>               Respondents. | **PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

1.     Petitioner Mohsen Mahdawi is a lawful permanent resident of the United States on the pathway to naturalization. He has held a green card for the past ten years. This case concerns the government's retaliatory and targeted detention and attempted removal of Mr. Mahdawi for his constitutionally protected speech.

2.     Mr. Mahdawi was born and raised in a refugee camp in the West Bank, where he lived until he moved to the United States in 2014. Mr. Mahdawi recently attended Columbia University, and he intends to return for a master's degree in fall of 2025. As a student at Columbia,

**JA 1**

Mr. Mahdawi was an outspoken critic of Israel's military campaign in Gaza and an activist and organizer in student protests on Columbia's campus until March of 2024, after which he took a step back and has not been involved in organizing.

3.　　On April 14, 2025, Mr. Mahdawi was arrested and detained by agents from the Department of Homeland Security ("DHS"), despite the fact that he is a lawful permanent resident.

4.　　Mr. Mahdawi's unlawful arrest and detention comes after Respondents adopted a policy ("the Policy") on or before March 8, 2025, to retaliate and punish noncitizens for their speech and expressive conduct related to Palestine and Israel. Under the Policy, Respondent Marco Rubio, the Secretary of State, has unilateral power to issue determinations ("Rubio Determinations") that the presence or activities in the United States of individuals who protested or were outspoken critics of Israel would have potentially serious foreign policy consequences and would compromise a compelling United States foreign policy interest. Based on these determinations, the Department of Homeland Security would seek to detain and deport these individuals.

5.　　It appears that Respondents seek to base Mr. Mahdawi's removal on the Rubio Determination and Section 237(a)(4)(C)(i) of the Immigration and Nationality Act, a rarely-used provision that Respondents recently used to detain another lawful permanent resident, Mahmoud Khalil, for similar speech.

6.　　Prior to and following Mr. Mahdawi's detention, the government has made clear that it intends to retaliate and punish individuals such as Mr. Mahdawi who advocated for ceasefire and ending the bloodshed in Gaza. Respondents' actions plainly violate the First Amendment, which protects Mr. Mahdawi's right to speak on matters of public concern and prevents the government from chilling constitutionally-protected speech.

**JA 2**

2

7.      In addition to violating Mr. Mahdawi's First Amendment rights, the Rubio Determination and Mr. Mahdawi's unlawful detention also violates Mr. Mahdawi's statutory rights and due process rights.

**PARTIES**

8.      Petitioner Mohsen Mahdawi is a Palestinian who was born and raised in a refugee camp in the West Bank. He is a lawful permanent resident of the United States and has been for the last ten years. He is a recent student of Columbia University, with an expected graduation date of May 2025.  He has been admitted to a Master's program at Columbia University's School of International and Public Affairs ("SIPA"), to begin in the fall of 2025.

9.      Respondent Donald J. Trump is named in his official capacity as the President of the United States. In this capacity, he is responsible for the policies and actions of the executive branch, including the Department of State and the Department of Homeland Security. At all relevant hereto, Respondent Trump's address is the White House, 1600 Pennsylvania Ave. NW, Washington, D.C. 20500.

10.     Respondent Patricia Hyde is named in her official capacity as the Acting Field Office Director of the Boston Field Office for Immigration and Customs Enforcement ("ICE") within the United States Department of Homeland Security. In this capacity, she is responsible for the administration of immigration laws and the execution of detention and removal determinations and is a custodian of Petitioner. At all times relevant hereto, Respondent Hyde's address is Boston ICE Enforcement and Removal Operations Field Office, 1000 District Avenue, Burlington, MA 01803.

11.     Respondent the Director of the Vermont Sub-Office of ICE Enforcement and Removal Operations, whose name is currently unknown to the undersigned, is named in his or her official capacity as the Director of the Vermont Sub-Office of the Boston Field Office for

**JA 3**

3

Immigration and Customs Enforcement ("ICE") within the United States Department of Homeland Security. In this capacity, she is responsible for the administration of immigration laws and the execution of detention and removal determinations and is a custodian of Petitioner. At all relevant times, the Director's address is 64 Gricebrook Road, St. Albans, VT 05478.

12.     Respondent Todd M. Lyons is named in his official capacity as the Acting Director of ICE. He administers and enforces the immigration laws of the United States, routinely conducts business in the District of Vermont, is legally responsible for pursuing efforts to remove the Petitioner, and as such is the custodian of the Petitioner. At all times relevant hereto, Respondent Lyons's address is ICE, Office of the Principal Legal Advisor, 500 12th St. SW, Mail Stop 5900, Washington DC 20536-5900.

13.     Respondent Kristi Noem is named in her official capacity as the Secretary of Homeland Security in the United States Department of Homeland Security. In this capacity, she is responsible for the administration of immigration laws pursuant to Section 103(a) of the INA, 8 U.S.C. § 1103(a) (2007); routinely transacts business in the District of Vermont; is legally responsible for pursuing any effort to detain and remove the Petitioner; and as such is a custodian of the Petitioner. At all times relevant hereto, Respondent Noem's address is U.S. Department of Homeland Security, Office of the General Counsel, 2707 Martin Luther King Jr. Ave. SE, Washington, DC 20528-0485.

14.     Respondent Pamela Bondi is named in her official capacity as the Attorney General of the United States. She routinely transacts business in the District of Vermont in this capacity; is responsible for the administration of the immigration laws pursuant to Section 103(a) of the INA, 8 U.S.C. § 1103(g) (2007); and as such is a custodian of the Petitioner. At all times relevant hereto,

**JA 4**

Respondent Bondi's address is U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530- 0001.

## JURISDICTION & VENUE

15.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 2241, Article I, §9, cl. 2 (the Suspension Clause) and Article III of the U.S. Constitution, the Administrative Procedure Act, 5 U.S.C. § 701 et seq.; and 28 U.S.C. § 2201 (Declaratory Judgement).

16.     An actual and justiciable controversy exists between the parties under 28 U.S.C. § 2201 and this Court has authority to grant declaratory and injunctive relief. *Id.* § 2201, 22023. The Court has additional remedial authority under the All Writs Act, 28 U.S.C. § 1651.

17.     Venue is proper in the District of Vermont under 28 U.S.C. § 2241 and 28 U.S.C. § 1391. At the time this proceeding was initiated, Mr. Mahdawi was detained at 463 Mountain View Drive, Colchester, VT 05446. The petitioner has been and is presently being detained at the direction of Respondent Hyde and/or the Vermont sub-office Director, and a substantial part of the events giving rise to this petition occurred within this district.

## FACTS

### *Background on Mr. Mahdawi*

18.     Mr. Mahdawi is Palestinian. He is also a lawful permanent resident of the United States, and has been for the last ten years.

19.     Mr. Mahdawi was born in a refugee camp in the West Bank.  In 2015, he became a lawful permanent resident of the United States.

20.     In 2018, Mr. Mahdawi enrolled in Lehigh University in Pennsylvania, where he studied computer science for two years before transferring into Columbia University in 2021 to study philosophy. Mr. Mahdawi completed his program at Columbia in 2024 and has an expected

**JA 5**

graduation date of May 2025. Mr. Mahdawi plans to begin a Master's of International Affairs in fall of 2025 at the Columbia School of International and Public Affairs.

***Mr. Mahdawi's Speech on Matters of Public Concern***

21.     After growing up in a refugee camp,  Mr. Mahdawi felt compelled to advocate for Palestinian human rights upon moving to the United States.

22.     Mr. Mahdawi is also a committed Buddhist and believes in non-violence and empathy as a central tenet of his religion. In fall of 2021, he became the president of the Columbia University Buddhist Association and led it for two years.

23.     In fall of 2023, Mr. Mahdawi co-founded the Palestinian Student Union ("Dar") at Columbia University which "serves to engage with and celebrate Palestinian culture, history, and identity." Mr. Mahdawi co-founded this organization with Mahmoud Khalil, a Palestinian lawful permanent resident who was also recently detained by ICE for his expressive conduct related to Palestine.

24.     Before October of 2023, Mr. Mahdawi had advocated for a peaceful resolution between Israelis and Palestinians in different forms such as public speeches, community engagement, and storytelling initiatives. Following October of 2023, Mr. Mahdawi attended protests opposing military escalations in the region and advocating for Palestinian human rights and a peaceful political solution. Mr. Mahdawi gave speeches at several of these protests. In his speeches, Mr. Mahdawi advocated for Palestinian human rights, a permanent ceasefire, and a peaceful resolution that affirmed the human dignity of all.

25.     During one protest, Mr. Mahdawi vocally denounced an unaffiliated passerby who made an antisemitic comment, chanting "shame on him". Mr. Mahdawi stated that "we are against

antisemitism because antisemitism is a form of injustice, and injustice anywhere is a threat to justice everywhere." The confrontation was documented by the Columbia Spectator.[1]

26.     Mr. Mahdawi appeared in numerous televised interviews and print news articles regarding the military campaign in Gaza and related protests. In December of 2023, Mr. Mahdawi appeared on 60 Minutes where he shared that, as a child, he watched an Israeli soldier shoot and kill his best friend in the West Bank.

27.     Throughout his time as a student and a leader of Dar and the Columbia University Buddhist Association, Mr. Mahdawi was always willing to engage in dialogue with people whose views and beliefs differed from his own. Mr. Mahdawi believed, and continues to believe, that more speech is the solution to disagreement, rather than less, and that empathy and understanding through communication are a way to resolve conflicts peacefully.

28.     By the end of 2023, student speech and protests relating to the military campaign in Gaza had pushed Columbia into the national spotlight. And Mr. Mahdawi became a prime target for groups and individuals who wanted to suppress this flurry of activism.

29.     Mr. Mahdawi's speech regarding Israel's military campaign in Gaza, human rights, international law, obligations arising from international law, and related matters is speech protected by the First Amendment. Indeed, this political speech lies at the core of the First Amendment.

30.     Mr. Mahdawi's family still resides in a refugee camp in the West Bank. Israeli authorities have repeatedly harassed, detained, and tortured Mr. Mahdawi's family because of his advocacy for Palestinians in the United States.

---

[1] https://www.columbiaspectator.com/news/2023/11/10/hundreds-of-pro-palestinian-students-walk-out-as-part-of-national-call-to-action-gather-for-peaceful-protest-art-installation

31.     Mr. Mahdawi is fearful that, if he loses his lawful permanent resident status and he is removed to the West Bank, he will experience the same harassment, detention, and torture that his family has experienced, and would be in even more danger in light of the campaigns that have targeted and spread lies about him.

***The Federal Government's Suppression of Constitutionally Protected Speech: The Palestine Exception***

32.     In a closed-door meeting with donors during his re-election campaign, President Trump explicitly stated his intent to deport students who protested the military campaign in Gaza. Speaking in reference to Palestine-related protests, President Trump told donors: "Any student that protests, I throw them out of the country. You know, there are a lot of foreign students. As soon as they hear that, they're going to have to behave."[2]

33.     As a candidate, President Trump additionally pledged to "terminate the visas of all those Hamas sympathizers, and we'll get them off our college campuses, out of our cities, and get them the hell out of our country."[3]

34.     In fall of 2023, then-Senator Marco Rubio repeated these sentiments, stating on social media that "people marching at universities" were "supporters of Hamas" and that the U.S. should "cancel the visa of every foreign national out there supporting Hamas and get them out of America."[4]

35.     In January of 2025, after assuming office, President Trump signed two executive orders intended to fulfill his campaign promises of deporting protestors, Executive Order 14161, "Protecting the United States from Foreign Terrorists and other National Security and Public

---

[2] https://www.washingtonpost.com/politics/2024/05/27/trump-israel-gaza-policy-donors/.
[3] https://www.reuters.com/world/us/trump-administration-cancel-student-visas-all-hamas-sympathizers-white-house-2025-01-29/ .
[4] https://x.com/marcorubio/status/1713652113098539120.

Safety Threats," signed on January 20, 2025, and Executive Order 14188, titled "Additional Measures to Combat Anti-Semitism," signed on January 29, 2025.

36.    Executive Order 14161 states that its purpose is to "protect [United States] citizens" from aliens who "espouse hateful ideology" and "bear hostile attitudes towards [United States] citizens, culture, government, institutions, or founding principles." The order does not define "hostile attitudes," leaving the term open to encompass any form of political dissent or criticism of government policies.

37.    Executive Order 14188 and its accompanying fact sheet states the government's intent to target post-October 7, 2023 campus antisemitism, particularly on "leftist, anti-American colleges and universities." The order's definition of antisemitism encompasses constitutionally protected criticism of the Israeli government and its policies. The fact sheet frames the order as a promise to "deport Hamas sympathizers and revoke student visas," in order to send a message to all "resident aliens who participated in pro-jihadist protests" that the federal government "will find you…and deport you."

38.    Following the passage of these executive orders, prominent groups opposing Palestinian rights began publicly sharing the names of outspoken individuals whom they believed were non-citizens and wanted the government to deport. These groups explicitly singled out these individuals for their Palestine advocacy. Upon information and belief, these groups submitted these names to ICE's tip line.

39.    Betar USA—a group revived in 2024 which describes itself as "loud, proud, aggressive, and unapologetically Zionist"[5]—has publicly stated that it had "already submitted

---

[5] https://betarus.org/

**JA 9**

9

names of hundreds of terror supporters to the Trump administration."[6] On its website, Betar advocates for "military preparedness" in supporting Israel and "demands that its members understand force and weapons."[7]

40.    Betar USA's first target was lawful permanent resident Mahmoud Khalil. On January 29, 2025, the organization posted on social media that ICE is "aware of his home address and whereabouts" and confirmed that they "have provided his information to multiple contacts."[8]

41.    The following day, on January 30, 2025, Betar posted on X that "visa holder Mohsen Mahdawi is on our deport list."[9]

42.    On March 8, Mahmoud Khalil was returning from a Ramadan dinner when he was detained by DHS agents. Although the agents initially stated that they were revoking Mr. Khalil's "visa," upon learning that Mr. Khalil was a green-card holder, they stated that they would be revoking that too.[10]

43.    Following Mr. Khalil's arrest, President Trump issued a statement on Truth Social touting Mr. Khalil's arrest as a blueprint for future government actions. President Trump warned that Mr. Khalil's arrest was "the first of many to come," and stated that his administration would not tolerate "students at Columbia and other universities across the country who have engaged in

---

[6] Nicholas Liu, *A pro-Israel group says it gave the Trump administration a list of students to deport*, Salon.com (Jan. 31, 2025), *available at* https://www.salon.com/2025/01/31/pledged-to-deport-pro-palestine--and-a-pro-israel-group-has-already-made-a-list/.
[7] https://betarus.org/about/oath/.
[8] https://x.com/Betar_USA/status/1884796686020550930
[9] https://x.com/Betar_USA/status/1885077865684754439
[10] Amended Petition for Writ of Habeas Corpus, Case 1:25-cv-01935, Dkt. 38 at 2-3 (March 13, 2025).

pro-terrorist, anti-Semitic, anti-American activity." [11] The President promised to "find, apprehend, and deport these terrorist sympathizers from our country." [12]

44.    On social media site X, Secretary of State Marco Rubio wrote that the Trump administration "will be revoking the visas and/or green cards of Hamas supporters in America so they can be deported." [13]

45.    Following these statements, the Department of Homeland Security confirmed that Mr. Khalil's arrest by ICE was carried out "in support of President Trump's executive order's prohibiting anti-semitism, and in coordination with the Department of State." [14]

46.    The federal government based its detention of Mr. Khalil on the Secretary of State's claim that he posed a "threat to the foreign policy and national security interests of the United States." [15] In his Notice to Appear ("NTA"), the government cited Section 237(a)(3)(C)(i) of the Immigration and Nationality Act, stating that "the Secretary of State has reasonable ground to believe that [Mr. Khalil's] presence or activities in the United States would have potentially serious adverse foreign policy consequences for the United States." [16]

47.    In a statement to the Free Press on March 10, a White House Official stated that the federal government would use its basis for targeting Mr. Khalil as a "blueprint" for investigations against other students. [17]

---

[11] https://truthsocial.com/@realDonaldTrump/posts/114139222625284782
[12] https://truthsocial.com/@realDonaldTrump/posts/114139222625284782
[13] https://truthsocial.com/@realDonaldTrump/posts/114139222625284782
[14] https://x.com/DHSgov/status/1898908955675357314
[15] https://www.thefp.com/p/the-ice-detention-of-a-columbia-student
[16] Amended Petition for Writ of Habeas Corpus, Case 1:25-cv-01935, Dkt. 38 at 2-3 (March 13, 2025).
[17] https://www.thefp.com/p/the-ice-detention-of-a-columbia-student

48.     In a press conference on March 12, 2025, Secretary of State Rubio stated, "if you tell us that you are in favor of a group like this [Hamas], and if you tell us . . . I intend to come to your country as a student, and rile up all kind of anti-Jewish, anti-semitic activities, and "if you end up having a green card . . . we're going to kick you out."[18]

49.     Following the arrest of Mr. Khalil, Betar revived its public calls for the deportation of Mr. Mahdawi. On March 14, 2025, Betar posted on social media platform X that "Mohsen Mahdawi is next and also on the deport list."[19] A week later, on March 20, 2025, Betar again posted, "Mohsen Mahdawi is next and also on the deport list."[20]

***Mohsen's Detention by DHS as Implementation of the Policy to Arrest Protestors***

50.     On April 14, 2025, Mr. Mahdawi was attending a naturalization interview at 463 Mountain View Drive, Colchester, VT 05446 when he was arrested and detained by DHS officers.

51.     Public statements up by government officials, including statements by the President and Secretary of State, establish that Respondents have detained Mr. Mahdawi to punish and silence him because of his constitutionally protected speech, beliefs, statements, or associations.

52.     Under the Immigration and Nationality Act, the Secretary of State is prohibited from excluding or conditioning entry to noncitizens based on "past, current, or expected beliefs, statements, or associations, if such beliefs, statements, or associations would be lawful within the United States," unless the Secretary personally certifies to Congress that admitting the individual would compromise a compelling U.S. foreign policy interest. Section 212(a)(3)(C)(iii) of the INA, 8 U.S.C. § 1182(a)(3)(C)(iii).

---

[18] http://state.gov/secretary-of-state-marco-rubio-remarks-to-press/
[19] https://x.com/Betar_USA/status/1900611049637724488
[20] https://x.com/Betar_USA/status/1900611049637724488

**JA 12**

53.     Upon information and belief, Secretary Rubio has not provided any such certifications to the chairs of the House Foreign Affairs, Senate Foreign Relations, and House and Senate Judiciary Committees, as required by 8 U.S.C. § 1182(a)(3)(C)(iv).

54.     Notwithstanding such a determination, legislative history demonstrates that Congress intended to prevent the Executive from excluding noncitizens based on their constitutionally protected speech and beliefs. The Moynihan Amendment, passed in 1987, was intended "to take away the executive branch's authority to deny visas to foreigners solely because of the foreigner's political beliefs or because of his anticipated speech in the United States" and to affirm "the principles of the First Amendment." (S. Rep. No. 100–75 at 11, 100th Cong., 1st Sess. (1987), reprinted in 133 Cong. Rec. S2326 (1987)).

55.     Congress also asserted that such exclusions should not be based solely on "the possible content of an alien's speech in this country," that the Secretary should issue such determinations "sparingly and not merely because there is a likelihood that an alien will make critical remarks about the United States or its policies," and that the "compelling foreign policy interest" standard should be applied strictly. (H.R. Conf. Rep. No. 101-955, 101st Cong., 2nd Sess. (1990), reprinted in 1990 U.S.C.C.A.N. 6784, 6794). The legislative history provided, as an example, the entry of the Shah of Iran into the United States, which could imminently have resulted in harm to U.S. persons or property abroad. *Id.* at 6793.

56.     Such determinations have been rarely issued since the enactment of the provision. Where the Secretary of State has invoked the foreign policy ground, it has concerned a high-ranking government official or individual facing high-profile prosecutions in his country of origin.

57.     At least until these recent arrests, on information and belief, section 237(a)(4)(C) of the INA has never been invoked based purely on lawful beliefs, statements, or associations, that have taken place within the United States. This may be because it is a grammatically awkward at

**JA 13**

13

best to apply the provisions of INA § 212(a)(3)(C), 8 U.S.C. § 1182(a)(3)(C), incorporated by reference into INA § 237(a)(4)(C), 8 U.S.C. § 1227(a)(4)(C), to beliefs, statements, or associations which <u>are</u> or <u>were</u> lawful in the United States, and to say of such activities, in what appears to be counterfactual language, that they "would be lawful within the United States," 8 U.S.C. § 1182(a)(3)(C)(iii). Moreover, given the choice between an interpretation of the statute that would remove such lawful beliefs, statements, and activities that take place within the United States from the protection of the exemption at 8 U.S.C. §1182(a)(3)(C)(iii), and an interpretation that would prevent such lawful beliefs, statements, or activities that take place within the United States from being used a basis for a finding of inadmissibility or deportability under 8 U.S.C. § 1182(a)(3)(C) and 8 U.S.C. § 1227(a)(4)(C), the doctrine of constitutional doubt counsels in favor of the latter interpretation.

## <u>CLAIMS FOR RELIEF</u>

### <u>FIRST CLAIM</u>

**Violation of the First Amendment to the United States Constitution**

58.     Petitioner realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

59.     The First Amendment to the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. Amend. I.

60.     The First Amendment protects speech by noncitizens resident in the United States.

61.     The First Amendment also protects past, present, and future speech.

62.     The government's Policy of detaining noncitizens on the basis of their protected speech, and the targeting, arrest, and detention of Mr. Mahdawi, violate the First Amendment.

63.     The government targeted Mr. Mahdawi on the basis of his past protected speech.

64.     The government's targeting and detention of Mr. Mahdawi prevents him from continuing to exercise his constitutional right to speech.

65.     The government's targeting and detention of Mr. Mahdawi chills both his speech and the speech of other individuals who would like to express similar views.

66.     The government's targeting and detention of Mr. Mahdawi may prevent his future speech in the United States in the event that he is indeed removed from the country.

67.     The government's targeting and detention of Mr. Mahdawi deprives audiences of his present and future speech on matters of public concern.

68.     These consequences are not incidental to some legitimate government objective. As the government has made clear, these consequences (chilling and preventing speech sympathetic to Palestine) is the ultimate objective of the government's actions.

## SECOND CLAIM

**Violation of the Due Process Clause of the Fifth Amendment to the United States Constitution**

69.     Petitioner realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

70.     The Due Process Clause of the United States Constitution applies to "all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis,* 533 U.S. 678, 679 (2001).

71.     Immigration detention must further the twin goals of ensuring a noncitizen's appearance during removal proceedings and preventing danger to the community.

72.     In light of these goals, Mr. Mahdawi's detention is wholly unjustified. Indeed, it bears no reasonable relation to any legitimate government purpose.

73.     Mr. Mahdawi is not a flight risk. He plans to begin a master's program at Columbia in the coming fall. He has lived in the United States for the past eleven years, and his life, community, and work all are in the United States.

74.     Mr. Mahdawi is not a danger to the community. He has no criminal record, and there is no other legitimate reason to regard him as a danger to the community.

75.     Because Mr. Mahdawi's detention bears no reasonable relation to a legitimate government purpose, it is punitive.

76.     The sole basis for Mr. Mahdawi's detention is to punish him for his speech and to chill similar speech.

77.     Additionally, the Policy and Rubio Determination against Mr. Mahdawi are unconstitutionally vague.

### THIRD CLAIM

**Violation of the Administrative Procedure Act and the *Accardi* Doctrine**

78.     Petitioner realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

79.     The government has adopted a Policy of targeting noncitizens for removal on the basis of First Amendment protected speech which advocates for Palestinian rights.

80.     This policy is arbitrary, capricious, an abuse of discretion, contrary to constitutional right, contrary to law, and in excess of statutory jurisdiction, 5 U.S.C. § 706 (2)(A), (B), (C), and violates the *Accardi* doctrine and federal agencies' own rules, *see Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

81.     Additionally, the Secretary of State's determination is arbitrary and capricious, an abuse of discretion, contrary to constitutional right, contrary to law, and in excess of statutory jurisdiction. 5 U.S.C. § 706 (2)(A), (B), (C).

**JA 16**

## FOURTH CLAIM

### Violation of the Non-Delegation Doctrine

82.     Petitioner realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

83.     Congress has not provided the Executive Branch with intelligible principles from which the Executive Branch can implement 8 U.S.C. § 1227(a)(3)(C)(4)(i)-(ii) or 8 U.S.C. § 1182(a)(3)(C)(i) and (iii), except and to the extent that those statutes are interpreted to categorically exclude from consideration beliefs, statements, and associations that occur within the United States and that are lawful within the United States.

84.     Congress has delegated discretionary authority that is, at least if the statute is interpreted as the government apparently proposes to interpret it, standardless and unreviewable.

85.     Congress has failed to provide standards or procedures to allow for judicial review of an agency's discretionary deprivation of a noncitizen's liberty.

## FIFTH CLAIM

### Release on Bail Pending Adjudication

86.     Petitioner realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

87.     This Court has the "inherent authority" to grant bail to habeas petitioners like Mr. Mahdawi. *See Mapp v. Reno*, 241 F.3d 221, 230 (2d Cir. 2001).

88.     When considering such a petition, courts assess (1) "whether the petition raises substantial claims" and (2) "whether extraordinary circumstances exist that make the grant of bail necessary to make the remedy effective." *Elkimya v. Dep't of Homeland Sec.*, 484 F.3d 151, 154 (2d Cir. 2007) (cleaned up).

**JA 17**

89.     As long as Mr. Mahdawi is in detention, he will be unable to speak freely, ratifying the ultimate constitutional violation that the government sought to achieve with his detention.

90.     As long as Mr. Mahdawi is in detention, he will be punished for his disfavored speech, ratifying another constitutional violation that the government sought to achieve with his detention

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

1) Assume jurisdiction over this matter;
2) Vacate and set aside Respondents' unlawful Policy of targeting noncitizens for removal based on First Amendment protected speech advocating for Palestinian rights;
3) Vacate and set aside the Rubio Determination;
4) Enjoin Respondents from transferring the Petitioner from the jurisdiction of this District pending these proceedings;
5) Order the immediate release of Petitioner pending these proceedings;
6) Order the release of Petitioner;
7) Declare that Respondents' actions to arrest and detain Petitioner violate the First Amendment and the Due Process Clause of the Fifth Amendment, as well as the Administrative Procedure Act and the non-delegation doctrine;
8) Award reasonable attorneys' fees and costs for this action; and
9) Grant such further relief as the Court deems just and proper.

Dated: April 14, 2025

    Barre, Vermont

                                    /s/ Andrew Delaney_____
                                    Andrew Delaney
                                    andrew@mdrvt.com
                                    MDR Law Group
                                    100 North Main Street
                                    Barre, Vermont 05641
                                    P: 802-479-0568

                                    Luna Droubi*
                                    Beldock Levine & Hoffman, LLP
                                    99 Park Avenue, PH/26th Floor
                                    New York, New York 10016
                                    P: (212) 277-5820

**JA 18**

F: (212) 277-5880

Cyrus D. Mehta*
David A. Isaacson**
Cyrus D. Mehta & Partners PLLC
One Battery Park Plaza, 9th Floor
New York, New York 10004
P: 212-425-0555
F: 212-425-3282

*Attorneys for Petitioner*

*Motion for admission pro hac vice forthcoming
**Motion for admission pro hac vice forthcoming, and general admission under LR 83.1(a) scheduled for April 21, 2025

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

MOHSEN MAHDAWI

**(b)** County of Residence of First Listed Plaintiff    Windsor
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
MDR, 100 N. Main, Barre, VT 802-479-0568
Beldock Levine & Hoffman, LLP, NY, NY

## DEFENDANTS

Donald J. Trump, Patricia Hyde, Todd M. Lyons, Kristi Noem, Marco Rubio, Pamela Bondi

County of Residence of First Listed Defendant    Dist. of Columbia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [ ] 3  Federal Question *(U.S. Government Not a Party)*
- [x] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties In Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance<br>[ ] 120 Marine<br>[ ] 130 Miller Act<br>[ ] 140 Negotiable Instrument<br>[ ] 150 Recovery of Overpayment & Enforcement of Judgment<br>[ ] 151 Medicare Act<br>[ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>[ ] 153 Recovery of Overpayment of Veteran's Benefits<br>[ ] 160 Stockholders' Suits<br>[ ] 190 Other Contract<br>[ ] 195 Contract Product Liability<br>[ ] 196 Franchise | **PERSONAL INJURY**<br>[ ] 310 Airplane<br>[ ] 315 Airplane Product Liability<br>[ ] 320 Assault, Libel & Slander<br>[ ] 330 Federal Employers' Liability<br>[ ] 340 Marine<br>[ ] 345 Marine Product Liability<br>[ ] 350 Motor Vehicle<br>[ ] 355 Motor Vehicle Product Liability<br>[ ] 360 Other Personal Injury<br>[ ] 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>[ ] 365 Personal Injury - Product Liability<br>[ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>[ ] 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>[ ] 370 Other Fraud<br>[ ] 371 Truth in Lending<br>[ ] 380 Other Personal Property Damage<br>[ ] 385 Property Damage Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881<br>[ ] 690 Other<br><br>**LABOR**<br>[ ] 710 Fair Labor Standards Act<br>[ ] 720 Labor/Management Relations<br>[ ] 740 Railway Labor Act<br>[ ] 751 Family and Medical Leave Act<br>[ ] 790 Other Labor Litigation<br>[ ] 791 Employee Retirement Income Security Act | [ ] 422 Appeal 28 USC 158<br>[ ] 423 Withdrawal 28 USC 157<br>**INTELLECTUAL PROPERTY RIGHTS**<br>[ ] 820 Copyrights<br>[ ] 830 Patent<br>[ ] 835 Patent - Abbreviated New Drug Application<br>[ ] 840 Trademark<br>[ ] 880 Defend Trade Secrets Act of 2016<br>**SOCIAL SECURITY**<br>[ ] 861 HIA (1395ff)<br>[ ] 862 Black Lung (923)<br>[ ] 863 DIWC/DIWW (405(g))<br>[ ] 864 SSID Title XVI<br>[ ] 865 RSI (405(g)) | [ ] 375 False Claims Act<br>[ ] 376 Qui Tam (31 USC 3729(a))<br>[ ] 400 State Reapportionment<br>[ ] 410 Antitrust<br>[ ] 430 Banks and Banking<br>[ ] 450 Commerce<br>[ ] 460 Deportation<br>[ ] 470 Racketeer Influenced and Corrupt Organizations<br>[ ] 480 Consumer Credit (15 USC 1681 or 1692)<br>[ ] 485 Telephone Consumer Protection Act<br>[ ] 490 Cable/Sat TV<br>[ ] 850 Securities/Commodities/ Exchange<br>[ ] 890 Other Statutory Actions<br>[ ] 891 Agricultural Acts<br>[ ] 893 Environmental Matters<br>[ ] 895 Freedom of Information Act<br>[ ] 896 Arbitration<br>[ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>[ ] 950 Constitutionality of State Statutes |
| **REAL PROPERTY**<br>[ ] 210 Land Condemnation<br>[ ] 220 Foreclosure<br>[ ] 230 Rent Lease & Ejectment<br>[ ] 240 Torts to Land<br>[ ] 245 Tort Product Liability<br>[ ] 290 All Other Real Property | **CIVIL RIGHTS**<br>[ ] 440 Other Civil Rights<br>[ ] 441 Voting<br>[ ] 442 Employment<br>[ ] 443 Housing Accommodations<br>[ ] 445 Amer. w/Disabilities - Employment<br>[ ] 446 Amer. w/Disabilities - Other<br>[ ] 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>[x] 463 Alien Detainee<br>[ ] 510 Motions to Vacate Sentence<br>[ ] 530 General<br>[ ] 535 Death Penalty<br>**Other:**<br>[ ] 540 Mandamus & Other<br>[ ] 550 Civil Rights<br>[ ] 555 Prison Condition<br>[ ] 560 Civil Detainee - Conditions of Confinement | **IMMIGRATION**<br>[ ] 462 Naturalization Application<br>[ ] 465 Other Immigration Actions | **FEDERAL TAX SUITS**<br>[ ] 870 Taxes (U.S. Plaintiff or Defendant)<br>[ ] 871 IRS—Third Party 26 USC 7609 | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Administrative Procedure Act, 5 U.S.C. § 701 et seq
Brief description of cause:
PETITION FOR WRIT OF HABEAS CORPUS

## VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  [ ] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE
4/14/2025

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP   **JA 20**   JUDGE _____   MAG. JUDGE _____

# UNITED STATES DISTRICT COURT
## DISTRICT OF VERMONT

MOHSEN MAHDAWI,

                    Petitioner,

      -against-

DONALD J. TRUMP, IN HIS OFFICIAL CAPACITY AS
PRESIDENT OF THE UNITED STATES; PATRICIA HYDE, IN
HER OFFICIAL CAPACITY AS ACTING BOSTON FIELD
OFFICE DIRECTOR, IMMIGRATION AND CUSTOMS
ENFORCEMENT, ENFORCEMENT AND REMOVAL
OPERATIONS; VERMONT SUB-OFFICE DIRECTOR OF
IMMIGRATION AND CUSTOMS ENFORCEMENT,
ENFORCEMENT AND REMOVAL OPERATIONS; TODD M.
LYONS, IN HIS OFFICIAL CAPACITY AS ACTING
DIRECTOR, U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT; KRISTI NOEM, IN HER OFFICIAL
CAPACITY AS SECRETARY OF THE UNITED STATES
DEPARTMENT OF HOMELAND SECURITY; MARCO
RUBIO, IN HIS OFFICIAL CAPACITY AS SECRETARY OF
STATE; AND PAMELA BONDI, IN HER OFFICIAL
CAPACITY AS U.S. ATTORNEY GENERAL,

                    Respondents.

Case No. 2:25-cv-00389

## ORDER

       In order to preserve this Court's jurisdiction, and pursuant to the All Writs Act, 28 U.S.C.

§ 1651, it is ordered that the Petitioner, Mohsen Madawi, not be removed from the United States

or moved out of the territory of the District of Vermont pending further order of this Court.

       DATED at Burlington, in the District of Vermont, this 14th day of April, 2025.


                                /s/ Hon. William K. Sessions III
                                Hon. William K. Sessions III
                                U.S. District Judge

**JA 21**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

MOHSEN MAHDAWI,

*Petitioner*,

v.

DONALD J. TRUMP, in his official capacity as President of the United States; PATRICIA HYDE, in her official capacity as Acting Boston Field Office Director; Vermont Sub-Office Director of Immigration and Customs Enforcement; TODD M. LYONS, in his official capacity as Acting Director for U.S. Immigration and Customs Enforcement; KRISTI NOEM, in her official capacity as Secretary of the United States Department of Homeland Security; MARCO RUBIO, in his official capacity as Secretary of State; and PAMELA BONDI, in her official capacity as Attorney General of the United States,

*Respondents*.

Case No. 2:25-cv-00389

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RELEASE UNDER** *MAPP v. RENO*

**ORAL ARGUMENT REQUESTED**

### MOTION FOR RELEASE UNDER *MAPP v. RENO*

Petitioner Mohsen Mahdawi respectfully moves for immediate release pursuant to this Court's inherent authority, detailed in the accompanying memorandum and exhibits. Mr. Mahdawi—a lawful permanent resident—has been imprisoned solely for engaging in protected speech. His continued detention is unconstitutional, inflicts irreparable harm, and chills free expression; prompt release is necessary to ensure meaningful habeas review and uphold core constitutional rights.

**JA 22**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

FACTS ......................................................................................................................... 1

   I.   ICE detained Mr. Mahdawi in retaliation for his speech advocating for Palestinian
      human rights ........................................................................................................ 1

   II.  Mr. Mahdawi's arrest and detention are part of a policy intended to silence and chill the
      speech of those who advocate for Palestinian human rights ........................................... 5

   III. Mr. Mahdawi is a long-time lawful permanent resident and a beloved member of the
      communities he has lived and studied in. ........................................................................ 7

   IV. This Court has authority to grant Mr. Mahdawi immediate release pending the
      adjudication of this habeas petition. ............................................................................. 9

ARGUMENT ................................................................................................................ 9

   I. Mr. Mahdawi satisfies the requirements for release under *Mapp* ............................... 10

      A. Mr. Mahdawi raises substantial claims for habeas relief. ............................... 10

          1. First Amendment. ................................................................................ 10

          2. Due Process. ...................................................................................... 12

          3. APA and *Accardi* Doctrine.................................................................. 13

      B. The chilling of First Amendment protected speech is an extraordinary
         circumstance ........................................................................................... 14

      C. That Mr. Mahdawi is not a flight risk or danger to the community further
         bolsters that these are extraordinary circumstances. ....................................... 16

      D. These extraordinary circumstances make the grant of bail necessary to make
         the habeas remedy effective. ...................................................................... 17

      E. No INA Provision Bars this Court from Ordering Mr. Mahdawi's Release. ... 18

CONCLUSION ............................................................................................................ 22

## TABLE OF AUTHORITIES

**Cases**

*Aguilar v. U.S. Imm.& Customs Enforcement Div. of Dep't of Homeland Sec'y*, 510 F.3d 1 (1st Cir. 2007)..................................................................................................................20

*Arias v. Decker*, 459 F. Supp. 3d 561 (S.D.N.Y. 2020)....................................................18

*Avendaño Hernandez v. Decker*, 450 F. Supp. 3d 443 (S.D.N.Y. 2020) ....................9, 10

*Bello-Reyes v. Gaynor*, 985 F.3d 696 (9th Cir. 2021)...............................................11, 12

*Black v. Decker*, 103 F.4th 133 (2d Cir. 2024) ...............................................................12

*Boumediene v. Bush*, 553 U.S. 723 (2008)......................................................................22

*City of Houston, Tex. v. Hill,* 482 U.S. 451 (1987) .........................................................12

*Connick v. Myers*, 461 U.S. 138 (1983) ..........................................................................10

*Coronel v. Decker*, 449 F. Supp. 3d 274 (S.D.N.Y. 2020) .............................................10

*D'Alessandro v. Mukasey*, No. 08- CV-914, 2009 WL 799957 (W.D.N.Y. Mar. 25, 2009)...9, 14, 16

*Demore v. Kim*, 538 U.S. 510 (2003)....................................................................13, 19

*E.O.H.C. v. Secretary U.S. Dep't of Homeland Sec'y*, 950 F.3d 177 (3d Cir. 2020) .......................20

*Elkimya v. Dep't of Homeland Sec.*, 484 F.3d 151 (2d Cir. 2007)...................................9

*German Santos v. Warden Pike Cnty. Corr. Facility*, 96 5 F.3d 203 (3d Cir. 2020)......................13

*Kiadii v. Decker*, 423 F. Supp. 3d 18 (S.D.N.Y. 2018)..............................................9, 14

*Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001).....................................................1, 9, 18, 22

*Matal v. Tam*, 582 U.S. 218 (2017)..................................................................................11

*Ozturk v. Trump*, 2:25-cv-00374-wks (D.Vt. April 18, 2025), Doc. # 104,  slip op at 29-32............19

*Ragbir v. Homan*, 923 F.3d 53 (2d Cir. 2019) .................................................................11

*Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999)................................21

*Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819 (1995) .........................11

*S.N.C. v. Sessions*, No. 18 Civ. 7680, 2018 WL 6175902 (S.D.N.Y. Nov. 26, 2018)......................9

*Smith v. Campbell*, 782 F.3d 93 (2d Cir. 2015) ...............................................................11

ii

*Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020) ................................................... 19

**Statutes**

5 U.S.C. § 706(2)(A)-(C) ..................................................................................... 13

8 U.S.C. § 1182(a)(3)(C)(iii) ................................................................................. 4

8 U.S.C. § 1226(e) ............................................................................................. 19

8 U.S.C. § 1252(g) ............................................................................................. 20

## INTRODUCTION

On April 14, 2025, Petitioner Mohsen Mahdawi—a lawful permanent resident for 10 years—was forcefully detained by masked agents after his naturalization interview solely on the basis of his speech. Evidence provided by the government establishes that his incarceration is based on nothing else. The Supreme Court has held that "[o]fficial reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right.'" *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 n. 10 (1988)). Mr. Mahdawi has been imprisoned for one week as a result of his speech, and the government's retaliatory conduct has led to a chill in the speech of others.

This Court has the power, pursuant to its inherent authority, to release Mr. Mahdawi pending the adjudication of his habeas petition. *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001). The authority to release a habeas petitioner *pendente lite* ensures that the writ of habeas corpus remains an effective remedy under extraordinary circumstances. *Id.* at 230. And extraordinary circumstances have defined every aspect of Mr. Mahdawi's case—from his apprehension after his naturalization interview, to his detention for his constitutionally- protected speech. Moreover, Mr. Mahdawi is not a flight risk or danger to the community—rather, Mr. Mahdawi has deep community ties, a long history of being actively invested in the peace process, and nearly 80 individuals who can attest to his character. (Droubi Decl. Exs. 1-A–1-CA.) This Court should grant Mr. Mahdawi's immediate release.

## FACTS

### I.    ICE detained Mr. Mahdawi in retaliation for his speech advocating for Palestinian human rights

Mr. Mahdawi was born and raised in Al-Fara'a refugee camp in the West Bank. (Mahdawi Decl. ¶4). There, he witnessed the deaths of friends, relatives, and community members due to Israeli

military violence. (*Id*. ¶ 4). At age 15, he was shot in the left leg by an Israeli soldier. (*Id*.¶ 4.) He immigrated to the U.S. and transferred to Columbia University in 2021. (Id. ¶7.) Throughout his time at Columbia University, Mr. Mahdawi exercised his advocacy in different forms: public speeches, community engagement with people who held differing beliefs, and storytelling initiatives. (Mahdawi Del. ¶ 15; Droubi Decl. Exs. 1-A–1-CA.) Following Israel's military campaign in Gaza, which began in fall of 2023, Mr. Mahdawi felt compelled to speak up in support of the Palestinian people, in opposition to all forms of violence and war. (Mahdawi Decl. ¶¶ 4, 15.) Mr. Mahdawi attended protests opposing Israel's military campaign in Gaza and supporting Palestinian human rights. Id. He gave speeches at several of these protests. Id. In these speeches, Mr. Mahdawi advocated for respect for international law, a permanent ceasefire, and a peaceful resolution that affirmed the human dignity of all. Id. In February of 2024, Mr. Mahdawi applied for U.S. citizenship. (Mahdawi Decl. ¶ 6.)

Following the election of President Trump in November of 2024, individuals and groups that opposed human rights for Palestinians began to publicly demand that ICE detain Mr. Mahdawi for his speech on Palestinian rights and his involvement in advocacy efforts at Columbia. (*See, e.g*., Petition ¶¶ 41, 49.) Many of these same groups targeted Mahmoud Khalil, another Palestinian lawful permanent resident, in the months leading up to Mr. Khalil's arrest and detainment by ICE. Id. at 40. Mr. Mahdawi was fearful of what appeared to be the Trump Administration's willingness to target and detain individuals on the basis of their speech. On January 30, 2025, one group posted on X that "Mohsen Mahdawi is on our deport list." In the weeks between Mr. Khalil's arrest and his own, Mr. Mahdawi stayed inside and said little publicly. (Mahdawi Decl. ¶ 21.) In a press conference on March 12, 2025, Secretary of State Rubio stated, "if you tell us that you are in favor of a group like this [Hamas], and if you tell us . . . I intend to come to your country as a student, and rile up all kind of anti-Jewish, anti-semitic activities, and "if you end up having a green card . . . we're going to kick

you out." Mr. Mahadawi understood these comments to be a statement of intent by the Administration to target people speaking out for Palestinian rights (Mahdawi Decl. ¶¶ 21.) Two days later, the same group posted that Mr. Mahdawi was "next and also on the deport list." He felt physically unsafe walking around New York. His speech had been effectively chilled and his physical safety compromised. (Mahdawi Decl. ¶ 21.)

On March 27, 2025 Mr. Mahdawi was notified by the United States Citizenship and Immigration Services ("USCIS") that his naturalization interview had been scheduled for April 14, 2025 in Colchester, Vermont. (Mahdawi Decl. ¶ 22.) This interview marked the final stage in Mr. Mahdawi's naturalization process, after ten years of living in the United States as a lawful permanent resident. (Mahdawi Decl. ¶ 23.) During those ten years, Mr. Mahdawi always complied with the conditions of his status. (Mahdawi Decl. ¶ 24.) This instance was no different. *Id.* Though he was concerned it might be a trap, Mr. Mahdawi appeared promptly in Vermont to complete his naturalization interview. (*Id.* ¶¶ 24-25.)

On April 14, 2025, Mr. Mahdawi attended the interview. (*Id.* ¶ 25.) He raised his right hand, answered all the questions that were asked of him truthfully, and signed a document that he was willing to "defend the Constitution and laws of the United States of America against all enemies, foreign, and domestic." (Mahdawi Decl. ¶¶ 27, 29.)

It was a trap. At approximately 12:00 P.M., the USCIS official informed Mr. Mahdawi that he needed to "check" on some information and would be right back. ICE agents, masked and visibly armed, entered the interview room and shackled Mr. Mahdawi. (Mahdawi Decl. ¶¶ 30-33.) He was separated from his immigration attorney, placed into a car, and the government immediately initiated the process of transferring him across state lines, over a thousand miles away, to Louisiana. (*Id.* ¶¶ 34-38.) Despite the government's attempts at a rapid transfer, at approximately 3:11 P.M., the Honorable Judge William K. Sessions III granted an Emergency Motion for a Temporary Restraining

Order enjoining the transfer or removal of Mr. Mahdawi from the District of Vermont or from the United States. *See* ECF No. 6. At approximately 5:57 P.M., the automated case information system for the Executive Office for Immigration Review still listed the venue of Mr. Mahdawi's Master Calendar Hearing to be in Louisiana under Judge Sherron Ashworth. (Droubi Decl. Ex. 1-CC.)

At the time of this motion, Mr. Mahdawi is being detained in the Northwest State Correctional Facility in St. Albans, Vermont, although the venue of his immigration proceeding is still listed as Louisiana in the Executive Office for Immigration Review Case Portal, which shows Mr. Mahdawi's next hearing date as being in Louisiana on May 1, 2025. (Isaacson Decl., Ex. 1.) The Notice to Appear served on Mr. Mahdawi by DHS charges that he is removable from the United States under section 237(a)(4)(C) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(4)(C), because, it alleges, "The Secretary of State has determined that your presence and activities in the United States would have serious adverse foreign policy consequences and would compromise a compelling U.S. foreign policy interest." (Mahdawi Decl., Ex. 1., ¶¶ 1, 4.)

The phrase "compelling U.S. foreign policy interest" comes from a related provision, 8 U.S.C. § 1882(a)(3)(C)(iii), which requires the Secretary of State to make such a "determination" when Mr. Mahdawi's "beliefs, statements, or associations" would otherwise be "lawful within the United States." 8 U.S.C. § 1182(a)(3)(C)(iii), cited in 8 U.S.C. § 1227(a)(4)(C)(ii). Form I-213, which DHS attached to the version of the Notice to Appear filed in the proceedings, confirms this "determination," stating in relevant part that "[t]he determinations [made by the Secretary of State] are based on information provided by DHS/ICE/HSI that MAHDAWI, through his leadership and involvement in disruptive protests at Columbia University, has engaged in anti-Semitic conduct through leading pro-Palestinian protests and calling for Israel's destruction." (Isaacson Decl., Ex. 2, at 9; Form I-213 at 2.) Notwithstanding the falsehoods in these baseless allegations, these documents (1) constitute the only evidence presented by the government for his detainment, and (2) make clear

that the basis for Mr. Mahdawi's detention is his "lawful" speech and associations.

We ask this Court to suspend this unlawful retaliation and slow the grave threat to free speech posed by his continued detainment by releasing Mr. Mahdawi on bail.

## II.    Mr. Mahdawi's arrest and detention are part of a policy intended to silence and chill the speech of those who advocate for Palestinian human rights.

Mr. Mahdawi's arrest, transport, and detention are part of an effort by the Trump Administration to silence and chill speech supportive of the rights of Palestinians and critical of Israel's war in Gaza, especially on university campuses. Opponents of such speech, including President Trump, have mischaracterized it as inherently supportive of Hamas or antisemitic. On the campaign trail, President Trump promised to "terminate the visas of all those Hamas sympathizers and . . . get them the hell out of our country," and stated that foreign students would "behave" because "any student that protests, I throw them out of the country." (Petition ¶ 32.)

In January 2025, President Trump signed two Executive Orders to begin to fulfill his campaign promise of freezing speech in support of Palestinians. First, Executive Order 14161 declares the need to "ensure" that noncitizens in the United States "do not . . . advocate for, aid, or support designated foreign terrorists and other threats to our national security."[1] The Second Executive Order was published alongside a fact sheet, wherein  White House promised "[i]mmediate action" to "investigate and punish anti-Jewish racism in leftist, anti-American colleges and universities."[2] The sheet "promises" to noncitizens "who joined in the pro-jihadist protests" that the government "will find you, and . . . deport you."[3] The President further promised to "quickly cancel

---

[1] Presidential Actions: *Protecting the United States from Foreign Terrorists and Other National Security and Public Safety Threats*, THE WHITE HOUSE (Jan. 20, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/protecting-the-united-states-from-foreign-terrorists-and-othernational-security-and-public-safety-threats/.

[2] Fact Sheet: *President Donald J. Trump Takes Forceful and Unprecedented Steps to Combat Anti-Semitism*, THE WHITE HOUSE (Jan. 30, 2025), https://www.whitehouse.gov/fact- sheets/2025/01/fact-sheet-president-donald-j-trump-takes-forceful-and-unprecedented-steps-to-combat-anti-semitism/.

[3] *Id.*

5

**JA 30**

the student visas of all Hamas sympathizers on college campuses, which have been infested with radicalism like never before."[4]

In early March 2025, the Trump Administration began targeting students who had spoken in support of Palestinians for visa revocation, removal, and arrest and detention. On March 7, DHS agents attempted to arrest a Columbia doctoral student Ranjani Srinivasan who had posted on social media and signed open letters related to Israel's war in Gaza. DHS released a statement characterizing her as being "involved in activities supporting Hamas."[5] In the ensuing days and weeks, ICE arrested Mahmoud Khalil, Rumeysa Öztürk, and Dr. Badar Khan Suri, and promptly sent all three to Louisiana detention facilities. The government also sought unsuccessfully to detain Yunseo Chung and Momodou Taal. A court temporarily prohibited Ms. Chung's detention[6] and Mr. Taal decided to depart the United States after being denied the same protection.[7]

By targeting Mr. Mahdawi in this draconian manner, the government has sent a chilling message nationwide: lawful permanent residents who exercise their right to free expression risk detention and deportation if their views diverge from those of the current administration.

Mr. Mahdawi was targeted for arrest, detention, transfer, and attempted deportation pursuant to the Trump administration's policy of targeting students for any speech about Palestine. After Mr. Mahdawi's arrest, the *New York Times* published portions of an unreleased memorandum by Secretary of State Marco Rubio ("the Rubio Memorandum"), that states that Mr. Mahdawi had been detained because the protests of the type that Mr. Mahdawi has been involved in could allegedly

---

[4] *Id.*

[5] VIDEO: Columbia University Student Whose Visa Was Revoked for Supporting Hamas and Terrorist Activities Used CBP Home App to Self-Deport, DEP'T OF HOMELAND SEC. (Mar. 14, 2025), https://www.dhs.gov/news/2025/03/14/video-columbia-university-student-whose-visa- was-revoked-supporting-hamas-and.

[6] Patrick Smith and Doha Madani, *Judge rules Columbia protester Yunseo Chung can't be detained as she fights deportation*, March 25, 2025, https://www.nbcnews.com/news/us-news/columbia-protester-yunseo-chung-sues-trump-administration-prevent-depo-rcna197927.

[7] Gloria Pazmino & Amanda Musa, Cornell student activist chooses to leave US after judge denies bid to immediately block deportation (Apr. 2, 2025), https://www.cnn.com/2025/03/31/us/cornell-student-activist-deportation/index.html.

undermine the Middle East peace process.[8] The Rubio Memorandum also asserted, without elaborating, that Mr. Mahdawi had "engaged in threatening rhetoric and intimidation of pro-Israeli bystanders," and that his actions had undermined efforts to protect Jewish students from violence.[9] In fact, the language "threatening rhetoric and intimidation" appears to come directly from a statement issued by Columbia University about the student protests, which was later retracted. (Droubi Decl. E.. 1-V.)  The government has yet to produce any evidence beyond its *ipse dixit* for these claims, which contradict Mr. Mahdawi's long and documented commitment to peaceful advocacy and to combating antisemitism. Clearly, the Defendants' claims are a façade to target clearly protected speech related to Palestinian human rights.

### III.   Mr. Mahdawi is a long-time lawful permanent resident and a beloved member of the communities he has lived and studied in.

Mr. Mahdawi has earned deep respect as a pillar of his Vermont and Columbia University communities, a top student, a trusted friend, a dedicated Buddhist, and a committed peacemaker. Ninety declarations attest to his character and contributions. (Droubi Decl. Exs. 1-A–1-CA.) He is set to graduate from Columbia University in May 2025, just one month after this motion. (Mahdawi Decl. ¶7-8.) Following his graduation, Mr. Mahdawi intends to return to Columbia University in the fall of 2025 to pursue a Master's at the School of International and Public Affairs ("SIPA") to study international conflict resolution and peacebuilding. (Mahdawi Decl.  ¶ 10; Droubi Decl. Ex. 1-CB.)

While living in Vermont, Mr. Mahdawi frequently invited his neighbors and others over for dinner, led outdoor hikes, and helped neighbors dig cars out from the snow. (Droubi Decl. Ex. 1-BX; 1-CA.) He was a member of the First Unitarian Church or Hartland Services where he sought unity and helped bridge political divides. (Droubi Decl. Exs. 1-BF; 1-BY; 1-BW.) In his community in

---

[8] Hamed Aleaziz and Jonah E. Bromwich, *U.S. Cites Mideast Peace Process to Justify Move to Deport Student,* New York Times (April 15, 2025), https://www.nytimes.com/2025/04/15/nyregion/rubio-mahdawi-deportation-letter.html.
[9] *Id.*

Vermont, he is known to "espouse[] and practice[] peace and co-existence." (Droubi Decl. Ex. 1-BV.)

As a student at Columbia University, Mr. Mahdawi served as the President of the Columbia Buddhist Association and co-founded the Palestinian Student Union ("Dar"). (Petition ¶ 25.) He spent his years at Columbia University working to create dialogues "to spread a call for a non-violent sustainable plan, . . . drafted jointly by Palestinians and Israelis." (Droubi Decl. Ex. 1-N.) He made students, including those in the Jewish and Zionist communities at the University "fe[el] entirely safe and respected". (Droubi Decl. Exs. 1-K; 1-L; 1-T.) He "eased tensions on campus, not increased them", and "striv[ed] for reconciliation and peace". (Droubi Decl. Exs. 1-K; 1-P; 1-Q.)

In fact, University colleagues write, Mr. Mahdawi's "consideration for the individual humanity of others is unwavering" (Droubi Decl. Ex. 1-AF.). He is a "a bridge-builder and a man of peace." (Droubi Decl. Ex. 1-BE.) Numerous professors at Columbia note his focus on "peaceful change" (Droubi Decl. Ex. 1-AA.). After taking a Peace Making and Negotiations course at Columbia, Mr. Mahdawi worked with an Israeli student and their professor to organize a 4-to-5-day seminar retreat in the summer of 2024. (Droubi Decl. Ex. 1-W.) As an academic, Mr. Mahdawi is a "sophisticated thinker and theorist who sought to bring the academic tools he was acquiring in the classroom to bear on one of the most vexing contemporary political problems of his generation and mine: the Israeli-Palestinian conflict." (Droubi Decl. Ex. 1-V.)

Mr. Mahdawi "believes that overcoming injustice requires a deep commitment not only to non-violence, but to a holistic and transformative movement, rooted in loving kindness, that cares for the others' well-being." (Droubi Decl. Ex. 1-BI.) "Mohsen's respect for others, including Jewish students, [is] unmistakable." (Droubi Decl. Ex. 1-U.) "Of all the people I have had the pleasure of meeting, no one else inspires me so deeply. No one else commands so much of my admiration and my respect. No one else is as worthy of calling this land their home." (Droubi Decl. Ex. 1-L.)

As a Buddhist, Mr. Mahdawi believes in the "need to collectively come together as a global community with peace as the ultimate mission." (Droubi Decl. Ex. 1-D.) Mr. Mahdawi "took these precepts and values to heart," practicing meditation "to transmute anger into patience and hatred into forgiveness and love." (Droubi Decl. Ex. 1-F.) Mr. Mahdawi was known in the Buddhist community as "a dedicated and gifted community leader devoted to Buddhist values of mutual respect and understanding." (Droubi Decl Ex. 1-E.)

## ARGUMENT

I.  **This Court has authority to grant Mr. Mahdawi immediate release pending the adjudication of this habeas petition.**

This Court should release Mr. Mahdawi on personal recognizance, or alternatively on bail, pending adjudication of his petition pursuant to the Court's inherent habeas authority. *See Mapp*, 241 F.3d at 231; *Elkimya v. Dep't of Homeland Sec.*, 484 F.3d 151, 154 (2d Cir. 2007).

Numerous courts within this circuit have already ordered release pursuant to *Mapp* in contexts involving challenges to detention, removal, or a combination of both. *See, e.g.*, *Avendaño Hernandez v. Decker*, 450 F. Supp. 3d 443 (S.D.N.Y. 2020); *D'Alessandro v. Mukasey*, No. 08- CV-914, 2009 WL 799957 (W.D.N.Y. Mar. 25, 2009); *S.N.C. v. Sessions*, No. 18 Civ. 7680, 2018 WL 6175902 (S.D.N.Y. Nov. 26, 2018); *Kiadii v. Decker*, 423 F. Supp. 3d 18 (S.D.N.Y. 2018). This Court should do the same.

Under *Mapp*, "a court considering a habeas petitioner's fitness for bail" must analyze (1) whether the habeas petition raises "substantial claims" and (2) whether "extraordinary circumstances" exist "that make the grant of bail necessary to make the habeas remedy effective." 241 F.3d at 230 (cleaned up). To raise a substantial claim, "the Second Circuit does not require that the petitioner convince every court, let alone the court considering the bail application, that he *will* succeed; rather, he need only show that his claims are 'substantial.'" *D'Alessandro*, 2009 WL 799957, at *3 (emphasis in original). This standard is largely akin to demonstrating a "likelihood of

success." *See e.g.*, *id.* at *3; *Kiadii,* 423 F. Supp. 3d at 20. At the same time, a broad range of circumstances may qualify as "extraordinary," including lack of flight risk or dangerousness, health issues, and the nature of the government behavior giving rise to the habeas claim. *See, e.g.*, *Coronel v. Decker*, 449 F. Supp. 3d 274, 289 (S.D.N.Y. 2020); *D'Alessandro*, 2009 WL 799957, at *3. Where, as here, the petitioner would face "the very outcome they seek to avoid" if they remained in detention pending determination of the merits, release is necessary to make the habeas remedy effective. *See Coronel*, 449 F. Supp. 3d at 289.

## II.     Mr. Mahdawi satisfies the requirements for release under Mapp.

This Court should grant Mr. Mahdawi's motion for release on recognizance, or alternatively grant his release on bail. Mr. Mahdawi is, by the government's own admission, being held on the basis of his lawful speech. *See Avendaño Hernandez*, 450 F. Supp. 3d at 447. Each day Mr. Mahdawi remains in detention harms his education, hurts his community, stifles his speech, and rewards the government for its unconstitutional attempt to punish and chill those who speak about Palestinian human rights. Releasing Mr. Mahdawi pending final adjudication of his petition is necessary to preserve the effectiveness of the habeas remedy.

### A.  Mr. Mahdawi raises substantial claims for habeas relief.

Through his habeas corpus petition, Mr. Mahdawi seeks to protect his rights under the First Amendment, the Due Process Clause of the Fifth Amendment, the Administrative Procedure Act, and the *Accardi* doctrine.

1.   *First Amendment.*   Mr. Mahdawi's substantial claim that he was arrested after his naturalization interview and detained because of views he expressed implicates the heart of the First Amendment.

Speech on "public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Connick v. Myers*, 461 U.S. 138, 145 (1983) (internal

quotation marks omitted). Because "[i]t is a fundamental principle of the First Amendment that the government may not punish or suppress speech based on disapproval of the ideas or perspectives the speech conveys," viewpoint discrimination is "an egregious form of content discrimination, which is presumptively unconstitutional." *Matal v. Tam*, 582 U.S. 218, 248 (2017) (Kennedy, J., concurring in part) (cleaned up); *see also Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995).

Mr. Mahdawi's arrest and detention violate these core First Amendment principles as unconstitutional retaliation based on his protected speech. To succeed on his First Amendment retaliation claim, Mr. Mahdawi must show that: "(1) [he] has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by [the petitioner's] exercise of that right, [and] (3) the defendant's actions caused [the petitioner] some injury." *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015) (cleaned up); *see also Bello-Reyes v. Gaynor*, 985 F.3d 696, 700 (9th Cir. 2021) ("A plaintiff making a First Amendment retaliation claim must allege that (1) [s]he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct.") (internal quotation marks omitted). Mr. Mahdawi easily satisfies this standard.

First, noncitizen speakers are protected by the First Amendment. *See Bridges v. Wixon*, 326 U.S. 135, 148 (1945) ("Freedom of speech and press is accorded aliens residing in this country.") This protection readily applies to Mr. Mahdawi's speech and advocacy in support of Palestinian human rights. The speech of a noncitizen on an issue central to "current political debate among American citizens and other residents" lies "'at the heart of First Amendment protection' and 'occupies the highest rung of the hierarchy of First Amendment values.'" *Ragbir*

*v. Homan*, 923 F.3d 53, 70 (2d Cir. 2019) (quoting *Snyder v. Phelps*, 562 U.S. 443, 451-52 (2011)), *cert. granted, remanded, and vacated sub nom. on other grounds*, *Pham v. Ragbir*, 141 S. Ct. 227 (2020)). Courts in this and other circuits have made clear that the First Amendment protects noncitizens who are detained and threatened with deportation because of their protected speech. *See, e.g.*, *id.*; *Bello-Reyes*, 985 F.3d at 698; *Gutierrez-Soto v. Sessions*, 317 F. Supp. 3d 917, 921 (W.D. Tex. 2018).

Second, there is no question that Mr. Mahdawi's speech was a substantial factor in the government's decision to arrest and detain him—indeed, the only justification that the government has provided since his arrest relates to his association with protests in support of Palestinian human rights and his "rhetoric."[10] "To allow this retaliatory conduct to proceed would broadly chill protected speech" of other noncitizens engaged in pro-Palestinian advocacy, extending the unconstitutional impact of Mr. Mahdawi's arrest and detention. *Ragbir*, 923 F.3d at 71.

Finally, the government's actions did injure, and continue to injure, Mr. Mahdawi. Indeed, few government actions could be more chilling on speech than a federal agency choosing to abruptly arrest and jail a person who had just finished the final stage of his naturalization process, who is a mere month away from graduating from college. *Cf. City of Houston, Tex. v. Hill,* 482 U.S. 451, 462-63 (1987) ("The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."). Both the fact and the nature of Mr. Mahdawi's arrest and detention are jarring, as the public outcry in response to the situation makes clear.

2.    *Due Process.*    Mr. Mahdawi's due process claims are also substantial. The Constitution

---

[10] Hamed Aleaziz and Jonah E. Bromwich, *U.S. Cites Mideast Peace Process to Justify Move to Deport Student,* New York Times (April 15, 2025), https://www.nytimes.com/2025/04/15/nyregion/rubio-mahdawi-deportation-letter.html.

establishes due process rights for "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Black v. Decker*, 103 F.4th 133, 143 (2d Cir. 2024) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. Immigration detention is civil, not criminal, and thus only justified when necessary to ensure a noncitizen's appearance during removal proceedings and to prevent danger to the community. *See Black*, 103 F.4th at 143 (citing *Zadvydas*).

The government's detention of Mr. Mahdawi is wholly unjustified, as the government has not demonstrated that Mr. Mahdawi—a well-loved member of the communities that he belongs to and a man with no criminal record—is either a flight risk or a danger. *Cf. Zadvydas*, 533 U.S. at 690; Droubi Decl. Exs. 1–A–1-CA. Rather, Mr. Mahdawi's detention bears no "reasonable relation" to any nonpunitive government purpose. *See Zadvydas*, 533 U.S. at 690. Here, there is every indication that Mr. Mahdawi's "detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons," which violates the due process clause. *Demore v. Kim*, 538 U.S. 510, 532-33 (2003) (Kennedy, J., concurring); *see also German Santos v. Warden Pike Cnty. Corr. Facility*, 96 5 F.3d 203, 211 (3d Cir. 2020) ("[I]f an alien's civil detention . . . looks penal, that tilts the scales toward finding the detention unreasonable.").

3.   *APA and* Accardi *Doctrine.*  Finally, Mr. Mahdawi's APA and *Accardi* claims regarding his arrest and detention are substantial. The government has adopted an unconstitutional and unlawful policy of targeting noncitizen students for arrest, transport, and detention based on First Amendment-protected speech advocating for Palestinian rights. This policy is arbitrary and capricious, an abuse of discretion, contrary to constitutional right, contrary to law, and in excess of statutory jurisdiction. *See* 5 U.S.C. § 706(2)(A)-(C). Moreover, the government's actions present a classic violation of the

*Accardi* doctrine, as the government is violating its regular processes and rules, including those pertaining to First Amendment activity, in order to detain and deport Mr. Mahdawi. *Cf. Accardi v. Shaughnessy,* 347 U.S. 260 (1954) (agency may not violate its own rules and processes simply because Attorney General singled him out for deportation); *see also, e.g.*, DHS, Memorandum of Kevin McAleenan (May 17, 2019) (stating DHS "does not profile, target, or discriminate against any individual for exercising his or her First Amendment Rights").[11]

### B. The chilling of First Amendment protected speech is an extraordinary circumstance.

That Mr. Mahdawi was apprehended solely on the basis of his speech is an extraordinary circumstance warranting his immediate release. Courts look at the scope of the constitutional deprivation that a petitioner has experienced and the nature of the government's behavior surrounding a petitioner's detention to support a finding of extraordinary circumstances. *See, e.g*., *D'Alessandro*, 2009 WL 799957, at \*3 (listing "grossly defective" immigration custody reviews and petitioners unconstitutionally prolonged detention as two circumstances that qualified the case as extraordinary and exceptional). Mr. Mahdawi's case is extraordinary in every respect: he was detained during his naturalization interview, targeted solely for his protected speech, incarcerated for his speech, and faces additional irreparable harm to his education and liberty. *See, e.g*., *Kiaddii*, 423 F. Supp. 3d at 20-21  ("Indeed, the Court wonders if the Mapp court could have imagined circumstances more extraordinary than the detention of a woman credibly claiming United States citizenship by none other than  the immigration authorities. The Government's arguments that the habeas petition does not present an 'extraordinary circumstance' or support it with evidence is so mystifying that it practically shocks the conscience.")

And here, the government's motivations for Mr. Mahdawi's arrest and detention, and the

---

[11] *Available at* https://www.dhs.gov/sites/default/files/publications/info_regarding_first_amendment_protecte d_activities_as1_signed_05.17.2019.pdf.

way in which they implemented these actions, constitute extraordinary circumstances. With respect to the former, as described *supra*, the government targeted Mr. Mahdawi, a lawful permanent resident, solely because of his speech. No other justification has been offered besides Mr. Mahdawi's lawful expression relating to his beliefs. And as discussed *supra*, this justification plainly violates the First Amendment.

The manner in which the government effectuated Mr. Mahdawi's arrest and detention further underscores the existence of extraordinary circumstances justifying his release. The government's conduct in this case has been highly unusual, to put it mildly. *See, e.g.,* Heather Yountz Decl., Pl's Motion for Release, *Ozturk v. Trump*, No. 2:25-cv-00374, ECF No. 82, Ex. 4 ("In my 17 years of immigration practice . . . [t]he fastest transfer I recall seeing was 24 hours after initial placement."). Mr. Mahdawi was arrested at the end of his naturalization interview, with masked and armed ICE agents entering the room and rushing him into a black van and to the airport with a clear plan to ship him to Louisiana. (Mahdawi Decl. ¶¶ 29-39; Droubi Decl. at Ex. 1-CC.) In addition to chilling speech protected by the First Amendment, the government's actions also have the potential to prevent individuals from seeking naturalization. Non-citizens may view status check-ins or interviews with immigration officials as opportunities for them to be detained or arrested for their speech. Lawful permanent residents may opt not to seek naturalization at all for fear of landing in detention as retaliation for their speech or protest activity.

The government's attempts to rapidly transfer Mr. Mahdawi to Louisiana following his arrest heightened the extraordinary circumstances. *See, e.g.,* Jill Martin Diaz Decl., Pl's Motion for Release, *Ozturk v. Trump*, No. 2:25-cv-00374, ECF No. 82, Ex. 6 ("It is extraordinary for a Vermont detainee to be transferred from custody in the northeast to custody outside of the northeast."). In fact, the venue of Mr. Mahdawi's immigration proceeding has always been listed as Louisiana, demonstrating a prior intent to detain Mr. Mahdawi there. (Droubi Decl. Ex. 1-CC.) Had this Court

15

**JA 40**

not issued a TRO enjoining his transfer, Mr. Mahdawi would likely now be detained in Louisiana, over a thousand miles away from his community and legal team. Indeed, the government followed this pattern in the arrests of students Mahmoud Khalil, Dr. Badar Khan Suri, Leqaa Kordia, and Rumeysa Öztürk: targeting them for their protected speech, ambushing them without notice, and rushing them to Louisiana to be detained far from home.

### C. That Mr. Mahdawi is not a flight risk or danger to the community further bolsters that these are extraordinary circumstances.

Courts consider a lack of evidence that a petitioner is a flight risk or a danger to the community to establish extraordinary circumstances. *See, e.g.*, *D'Alessandro*, 2009 WL 799957, at *3. In this case, "there is no evidence whatsoever" that Mr. Mahdawi poses such risks. *Id.* Rather, all evidence demonstrates Mr. Mahdawi's deep ties to his academic and social community and is an asset to his communities rather than a danger.

Vermont is Mr. Mahdawi's physical home, and Columbia University is Mr. Mahdawi's intellectual home. He poses no flight risk. Mr. Mahdawi is a month away from receiving his undergraduate degree at Columbia University. (Mahdawi Decl. ¶47.). He plans to begin a master's program at Columbia in fall of 2025. *Id.* ¶49. Declarant after declarant has sworn to Mr. Mahdawi's deep connectivity to the Columbia University campus and surrounding areas in the East Coast. (Droubi Decl. Exs. 1–A–1-CA.) Indeed, Mr. Mahdawi maintains a permanent residence in White River Junction, Vermont, which he shares with a roommate. (Mahdawi Decl. ¶ 2; Droubi Decl. Ex. 62.) In a statement published following Mr. Mahdawi's arrest, the city council of Hartford, Vermont affirmed that Mr. Mahdawi is "a neighbor, and a friend to many. He has added value as an educator, mediator, and relationship builder, and has an outpouring of support from his home of Hartford."[12]

Beyond Vermont and the Columbia campus, Mr. Mahdawi has no other home. He has spent

---

[12] https://www.hartford-vt.org/CivicAlerts.aspx?AID=815.

16

**JA 41**

the last ten years building a life here in the United States. (Mahdawi Decl. ¶ 45.) Mr. Mahdawi has already demonstrated a history of compliance with immigration proceedings. (*Id.* ¶ 24.) He voluntarily appeared at his naturalization interview in Vermont, despite knowing that groups opposed to Palestinian rights had been targeting him and reporting his name to authorities. (Petition ¶¶ 41, 49.) Mr. Mahdawi is a cherished member of his community, not a danger to it. He has no criminal record, has demonstrated at every turn a commitment to peaceful advocacy, and has fostered friendships with individuals from all walks of life. (Droubi Decl. Ex. 1-J.) He has spoken up against antisemitism just as he has spoken up in support of Palestinian human rights. (Droubi Decl. Exs. 1-V; 1-K; 1-P; 1-Q.). His belief in the preciousness of human life extends to all people, regardless of their race, religion, national origin, or ethnicity, as numerous people have attested to. (Droubi Decl. Exs. 1-AQ; 1-F; 1-B.)

In sum, from start to finish, the circumstances of Mr. Mahdawi's case have been extraordinary and merit his release.

### D. These extraordinary circumstances make the grant of bail necessary to make the habeas remedy effective.

In light of what is described above, release pending the litigation of Mr. Mahdawi's petition is necessary to secure him an effective habeas remedy.

Mr. Mahdawi's challenge to the constitutionality of the government's decision to arrest and detain him is a significant part of the First Amendment injury at the center of this litigation. Even if Mr. Mahdawi is ultimately released at the conclusion of what could be protracted litigation, he will have been prevented from speaking freely all the while and the message to others will be received loud and clear: speak at your own peril. Allowing Mr. Mahdawi to remain in detention would ratify the chilling effect that the government intends to create. *Cf. Arias v. Decker*, 459 F. Supp. 3d 561, 580 (S.D.N.Y. 2020) (granting bail to avoid "precisely the harm their petition seeks to avert"). This is different from *Mapp*, where bail was ultimately denied because "[t]he relief

sought by petitioner" did not "guarantee[] . . . his release from detention" but only involved allowing him to apply for a particular waiver of deportation, and "the effectiveness of this form of relief [wa]s wholly independent of the question of whether Mapp [wa]s incarcerated while the [waiver] hearing [wa]s pending." *Mapp*, 241 F.3d at 230-231. Here, relief from the chilling effect on speech is indeed dependent on whether Mr. Mahdawi remains incarcerated. "The loss of First Amendment freedoms, for even minimal periods of time, constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

Release is also necessary to avoid what is a devastating punitive consequence of Mr. Mahdawi's continued detention, namely, the disruption of his education. Mr. Mahdawi is expected to graduate from Columbia University in May of 2025, but his graduation is contingent on the completion of two classes that he is currently enrolled in. (Droubi Decl., Ex. 1-CB.) Every day that Mr. Mahdawi spends in captivity is a day that he is prevented from working towards his degree. And if he is prevented from graduating from his bachelor's degree program, he will also be prevented from beginning his master's degree at Columbia SIPA this coming fall. (Droubi Decl. Ex. 1-CB.)

### E. No INA Provision Bars this Court from Ordering Mr. Mahdawi's Release

The INA[13] does not bar this Court from releasing Mr. Mahdawi, and could not do so without violating the Suspension Clause of the U.S. Constitution. At the very least, Mr. Mahdawi is sufficiently likely to prevail on the jurisdictional question that interim release is appropriate under *Mapp*.

To start, 8 U.S.C. § 1226(e) does not deprive this Court of jurisdiction to order Mr. Mahdawi's release. That section provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any

---

[13] Immigration and Nationality Act of 1952, 8 U.S.C. Ch. 12 (INA).

18

action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e). The Court of Appeals for the Second Circuit has made clear, however, that this provision does not "limit habeas jurisdiction over constitutional claims or questions of law." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020). Indeed, "Section 1226(e) contains no explicit provision barring habeas review" at all. *Demore v. Kim*, 538 U.S. 510, 517 (2003). This petition and this motion do not ask for review of a discretionary determination, but rather for habeas review of Mr. Mahdawi's unconstitutional detention and other constitutional claims and questions of law. Thus, under *Demore* and *Velasco Lopez*, § 1226(e) does not strip this Court of jurisdiction. Another judge of this Court recently so held with regard to a similar habeas petition filed by nonimmigrant student Rumeya Ozturk. *See Ozturk v. Trump*, 2:25-cv-00374-wks (D.Vt. April 18, 2025), Doc. # 104, slip op at 29-32.

Nor does 8 U.S.C. § 1252(a)(5), which provides that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter," 8 U.S.C. § 1252(a)(5), and which (unlike § 1226(e)) specifically precludes habeas review, have any bearing here. Mr. Mahdawi has not been ordered removed, and he does not seek review of any order of removal. As the District Court in *Ozturk* explained just days ago, 1252(a)(5) does not apply under these circumstances. *See Ozturk*, Doc. # 104, slip op. at 35-37.

For similar reasons, 8 U.S.C. § 1252(b)(9), though it also addresses habeas review, does not bar this action nor Mr. Mahdawi's interim release on recognizance or bail when it states that

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

8 U.S.C. § 1252(b)(9). As Judge Sessions explained in *Ozturk*, constitutional questions relating to detention do not "aris[e] from" removal proceedings simply because the detention occurs during

the removal proceedings. *See Ozturk*, Doc. # 104, slip op. at 37-39.  The First Circuit, as well, has held that despite § 1252(b)(9), "district courts retain jurisdiction over challenges to the legality of detention in the immigration context."[14] This is an example of the general rule that "[w]hen a detained alien seeks relief that a court of appeals cannot meaningfully provide on petition for review of a final order of removal,  § 1252(b)(9) does not bar consideration by a district court." *E.O.H.C. v. Secretary U.S. Dep't of Homeland Sec'y*, 950 F.3d 177, 180 (3d Cir. 2020).  A court of appeals cannot meaningfully provide, on petition for review of a final order of removal, review of whether someone should have been detained during removal proceedings, both because there may never be a removal order, and because if there is, the court of appeals cannot travel back in time and order that the person not be detained during the proceedings. *See id.* at 186.

Nor does 8 U.S.C. § 1252(g) pose a jurisdictional problem here. That section generally denies courts, outside of the petition for review process, "jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). As the Supreme Court has clarified, however, section 1252(g) is not "a sort of 'zipper' clause" but rather "applies only to three discrete actions that the Attorney General may take: her "decision or action" to "commence proceedings, adjudicate cases, or execute removal orders." *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482 (1999) ("*AADC*"). Mr. Mahdawi does not challenge, in this litigation, the government's decision to commence or adjudicate the proceedings against him, which the government could have done without detaining him; rather, he challenges the government's decision to detain him in violation

---

[14] *Aguilar v. U.S. Imm.& Customs Enforcement Div. of Dep't of Homeland Sec'y*, 510 F.3d 1, 11 (1st Cir. 2007). The legislative history of the REAL ID Act of 2005, which amended § 1252(b)(9), so states.  *See Aguilar*, 510 F.3d at 11; H.R.Rep. No. 109–72, *available at* https://www.congress.gov/congressional-report/109th-congress/house-report/72/1, at 175 (amendment "would not preclude habeas review over challenges to detention that are independent of challenges to removal orders").

of the Constitution. He is not challenging the execution of a removal order against him, since no such removal order exists. As Mr. Mahdawi is not challenging any of the "three discrete actions" implicated by § 1252(g), *AADC*, 525 U.S. at 482, that section plays no role.

Finally, we note that, if any provision of the INA did purport to preclude this Court from ordering the release of a lawful permanent resident detained on account of protected speech in violation of his right to due process of law, it would be—in a word—unconstitutional. This is not a case involving the rule that "Congress has the authority to detain aliens suspected of entering the country illegally pending their deportation hearings," *Reno v. Flores*, 507 U.S. 292, 296 (1993), because no one suggests that Mr. Mahdawi has entered the country illegally. He is a lawful permanent resident. He is being subjected to removal proceedings not based on any criminal conviction,[15] but solely based on the Secretary of State's arbitrary assessment of adverse foreign policy consequences, and that assessment in turn is based on activities protected by the First Amendment. Under those circumstances, the Suspension Clause of the United States Constitution protects Mr. Mahdawi's right to habeas review of his detention, and none of the relevant INA provisions purport to be a suspension of the writ.

The Suspension Clause provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. Art. I, Sec. 9, Cl. 2. Its protection extends to noncitizens without formal immigration status even when detained in Guantanamo Bay. *Boumediene v. Bush*, 553 U.S. 723 (2008). Surely its protection extends to Mr. Mahdawi, a lawful permanent resident detained in Vermont. Mr. Mahdawi seeks (among other relief) simple release from custody.

The possibility of a petition for review at the conclusion of removal proceedings is not "an

---

[15] *Cf. Demore v. Kim*, 538 U.S. 510, 522-531 (2003) (upholding mandatory detention of deportable "criminal aliens" for "the limited period necessary for their removal proceedings").

adequate substitute for habeas corpus," *Boumediene*, 553 U.S. at 771, with respect to the question of detention during these removal proceedings (whether or not it would also be inadequate in other contexts), since it would occur only in the event of a final removal order and only after that detention had already taken place.. *Cf. E.O.H.C.*, 950 F.3d at 186 (engaging in similar analysis as a matter of statutory interpretation). Thus, the Suspension Clause would not allow Mr. Mahdawi to be denied habeas review, and told instead to await review by a Court of Appeals of his detention on petition for review of a final removal order.

The Suspension Clause and the First Amendment would not allow Congress to prescribe the detention of lawful residents for their protected speech and eliminate judicial review of that detention. If the INA were construed to attempt to do so—which, for the reasons discussed above, it should not be—it would be unconstitutional. Thus, on both statutory and Constitutional bases, the Court has authority to order Mr. Mahdawi's release. That this is only a request for interim release, not a final ruling, changes nothing. No "specific statutory provisions," *Mapp*, 241 F.3d at 229, bar interim release here. The real question is who should bear the risk if the Court's first judgment on jurisdiction or the merits proves wrong. Where there is no flight risk or danger, that burden should fall on the government—not on Mr. Mahdawi, a lawful permanent resident jailed for his protected speech.

## CONCLUSION

For these reasons, the Court should grant this motion and order Mr. Mahdawi's immediate release. Release will end the extraordinary harms of his detention, restore the status quo, and ensure that habeas relief remains meaningful by allowing full and fair consideration of the serious constitutional issues at stake.

Dated: April 21, 2025                    Respectfully submitted,
        Barre, Vermont

Andrew B. Delaney
MARTIN DELANEY & RICCI LAW
GROUP
100 North Main Street
Barre, Vermont 05641
andrew@mdrvt.com
P: 802-479-0568

Luna Droubi*
Matthew Melewski**
BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016
P: (212) 277-5875
F: (212) 277-5880

Cyrus D. Mehta*
David A. Isaacson
CYRUS D. MEHTA & PARTNERS PLLC
One Battery Park Plaza, 9th Floor
New York, New York 10004
P: 212-425-0555
F: 212-425-3282

CLEAR PROJECT
MAIN STREET LEGAL SERVICES, INC.
Ramzi Kassem***
Naz Ahmad***
Mudassar Hayat Toppa***
Shezza Abboushi Dallal***
CUNY School of Law
2 Court Square, 5th Floor
Long Island City, NY 11101
Tel.: (718) 340-4558
ramzi.kassem@law.cuny.edu
naz.ahmad@law.cuny.edu
mudassar.toppa@law.cuny.edu
shezza.dallal@law.cuny.edu

23
**JA 48**

*Attorneys for Petitioner*

\*Pro Hac Vice

\*\*Pro Hac Vice application pending

\*\*\*Pro Hac Vice application forthcoming

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

MOHSEN MAHDAWI,

      *Petitioner,*

v.

DONALD J. TRUMP, *et al.,*

      *Respondents.*

Case No. 2:25-cv-00389

**ORAL ARGUMENT
REQUESTED**

## DECLARATION OF ATTORNEY LUNA DROUBI SUBMITTED IN SUPPORT OF PETITIONER'S MOTION FOR RELEASE UNDER *MAPP V. RENO*

I, Luna Droubi, declare under penalty of perjury that the following is true and correct:

1. I am an attorney for Mohsen Mahdawi.

2. Attached as Exhibit 1-A is a true and correct copy of a declaration by David N. Myers dated April 17, 2025.

3. Attached as Exhibit 1-B is a true and correct copy of a declaration by Anjana Peddireddi, dated April 18, 2025.

4. Attached as Exhibit 1-C is a true and correct copy of a declaration by Kenneth A. Kessel, dated April 17, 2025.

5. Attached as Exhibit 1-D is a true and correct copy of a declaration by Alejandro Menjivar, dated April 18, 2025.

6. Attached as Exhibit 1-E is a true and correct copy of a declaration by Michael Santi Keezing dated April 18, 2025.

**JA 51**

7.   Attached as Exhibit 1-F is a true and correct copy of a declaration by Bhikkhu Bodhi.

8.   Attached as Exhibit 1-G is a true and correct copy of a declaration by Kavin Chada.

9.   Attached as Exhibit 1-H is a true and correct copy of a joint letter by one hundred and thirty five Buddhist teachers, practitioners, and supporters of human rights dated April 18, 2025.

10.   Attached as Exhibit 1-I is a true and correct copy of a declaration by Kevin Gunaratna.

11.   Attached as Exhibit 1-J is a true and correct copy of a declaration by Nadav Nazarathy dated April 18, 2025.

12.   Attached as Exhibit 1-K is a true and correct copy of a declaration by Rose Clubok.

13.   Attached as Exhibit 1-L is a true and correct copy of a declaration by Jacob Solomon dated April 19, 2025.

14.   Attached as Exhibit 1-L is a true and correct copy of a declaration by Jack Holmgren dated April 17, 2025.

15.   Attached as Exhibit 1-N is a true and correct copy of a declaration by Michael Fux dated April 18, 2025.

16.   Attached as Exhibit 1-O is a true and correct copy of a declaration by Josh Drill dated April 18, 2025.

17.   Attached as Exhibit 1-P is a true and correct copy of a declaration by Rochelle Berman dated April 17, 2025.

18.   Attached as Exhibit 1-Q is a true and correct copy of a declaration by Naor Ben-Yehovada dated April 18, 2025.

19.   Attached as Exhibit 1-S is a true and correct copy of a letter by the Buddhist Council of New York dated April 16, 2025.

**JA 52**

20. Attached as Exhibit 1-T is a true and correct copy of a declaration by Talia Levin dated April 17, 2025.

21. Attached as Exhibit 1-U is a true and correct copy of a declaration by Zoe Davidson dated April 17, 2025.

22. Attached as Exhibit 1-V is a true and correct copy of a declaration by Katherine Franke dated April 17, 2025.

23. Attached as Exhibit 1-W is a true and correct copy of a declaration by Jean Elizabeth Cullander Krasno dated April 17, 2025.

24. Attached as Exhibit 1-X is a true and correct copy of a declaration by Ian Borim dated April 18, 2025.

25. Attached as Exhibit 1-Y is a true and correct coy of a declaration by Rebecca Jordan-Young dated April 18, 2025.

26. Attached as Exhibit 1-Z is a true and correct copy of a declaration by Roberta Wall dated April 18, 2025.

27. Attached as Exhibit 1-AA is a true and correct copy of a declaration by Mahmood Mamdani dated April 18, 2025.

28. Attached as Exhibit 1-AB is a true and correct copy of a declaration by Sue Mendelsohn dated April 17, 2025.

29. Attached as Exhibit 1-AC is a true and correct copy of a declaration by Michele Moody-Adams dated April 15, 2025.

30. Attached as Exhibit 1-AD is a true and correct copy of a declaration by Nadia Abu El-Haj dated April 18, 2025.

JA 53

31. Attached as Exhibit 1-AE is a true and correct copy of a declaration by Frederick Neuhouser dated April 17, 2025.

32. Attached as Exhibit 1-AF is a true and correct copy of a declaration by Caleb Bowen dated April 18, 2025.

33. Attached as Exhibit 1-AG is a true and correct copy of a declaration by Nicole Alexandra Pimentel Soler dated April 17, 2025.

34. Attached as Exhibit 1-AH is a true and correct copy of a declaration by Haley Wilson dated April 17, 2025.

35. Attached as Exhibit 1-AI is a true and correct copy of a declaration by Jeanne Donegan.

36. Attached as Exhibit 1-AK is a true and correct copy of a declaration by Nayzak Wali-Ali dated April 19, 2025.

37. Attached as Exhibit 1-AL is a true and correct copy of a declaration by Romy Whitesell.

38. Attached as Exhibit 1-AM is a true and correct copy of a declaration by Sumaita Mulk.

39. Attached as Exhibit 1-AN is a true and correct copy of a declaration by River Smith.

40. Attached as Exhibit 1-AO is a true and correct copy of a declaration by Kenneth E. Howitt dated April 18, 2025.

41. Attached as Exhibit 1-AP is a true and correct copy of a declaration by Claudia Cohen dated April 17, 2025.

42. Attached as Exhibit 1-AQ is a true and correct copy of a declaration by Nadine Clopton dated April 17, 2025.

43. Attached as Exhibit 1-AR is a true and correct copy of a declaration by Ken Halpern dated April 18, 2025.

44. Attached as Exhibit 1-AS is a true and correct copy of a declaration by Steven Nathan dated April 19, 2025.

45. Attached as Exhibit 1-AT is a true and correct copy of a declaration by Julian Melo dated April 20, 2025.

46. Attached as Exhibit 1-AV is a true and correct copy of a declaration by Oren Yiftachel dated April 17, 2025.

47. Attached as Exhibit 1-AW is a true and correct copy of a declaration by Irene S. Clopton dated April 17, 2025.

48. Attached as Exhibit 1-AX is a true and correct copy of a declaration by Tamara Gayer dated April 18, 2025.

49. Attached as Exhibit 1-AY is a true and correct copy of a declaration by Noa Baum dated April 17, 2025.

50. Attached as Exhibit 1-AZ is a true and correct copy of a declaration by Robert Drysdale dated April 18, 2025.

51. Attached as Exhibit 1-BA is a true and correct copy of a declaration by Anne Macksoud dated April 18, 2025.

52. Attached as Exhibit 1-BB is a true and correct copy of a declaration by Mary Wilson.

53. Attached as Exhibit 1-BC is a true and correct copy of a declaration by Joby Thompson dated April 17, 2025.

54. Attached as Exhibit 1-BD is a true and correct copy of a declaration by Kyle Barrett dated April 18, 2025.

55. Attached as Exhibit 1-BE is a true and correct copy of a declaration by Tarik Samman dated April 18, 2025.

56. Attached as Exhibit 1-BF is a true and correct copy of a declaration by Anne Laurel Stevenson dated April 18, 2025.

57. Attached as Exhibit 1-BG is a true and correct copy of a declaration by Ariel Arwen dated April 17, 2025.

58. Attached as Exhibit 1-BH is a true and correct copy of a declaration by Caroline Craig dated April 17, 2025.

59. Attached as Exhibit 1-BI is a true and correct copy of a declaration by Christopher J. Helali dated April 17, 2025.

60. Attached as Exhibit 1-BJ is a true and correct copy of a declaration by Cory Waletzko dated April 17, 2025.

61. Attached as Exhibit 1-BK is a true and correct copy of a declaration by Daniel D. Fraser dated April 17, 2025.

62. Attached as Exhibit 1-BL is a true and correct copy of a declaration by David W. Allen, Jr. dated April 17, 2025.

63. Attached as Exhibit 1-BM is a true and correct copy of a declaration by Hannah Jeffrey dated April 18, 2025.

64. Attached as Exhibit 1-BN is a true and correct copy of a declaration by Henry Harris dated April 18, 2025.

65. Attached as Exhibit 1-BO is a true and correct copy of a declaration by John Hall dated April 17, 2025.

66. Attached as Exhibit 1-BP is a true and correct copy of a declaration by Jonathan Teller-Elsberg dated April 17, 2025.

67. Attached as Exhibit 1-BQ is a true and correct copy of a declaration by Josiah Proietti dated April 18, 2025.

68. Attached as Exhibit 1-BR is a true and correct copy of a declaration by Kelly Armburst dated April 17, 2025.

69. Attached as Exhibit 1-BS is a true and correct copy of a declaration by Kim Souza dated April 17, 2025.

70. Attached as Exhibit 1-BT is a true and correct copy of a declaration by Marta Ceroni dated April 18, 2025.

71. Attached as Exhibit 1-BU is a true and correct copy of a declaration by Michael G. Denmeade dated April 18, 2025.

72. Attached as Exhibit 1-BV is a true and correct copy of a declaration by Peter Avery dated April 17, 2025.

73. Attached as Exhibit 1-BW is a true and correct copy of a declaration by Samantha Cronin dated April 18, 2025.

74. Attached as Exhibit 1-BX is a true and correct copy of a declaration by Samuel Newman and Sara Zwikelmaier dated April 17, 2025.

75. Attached as Exhibit 1-BY is a true and correct copy of a declaration by Senator Rebecca Elizabeth White dated April 17, 2025.

76. Attached as Exhibit 1-BZ is a true and correct copy of a declaration by Stephen Flanders dated April 17, 2025.

77. Attached as Exhibit 1-CA is a true and correct copy of a declaration by William Potter dated April 18, 2025.

78. Attached as Exhibit 1-CB is a true and correct copy of a declaration by Sarah Remedios Bloom dated April 21, 2025.

79. Attached as Exhibit 1-CC is a true and correct copy of a screenshot of taken by me, Luna Droubi, of the Executive Office for Immigration Review online system at approximately 5:57PM on April 14, 2025.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 21, 2025, in New York, New York.

/s / Luna Droubi
Luna Droubi

**JA 58**

# EXHIBIT 1-A

**UNIVERSITY OF CALIFORNIA, LOS ANGELES**                                                  **UCLA**

BERKELEY • DAVIS • IRVINE • LOS ANGELES • MERCED • RIVERSIDE • SAN DIEGO • SAN FRANCISCO        SANTA BARBARA • SANTA CRUZ



David N. Myers
Sady and Ludwig Kahn Professor of Jewish History
UCLA Department of History
6265 Bunche Hall
Box 951473
Los Angeles, CA 90095-1473
myers@history.ucla.edu

<u>**Affidavit of Support for Mr. Mohsen Mahdawi**</u>
<u>**April 17, 2025**</u>

I, David N. Myers, am a Distinguished Professor of History and hold the Sady and Ludwig Kahn Chair in Jewish History at UCLA. I serve as director of the UCLA Bedari Kindness Institute, as well as of the UCLA Initiative to Study Hate and the UCLA Dialogue across Difference Initiative. I have devoted decades of research and teaching to Jewish history, the history of Zionism, the history of Israel, and the history of the Israel-Palestine conflict. I have also been involved in efforts to achieve peace and reconciliation between Palestinians and Israelis for decades; in that context, I served as President of the New Israel Fund (2018-2023) and remain an active member of its board.

I write this urgent letter in support of Mr. Mohsen Mahdawi, whom I met on August 26, 2024. The occasion was a retreat that brought together scholars and activists for a retreat in Southern California under the rubric "Peace Initiative for Israel-Palestine." The aim of those gathered was to explore new pathways toward achieving peace in Israel and Palestine. From the first moment I met him, I knew that Mohsen was a special human being. He carried himself with a preternatural mix of maturity, calmness, and decency that stood out to all. During our time at the retreat, Mohsen told me his life story. I was spellbound. He related how he was raised in the trying conditions of a refugee camp in the West Bank, where he witnessed the violent death of a close friend at age twelve. Notwithstanding his deep sense of grief and grievance at the time (at age twelve), Mohsen decided to commit himself to the path of non-violence and peaceful dialogue. He has maintained that commitment ever since.

At the retreat in California, I came to realize that Mohsen was not only a remarkable human being, but a partner in dialogue and bridge-building work. Several weeks later, I invited him to participate in a panel of students to discuss campus protests and antisemitism at the fall board meeting of the New Israel Fund in New York. Board members were compelled by Mohsen and the humanity with which he addressed the suffering of both Palestinians and Israelis.

I remained in regular monthly touch with Mohsen and got to hear a bit more about his overarching philosophy. He told me of his role in founding the Palestinian solidarity movement at Columbia but also of his unequivocal commitment to eliminating any trace or voice of antisemitism that arose within it. He also described to me how he decided to take leave of his leadership position in the movement at Columbia, because others within it began to call for armed struggle by spring 2024.

As a fellow believer in the principle of non-violence, I looked upon Mohsen's stance with great admiration. He is one of the rare activists involved in Israel-Palestine who has unequivocally eschewed the path of armed struggle. It is very important to promote such voices, both in the Middle East and on our

**JA 60**

own college campuses.  In the face of so much recrimination and desire for vengeance between Israelis and Palestinians; Mohsen Mahdawi represents an alternative model, a model of peace and reconciliation.

It is precisely people of Mohsen's character and beliefs who embody the best of our country's values.  At this critical juncture in the history of the Israel-Palestinian conflict, it is self-defeating to marginalize and exclude figures such as Mohsen who speak and promote the language of peace. Rather than seek to deport him from the United States, we should be embracing Mohsen and allow him to engage in productive, if not always easy, conversations with Israeli and American Jewish interlocutors, as he has often sought to do.

I have met many Palestinians and Israelis over the course of forty years of activism and scholarship. Mohsen Mahdawi is one of the most impressive, humane, and peace-loving people whom I've encountered.  He can play a vital role in bridge-building in the United States.  He is much needed in this era of polarization and vilification.

With all good faith, I attest to Mohsen Mahdawi's admirable character, values, and commitment to peace.  I declare that the above statements are all true and correct to the best of my knowledge and ability.

Sincerely,

David N. Myers
Distinguished Professor and Kahn Chair in Jewish History
Director, UCLA Luskin Center for History and Policy
Director, UCLA Bedari Kindness Institute

**JA 61**

# EXHIBIT 1-B

April 18, 2025

To whom it may concern,

My name is Anjana, I am a U.S. citizen, and I am a friend of Mohsen Mahdawi. I am writing this affidavit to demonstrate Mohsen's character to the courts, and I hope that I can convey just how equanimous, kind, and thoughtful Mohsen is.

I met Mohsen when I transferred to Columbia University in September 2022. This was my first time living far from home and I felt like I was drowning in unfamiliar faces. I happened to stumble into a Columbia University Buddhist Association (CUBA) club meeting, where I met Mohsen for the first time. In a measured voice, he opened our meditation circle, introduced himself as president, and then the Buddhist monk who would be guiding us that day. The bell rang three times, and we sat in silent meditation for 20 minutes. Pins and needles in my feet replaced the unease and imposter syndrome. I peeked my eyes open and observed Mohsen smiling in peaceful contemplation, his palms stacked with thumbs gently kissing. Afterwards, we were invited to stay to drink tea and socialize, and I finally had something to talk to someone about. For the first time in weeks, I felt grounded, safe, and welcome; this was my first CUBA meeting of many. I am deeply grateful to Mohsen for creating that space.

Mohsen's commitment to cultivating a non-judgmental space for people to explore Buddhist teachings has been remarkable. He has built enduring relationships with Buddhist monks across the city and expanded our club membership. He has figured out the intricacies of planning events, large celebrations that have brought together hundreds of students and community members. I know just how much love and hard work he dedicated to the club because I am now on the leadership team. Every time I try to do anything, get frustrated, and then find his notes, I silently thank my predecessor. And when I speak to the monks that he befriended years ago, they always ask about him lovingly. Mohsen wanted to strengthen Columbia's inter-religious community too, with one idea being a screening of his favorite movie–Mission Joy– with Christian student clubs. Coincidentally, this movie is based off of my favorite book, The Book of Joy, which captures days of conversation between two longtime friends, His Holiness the Dalai Lama and Archbishop Desmond Tutu. Its central theme is based on the idea of "ubuntu", a South African philosophy that stresses the interconnectedness of beings. I am because we are. Mohsen truly believes that compassion and mindfulness create a better world, and convinced me so too.

More than my colleague, Mohsen is a friend. Always over tea, we talked about big dreams we had. One time we met, I was surprised to see him dressed up in a suit and tie. Even two years before graduation, he told me he had a meeting with someone high up in the law school, because he was set on becoming a lawyer who could work on diplomacy and peace-making. When I told him I dreamt of flying one day, without a drop of hesitation, he told me I could do it. He is

generous, never failing to offer advice, resources to flight classes, homemade maple syrup, or a listening ear.

He is fiercely principled, even to an extent where it put us at odds. A few months ago, seeing that we had no paper cups for post-meditation tea, I put out a call in the CUBA group chat for people to "steal some paper cups from the dining halls". I vehemently argued that it was people's own money paying for their dining hall access; he countered that a Buddhist club should never ask people to steal, and bought the cups himself. Though I was almost on the edge of tears with frustration, he remained level, his voice the same, calming tone.

Knowing Mohsen has made me a more compassionate person. Despite all he has gone through, he is still guided by hope, empathy, and kindness. His absence is deeply felt in the Buddhist community in New York City. I declare that the above statements are all true and correct to the best of my ability.

Sincerely,
Anjana Peddireddi

# EXHIBIT 1-C

# Kenneth A. Kessel, LCSW

900 North Broom Street #16, Wilmington, DE 19806          (646) 286-8015 kesselken@yahoo.com

April 17, 2025

Letter Of Support For Mohsen Mahdawi

I am writing to offer the fullest support for Mohsen Mahdawi in his efforts to promote peace and to expedite his release from custody and his application for citizenship. I am a Zen Master in the Kwan Um lineage and have been teaching each semester for the Columbia University Buddhist association for several years. It is there that I met Mohsen, who is former president of the association. We have had occasion for very meaningful dialogues. I want to share what we discussed to make it clear that he does not and never has supported violence but rather centers his life on a path to peace for all.

Mohsen grew up on a Palestinian refugee camp. While there, as a small child, he witnessed deaths of those he loved. His response was unusual, unique among most people. When considering accountability, he found that the deepest form of accountability is accountability to himself to never engage in violent thought or violent action, as these are the root of the suffering and distress that has brought forth the anguish around him. The most real way to promote peace is to be peace. Having met other peaceful leaders, I can attest that Mohsen is one of the most peaceful people I've met.

Having this view, he found a strong affinity for the Buddhist path and embraced this in the community of practitioners at Columbia University. Ahimsa, or doing no harm, springs from taking refuge in the three treasures of Buddha, Dharma and Sangha. These are the fundamentally enlightened nature of the space you live in, the path you walk and the community of sentient beings you encounter each moment. To see all others as fundamentally of the same nature as yourself is to generate compassion, and wisdom, and the wish to bring peace. I see all of this as a path that Mohsen embodies, strives to maintain and dedicates himself to bringing forth in the world.

Even before the events that began the current conflict, Mohsen was constantly in touch with the suffering of all those in Israel and Palestine. I know that he saw all of their suffering as having the same root -- of living in the midst of a wound that is centuries old and has never healed. He knows in his bones that distress cannot heal distress, which can only be healed through peace. To stay silent in the face of this deep collective anguish of those closest to his heart is to betray his own humanity and deny his origin. To promote violence and hatred as a response is the same denial, and I've found him constitutionally unable to do this. He has taken the only authentic path there is for him -- to speak against violence in all its forms and against all the institutional supports for violence rather than peace. To affirm that violence cannot bring peace. To affirm that we have more wisdom to move toward peace and speak to the needs of those in need. And to recognize that the lives of Palestinians and Israeli children, men and women are enduringly on the line -- thus, to put his own life on the line in their behalf is the only path he sees for his, their and our own sake.

How can we not want such a person to speak freely in our midst?  How can we not embrace such a person into our country?  What do we do by imprisoning, silencing, removing him and by distorting his actions, his motives and his character?  While I do not have his wisdom or his courage in these matters, I can emulate his example and speak out on his behalf and not remain silent in this matter.  As a holder of a Zen lineage, I feel I would betray my own lineage and responsibilities by not doing so.  I fervently wish that those who have responsibility in these matters see that our own national security rests on the foundation of allowing those who speak the truth to be heard and those who ask for peace to have a voice.

In the Dharma,


Ken Kessel (Zen Master Jok Um)

# EXHIBIT 1-D

18 April 2025

I first met Mohsen Mahdawi in the fall semester of 2022 at Columbia University. At the time, I had just transferred from Boston College and was looking for a community of support and care during the difficult transfer process. I was invited to a weekly meditation at the Columbia University Buddhist Association by a mutual friend, and Mohsen happened to be the president of the club. At that first meditation, Mohsen opened the space, and I was immediately struck by his grounding presence in the room. He sat tall, with a smile on his face, and warmly welcomed everyone. After our meditation, I was introduced to him directly and spoke with him about my path to Buddhism. He encouraged me to continue attending the weekly meditations. I heeded his invitation, continued to attend the weekly meetings, and the Buddhist Association came to be the first space on Columbia's campus that I felt truly embraced and welcomed, in no small part due to Mohsen's encouragement.

From the first meeting on, I became increasingly involved in the Buddhist Association, of which I am currently the co-president. In the spring of 2023, I joined the board of the club, and my relationship with Mohsen deepened. During this time, we often spoke of his vision for the club and its potential to transform the very foundation of our campus community. In these conversations, he constantly emphasized the need for compassionate individuals who could connect with one another. He often mentioned that, as a Buddhist club, we must provide a space for all people, regardless of their religion, nationality, or any other differences they may have. In our club spaces, I saw these visions come to life. After every meditation, he would speak with club members and the teachers we had invited. He engaged everyone with a genuine curiosity about their life and their spiritual practice, inviting those around him into a space where they would be heard and actively listened to. I came to understand that Mohsen values every individual he comes into contact with as a human being worthy of his respect, time, and care. He understands that we all are interconnected, in both our happiness and in our suffering.

In that same spring semester of 2023, Mohsen and I worked closely with the Buddhist Council of New York, organizing a Vesak celebration, honoring the life of the Buddha. We met weekly, brainstorming the theme, the celebration program, and how to connect Columbia students to the broader Buddhist community in New York. His efforts for this event culminated in one of the most beautiful spiritual celebrations I have ever participated in. During his welcoming remarks, he expressed empathy for all innocent children suffering worldwide, including children in Palestine, Israel, Ukraine, Russia, Sudan, India, Tibet, Burma, and beyond. He encouraged participants to lead lives filled with love and compassion. His sentiment during this address is indicative of his core belief in the need to collectively come together as a global community with peace as the ultimate mission. Mohsen, at heart and in practice, is a peacemaker.

In the fall of 2024, once I had stepped into the role of co-president of the Buddhist Association, Mohsen continued to reach out to offer spiritual support and guidance for the club. Even amidst his busy schedule, he found time to speak with me about how to continue growing the club he so cherished and wished to see flourish. In a phone call about the club's upcoming semester, he reminded me to always advocate for Buddhist spaces on campus, as they represent one of the most valuable places to engage in meaningful conversations in an increasingly divided community. Mohsen understands just how impactful Buddhist practice and spirituality can be for our Columbia community, drawing us together when others attempt to draw us apart.

Whenever I run into Mohsen around campus, he always greets me by saying, "Hello, my brother." He immediately brings me into kinship with him, letting me know that he sees me as a part of his broader family. This is how he views all people. He is a humanizing force to all those who come into contact with him. At our weekly meditation on April 17th, we opened the space for members to share their experiences with Mohsen. Member upon member shared the light that Mohsen brought to their lives. Our community is distressed at his absence. I urge the court to please release our dear friend Mohsen Mahdawi and return him to his home and the community he has built. We would like to meditate alongside him again.

I declare that the above statements are all true and correct to the best of my knowledge and ability.

Sincerely,

Alejandro Menjivar
Columbia University Undergraduate Student and Co-President of the Columbia University
Buddhist Association

# EXHIBIT 1-E

**Michael Santi Keezing**

336 Peckville Road
Shelburne Falls, MA 01370
(929) 313-7023

April 18, 2025

To Whom It May Concern:

I am writing to voice my strong support for the request by Mohsen Mahdawi's
attorneys that he be released on bail immediately. Mohsen is a person of
exceptional character and dignity, with an outstanding reputation for integrity
and deep ties to multiple local communities. He is not a risk to society or a
flight risk—on the contrary, he is an asset to our society—and he has no reason
to leave his current jurisdiction. He has been accused of no crime and has
violated no condition of his residency. He should be released immediately.

I'll say a few words about myself and my relationship to and knowledge of
Mohsen. I am a writer and teacher on Buddhist and related themes, a Buddhist
practitioner who is also an American Jew, and for the past eight years (until my
recent decision to disrobe), a Buddhist monastic. After a long career as a
writer, editor, and college writing instructor (most recently at Amherst College
in Massachusetts), I lived, trained, and ordained as a monastic at Temple
Forest Monastery in Temple, New Hampshire. I then served for three years
(2020-2023) as a resident monk at a Theravada Buddhist temple in New York
City. In addition to my pastoral work in the temple community, I frequently led
meditation programs and gave talks around the city.

In this capacity, I was invited to lead meditation sessions for the Columbia
University Buddhist Association (CUBA), a large, active student organization of
which Mohsen was president. I led sessions co-facilitated by him three or four
times, enjoyed several extended personal conversations with him, and
interacted extensively with his peers and other teachers during visits with
CUBA each semester for three years. I have also researched Mohsen's current
situation extensively for a piece I am writing to support efforts to free him (I
publish on Buddhist themes, most recently in the Buddhist journal Tricycle
under the name Bhikkhu (monk) Santi); this has entailed surveying journalism
on Mohsen, speaking with his associates, and studying his public
appearances.

Based on my personal experience of Mohsen over time, my extensive network
of friendships with his peers and other teachers, and the clear public record of

his actions, ideas, and values, I assert my strong conviction that Mohsen is a
dedicated and gifted community leader devoted to Buddhist values of mutual
respect and understanding, social harmony, and peaceful social progress.
Mohsen is the opposite of caricatures that have been put forward of him as
some kind of troublemaker or antisemite. As opposed to a flight risk, he is the
kind of person who runs towards problems to try to help solve them through
mutual understanding and cooperation. As opposed to an antisemite, Mosen
put himself forward bravely and publicly to condemn antisemitic voices during
the Columbia campus protests against the war in Gaza. As opposed to a
divisive trouble-maker, he is a bridge-builder devoted to co-operative, win-win
solutions to our common problems, including the Israel/Palestine conflict (as a
recent New York Times article exhaustively demonstrates[1]).

Mohsen devoted a tremendous amount of time and effort to fostering the
Buddhist community at Columbia. In addition to my own visit to CUBA as a
Theravada monastic, he facilitated visits from teachers from diverse Buddhist
traditions and perspectives (in contrast to groups on many campuses that tend
to focus more narrowly). He spearheaded—as multiple friends and staff at
Columbia have attested to me—a large, successful, new annual celebration of
the Buddhist holiday Vesak at Columbia, for which he organized extensive
collaboration with external Buddhist organizations. He made it his personal
mission to expose his fellow students at Columbia to Buddhist ideas and
values, and to make CUBA "a welcoming home for all students seeking inner
growth and deeper connections."

These are not the activities of someone who is a risk to society or a flight risk.
They are the activities of someone dedicated to and deeply invested in his
community, and in values entirely supportive of—and indeed, essential to—a
democratic American society. I strongly support the release of Mohsen
Mahdawi.

I declare that the above statements are all true and correct to the best of my
knowledge and ability.

Sincerely,

Michael Keezing

Michael Santi Keezing

---

[1] https://www.nytimes.com/2025/04/16/nyregion/columbia-activist-mahdawi-ice-palestin
ian.html

# EXHIBIT 1-F



## Buddhist Association of the United States

2020 Route 301 • Carmel, NY 10512 – U.S.A.

### Letter of testimony on behalf of Mr. Mohsen Mahdawi

To Whom It May Concern,

I am writing this letter as testimony to the character and religious faith of Mohsen Mahdawi, the Columbia University student of Palestinian ethnicity who was detained by ICE officials this past week and stands at risk of deportation back to his place of origin, the West Bank of the Palestinian territories.

Before I continue with my testimony, let me say a few words about myself. I am an American Buddhist monk of Jewish ethnicity, born in 1944. I have been a member of the Theravada Buddhist monastic order for 52 years. I grew up in Brooklyn, New York, in a secular Jewish family. I obtained a BA in philosophy from Brooklyn College (1966) and a PhD in philosophy from Claremont Graduate University (1972). While in graduate school I encountered Buddhism both through reading and through friendship with a Vietnamese Buddhist monk studying at Claremont. After completing my doctorate, I traveled to Sri Lanka, where I was ordained as a novice monk in 1972 and took full ordination in 1973.

I am best known as a Buddhist scholar and translator of Buddhist texts from Pali (an ancient Indian language) into English. My translations of the Buddhist scriptures are widely known and considered authoritative by both scholars and lay Buddhists. I am also a strong advocate of social justice, humanitarian service, and human rights. While living in Sri Lanka, I became the president and editor of the Buddhist Publication Society (1984-2010).

After returning to the United States in 2002, I founded an organization, Buddhist Global Relief, which provides relief from chronic hunger, malnutrition, and poverty to communities in need around the world—from Mongolia and Cambodia to Haiti and Peru. I have been serving this organization as chairperson since its founding in 2008. In 2013, I was elected president of the Buddhist Association of the United States, which is based at Chuang Yen Monastery, a large monastic complex near Carmel, New York.

I have had only one personal meeting with Mr. Mahdawi, a Zoom conversation that we held probably in August 2024. The president of the New York Buddhist Association, Doyeon Park,

JA 75

brought us together. We arranged to meet over Zoom and we had a conversation that lasted about an hour or ninety minutes.

After he introduced himself, Mr. Mahdawi told me that he had encountered me through one of my books, *The Buddha's Teachings on Social and Communal Harmony*, which deeply resonated with him. Our conversation partly touched on the protests that had taken place on the Columbia University campus during the spring semester of 2024. Mr. Mahdawi was one of the leaders of the protest movement. During the spring, I watched live video coverage of the protests, and for the most part I could observe that the early campus protests were peaceful, orderly, and respectful. They brought together Muslim, Jewish, and other students in a spirit of harmony, mutual respect, and true fellowship—a shared commitment to peace and justice in the Middle East. The protests outside the university, in the nearby streets, conveyed a very different feeling, and I was troubled by some of the slogans being shouted.

The major exception to the peaceful nature of the campus protests was the occupation of Hamilton Hall by a small, rowdy, splinter group that broke away from the main protest movement. Both Mr. Mahdawi and I agreed in deploring this action, which we thought violated the original spirit of the protests and distracted from their aim. Mr. Mahdawi told me that he had opposed such tactics and felt disheartened when they took place.

From my discussion with Mr. Mahdawi, it was perfectly clear to me that his faith in Buddhism is deep and honest and that he takes the ethical principles of Buddhism as the guidelines to his life. He told me how he came to embrace Buddhism, an unusual move for a Palestinian. During his youth on the West Bank, he saw his uncle and best friend shot before his eyes by the Israeli security forces. The Israeli forces also executed several of his cousins. These events provoked in him both anger and inner grief, which persisted when he came to the U.S. He did not know how to handle these painful emotions, which he felt gnawing at the core of his soul. When, however, he encountered Buddhism, he found in the Buddha's teachings the means to control these emotions and channel them to constructive ends. He told me that Buddhism had utterly transformed his life.

The Buddha's ethical teachings are founded on the principle of non-violence, demanding non-injury by way of bodily action, speech, and thought. The first Buddhist precept requires refraining from injuring any living being—animals as well as humans—and Buddhist ethical values stress the centrality of love, compassion, patience, and generosity. During our discussion, I could see that Mr. Mahdawi took these precepts and values to heart. Through his practice of meditation, he told me, he learned to transmute anger into patience and hatred into forgiveness and love. Such experience aroused in him a strong desire to promote both justice and reconciliation among all those torn apart by long-standing enmity.

He told me that the motivation behind his involvement in the Columbia protests was not hatred but love: love for his own people, the Palestinians, but also love for the Jewish people, toward

whom he bore no ill will. He hoped that the violence and killing on both sides would stop so that a genuine reconciliation would occur. And he envisioned a future when Palestinians and Jews would be able to live together in peace.

In our discussion, he referred to an incident that he has also mentioned in recorded videos I have seen of him. During one of the protests, a protestor who was not a member of the core protest group shouted, "Down with the Jews!" (He actually used a profanity that I won't use here.) When he heard this, Mr. Mahdawi approached that person and told him that he should not say this, that he was undermining their cause. He stressed that his aim in leading the protests was to bring Palestinians and Jews together in a shared commitment to peace, not to pit one side against the other. He said that he saw Palestinian liberation and Jewish safety as closely intertwined, such that neither side could be truly free until both sides are free.

From my conversation with Mr. Mahdawi, and videos of him I have seen on YouTube, I am firmly convinced—beyond even the tiniest dust-mote of doubt—that he is a man of peace, high moral vision, and a firm commitment to the ethics of love, compassion, and forgiveness. I was shocked and deeply saddened to read about his arrest, especially in view of the circumstances under which it took place.  Far from being a danger to our country, I believe Mr. Mahdawi would be an extraordinary asset. As an American citizen, he could make immense contributions to the cause of peace and social harmony, bringing together hostile groups in a quest for mutual understanding. He is a person who, in my view, truly stands for our national credo, "with liberty and justice for all."

I sincerely hope that Mr. Mahdawi will be quickly released from detention, granted American citizenship, and permitted to graduate from Columbia University so he can enter the master's program in International Relations—a program into which, I believe, he was already accepted.

I declare that the above statements are all true and correct to the best of my knowledge.

Thank you for your attention to this letter.

Sincerely yours,

Ven. Bhikkhu Bodhi
President
Buddhist Association of the United States

# EXHIBIT 1-G

To all interested parties,

I first met Mohsen Mahdawi at a weekly meditation for the Columbia University Buddhist Association, of which I was president at the time. I was eager to find new leadership for the club, since it is rare to find the care, commitment, and attention required for consistent Buddhist practice on a college campus. It is very difficult, for most. Mohsen's immediate and direct sincerely, at first unnerving, slowly grew on me. As I continued to see him week after week, I became more assured of the future of our Buddhist community. When I graduated from Columbia I left the club in his safe hands, and since then everything I hear of it fills me with pride. But that too is due to Mohsen. In my final meditation before I graduated, he gave me a gift I will never forget, a book by the author who started me on my own Buddhist path, and many all-too-kind words of gratitude for my own leadership. He gave meaning to what I had done, and he continued to do so. And to so many, Mohsen is always willing to give advice and lend meaning to their struggles. It seems to me he has now found a greater purpose in speaking not only to his own community but the international community, trying to recognize the experience of others and be recognized himself. In this one can plainly see that peace is so strong an ideal in his heart he could see no great unsolvable conflict in the many perspectives to which he has borne witness. A country that could fear a man such as Mohsen must be weak—either in power or in spirit. I only hope he is stronger.

I declare that the above statements are all true and correct to the best of my knowledge and ability.

Sincerely,

Kavin Chada

# EXHIBIT 1-H

"Demand for Immediate Release of Mohsen Mahdawi and Other Unlawfully Detained Individuals"

\*\*April 18, 2025\*\*

We, the undersigned one hundred and thirty five Buddhist teachers, practitioners, and supporters of human rights, write with profound alarm regarding the unjust detention of Mohsen Mahdawi, a Columbia University student, permanent U.S. resident for ten years, and former president of the Columbia University Buddhist Association.

On April 14, 2025, Mohsen Mahdawi arrived at the U.S. Citizenship and Immigration Services office in Vermont for what should have been a culminating moment in his decade-long journey toward American citizenship. Instead, he was handcuffed and taken away by ICE agents who refused to disclose his destination or legal status—a traumatic violation of dignity that no human being should endure.

The circumstances of Mohsen's detention reveal a disturbing pattern of human rights abuses:

1. \*\*Violation of Due Process\*\*: As a legal permanent resident since 2015 with no criminal charges, Mohsen's detention at his own citizenship interview represents an extraordinary breach of legal norms and basic human dignity.

2. \*\*Targeted Political Repression\*\*: This detention appears to be direct retaliation for Mohsen's constitutionally protected speech advocating for Palestinian human rights—a dangerous precedent that threatens the foundational freedoms upon which our society depends.

3. \*\*Silencing a Voice for Peace\*\*: Mohsen has demonstrated consistent commitment to Buddhist principles of nonviolence and compassion. He actively built bridges between communities and directly confronted antisemitism, once leading students to remove a heckler who shouted antisemitic threats at a rally while thanking "Jewish brothers and sisters who stand with us."

4. \*\*Bipartisan Condemnation\*\*: Vermont's congressional delegation—Senator Bernie Sanders, Senator Peter Welch, and Representative Becca Balint—have unequivocally denounced this action as "immoral, inhumane and illegal," demanding Mohsen's immediate release.

**JA 81**

Mohsen's case is not isolated but part of an escalating pattern of detentions targeting those who exercise their right to free expression. This includes Mahmoud Khalil and Rumeysa Öztürk, similarly detained after speaking out, and Kilmer Abrego Garcia, who remains imprisoned in El Salvador despite Supreme Court orders mandating his return to the United States.

These actions reveal a systematic assault on human rights that should concern every person of conscience, regardless of political affiliation or religious belief. When a government targets individuals based on their identity and peaceful advocacy, the foundation of democratic society itself is threatened.

As Buddhists, we recognize the interconnectedness of all beings. When one person's rights are violated, all of humanity is diminished. The freedom to speak truth without fear of persecution is not merely a legal principle—it is essential to human dignity and collective liberation.

We therefore make these urgent demands:

1. The immediate release of Mohsen Mahdawi and all others similarly detained for protected speech
2. Full transparency regarding the legal justification for these detentions
3. Concrete assurances that due process rights will be respected in all immigration proceedings
4. An immediate end to the targeting of activists based on their identity or protected expression

We stand in unwavering solidarity with those whose voices have been silenced and whose freedom has been unjustly taken. Their suffering is our suffering. Their freedom is our freedom. Their humanity is our shared humanity.

We call upon all who value compassion, justice, and human dignity to join us in speaking out. The time for silence has passed. The moment for moral courage has arrived.

In steadfast commitment to justice and human dignity,

Sincerely,
Rev. Doshin Mako Voelkel
Rev. Ben Connelly, Minnesota Zen Meditation Center
Rev. Jisan Tova Green, San Francisco Zen Center

Rev. Zenshin Greg Fain, Berkeley Zen Center

Rev. Kakushin Jill Kaplan

Sallie Jiko Tisdale, Dharma Rain Zen Center of Portland

Judy Roitman (Zen Master Bon Hae)

Rev. Eido Frances Carney

Rev. Susan Myoyu Andersen, Great Plains Zen Center

Rev. Jisho Warner

Rev. Joan Jiko Halifax

Rev. Chris Fortin , Dharma Heart Zen, Everyday Zen Foundation

Rev. Tenku Ruff, Beacon Zen Temple

Rev. Keido San'un Phillips, Empty Sky Sangha

Rev. Misha Shungen Merrill, Zen Heart Sangha

Mary Koopman, Every Day Zen

Rev. Busshō Lahn, Flying Cloud Zen

Rev Daigan Gaither

Rev. Nenzen Pamela Brown, Los Gatos, California

Rev. Domyo Burk, Bright Way Zen

Rev.  Shoshin Cynthia Ziegler, Sellwood Soto Zen, Oregon

Rev. M. Denis Lahey, Hartford Street Zen Center

Dan Myoen Birnbaum,

Rev. Renshin Bunce, Beginner's Mind Zen of Eureka

Rev. Eugene Bush Santa Cruz and Arcata Zen Centers

Rev. Shosan Austin

Rev. Eiko Joshin Atkinson

Rev. Nomon Tim Burnett, Red Cedar Zen Community, Bellingham, WA

Rev, Taigen Dan Leighton, Ancient Dragon Zen Gate, Chicago

Rev. Hakusen Gendo Field, Upper Valley Zen, VT

Rev. Hobu Beata Chapman, NoWalls Zen, Ashland, OR

Rev. Peg Syverson, Appamada, Austin, TX

Rev Inryū Poncé-Barger, , Washington DC

Rev. Myozen Joan Amaral, Zen Center North Shore, MA

Rev. Shinchi Linda Galijan, Berkeley Zen Center, CA

Rev. Myo-O Marilyn Habermas-Scher, Clouds in Water Zen Center, MN

Rev. Hogen Bays, Great Vow Zen Monastery, OR

Rev. Jan Chozen Bays, Great Vow Zen Monastery, OR

Rev. Shinryu Thomson, , NY

Julie Seido Nelson, Greater Boston Zen Center, MAI

Rev. Tenzen David ZimmermanRev. Neti Mushin Parekh

Rebecca Li

Abby Mushin Terris, Sangha Jewel Zen Center, OR

Rev. Cynthia Ryotan Kear, Great Spirit Sangha, San Francisco

Rev. Sara Hunsaker, Monterey Bay Zen Center, Monterey/Carmel, CA

Rev. Rev. Ryushin Andrea Thach, Berkeley Zen Center

Rev. Rengetsu Edie Brown, British Columbia, Canada

Rev. Mary Ann Sacksteder, Everyday Zen, Dharma Heart Zen

Rev. Sunyana Graef, Vermont Zen Center, Shelburne, VT

Rev. Taishin Michael Augustin

Rev. Sanriki Jaramillo, Montaña de Silencio, Medellín, Colombia.

Rev. Diane Eshin Rizzetto, Oakland, CA

Rev. Melissa Myōzen Blacker, Boundless Way Zen Temple, Worcester, MA

Rev. Geoffrey Shugen Arnold, Zen Mountain Monastery, Mt. Tremper, NY

Rev.Pat Enkyo O'Hara, , NYC

Joel Barma, Appamada, Austin TX

Rev.Reirin Gumbel

jacob seiryo gendelman, warwick zendo/Yokoji Zen Mountain Center

Rev. Genjo Marinello, abbot of Chobo-Ji Zen Center, Seattle, WA

Rev. Kenshin Catherine Cascade, Bird Haven Zendo, Eugene, OR

Rev. Rinzan Pechovnik, abbot of No-Rank Zen Temple, Portland, OR

Patricia Wolff, Monterey Bay Zen Center, Monterey, California

Rev. Michael Shoryu Fieleke, Living Vow Zen, Newton, MA

Rev. Kanzan Bruce Fortin, Occidental Laguna Zen Sangha, Occidental Ca.

Rev. Shoho Michael Newhall, Jikoji Zen Center, Los Gatos, CA

Rev. Patrick Kennyo Dunn, Mud Lotus Sangha, Columbus, OH

Rev. Daigaku RumméAlan Sanhyō Richardson, Boundless Way Zen Temple, Worcester, MA

Debra Seido Martin, Zen West, Eugene, OR

RRev. Tom Dharma-Joy Reichert, Zen Center of Los Angeles, Los Angeles, CA

Rev. Karen DeCotis, San Antonio Zen Center

Rev. Kidō Ian Case, Brooklyn Zen Center

Rev Joan Hogetsu Hoeberichts, Heart Circle Zen, Tiburon, CA

Ji Haeng Zen Master Kwan Um School of Zen Zen Center of Las Vegas

Marshall White, JDPSN, Kwan Um School of Zen, Berkeley CA

Michael Kieran, Honolulu, HI

Rev. Mark Morris, Heart Circle Zen, Hackensack, NJ

Bernie Rhie, Williamstown Zen Group, Williamstown, MA

Matthew Keeler JDPSN, Kwan Um School of Zen, New York, NY

Ji Hyang Padma, Buddhist Chaplain, Boulder, CO

Rev. Zenki Mary Mocine, Founding Teacher Vallejo Zen Center (for identification only, not on behalf of Center)

Rev. Dae Jaang James Casebolt, Belmont Zen Center, St. Clairsville, OH

Kim Mosley, Appamada, Austin, TX

Shin'yu Vitells, Dharma Rain Zen Center, Portland OR

Rev. Jisho Siebert, Ames, IA

Charlie Korin Pokorny, Brooklyn Zen Center, NY

Rev. Kodo Conlin, Santa Cruz, CA

Rev. Josho Pat Phelan

Reverend Tanya Wiser, San Carlos CA

Rev. Peter van der Sterre. Oak Street Sanctuary, San Francisco and Boise ID.

Rev. Myozan Kodo Kilroy.

Zen Master Hye Mun

Joseph Bobrow

Rev. Dawn Neal, Santa Cruz CA

Rev. Kirsten Rudestam, White Salmon WA

Rev. Dr. Daijaku Kinst

Jūken Zach Fehst, Clouds in Water Zen Center, St. Paul, MN

Rev. Shinshu Roberts

Rev. Onryu Kennedy

Rev. Hogetsu Laurie Belzer, Ancient Dragon Zen Gate, Chicago, IL

Sensei Eihei Nanfu

Rev. Keidō Thotland

Rev. Rakugo Castaldo, Soji Zen Center, Lansdowne PA

Rev. Zenku Smyers, Mission Mountain Zen Center, Dayton MT

Rev. Gensan Kristopher Thomson, Berkeley Zen Center in

Rev. Mary Grace Orr

Rev. Teshin Sweger, North Carolina Zen Center

Rev Gerry Shishin Wick, Berthoud, CO

Roshi Eve Marko, Zen Peacemaker Order

Rev Mei Elliott, Santa Cruz CA

Daya Goldschlag, Stonewillow Zendo, Spokane, WA

Rev. Geido Ann Grossman, Delray Beach, Florida

Rev Norman Fischer

Rev. Liz Powell, Castle Pines, CO

Jason Aylsworth, Zen Center North Shore, MA

Rev. Hoky Enso Chuck Hutchcraft

Rev. Shelley Gault, Santa Barbara, California

Rev. Ying Chen, Los Altos, California

Barbara Rhodes Kwan Um School of Zon

Laurie Winnette, Appamada, Austin, Texas

Dr. Will Holcomb, Heartland Zen, St. Louis, Missouri

Rafe Jnan Martin

Kodo Conover, Zen Teacher/Priest,Heart of Wisdom Zen Temple, Portland , OR

Rev. Jundo Cohen, Treeleaf Zendo
Rev. James Ishmael Ford, Empty Moon Zen
 Jane Steinberg, LZTA,
Rev. Mark Kizan Shogen Bloodgood, San Luis Obospo, CA
Rev. Jodo Clusin, Prairie Mountain Zen Center, Longmont, CO
Roshi Deirdre Eisho Peterson, Red Rocks Zen Circle, Sedona, AZ
Roshi Anne Seisen Saunders
Roshi D Allen, Carmel, CA
Larry Trussell, Heart of Wisdom Zen Temple, Portland OR
Hannah Sullivan, Red Cedar Zen Community, Bellingham WA
Rev. Kusa Ivan Mayerhofer, Cornelius, NC
Rev. Sessei Meg Levie
Myogen Katherine Stark

All Zen Center and Temple names listed are for identification only, not on behalf of these
institutions.

# EXHIBIT 1-I

**To Whom It May Concern,**

I am writing this letter in support of Mr. Mohsen Mahdawi. I've had the privilege of knowing Mohsen personally and witnessing the depth of his commitment to Buddhist practice, community-building, and service during our time together at Columbia University.

We first connected through our shared interest in meditation and contemplative practice. From the beginning, Mohsen struck me as someone with a calm, intentional presence—deeply curious and sincere in his spiritual path. What has always stood out is not only his dedication to his own practice, but his ongoing effort to create inclusive, accessible spaces for others to engage with Buddhism and mindfulness.

As president of the Columbia University Buddhist Association (CUBA), Mohsen took on a leadership role with quiet strength and vision. He organized regular meditation gatherings, initiated thoughtful dialogue across traditions, and played a major role in bringing our community together. One event I particularly remember is the 2023 Vesak celebration, which he co-organized in collaboration with the Buddhist Council of New York. It was a moving and joyful gathering that reflected Mohsen's values of interdependence, inclusivity, and deep spiritual care.

Beyond his public contributions, I've gotten to know Mohsen on a personal level. He has stayed at my home multiple times, and I've come to know him as someone of integrity, humility, and kindness. He carries himself with gentleness and thoughtfulness, always offering support to others without seeking recognition in return. His presence in our community has made a genuine and lasting impact.

I affirm that the above is true to the best of my knowledge.

Warmly,
**Kevin Gunaratna**

**Class of 2024 Columbia University**

**+1 206 992 5931**

**JA 88**

# EXHIBIT 1-J

April 18, 2025

To Whom It May Concern:

**There is no greater honor I can think of in this particular historical moment than writing this affidavit in support of my colleague in peace-making, Mohsen Mahwadi.**

I am Israeli-American. I met Mohsen two times, Jan 29th and March 12th 2025, at Zoom/in-person meetings with Mohsen and a group of Israelis, from Columbia University and otherwise. I was attending the meetings on Zoom. The aim of the meetings was to meet Mohsen, get to know his detailed plan for a two state solution with an eventual aim for a solution in the form of federation. The meetings were in service of Mohsen connecting with Israelis, for us to get to know his detailed plan for a diplomatic and just solution in Israel/Palestine, ask questions (including many challenging questions) and engage in a meaningful conversation. The aim was (and for me is) a workplan - through joint struggle of **both** Palestinians and Israelis. I so deeply and strongly believe in the way Mohsen was advocating for peace and justice and I'm proud to have known him before he was detained.

At such a painful and divisive time for Palestinians and Israelis, I was incredibly impressed by Mohsen's wish to connect with us, plan with us and organize with us. I shared with my partner many times that I was deeply and profoundly struck by our meetings together. She can attest to how many times I have repeated this to her, due to my excitement at knowing him and his politics. I left both meetings **elated**, possibly the most joyful and hopeful I have been since the massacre of October 7th 2023. I had real hope - hope for a future for both Palestinians and Israelis in true safety, equality and freedom. I had hope that we could find real partners in peace that resist the Israeli state **but see the humanity in us and in everyone in the land.** I had hopes that through his leadership, our coalition could expand.

As a practicing Buddhist (Kadampa Meditation Center NYC), I couldn't help but notice that everything about Mohsen's approach was emanating the good qualities I associate with my practice: compassion, incredible patience, wisdom and kindness. I didn't know Mohen was Buddhist until his unjust and unlawful arrest - but I can say with great confidence that I recognized the qualities of a true Buddhist practitioner in his politics. Everything about his politics and his manner of speaking was always rooted in love, in seeing each other's humanity. He's a very patient listener and his style of communication is incredibly gentle.

Mohsen was trying to forge this new path that I was so desperately seeking. A true path for justice and peace. I believe Mohsen's arrest endangers us all, it is negative for Israelis as well as Palestinians when moderate and pragmatic voices such as him are silenced. I sincerely hope Mohsen is released. His presence in our community is so profoundly necessary right now.

I declare that the above statements are all true and correct to the best of my ability.

Nadav Nazarathy

**JA 90**

# EXHIBIT 1-K

I, Rose Clubok, depose and state as follows:

I am an individual of sound mind and legal age. I make this declaration based on my personal knowledge and relationship with Mohsen Mahdawi, an undergraduate student at Columbia University. I am a current junior at Barnard College of Columbia University studying History. I am also in the process of getting a second B.A. from the Jewish Theological Seminary in Jewish Thought. I am a member of Hillel on campus and regularly attend the Conservative minyan. I have worked as a Jewish educator and programming coordinator for Congregation Agudas Achim in Bexley, Ohio and Kehilat Hadar/Shaare Tzedek on the Upper West Side. In addition to teaching classes on Judaic studies on Shabbat mornings for the past eight years, I have individually tutored Bar and Bat Mitzvah students at Agudas Achim and at the Jewish Community Project in New York City.

I met Mohsen last semester. I was immediately struck by his empathy and serenity. He was articulate in his expression and evidently extremely committed to his principles of humanism and nonviolence. We discussed his activism and his vision for the world. He emphasized the necessity of Jewish safety in attaining Palestinian safety. We also talked about the Zionist kibbutznik summer camp I grew up attending and will return to this summer in a leadership position. We discussed how this camp could teach us about the kind of world he wants to build. Talking with him, I felt entirely safe and respected as a student with ties to the Jewish and Zionist communities. Mohsen has eased tensions on campus, not increased them. For his sake and the sake of the Columbia community, Mohsen needs to be allowed to remain in the United States and return to campus. I urge the relevant authorities to release him and allow him to return to his studies.

I submit this declaration in good faith and in support of Mohsen Madawi, affirming his positive addition to campus life, his unwavering principles of nonviolence and care for humanity, and his thoughtful and calm presence.

I affirm that the statements made in this declaration are true and correct to the best of my knowledge and belief.

Rose Clubok

**JA 92**

# EXHIBIT 1-L

April 19th, 2025

My name is Jacob Solomon. I am currently a graduate student at columbia and consider myself a close friend of Mohsen Mahdawi's. I am writing this affidavit to attest to his good character. I'd like to tell you about my background to better communicate the significance of this friendship to me as well as what I have to say about Mohsen's character.

I attended a small Jewish day school from nursery to 8th grade. Most of my classmates and all of my Hebrew teachers were Israeli. From a young age we learned about the terrifying ways that Jews were tortured and killed in 17th century Ukraine and systematically exterminated in Nazi Germany, among many other historical traumas of the Jewish people. We inherited the deep fear resulting from these dark periods in our history. We learned about Israel from the Jewish Israeli perspective, centered around the idea of finally being safe, and the fear and pain when this perception of safety was ruptured. We inherited the secondhand trauma of bomb shelters, stabbings, bus bombings, and the experience of living in fear of a neighbor you believe wants to kill you for being a Jew.

In college I took a course taught by an Israeli professor that exposed me to Israel from the Palestinian perspective. I learned of the violent massacres of Palestinian civilians by Israel's early paramilitary groups, the ethnic cleansing plainly documented in the orders of these same groups, and the increasingly harsh and unjust policies that Palestinians are subjected to by Israel's government. This learning deepened my empathy for Palestinians but, as is the case for most Jews who inherited these generational traumas, the deep fear of a people I believed broadly supported violence towards Jews persisted.

I met Mohsen during the second year of my PhD at Columbia, when my roommate invited him over for tea. His warmth, openness and genuine kindness made me like him immediately, but when he shared that he is Palestinian and grew up in the West Bank this deeply rooted fear seized me. My heart raced like it was trying to escape my chest; I was fearful of what he might do if he learned I was Jewish. Still, his warmth and geniality compelled me continue hanging out with him. After hanging out with Mohsen a few more times, he called me and asked if I wanted to travel to Puerto Rico with him to take sailing courses. I was still fearful of what he might do if he learned I was Jewish, but my gut led me to accept his offer and go on this trip with him. On the first day of our trip I accidentally divulged to him that I was Jewish, which led to a friendly conversation about me being nervous to share this with him. As it turned out, with my classic Jewish phenotypes and a name like Jacob Solomon, my Jewish identity was not the well kept secret that I thought it was. Mohsen then shared with me his journey from growing up afraid of Jews to becoming friends with many Jews when he immigrated to the US, learning that people are not the enemy, our real enemies are ignorance, isolation, and fear.

Mohsen and I became very close friends on that trip and in the three years that have followed. I have seen that the warmth, openness and kindness he gives off in a first impression is not an act but is genuinely him to the core. Mohsen's wisdom and genuine desire to listen to and understand others have helped me navigate some of the hardest challenges of my life. Beyond

this, our friendship has been deeply transformative for me. Where once I held ignorance, isolation and fear towards Palestinians I now feel connection and profound empathy, as well as an imperative to support this positive transformation for others and help build a better future for Palestinians and Israelis.

Outside of our friendship, I have witnessed Mohsen stand up for Jews multiple times in Columbia's community. As a leader of the pro-Palestinian protest movement he worked to prevent individuals from sharing antisemitic statements and imagery by putting into place a rule that signs and chants needed to be approved before hand. At a large demonstration in fall of 2023, when an individual shouted "fuck the Jews" and "death to Jews" Mohsen grabbed a megaphone and loudly opposed these statements, saying "shame on the person who called 'death to Jews'". Mohsen then spoke to the crowd about "our Jewish brothers and sisters", affirming that Jews are not enemies of the pro-Palestinian movement and helping to make the protest movement a safe and welcoming place for Jews. After this incident Mohsen told top Columbia administrators that anti-Semitic incidents could be avoided by restricting access to these demonstrations to Columbia affiliates, a precaution which was implemented by the school and successfully reduced the frequency of anti-Semitic expressions from on-campus protests. Mohsen's commitment to dialogue with Israelis and pro-israel individuals led to a rift between him and some less open-minded students in the movement which ultimately led to him separating from the movement in spring of 2024.

The lie being told about Mohsen now, that his work provokes anti-Semitic sentiment and undermines efforts to bring peace to the Middle East is the complete opposite of the truth. For the entirety of the time that I've known Mohsen he has been completely committed to bringing about peace and justice by building human connection and understanding across the lines that unnecessarily divide us. I personally feel much safer as a Jew on Columbia's campus because of Mohsen, and can attest that his leadership in Columbia's protest movement has done more to reduce anti-semitism than any other individual on our campus in the four years I have studied at Columbia. It is my view that Mohsen's detention by the state and any attempt to deport him is completely unjust, and anyone with any capacity to influence the situation has a moral imperative to work towards his freedom and safety.

I declare that the above statements are all true and correct to the best of my knowledge and ability.

- Jacob Solomon

# EXHIBIT 1-L

April 17, 2025

To Whom It May Concern:

My name is Jack Holmgren. I am a U.S. citizen and a friend of Mohsen Mahdawi. I write this
letter to you now so that you may know more about Mohsen. I write so that you may see him as
he truly is—compassionate, graceful, and inviting. Mohsen is, if anything at all, an ally of peace
and love.

I first met Mohsen at Columbia University in the fall of 2022. We enrolled in the same
philosophy class, studying morality and ethics. By happenstance, we joined the same review
session, meeting weekly in a small group.

It was then that I learned more about Mohsen. Occasionally, as we walked together afterward, he
would share his past. His eyes belied his always-strong, unshakable confidence. There lay an
unfathomable pain—the pain of a young boy, now a man, who sees in front of him still the death
of a childhood friend. I imagine, too, that the pain of a bullet piercing Mohsen's leg must feel as
fresh as it did then.

Mohsen relives those memories. They will never leave him. Yet, he responds with forgiveness
and love.

On one particular evening, Mohsen invited me to the Columbia University Buddhist
Association's weekly meditation, which he led as President. In a small, carpeted crypt below St.
Paul's Chapel, some 20 to 30 students gathered. Each came for a different reason. Together, we
found meaning. From that day forward, I would attend each Thursday night. I would descend the
swirling staircase and embrace Mohsen. I would call him a brother. He would welcome me the
same. Two men from worlds apart, united by a love of life and a compassionate heart. Our
friendship has since grown deep. I am surely a better man because of it.

Mohsen began one weekly meeting reflecting on his own relationship with meditation: it grounds
him and gives him solace. It heals his heart. It offers hope—an inextinguishable hope. I am sure
he feels that hope even now.

Once, Mohsen shared a dream with me. He told me how he planned to bring the leaders of all the
great faiths of the world together. He envisioned a summit for world peace right on campus. If it
were any other person, I would have laughed. But Mohsen is a man with a vision. I paused,
looked toward the statue of the Alma Mater, and thought, "Maybe, just maybe *he* can." I saw, in
one quick second, the Dalai Lama, the Pope, and many others united on those steps, hand in
hand. What a beautiful sight it would be. What a beautiful step toward peace.

This is the kind of man Mohsen is. Through him, I shared meals with Palestinian and Israeli students alike. Another time, Mohsen prepared Palestinian dishes for a close friend of his—a Rabbi. They exchanged stories from their lives as we ate together, not apart. I have heard authentic dialogue and seen genuine understanding. Nowhere else in the world have I found this.

Of all the people I have had the pleasure of meeting, no one else inspires me so deeply. No one else commands so much of my admiration and my respect. No one else is as worthy of calling this land their home. Not I, nor anyone. In his absence, I miss him greatly. I am sure many others miss him just as much.

However Mohsen chooses to spend his life, I am certain it will be in pursuit of peace.

Please, give him the chance.

I declare that the above statements are all true and correct to the best of my ability.

Sincerely,
Jack Holmgren

# EXHIBIT 1-N

April 18, 2025
Letter of Support for Mr. Mohsen Mahdawi

To Whom It May Concern,

I write to provide this affidavit of support for Mr. Mohsen Mahdawi, who I consider to be a part
of my solidarity circle. As an Israeli citizen and a lawful permanent resident of the USA, I am
deeply concerned about the situation on the ground back home (mine and Mohsen's home) as
well as here, where both of us established our homes as well. As such, I have been spending any
moment I have, beyond my research work, to build coalitions with like-minded people and
together use our knowledge and creativity to promote non-violent alternatives to resolving the
conflict and ensuring safety, freedom, and equality for the Israelis and the Palestinians back
home. It is in this context that I met Mohsen, and we just began what I am hoping will be a
long-term collaboration and friendship.

On our Zoom call, which took place on March 10th 2025, very early on it was clear that we share
the basic values and principles that guide us in our solidarity work - we both believed that all the
people who live in Israel/Palestine are there to stay and will eventually enjoy the same safety,
rights, and freedoms. Mohsen specifically shared that the attention that Columbia University is
getting makes it an ideal platform to spread a call for a non-violent sustainable plan, which is
drafted jointly by Palestinians and Israelis. We discussed some of the parameters of such a plan,
and they were all in line with recognizing the shared humanity of all, acknowledging the traumas
that Palestinians and Israelis have been accumulating and ensuring a system that would serve
everyone. Sadly, Mohsen's detainment has stopped our progress and I look forward to resuming
our discussions soon.

As an academic myself, I believe in dialogue, and I believe that campus communities are capable
and should be encouraged to hold discussions about any topic, especially those that are difficult
to handle in the general public sphere. Mohsen and I discussed productive ways to foster such
spaces, and I was looking forward to inviting him to my campus. He was ready and more than
capable to listen emphatically, to think creatively, and to incorporate new knowledge into his
vision. Any day that Mohsen is not allowed to be part of the conversation is a loss to us all.


I declare that the above statements are all true and correct to the best of my knowledge.

Sincerely,

Michal Fux, Ph.D.

**JA 100**

# EXHIBIT 1-O

April 18, 2025

The Honorable Geoffrey Crawford
The United States District Court for the District of Vermont

Dear Judge Crawford,

My name is Josh Drill. I'm an Israeli-American studying for my Master of Science in Strategic Communications at Columbia University because I believe it is with our words that we make peace. I carry my own trauma from the Israeli/Palestinian conflict, just as Mohsen does. Like me, he chooses to work toward reconciliation and peace.

I am a peacebuilder and since December 2024, a group of Israeli and Palestinian students at Columbia, including Mohsen, have met every single week. We share personal traumas, we listen deeply, and we plan our collective peaceful future together.

What's so clear about him is his empathy, his morality, and his deep humanity. He advocates for peace between our peoples, so that we can end the bloodshed. We spoke about reconciling history through empathy and recognizing mutual pain and trauma. This month, we had planned to bring Israeli and Palestinian professors at Columbia into our growing coalition seeking to create a peaceful and just future.

To deport someone like Mohsen sends a chilling message: that peacebuilders are not welcome and that reconciliation is dangerous. It derails the very path we so desperately need. It actively works to stop Israelis and Palestinians from meeting and reconciling. Nonetheless, we will continue our holy work. We will continue holding the torch of hope at this dark time, committed to reconciliation and peace. That is our responsibility.

Please uphold justice. Allow Mohsen to continue his important peace work on Columbia University's campus.

Sincerely,

*Josh Drill*

Josh Drill

**JA 102**

# EXHIBIT 1-P

April 17, 2025

To Whom It May Concern,

I am writing this affidavit in support of my dear friend and colleague, Mohsen Mahdawi. I am an undergraduate student at the Jewish Theological Seminary and Barnard, the women's college of Columbia University, and a student leader in the Jewish community at Columbia and Barnard.

I first met Mohsen on a Zoom call last summer. We were meeting in the context of a group of Columbia students, a combination of Israelis, Palestinians, and me, a Jewish American, who were looking to bring our campus communities together and create a culture of dialogue and acceptance in our place of learning.

Once the school year began, I finally met Mohsen in person during our weekly group meetings, but we soon came to find times to meet outside of our regular work meetings. Indeed, Mohsen insisted that the members of the group find times to meet outside of the time we delegated to work in order to build trust between us and contribute to our effectiveness regarding our efforts to mitigate polarization on campus.

It was challenging to find extra time in which every group member was free. Because I am an observant Jew, I cannot work on the Sabbath or on Jewish holidays. After listening attentively to my explanation of these many holidays and why they may present scheduling challenges, Mohsen was extremely careful to only choose times in which I would be able to participate in the group bonding time. He even went so far as to ensure kosher food options would be available anytime we had a meal together, a significantly thoughtful gesture that he made without my having to request it. It was clear he cared about my commitment to my Jewish values.

An additional example of Mohsen's displayed care toward my Jewish religious affiliation are the dozens of Jewish phrases that Mohsen learned, remembered, and used appropriately in order to represent his excitement and commitment to engage with both me and his dozens of other Jewish friends. Mohsen's clear and evident respect for me as an individual and as a Jew caused me to feel safe and protected in his presence.

Mohsen has a unique gift that allows him to imagine a future of coexistence, collaboration, pluralism, and peace. He is on the path to be a great leader of our time; one who advocates for and shares his vision of a future where negotiation will replace war and violence.

I strongly urge the court to release Mohsen Mahdawi and return him back to his classes, friends, and role as a peacemaker in our community. I declare that the above statements are all true and correct to the best of my ability.

Sincerely,

Rochelle Berman

# EXHIBIT 1-Q

## COLUMBIA UNIVERSITY
### IN THE CITY OF NEW YORK

DEPARTMENT OF ANTHROPOLOGY

Friday, April 18, 2025

Dear Honorable Immigration Judge:

I, Naor Haim Ben-Yehoyada, depose and state as follows:

I am an individual of sound mind and legal age. I make this affidavit based on my personal knowledge and relationship with Mohsen Mahdawi, a student in the School of General Studies at Columbia University, where I teach in the Anthropology department.

This year, I have had the privilege of meeting Mohsen Mahdawi and speaking with him at length several times. We met early this fall (September 2024), close to the beginning of the academic year, after an American Jewish colleague of mine suggested that I speak with Mohsen to discuss his ideas for creating bridges of trust between Israeli Jews and Palestinians on campus.

In our first meeting, I learned of Mohsen's childhood in a refugee camp in the West Bank and of his coming to the United States to pursue his studies. Mohsen shared with me his deep commitment to establishing trust and bringing about what he called "a new reality of love and peace." Our first conversation reminded me it was possible to hope that Israelis and Palestinians would together pave a path toward transforming our shared society and bring about a just and peaceful future.

Our second meeting, several weeks later (it was still late October), impressed in me even more how crucial Mohsen's leadership and voice were. We discussed his hopes for organizing with his Israeli and American Jewish friends on campus a way to reach more Palestinians and Israelis who have been demoralized. Mohsen's emphasis on shared nonviolent protest and cross-community building seemed both much more mature and more clairvoyant than most of what was circulating.

As anyone who has met him would attest, Mohsen is a warm, attentive, and compassionate. I cannot think of anyone more who is more sincerely striving for reconciliation and peace than Mohsen Mahdawi. Deporting him will not only put him in immediate danger. It will constitute an attack on our collective future and the possibility of liberation for all, Palestinians and Israelis.

I declare that the above statement are all true and correct to the best of my ability.

Sincerely,

Naor Ben-Yehoyada

Department of Anthropology
Columbia University
462 Schermerhorn Ext.
nhb2115@columbia.edu
+1 (212) 854-8936

1200 Amsterdam Avenue    Schermerhorn Extension, Mail Code 5523    New York, NY 10027-7003
212-854-4552    Fax 212-854-7347    http://anthropology.columbia.edu//

# EXHIBIT 1-S



# Buddhist Council of New York

BuddhistCouncilNY.org | buddhistcouncilny@gmail.com

April 16, 2025

To Whom It May Concern,

On behalf of the Buddhist Council of New York (BCNY), we are writing to express our strong support for Mr. Mohsen Mahdawi, who served as President of the Columbia University Buddhist Association (CUBA) from 2022 to 2023.

Founded in 1985, the Buddhist Council of New York is an association of more than 30 Buddhist temples and sanghas committed to fostering unity, dialogue, and collaboration among diverse Buddhist communities throughout New York City. Our mission is to uphold the Buddha's teachings while promoting peace, compassion, and justice in society.

During his time at Columbia, Mr. Mahdawi played a key role in organizing Vesak 2023—a major joint celebration hosted by BCNY and CUBA to commemorate the Buddha's birth, enlightenment, and passing. His behind-the-scenes dedication and leadership were integral to the success of the event and reflected his deep commitment to inclusivity, interfaith collaboration, and meaningful spiritual engagement.

We are deeply concerned that Mr. Mahdawi is now facing serious threats to his immigration status due to unfounded accusations—including allegations of anti-Semitism—that are entirely inconsistent with the character and values we have come to know. Throughout our association with him, Mr. Mahdawi has consistently demonstrated a commitment to peace, dignity, and nonviolence. At no time has he endorsed or engaged in hate speech or harmful conduct of any kind.

While BCNY members were not present at last year's campus protests, we trust the reporting by 60 Minutes, which noted that Mr. Mahdawi publicly denounced inflammatory anti-Jewish and anti-Israel remarks. This is fully in line with the principled, peace-oriented individual we have come to know—someone guided by integrity, conscience, and compassion.

The Buddhist Council of New York stands in firm support of Mr. Mohsen Mahdawi and affirms his steadfast dedication to nonviolence, inclusion, and respectful dialogue. His leadership exemplifies the values of mutual understanding, coexistence, and a commitment to the greater good. We hope this letter serves as a clear testament to his character and his ongoing efforts to help build a more just and harmonious society.

Should you require any further information, please feel free to contact us directly.

With sincere respect,
Board Members
Buddhist Council of New York

# EXHIBIT 1-T

April 17, 2025

To whom it may concern,

My name is Talia Levin. I am a U.S. citizen, and I am a former classmate of Mohsen Mahdawi. I am writing this affidavit to demonstrate Mohsen's character to the courts. From my letter, I hope it is clear what a thoughtful, dedicated, and considerate person Mohsen is.

I met Mohsen during the Spring semester of 2023 when we were both inducted into a senior honor society at Columbia University. From our first interaction I could tell Mohsen was dedicated to really getting to know others. As I felt overwhelmed by all the new people we were meeting, he sought out many of his fellow inductees individually to get to know us. As we spoke one-on-one I instantly felt calmer. He is the type of person who does not shy away from asking deep questions to truly get to know someone. It was impossible to ignore how deeply Mohsen thought about his role on campus and in the world as we spoke and I realized how much I could learn from him.

From the onset, it was clear that Mohsen cares deeply about the experiences of others. When he told me he studied philosophy, I mentioned that some of my friends had struggled to register for the Introduction to Philosophy course due to class capacity. He immediately thanked me for sharing that information and said he would repeat this concern to the head of the department, one of his many close connections on campus. I did not hear any more complaints about registering for that course after we spoke.

Once, at a meeting with another senior honor society, Mohsen arrived straight from a meeting to our unorganized overlapping conversations. Upon realizing that an icebreaker had not occurred, he effortlessly created an orderly go-around. We each had a chance to share our names, what we did on campus, and begin forming connections with one another. Afterward, a student from the other group asked me if Mohsen was our faculty advisor because she was so shocked by his ability to immediately organize a disorganized group of students. We laughed because those of us who know Mohsen were unsurprised because that is how he functions, as a natural organizer who always wants to know more about others.

As we got to know each other throughout the year, Mohsen was someone I knew would always be thoughtful. As a fellow leader of a faith-based campus organization, he was someone I looked to as an example of how to conduct myself. With his strong beliefs in nonviolence, he was a model for blending principles of faith into daily life with the goal of helping others. His example encouraged me to think critically about how I could incorporate my religious values to do more good and even how to encourage my community to do the same.

His reputation for open-mindedness was evident in how he conducted himself in leadership roles and interpersonally. Mohsen is someone who I always knew respected my opinion and experiences even though they differed from his own. I have always identified as a Zionist which from the beginning was not a point of conflict between us but a potential point of discussion. Having family in the Middle East was a source of commonality for us rather than a divisive point. Mohsen's opinions and experiences have made me think deeply about the issues and develop a deeper sense of empathy.

Once at a speaking engagement about Zionism on campus, I shared with the audience that Mohsen was someone I deeply respected and someone I felt I could discuss even the most challenging topics with in a thoughtful way. Numerous audience members approached me afterward to confirm this information because they could not imagine that someone with his background would be so receptive, and all the more so, seek out differing perspectives but they were not lucky enough to have met Mohsen yet. He challenges notions people have about those with different opinions through his nuanced approach to challenging topics and deep care for those he interacts with. His caring, committed, and compassionate personality are clear in every interaction and are just a few of the many reasons I feel lucky to have gotten the chance to know Mohsen. I declare that the above statements are all true and correct to the best of my ability.

Sincerely,
Talia Levin

# EXHIBIT 1-U

April 17, 2025

To whom it may concern,

My name is Zoe Davidson. I am a United States citizen, a 2024 graduate of Columbia College at Columbia University, and I am a peer and friend of Mohsen Mahdawi. I am writing this affidavit to vouch for Mohsen's character. As I elaborate below, Mohsen is one of the most measured and thoughtful people that I had the pleasure of knowing during my time in college.

Mohsen and I met during our junior year when we were both preparing for extracurricular leadership roles on campus. We continued to spend time with one another throughout my senior year, interacting at extracurricular and social events for campus club leaders. Based on my extensive interactions with Mohsen, I want to share three of his most remarkable attributes.

First, Mohsen is dedicated to understanding opposing points of view. Last spring, I asked Mohsen and a handful of other campus extracurricular leaders to tell me what they were most proud of accomplishing during the 2023-24 school year. Mohsen told me that he was proud of his "political activism and bridge-building, while continuing to hold a moderate position advocating for free speech and equal rights for Palestinians." This sentence encapsulates what I have observed of Mohsen's leadership: he values moderation and reaching across ideological divides. I saw Mohsen's approach in many settings. For example, as club leaders, we interacted with campus alumni. One alum, who both Mohsen and I know, has shared with me how much he valued talking about Middle Eastern politics with Mohsen, despite their opposite viewpoints on many issues.

Second, Mohsen not only embodies moderation and respect, he also advocates for these values. I never participated in Columbia University's protests. I wrote my senior thesis on antisemitism in the United States in the 1940s, inspired by my grandfather's experience as a Jewish solider in the American military during World War II. Mohsen and I did not agree on every aspect of international politics, or campus politics, but he was nothing but understanding of me and our mutual friends. Moreover, I observed how respectful he was of other people's faiths and backgrounds. News outlets have reported how last year, Mohsen shamed a protester who uttered antisemitic remarks at rally. Mohsen led 400 students in chanting "shame on him." In both public and quotidian interactions, Mohsen's respect for others, including Jewish students, was unmistakable.

Finally, Mohsen always demonstrates deep humanity and care for others. In December 2023, when the two of us were catching up with other club leaders at a social event, Mohsen asked each of us about our semesters before sharing his own reflections. He listened with deep attention and care, asking follow-up questions and validating our peers' emotions. I saw this kindness and care in every interaction with Mohsen.

My life has been enriched through my friendship with Mohsen Mahdawi. I am inspired by his calm, caring demeanor and his curiosity about the world around him. I am honored to know him and to count him as a friend.

**JA 114**

I declare that the above statements are all true and correct to the best of my ability.

Sincerely,

Zoe Davidson

# EXHIBIT 1-V

Columbia University in the City of New York │ *New York, N.Y. 10027*
SCHOOL OF LAW

**Katherine Franke**                                                      Voice: **(212) 854-0061**

*James L. Dohr Professor of Law* (retired)                    **kfranke@law.columbia.edu**

April 17, 2025

To Whom It May Concern:

I have been a tenured member of the Columbia Law School faculty for 25 years, and have worked with many, many wonderful students during that time.  A few of them stand out as exceptional, and Mohsen Mahdawi is one of them.  I met Mohsen two years ago when he came to my office to discuss his work in the Columbia Philosophy department, including his philosophical thinking about the political concept of peace.  He struck me as a deeply sophisticated thinker and theorist who sought to bring the academic tools he was acquiring in the classroom to bear on one of the most vexing contemporary political problems of his generation and mine: the Israeli-Palestinian conflict.

Unlike most students I regularly meet with who are involved in campus activism around Israel/Palestine, Mohsen has been unwilling to indulge facile slogans about this issue.  Having grown up in a refugee camp in the West Bank and having witnessed the complexities and violence of the conflict first hand and very personally, he strives to understand the interests of the warring parties from a perspective of empathy and shared humanity, rather than objectification and vilification.  This has included a commitment to read academic writing from a wide range of perspectives.  But even more impressively, he has sought out Israeli and zionist Jewish American members of the Columbia community to talk to, to better understand how their experiences and histories – precisely because they are different from his own – inform their understanding of the conflict.

I have also witnessed the leadership role Mohsen has played on Columbia's campus since the attacks in October 2023.  As the student body actively engaged the meaning of these attacks and the responses thereto, Mohsen emerged as a moral leader, modeling how one could bring one's own life history to bear to inform the debates on campus, articulating an openness to listen to one's opponents, refusing to indulge easy caricatures of the parties involved, and facilitating dialogue across constituencies. Mohsen did this even when he was severely criticized by some of the pro-Palestinian students for "normalization".  He was always clear in his words and actions that his fundamental goal was peace and reconciliation rather than retribution and violence.

Insofar as a number of students came to the campus activism around the Middle East conflict with little knowledge of the history and complexity of the issue, Mohsen quickly emerged over the last year and a half as a teacher who they admired and looked up to.  Unlike most students, he could speak from his own experience, but as I noted earlier, always did so from a perspective of empathy with others.  Remarkably, the students who were drawn to Mohsen's leadership were not only those who might identify as "pro-Palestinian" but included Israelis and their supporters.

**JA 117**

As I came to know Mohsen better over time, I saw how his Buddhism shaped him profoundly. He possessed a calm, grounded, patience that is strikingly unusual among the parties engaged in this kind of political work.

Allow me to say one more thing that relates specifically to the context of detention and possible removal. I was present, as an observer, at a protest on campus in November 2023 when student protesters were approached by a man who was not affiliated with Columbia. He began yelling ugly and antisemitic things at the protesters. Mohsen was there and approached this man and asked him, in a very calm way, if he would stop yelling these ugly things and would leave. The man persisted, as did Mohsen's effort to distance the man from the protesters. After several minutes he did leave, thanks in significant part to Mohsen's efforts to deescalate the situation. Shortly thereafter, Gerald Rosberg, the Chairman of the University's Special Committee on Campus Safety, announced that the university was suspending two student groups, Students for Justice in Palestine (SJP) and Jewish Voice for Peace (JVP) because they were accused of engaging in "threatening rhetoric and intimidation" during the protest mentioned above, in violation of university disciplinary rules. Many of us in the Columbia were surprised to see this action because we knew that it was an outside actor, not the students themselves, who had engaged in the "rhetoric" the university was criticizing.

I called Mr. Rosberg, who I knew, and we spoke on Thanksgiving day while we were attending our respective family gatherings. I asked if he would come to my office to meet with the students from SJP and JVP to try to resolve this issue and get the groups reinstated, and he agreed. We held the meeting on November 30, 2023 in my office. At the meeting I asked Mr. Rosberg what he meant when he referred to "threatening rhetoric and intimidation" and he replied that he should not have used those terms, and regretted doing so. Instead, he clarified that he found the statements made at the protest to be upsetting. The students asked him to formally withdraw the published statements describing their protests as including "threatening rhetoric and intimidation".

I was particularly alarmed to see the government use the term "threatening rhetoric and intimidation" as a potential justification for the revocation of Mr. Mahdawi's status as a legal permanent resident and for his possible removal. It strikes me that this term is lifted directly from Columbia, yet any minimal research would reveal that the officials who described student protests this way – including protests in which Mr. Mahdawi was present – would learn that university officials have retracted this description. Mr. Rosberg did so in my office and also publicly on the record at a meeting of the University Senate in November 2023.[1]

When I learned that Mr. Mahdawi's citizenship interview had been scheduled my first reaction was to be proud – proud of him to have earned the honor of reaching the last step in the naturalization process, and proud of the United States to naturalize as a citizen such an outstanding person with such a strong moral compass. I am hard pressed to think of anyone who better embodies the values of our country than Mohsen Mahdawi.

---

[1] The minutes are available at:
https://senate.columbia.edu/sites/default/files/content/Plenary%20Binders%202023-24/US_Plenary%20Binder_20231208.pdf.

2

**JA 118**

I declare that the above statements are all true and correct to the best of my knowledge and ability.

Sincerely,

Katherine Franke

3

**JA 119**

# EXHIBIT 1-W

April 17, 2025

To whom it may concern,

My name is Jean Elizabeth Cullander Krasno, I am a U.S. citizen, born in Evanston, Illinois. I am writing this affidavit in support of Mohsen Mahdawi's good character for the courts. Mohsen is a kind, thoughtful, hardworking and peaceful person, who seeks peace and the support of human rights for all peoples.

I have known Mohsen for about three years as my student at Columbia University where I teach in the Political Science Department as a lecturer. Mohsen was in two of my seminar classes, one called International Law in spring 2022 and the second entitled Peace Making and Negotiation in spring 2024. The seminar format is small, meets for two hours once a week with about 16 or so students, which enables me to get to know my students very well through the open exchanges of ideas. I always encourage my students to speak freely and respect everyone's thoughts and contributions. Mohsen frequently asked profound questions and often came to see me during office hours before or after class. From the beginning, he has always discussed ways to find a peaceful solution to issues in the Middle East, particularly relations between Israelis and Palestinians.

The course on Peace Making and Negotiations took place during the protest demonstrations on campus and we often used some class time to give everyone an opportunity to express themselves freely without judgement. Understandably, freedom of expression and academic freedom are key tenets of democracy. The content of the course was very timely. Our readings covered peace-making processes, mediation, negotiation and examined historical cases as well as the development of mediation skills. I had recently completed a series of Oral History Interviews for the United Nations on these topics with people who had directly led, or participated in, the UN mediation of various conflicts, in order to understand what has worked and what does not work. Mohsen delved into these readings and was eager to engage in deeply developing these skills and growing from this base of knowledge. I asked my students to write their final papers on a historical or present conflict and design a plan for achieving peace through careful mediation and listening to all perspectives. Mohsen wanted to write about creating a peace plan for ending the war in Gaza while also developing a long-term peace process.

Mohsen's paper and his ideas were so carefully crafted that a few of the students and I decided to continue these discussions after the semester ended. Aharon Dardik, an Israeli, was in the class and he also wrote on the same issue from his perspective. And I brought them together to seek common ground, which they did. Mohsen, Aharon and I then decided to organize a 4 to 5 day-seminar retreat in the summer of 2024. They suggested various experts and I found others who cover the Middle East, conflict resolution, children in conflict and security concerns. The final product of the dialogue is a ten-page Executive Summary entitled the Peace Initiative for Israel-

Palestine. Both Mohsen and Aharon contributed immensely to the dialogue and provided the core of the ideas. We followed up again in the fall 2024. Also discussed are the needs to not only establish structural solutions but also to recognize psychological needs and address the fears and stereotypes that have emerged after so many years of fighting, human rights violations and deaths. Mohsen has worked hard over the years to understand the pains of all peoples caught in this unending cycle of violence. Respect for the human rights of all is the focus of his endeavors. He has reached across all groups to listen carefully to their fears and concerns. He is articulate, charismatic and a leader in peace. He explains that the goal is to ensure that the children grow up in a peaceful, loving, just and stable environment, free from fear.

Mohsen is currently enrolled in classes and has been accepted into a graduate program for the fall 2025. His detention will prevent him from completing these courses. Failure to complete these classes on time will prevent him from graduating this semester and will prevent him from enrolling in the Master's program this fall. This presents a serious hardship for Mohsen.

As you can see here, Mohsen is a peace maker and his talents and skills ought to be utilized instead of locked up or thrown away.

I declare that the above statements are all true and correct to the best of my knowledge and ability.

Signed:

Jean E. Krasno

April 17, 2025

JA 122

# EXHIBIT 1-X

Ian Borim

April 18, 2025

To whom it may concern:

Since meeting him in class in my first semester on campus at Columbia, Mohsen has become one of my dearest friends. He is an extraordinary man, a dedicated and engaged scholar, and a kind and compassionate member of our university community.

We met for lunch early on in that semester and had a long conversation about the trajectories that brought us to Columbia's School of General Studies. Mohsen has not had an easy life. He has lost family and friends to injustice. Over the years, with the help of much meditation and reflection, he has processed these traumas and transformed them into a drive to fight for peace and against injustice anywhere. This is the cause to which he has dedicated his life. Indeed, this calling is exactly what brought him to Columbia, where, in addition to receiving an undergraduate education in philosophy that would prepare him well for law school, he sought to get to know various aspects of the university and New York City community and establish meaningful connections with people he could work with in the service of his life calling of working for peace. Anyone who has met Mohsen can tell you how interested he is in conversation and dialogue across differences. He rejects the idea of an "enemy" and meets everyone with love and compassion.

Mohsen's friend group at Columbia is a constellation of people of high character from the most diverse backgrounds you could imagine. He is friends with people from a variety of backgrounds and all walks of life. He is wise, considerate, peaceful, compassionate, loving, disciplined, and responsible. He is someone I trust and admire greatly.

Sincerely,



**JA 124**

# EXHIBIT 1-Y



**BARNARD**
BARNARD COLLEGE · COLUMBIA UNIVERSITY

REBECCA JORDAN-YOUNG, PHD
ANN WHITNEY OLIN PROFESSOR
DEPARTMENT OF WOMEN'S, GENDER, AND SEXUALITY STUDIES

3009 BROADWAY
NEW YORK, NEW YORK 10027
PHONE 212.854.2108
FAX 212.854.8432
HTTP://WOMENSSTUDIES.BARNARD.EDU

April 18, 2025

To Whom It May Concern:

I am a professor at Barnard College, and the Director of the Barnard Center for Research on Women. It has been my good fortune to get to know Mohsen Mahdawi as a fellow member of the Columbia University Community. I have shared meals with Mohsen at student-faculty potluck dinners, and have had the opportunity to hear him speak with other students and faculty members on several occasions. I have been impressed with Mohsen since our first meeting because of his warmth, his strong and outspoken opposition to bias and discrimination of any sort, and his humility. I have heard him speak about his experiences of loss, and the violence he witnessed and experienced growing up in the West Bank. His commitment to peace and solidarity is all the more remarkable for his background.

I also wish to emphasize that Mohsen has been a leading voice advocating that justice for Palestinians must be built on a solution of peaceful co-existence between Israelis and Palestinians. As a model of thoughtful dialogue across very deep differences of politics and life experience, Mohsen is a force for good in our community and in the world. I have profound respect for him, and like many others in our community and beyond, have been deeply distressed by his detention.

I declare that the above statements are all true and correct to the best of my knowledge and ability.

Please feel free to contact me for more information or if you have questions. My email is ryoung@barnard.edu.

My sincere regards,

Rebecca Jordan-Young, Ph.D.
Ann Whitney Olin Professor
Women's, Gender, and Sexuality Studies
Interim Director, Barnard Center for Research on Women

**JA 126**

# EXHIBIT 1-Z

Roberta Wall, Esq.
11 W. 104 St.
New York, NY 10025
845 853 4788
info@steps2peace.com

April 18, 2025

Re: Application in Support of Mohsen Mahdawi for
release on bail

To the United States District Court for the District of Vermont
Hon. Geoffrey Crawford:

I am a retired attorney in the State of New York. I write this
letter of declaration in support of the application for bail by my
friend and colleague Mohsen Mahdawi.  I have spent hours in
conversation with Mohsen at various neighborhood spots near
the Columbia University campus where I live. I am an active
member of Romemu Congregation, a local Jewish
neighborhood synagogue.

Mohsen and I have become friends and colleagues over this
last school year through our shared interest in bringing
together Jewish Israeli and Palestinian Columbia students for
training in Nonviolent Communication. I am certified as a
trainer by the International Center for Nonviolent
Communication. Nonviolent Communication is a peacemaking
technology used all over the world to build connection based
on shared needs for peace, security and coexistence. I'm
thrilled to be working with a Palestinian man, originally from
the West Bank,  who has the courage,  commitment,
presence and skills to take up the work of peacemaking.

**JA 128**

Over hours of face to face conversations Mohsen has shared with me his vision and commitment to bringing together Jewish, especially Israeli, and Palestinian students to advocate for a peaceful and just solution to the conflict in the Mideast. He has also shared with me his love of his cabin in Vermont, the land and people who have welcomed him like family and his deep commitment to the Buddhist practice that he discovered when he moved here to the US.

Mohsen and I have been delighted to discover that we both practice Buddhist mindfulness. This practice, as we love to talk about, is grounded in the understanding that different peoples have different narratives, and that, rather than this being a threat, it allows us to see more deeply into the nature of being a human being and inspires us to live with reverence for life and respect for different beliefs. I suggest to the Court that Mohsen's immersion in Buddhist practice is an important consideration in this court's determination. As he and I have discussed, Buddhism informs his commitment to nonviolence and peacefulness and his firm and reliable attitude of acceptance and respect for all religions and peoples.

It is unimaginable to me that Mohsen is not free to enjoy and exercise the basic rights upon which our country was founded. This country welcomed my ancestors as a place of freedom from the fear of being hounded because we were Jewish. As a mother and grandmother, I have raised my children to protect the rights of everyone because my ancestral history teaches us that if they can come for one of us, they will come for all of us.

I declare that the above statements are all true and correct to the best of my knowledge and ability,

Respectfully submitted,

Roberta Wall

# EXHIBIT 1-AA

April 18, 2025

To whom it may concern,

**Re: Letter of Recommendation for Mohsen Mahdawi**

I am pleased to write this letter in support of Mohsen Mahdawi, who has been a student of mine for the past semester in a course called 'Settlers and Natives'. This course introduced students to the politics of migration since 1492, briefly in the modern period. The approach was to combine historical breath with the depth of individual case studies, from the Americas to Palestine/Isreal. The core thematic ambition was to get students to wrestle with notions of indigeneity and rights in a fluid and ever-changing world. It was a small reading and writing intensive seminar of around 15 persons, calling on students to work hard. We met for two hours in class and then for office hours. This made for a fairly intensive contact between instructor and student, allowing me time and opportunity to get to know each student individually.

I found a Mohsen to be hard-working and intelligent student. He was at the same time a person committed to linking the classroom with the world outside, learning with doing. One could say he was almost obsessed with the question of change, above all peaceful change.

Peaceful change in his motherland was his consuming passion. A study of other lands during other times – South Africa, Ireland, Algeria, Rwanda, Kenya – was his way of getting to a comparative understanding of his own situation. His starting point was to distinguish what is morally desirable from what is politically possible, and then set himself the challenge: How can we link the two?

Mohsen has been given extended time to complete his requirements for my course. He has told me he is determined to finish the work and join the M.A. program in International Relations to which has already been admitted. The immediate consequence of continued detention will be to prevent him from completing his current studies. This course of action will undermine the promise of a career path he has forged with hard work. In my view, nothing he has done would justify such a harsh and counter-productive course of action.

I transferred to Columbia in 1999 from the University of Cape Town where I was already a full professor. I came to Columbia with tenure and as occupant of a named Chair. Mohsen is among the best students I have taught during my past 25 years at Columbia. It would be nothing less than tragic to nip the promise of youth before it has a chance to blossom fully.

I declare that the above statements are all true and correct to the best of my knowledge and ability.

Mahmood Mamdani

Herbert Lehman Professor of Government

Departments of Anthropology and MESAAS

University Senator

**JA 132**

# EXHIBIT 1-AB

April 17, 2025

To whom it may concern,

I write to the court to declare my support for Mohsen Mahdawi and attest to his exemplary character. I am a U.S. citizen and a faculty member in the Columbia University English Department. Mohsen was my student during the spring of 2022 in an advanced undergraduate writing course called How Writers Think. I came to know him during those four months together in the classroom and then during subsequent conversations when we have seen each other on campus. I know Mohsen to be a smart and deeply kind person who has dedicated himself to healing political divisions in our university community and beyond.

Mohsen grew up in a refugee camp in Palestine, where he and his family were victims of violence. He came to the United States as a young adult and worked extremely hard to learn English, make a living, and build a community for himself. In recent years, he has dedicated himself to earning a college degree. Mohsen was eventually accepted into Columbia's School of General Studies on full scholarship, an astonishing feat for someone who had such a difficult childhood and had just learned English.

Mohsen's resilience inspires me. Despite growing up in a refugee camp, despite being shot at, despite having to struggle to get an education, despite having to create a new life in the U.S., Mohsen is consistently positive and even optimistic. During our semester together and in our subsequent conversations, I have never seen him express anger or bitterness about the circumstances he has faced. Instead Mohsen is always warm and solicitous. When he talks to me or a classmate, Mohsen is a question asker. He is curious about other people's experiences and ideas. He delights in learning about other's projects and interests. He is quick to smile and slow to judge. As a result, he is well-liked among his fellow students. A number of his peers came to me during and after our semester together to say that Mohsen had helped them think through their research projects or find a different way to look at their approach to writing and language learning.

On the Columbia campus, Mohsen has consistently worked to bring people together too, especially in the heated debates about Israel and Palestine over the last year. He has organized conversations among different groups which have been aimed at building understanding and reducing divisiveness. He separated himself from people that espoused intolerance. Mohsen has consistently acted as a peacemaker. I admire his optimism that people can come together in peace, an optimism that I, who have lived a much more privileged life, cannot always muster. His character and integrity are exemplary.

I recall spending time with Mohsen at another student's graduation dinner in May of 2023. It was lovely to see him surrounded by a group of good, loyal friends from a wide range of cultures and backgrounds. They talked with each other about big ideas: what it means to live a good life, the role of world religions, and so on. Toward the end of the dinner, as people were toasting the graduate, Mohsen taught us all a song to sing about the blessings of friendship. It was a sweet

moment; Mohsen wanted to bring us all together. I know that he has sustained those friendships and is supported by a community that believes in him. I count myself among those people.

Respectfully,

Dr. Sue Mendelsohn

# EXHIBIT 1-AC

# COLUMBIA UNIVERSITY
## IN THE CITY OF NEW YORK

DEPARTMENT OF PHILOSOPHY

April 15, 2025

To Whom It May Concern:

Mohsen K Mahdawi took two philosophy classes with me--one of which was an independent study on the role of nonviolence in politics. So I have a very good sense of how Mohsen thinks, and also of what kind of person he is and what his basic moral values are. Mohsen is deeply committed to creating what Martin Luther King used to call a "beloved community." By that I mean a community in which people treat each other with understanding good will, compassion, and respect--despite the histories of trauma and sorrow that sometimes serve to divide us.

Further, Mohsen is as serious about nonviolence in thought, word, and deed as anyone I have ever met. A major source of his commitment to nonviolence is his Buddhism, but he can make the case for nonviolence appealing to anyone who will listen. His belief in nonviolence directs him to relinquish anger, to work toward forgiveness, and to seek reconciliation wherever and whenever he can. I personally saw him put these principles into practice in late 2023, in several interactions with a fellow School of General Studies student who is a veteran of the IDF. I believe that the two students became friends and worked together on a campus initiative meant to create space for constructive conversation across differences. These students acted out of mutual respect for each other, and with personal knowledge of conflicts that most of us know about only from a distance. Perhaps most impressive for me is that Mohsen truly seems to have no bitterness, no anger, and no resentment regarding the extraordinary adversity he has experienced. This is rare, and I believe that we would all do well to learn from his example.

If Mohsen is given a chance to live a life where he can continue to flourish—as I strongly believe he should be—he will become the kind of political leader and statesman who will help us all learn how to be better people. To be sure, Mohsen will always challenge us to scrutinize our unreflective beliefs, but he is committed to ways of expressing that challenge that use rational and respectful persuasion.

Finally, Mohsen inspired me to create and teach an entire undergraduate course on the ethics of nonviolence, which I will be completing in May of this year. In many ways, the course builds on the inspiring conversations I had with Mohsen during his study of the philosophy of nonviolence.

Sincerely,

Michele Moody-Adams
Joseph L. Straus Professor of Political Philosophy and Legal Theory

## JA 137

1150 Amsterdam Avenue   Philosophy Hall   Mail Code 4971   New York, NY 10027

# EXHIBIT 1-AD

COLUMBIA UNIVERSITY
IN THE CITY OF NEW YORK

DEPARTMENT OF ANTHROPOLOGY

April 18, 2025

To Whom it May Concern,

I am a Professor of Anthropology at Barnard College and Columbia University. I got to know Mohsen Mahdawi over the past year and a half, following the attacks of October 7, 2023 and the war in response. I first encountered him on a podcast: As part of a series of interviews about the student movement, Mohsen gave an extensive interview about his life in a West Bank refugee camp, his move to the U.S., and his aspirations for a Palestinian and Israeli future. I was struck by his thoughtfulness and compassion in recounting his life-history—one that has been shaped by violence in very immediate and intimate ways—and in explaining the political reality on the ground. This is an unusual person, I knew immediately; he has taken a personal history of great pain and transformed it into a political and ethical "mission" that shapes his life.

Following that interview, I got to know Mohsen in person. While Columbia was depicted in the press as a place of endless demonstrations and conflict, in reality, it was a place of immense community and compassion. Many students—both Palestinian and Jewish/Israeli—were experiencing almost unbearable grief. An undergraduate, and yet much older than his fellow students, Mohsen provided emotional support; he played an important role in supporting friends and colleagues who had lost family in Gaza, and in building a larger community that helped everyone get through the year. In short, the idea that Mohsen is anything but a kind and thoughtful person, with the qualities to be a leader in whatever he chooses to do, is something I cannot begin to comprehend. This is a person of immense integrity, who we should all look up to as a model individual and citizen.

I attest that the above statements are all true and correct to the best of my knowledge and ability.


Best,

JA 139

1200 Amsterdam Avenue   Schermerhorn Extension   Mail Code 5523   New York, NY 10027-7003
212-854-4552   Fax 212-854-7347   http://anthropology.columbia.edu//

Nadia Abu El-Haj
Ann Olin Whitney Professor

# EXHIBIT 1-AE

# BARNARD

BARNARD COLLEGE · COLUMBIA UNIVERSITY
3009 Broadway · New York, NY 10027

**Frederick Neuhouser**
Professor, Philosophy Department
Viola Manderfeld Professor of German
(212) 854 2064 (direct line)
(212) 854 7491 (fax)
fneuhous@barnard.edu

April 17, 2025

I, Frederick Neuhouser, of legal age and citizen of the United States, have known Mohsen Mahdawi ever since he was a student in my Introduction to Philosophy course at Columbia University in the fall semester of 2021. We have remained in contact ever since, something that rarely happens at a large university. Mohsen was a very lively and constructive participant in our class discussions, even though his English at the time was still imperfect. He is not afraid to speak up! As his interview with CBS's *Sixty Minutes* shows, he has turned into an eloquent spokesperson for the humane and democratic values he is committed to.

At some point Mohsen came to speak to me during my office hours. After discussing his upcoming paper with him, I asked about his background, and we entered into a long and moving discussion of his personal history. I was very struck by the calm and balanced way in which he told me about his experiences growing up in a Palestinian refugee camp, including his having witnessed his best friend being shot by armed forces. In the course of our interactions that semester I learned about his commitment to Buddhist philosophy and his strong belief that violence cannot be responded to with more violence if conditions of justice are ever to come about. Perhaps his Buddhist principles have played a large role in turning his anger into a loving search for peace and understanding between parties at war. Mohsen told me about his never-ending efforts to build bridges between Palestinians and Israeli Jews, including the considerable success he has had in doing so. I have never met a political activist so committed to the ideals of peaceful conversation and mutual respect and so persistent in attempting to find understanding under the most difficult and antagonistic conditions. The accusations that have been leveled at Mohsen and are appealed to in justification of his detainment—that he is a supporter of Hamas and has engaged in anti-Semitic activities at Columbia—are outrageous and simply false. They are outrageous because no one embodies precisely the opposite qualities—respect, peacefulness, and reasonableness—more than he does. Anyone who knows Mohsen even slightly will recognize the accusations against him to be trumped-up charges that completely misrepresent the kind of person he is.

I declare that the above statements are true and correct to the best of my ability.

Frederick Neuhouser
Professor of Philosophy

**JA 142**

# EXHIBIT 1-AF

April 18th, 2025

To whom it may concern,

My name is Caleb Bowen. I am a U.S. citizen, and I am a friend of Mohsen Mahdawi. I am writing this affidavit to demonstrate Mohsen's character to the courts. From my letter, I hope it will make clear the kind of the humble, respectful, compassionate, positive, and good person that Mohsen truly is. He is an invaluable friend who has made a deep impact in my life and the lives of our community in New York City and Columbia University.

I have known Mohsen for almost 3 years. We met at Columbia University School of General Studies during our studies there. He introduced himself to me during a dinner with a mutual friend. We connected over our shared love of philosophy. Though what impressed me most about Mohsen then and what continues to impress me today is the way he listens to others and makes them feel heard. After sharing about my studies in English and Comparative Literature and what brought me to the university, Mohsen would repeat back what he heard to ensure that he understood everything I said prior to asking questions and commenting. Mohsen does this with everyone and his consideration for the individual humanity of others is unwavering. When spending time together, I am reminded of the peace that I feel when I am with Mohsen. Rooted in his principles of honesty and empathy, he has become a core friend of mine over the years.

Beginning in 2021, Mohsen and I would grab meals together at John Jay Dining Hall or have dinner together in the evenings at our favorite local Italian Restaurant, Fumo. Over meals we would share stories about our classes, and the different strategies we used to manage the stressors of a rigorous education. Since I've known Mohsen, he has been a huge proponent of meditation. He often talked about how he enjoyed the comradery he found with those in the Buddhist meditation group. He found that meditation helped him to think from a more grounded position and would help him to better focus on his classes. Listening to him about his self-regulating practice, inspired me to try meditation. Mohsen's openness about how he coped with his struggles enabled me to learn about a self-regulating practice, which has been incredibly beneficial for my life thus far.

Mohsen and I were student leaders at Columbia. I served on the Student Governing Board, which is a student organization that helps student groups follow campus policies, navigate administrative procedures for booking spaces on campus, and helping to manage inter and intra group disputes. During the meetings with student group leaders, Mohsen was respectful of the views of others and demonstrated the same empathetic listening to ensure that he understood what was said and that other student leaders understood that they were heard. His leadership through listening engendered a calm, peaceful, and respectful atmosphere even during discussions that were sensitive to other students on campus.

Throughout my almost 3 years knowing Mohsen Mahdawi, his humility, compassion, empathy, respect, and positivity have been traits that are consistent with who I know him to be. I am grateful to know him and to have him as a friend. He is among the most kind and considerate people that I know. He is man of profoundly deep character. I declare that the above statements are all true and correct to the best of my ability.

Sincerely,

Caleb Bowen

# EXHIBIT 1-AG

April 17, 2025

To Whom It May Concern,

My name is Nicole Alexandra Pimentel Soler. I am a U.S. citizen and a graduate student at Columbia University, set to complete my master's degree in May 2025. I write this declaration in strong support of the immediate release on bail of Mohsen Mahdawi. I also respectfully urge that his case continue to be heard in the state of Vermont, where he remains close to his family, legal representation, and support system.

I have been a close friend of Mohsen's for nearly four years and can personally attest to his character, compassion, inherent humanity, and unwavering commitment to justice and unity. Mohsen is a person of integrity—one who consistently seeks to bring people together and inspire mutual understanding and collective growth.

Among the many shared experiences I've had with Mohsen, one of the most memorable was a trip to Vermont, where he gathered a diverse group of friends to foster meaningful conversation and cultural exchange. It was clear how deeply respected he is—not only by our mutual friends but also by members of the local Vermont community whom he introduced us to with great pride and warmth. He is a dear friend who has brought depth, insight, and generosity to my life- a true gift.

Mohsen exemplifies resilience and leadership. His dedication to advocacy and service is evident in his involvement with the Columbia University Buddhist Association and his participation in the Program for Academic Leadership and Service. Our many hours studying together in Columbia's libraries further reflect his academic commitment and personal discipline. He has earned the right to be present at our graduation ceremony, surrounded by those who believe in him.

I sincerely maintain that continued detention is unnecessary and unjust under these circumstances. I respectfully urge the court to grant him bail and allow him to return to his community immediately.

I declare that the above statements are all true and correct to the best of my knowledge and ability. Thank you for your time and consideration.

Sincerely,

Nicole Alexandra Pimentel Soler

JA 147

# EXHIBIT 1-AH

April 17, 2025

To whom it may concern,

My name is Haley Wilson. I am a U. S. citizen, a PhD student at Columbia University, and a friend of Mohsen Mahdawi. I am writing this affidavit to attest to Mohsen's good character to the courts. From this letter, I hope it is clear that Mohsen is a peaceful, empathetic, intelligent, and kind person. He is a credit to Columbia University, Vermont, and this country as a whole.

Mohsen and I first met in 2022 at a mutual friend's apartment right off Columbia University campus. I did not know anything of Mohsen's background at this first meeting, but he stuck out to me as a polite, inquisitive, and thoughtful person. We immediately connected over our love of the Upper Valley in Vermont, where he owns land and a home and where I frequently visit my fiancé. Though we had just met, he offered to host me at his home the next time I was in the Upper Valley.

The second time I met Mohsen we ran into each other by chance on the shuttle to White Plains, NY to catch the ten-passenger airplane to the Upper Valley. Mohsen immediately greeted me warmly, and I felt like we were old friends as we sat together and talked for the entire 3-hour trip. Though we come from very different backgrounds, me growing up in rural Montana and him growing up in the West Bank, we quickly found common ground and delved into deeper conversations about family, charity, and life in general. I was not surprised he was a philosophy major. He told me that though he had also studied computer engineering, he wanted to study philosophy in the U. S. because he valued seeing life through many perspectives, and he believed studying philosophy would help him become well-spoken in English so he could advocate for peace between Israel and Palestine as articulately as possible to the American people.

My fiancé and I decided to take Mohsen up on his offer to visit his home and land while in the Upper Valley. It was clear to me that Mohsen was a well-integrated member of the community in the Upper Valley. He was full of suggestions of places to go and people to meet, and he was close personal friends with the owner of a local general store. I have yet to meet another person as in love with Vermont as Mohsen is. He was so proud to show us the land he had purchased, a little lot in the mountains with a pond and surrounded by beautiful deciduous trees sporting fall colors. He also showed us the tiny house he built on the land with his own two hands, complete with a kitchen, a lofted bed, an outhouse out back with a composting toilet, and a desk to study at with a view of the beautiful surroundings. Mohsen let us know we were free to come stay in this tiny house whenever he was in NYC if we wanted. It was clear from this visit that Mohsen was not only hardworking, driven, and a talented craftsman, but also incredibly generous and full of love for the country he had lived in for almost a decade. We learned that he originally moved to the Upper Valley for love of a woman, but that he stayed for love of the land.

**JA 149**

Mohsen dedicates so much of his time to advocating for a peaceful resolution to the Isreali-Palestinian conflict. He is a practicing Buddhist with peace always at the forefront of his mind. He often is asked to recount the atrocities he experienced in childhood so that those of us who grew up very separated from the conflict can find empathy for the Palestinian people, and he has done so on many different stages. I have seen him "in action" at peaceful protests, where he has always been a shining example of civility, emotional strength, and empathy. He is a good person and someone I am proud to call a friend.

I declare that the above statements are all true and correct to the best of my ability.


Sincerely,

Haley Wilson

# EXHIBIT 1-AI

To whom it may concern,

My name is Jeanne Donegan, I am a U.S. citizen and a friend of Mohsen Mahdawi. I am writing to provide my perspective on Mohsen's character so that those reading this letter may better understand his depth of kindness, sincerity, and generosity.

I first met Mohsen in November of 2021 when my partner Michael invited him over for dinner. They met at a student meditation group held on Columbia University's campus earlier that semester. I had heard many positive things about Mohsen from Michael leading up to this dinner so I was looking forward to meeting him. My first impression of him was that he radiated a warmth and gentleness that makes one feel instantly at ease, and that first impression has held true throughout the years I've known him.

I know Mohsen to be a genuinely curious person who loves getting to know other people. He is full of insightful questions and when you're speaking with him he gives you his full, undivided attention. He is also extremely generous. In August 2023, he offered us his home in Vermont so Michael and I could get out of the city for the weekend to celebrate our anniversary. This is someone who cares deeply about friendship and community building. I have met many interesting people through Mohsen, with such different backgrounds, people I otherwise would not have crossed paths with, and I am very grateful for this. Mohsen has an ability to form friendships that exceed the bounds of generations, ethnicities, class, religion etc. and I believe this is one of his greatest strengths which we all benefit from.

I also know Mohsen to be a deeply peaceful and spiritual person. From that first dinner together in 2021, I recall him speaking passionately about his desire to build connections between Palestinians and Israelis, to work together towards peace. And he has stayed true to that desire even as tensions, violence, and destruction rose across Gaza throughout the last year and a half, notably calling out and extinguishing any hate speech or antisemitic rhetoric that encroached on Columbia's campus protests.

Mohsen is a demonstrably good human being who decries hate of any kind. I feel lucky to know him, and he is deeply missed by his community right now. As a green card holder on a legal path to U.S. citizenship, he has every right to be here, and every right to exercise his freedom of speech.

I declare that the above statements are all true and correct to the best of my knowledge and ability.

Sincerely,

Jeanne Donegan

# EXHIBIT 1-AK

04/19/2025

To Whom It May Concern,

I am writing in strong support of Mohsen Madhwi. I had the privilege of working closely with Mohsen during our time organizing on campus at Columbia University, where I witnessed firsthand his unwavering commitment to peaceful advocacy, nonviolent principles, and inclusive community-building.

Mohsen is a deeply principled individual whose activism is rooted in Buddhist teachings, which emphasize compassion, nonviolence, and the dignity of all human life. Even in the face of personal risk, he consistently advocated for dialogue and understanding, ensuring that all voices—including those on opposing sides of an issue—were treated with respect. His organizing work was never about division, but rather about fostering collaboration and care for every individual affected by injustice.

What stands out most about Mohsen is his resilience. Despite threats to his safety, he continued his activism because of his profound belief in justice and human rights. His presence was an integral part of our campus's peaceful organizing efforts, and his absence has left a void in our community.

At rallies, protests, and public events, Mohsen spoke with remarkable poise, clarity, and love. His words were never driven by anger, but by a profound vision for an equitable future. He had a unique ability to articulate difficult truths with empathy, reminding listeners that justice must be rooted in collective care rather than retaliation. His presence brought a sense of calm and moral clarity to our movements, making him an integral leader in our community.

I urge you to release Mohsen Madhwi and allow him to return to his home and community, where he can continue his vital work without fear. His values and actions align with the highest ideals of humanitarian protection, and he deserves the opportunity to live and thrive in safety.

Sincerely,

Nayzak Wali-Ali, J.D.

**JA 154**

# EXHIBIT 1-AL

To Whom It May Concern:

My name is Romy Whitesell. I am a U.S. citizen and a graduate student at Columbia University's School of Social Work. I am writing this letter of support for my close friend, Mohsen Mahdawi, who I consider to be family and who I can only speak highly about. I implore the court to release Mohsen expeditiously so he can return to his community, continue his studies, and become a full citizen of the United States. Mohsen is a changemaker and a peacemaker. He brings people together. To know him and to be a witness to his life is an honor.

I first met Mohsen during November of 2023. I immediately noticed his calm presence and his empathetic ability to listen and give wise advice. He is in every way a mediator who aims to contribute to just outcomes, whether it be between friends, classmates, organizations, or in his broader advocacy. Mohsen and I bonded quickly due to a shared love of learning, family history, poetry, and the fact that we worked well together as a team. Mohsen's vision, passion, and leadership radiates off of him. It was my first semester in graduate school, I was experiencing huge transitions, both external and personal, and our campus was rife with tension. Despite the ongoing slaughter of his people and the immense pressures he faced, Mohsen was kind, supportive, and continually focused on helping others. He values self-care and would often tell me to fill my cup before trying to pour into someone else, impressing upon me that in order to make the largest impact, I needed to prioritize taking care of myself.

Mohsen knows grief and sacrifice intimately. He knows what it is to live under occupation, to have friends and family murdered, to feel helpless against corrupt, racist, oppressive systems. He has turned his loss and trauma into power by committing himself to fighting for justice and human dignity.

Mohsen is a political prisoner. The government is holding him hostage simply because he is a Palestinian who vocally advocated against the genocide of his people publicly, in the community he lived and studied in. Mohsen's work at Columbia was instrumental. He built bridges and coalitions, working tirelessly amidst death threats and repression to push our campus to act against injustice. At his birthday dinner last semester, he took time to introduce each friend around the large table to the others, which we all followed up by each stating our favorite things about him — his individuality, generosity, curiosity, and commitment to understanding the world around him were central in each answer.

I want to be able to sit with my friend again, peeling and eating a Pomelo fruit, and laughing about silly things. I want to be able to see him engage in what he is best in — communication, advocacy, and changing the perspectives of others. He must be released so he can finish his degree, take his citizenship test which he waited over ten years for, and flourish as the incredible human his family and friends know him to be.

I attest that all these statements are true and correct to the best of my knowledge.

Sincerely,

Romy Whitesell

**JA 156**

# EXHIBIT 1-AM

Honorable Geoffrey W. Crawford

United States District Judge

District of Vermont

Re: Letter of support for Mohsen Mahdawi

To the Honorable Judge Crawford,

I write this unconditional and unqualified letter of support for Mohsen Mahdawi. My name is
Sumaita Mulk and I am an alumnus of Columbia Law School '25, and I am currently a family
defender in the Bronx Family Court. I have had the honor and pleasure of knowing and working
with Mohsen since 2023, and I can confidently say that he is one of the most genuine, gentle,
upstanding, kind, and thoughtful individuals I have ever met. I have spent hours upon hours with
him in professional and personal contexts, and I am extremely grateful to say that he is someone
I am in community with.

As soon as I met Mohsen, and from then on, I was struck by the sense of calm and serenity that
he projected. The only thing I knew about him at the time was that he was a leader of the
Columbia Buddhism Association, and to this day, I see that association shine through everything
he does. To Mohsen, all of humanity is precious and worthy of respect, regardless of identity or
ideology. He really lives his commitment to empathy, justice, and peace for all through dialogue
and nonviolence. If he ever perceived that someone was in need, he would drop everything to
help. Even while navigating heated disagreements with others, his number one goal is to keep
our community, whether it was within the confines of Columbia University or the world, safe
and at ease. Mohsen is a dreamer, and he inspires the rest of us to do the same: to dream more
vividly and more beautifully every day in spite of, or perhaps because of, the severe hardships
that we see our fellow human beings face.

I declare that the above statements are all true and correct to the best of my knowledge and
ability.

Respectfully submitted,

Sumaita Mulk

Law Graduate, Neighborhood Defender Service of Harlem

**JA 159**

# EXHIBIT 1-AN

To whom it may concern,

My name is River Smith, and like Mohsen, I am a student in the Columbia University Department of Philosophy. I first encountered Mohsen through his activism last year. We got to know each other during meetings and rallies, and he was always a calming voice, a de-escalator, and a bridge builder. He has always cared for his community deeply. When I was harassed and provoked by students and faculty at Columbia for putting up fliers around campus, Mohsen reached out to me specifically to check in with me and hear what happened. We were consistently in touch over the course of last school year, in which he was a consistently helpful, healing, positive, and measured presence in my life. In the turbulence of my junior year of college, he was a very positive grounding point.

Last semester in the fall of 2024, Mohsen and I were in a philosophy class together to learn about anger, forgiveness, and reconciliation taught by Michele Moody-Adams. In this class, Mohsen was an engaged participant, a kind face, a welcome voice, and a contribution to the academic environment. He cared about the topics of the class both inside and outside the classroom. I constantly saw him, both that semester and at other times, engaged in deep conversation with Jewish students around campus to better understand one another. I have heard from many Jewish students a deep respect for Mohsen and his commitment to dialogue and conversation. I believe he was personally responsible for the lowering of tensions, the de-escalation of many angry situations, and the resistance to some acts of anti-Semitism that I witnessed over the past 18 months.

Should Mohsen be released back to his community, he would be opened with welcome arms by the community that supports him and who he supports. He is an integral member of the community in the Columbia philosophy department, which is worse off without him. I urge those with the ability to do so so to return him to his loved ones as soon as possible and will testify in the strongest possible terms his commitment to building a flourishing academic community.

Sincerely,
River Smith

JA 161

# EXHIBIT 1-AO

1114 Hudson Street #8
Hoboken, NJ 07030

April 18, 2025

To whom It May Concern:

My name is Ken Howitt. I am a United States citizen and know Mohsen Mahdawi through my volunteer
work as a Columbia University alumnus who earned his undergraduate degree in 1976. I met Mohsen in
the Spring of 2023 at student-alumni association and developed a close affiliation through a series of on-
line meetings, lunches, and phone calls.

Mohsen always spoke to topics of great interest to all involved and based his thoughts on beliefs that
were forged in his Buddhist faith. When we spoke privately, we talked about how my Jewish faith
formed my foundation. Our conversations on university and current events always analyzed current
issues based on those beliefs, making allowance for our differences. Those differences also were critical in
evaluating our views on current topics. His thought process was enlightening, as it constantly built
bridges between our differences and worked hard to find common ground.

That method has changed the way that I look at life and approach conflict. When you establish your
foundation and how interpretations are formed, the resulting understanding creates an agreement that
makes planning the future together a joint process where all voices are equal. Mohsen always created an
atmosphere of exploration, understanding and learning.

For me personally, meeting Mohsen after the isolation of the pandemic has created an enhanced
appreciation of everything new – people, thoughts, ideas, adventures and, most of all, friends. For our
small student-alumni group, I see the impact that Mohsen has on his peers and how his words and
approach enlighten everyone engaged in discussions with him.

In my opinion, this type of free and open exchange of thoughts and ideas are the foundation of the
American system. New ideas grow out of fundamental beliefs, are discussed and evaluated thoroughly
by all involved, and then applied to present conditions to improve the future.

Mohsen Mahdawi believes in the United States of America and a better future. My hope is that the United
States of America will believe in him and give him a future here.

I declare that the above statements are all true and correct to the best of my ability.

Sincerely,

Kenneth E. Howitt

JA 163

# EXHIBIT 1-AP

**April 17, 2025**

To Whom It May Concern,

My name is Claudia Cohen, and I had the pleasure of attending Lehigh University alongside Mohsen, where we were classmates for a couple of years. During my time at Lehigh, I served as the Student President of Lehigh Chabad from Fall 2018 through Spring 2019. It was through this role, and our shared campus community, that I came to know Mohsen.

Chabad at Lehigh was a really special part of campus life for many of us. It's part of a global Jewish movement focused on education, community, and connection—but more than that, it was a warm, welcoming space open to everyone, no matter their background. We were lucky to have an adoring rabbi and rebbetzin who opened their home to students every week for Shabbat dinners, holidays, and countless other occasions. Their hospitality created a true sense of belonging. Our Friday night Shabbat dinners would bring in anywhere from 40 to 150, sometimes even up to 250 people. It was a place where students gathered to reflect, connect, and share in meaningful traditions.

Mohsen was a familiar and welcome presence at these gatherings. He built genuine friendships with the executive board and had a particularly respectful and thoughtful relationship with our rabbi. I remember several occasions when Mohsen was invited to stand up and speak during Shabbat dinners—always calling for peace in the Middle East and urging unity across faiths. This was a message he carried with him throughout his time at Lehigh, and one he truly believed in.

He consistently showed a deep interest in interfaith and intercultural engagement. Mohsen was someone who brought people together and made others feel seen and respected. I saw firsthand how he embraced Jewish traditions, joined in celebrating holidays, and maintained a close and respectful relationship with my friend and fellow Jewish student, Nadine Clopton.

Mohsen has always been a strong supporter of all religions, and that inclusive spirit was felt by many during his time at Lehigh. His commitment to empathy, unity, and dialogue had a meaningful and lasting impact on our campus community.

**I declare that the above statements are true and correct to the best of my knowledge and ability.**

Sincerely,
*Claudia Cohen*

Claudia Cohen

**JA 165**

# EXHIBIT 1-AQ

*April 17, 2025*

To Whom it May Concern:

I, Nadine Clopton, depose and state as follows:

I am an individual of sound mind and legal age. I make this affidavit based on my personal knowledge and relationship with Mohsen Mahdawi.

Mohsen and I were in a committed relationship from March 2019 to January 2021. In that time, which coincided with the COVID-19 pandemic, we lived together in both Bethlehem, Pennsylvania and in the Upper Valley of Vermont. We spent nearly every day together.

As his most recent serious partner, I feel that I can offer a unique perspective into his strength of character, compassionate heart, and gentle spirit. While we have since parted ways, we have maintained a cordial friendship and have touched base intermittently throughout the past few years.

We met during our time at Lehigh University in Bethlehem, Pennsylvania. I was in my final semester of my senior year and he was in the second semester of his first year at Lehigh. It was something out of a story book – a Palestinian man and Jewish woman meet in Bethlehem (Pennsylvania) and fall for one another.

My mother immigrated to the United States in the late 1970s with my grandparents. They came from Kyiv as Jewish refugees, fleeing antisemitism in what was then the Soviet Union. Our family's story is one of diaspora. It is a familiar tale to those in the Jewish Diaspora.

Mohsen took immense interest and pride in learning about our traditions and the lived experience of my family. He found common ground in the stories of my grandparents fleeing the Soviet Union in search of a better life, sharing stories, tears, hugs, food, and laughter over many nights around the dinner table.

While at Lehigh, he had been taking a Hebrew language class so that he could improve his capacity to build bridges with Israelis in his pursuit of peace. He was a frequenter at Lehigh Chabad and Lehigh's Hillel – an inclusive Jewish organization on campus – where he participated in shabbat dinners, befriended his Jewish peers, and struck up a strong friendship with our campus Rabbi. He found joy in hosting Hanukkah dinners at the height of the pandemic – which meant the world to me when I couldn't travel back to my family home from our home in Vermont – reciting Hebrew prayers with me as we lit the candles.

In Vermont, I got to experience him in his element. Meditation, time in nature, and intentional community are core to his wellbeing and spiritual nourishment. His way of being is as a living prayer to the world around him.

**JA 167**

The strength of community he cultivated in Vermont was a testament to his ability to connect with people from all walks of life.

Mohsen is a magnet for community – hosting countless dinners and always looking for ways to gather folks together to provoke thoughtful conversations. If someone was struggling to find their place to fit in, he'd ask them to come to our apartment for dinner or invite them to another campus gathering. If he met someone that could not see eye to eye with him, he would ask them to connect over coffee. He was never combative in the face of disagreement about worldly challenges, he viewed them as opportunities for deeper connection & finding common ground.

In his world, we're better off with longer tables rather than walls that separate us. There's a lot we can all stand to learn from him.

That's Mohsen. He is a bridge builder, a connector, and a peace-maker through and through. In my time as his partner and in the time since then, I can attest to the fact that this man is one of the most compassionate souls I have had the pleasure of knowing.

While our communication was sparse by the time he had begun his journey at Columbia University, when we did check in with one another, he would always remark about how wonderful it is to be in a place that is at the dialectical, intellectual center of Israel-Palestine. At Lehigh, he was a big fish in a little pond. At Columbia, he had found the sea. From my understanding, he thrived.

By late 2023, he emerged as a leading figure on Columbia's campus. How could he not? He has been face to face with the violent realities of being a Palestinian in the occupied West Bank – living with settler violence, military checkpoints, and raids. His perspective is first hand.

Mohsen's childhood and adolescence was rife with heartache, violence, and pain – watching his best friend get shot by an Israeli soldier in front of him around 10 years old, watching other close loved ones get imprisoned or killed, including his beloved Uncle Thayer, having his little brother, Mohammed, be denied life saving medical care that ultimately led to his death in Mohsen's arms as a child.

With what Mohsen experienced growing up in the West Bank – he has every reason in the world to be angry and to seek revenge. But that's not him. He moves from a place of love.

What makes Mohsen unique is that he does not place a monopoly on pain. Compassion is not a one sided ordeal. For him and many others in the movement for a Free Palestine, it is possible to hold the pain of both our people in our hearts.

He is able to hold space for Jewish and Israeli pain and suffering, while honoring the suffering of the Palestinian people. He understands that Jewish people have suffered immensely in the past century and beyond. He is able to comprehend where severe unprocessed intergenerational trauma and grief has created walls between Israelis, the

**JA 168**

Jewish diaspora, and the Palestinian experience. In the same breath he condemns the mass murder of civilians in Gaza, he also condemns anti-semitism. He knows that our people are deeply interconnected.

Calling for accountability & justice is not anti-semitic. Far from it.

I am deeply fearful for his life and safety, should he be deported. I fear that his life could be endangered.

Mohsen should be looked to as an asset, not a threat.

His vision for peace is clear eyed, rooted in reality, and offers a different way forward. While we are grieving those lost to the horrors of war, we must also hold tight to our visions for what is emerging— a shared future built on justice, compassion, and liberation. Mohsen is just the person to bring that vision into fruition.

He is the exact type of thought leader we should be proud to have in the United States. And if given the opportunity to remain here, in the country he loves and calls home, I know he will do a tremendous amount of good.

I humbly request that Mohsen Mahdawi be released.

Thank you for your consideration.

I declare that the above statements are true and correct to the best of my knowledge and ability.

With gratitude,

*Nadine Clopton*

# EXHIBIT 1-AR

Letter of Support for Mohsen Mahdawi

4/18/25

My name is Ken Halpern, an American Jew born in Philadelphia Pennsylvania. I currently reside in Exton, Pennsylvania and have known Moshen for 7 or 8 years or so. Sorry! I am bad with dates. :)

To Mohsen, he knows me as "Uncle Kenny". That's who I am to my best friends' children and their serious boyfriends and partners.

When I first met Mohsen, I met him as part of the first introduction to our family when he began dating my best friend's daughter "my baby" many years ago. I met him for the first time at Lehigh University where my niece went to college. . I remember how nervous I was meeting someone that my niece (through love, not blood) started to date. I wanted the best for her and was and have always been overly protective of her. I will never forget the experience of entering the restaurant, seeing my niece and being introduced to Mohsen. He approached me first, with a big genuine smile and his first words with his cute accent were " It's so nice to meet you Uncle Kenny, I have heard so many wonderful things about you". He gave me a big, warm hug. It was such a warm and genuine first encounter and I felt the love and light coming from him. I am a sensitive man and he really connected with me because I have never felt comfortable with overly macho men. So, had he put out a hand and asked for a handshake, I wouldn't have felt the same way.

Mohsen and I were together many times, during family outings, get-togethers, parties, etc. He was always kind, gentle and spiritual. He is a very deep thinker and had wonderful ideas about peace and love in the world. He is very Zen, for lack of a better word. He was always willing to talk to me about feelings, which is really very important to me and my needs. . I remember going on vacation to a farm in Vermont in 2020 with the family and he cooked a beautiful meal, we picked our own vegetables, talked about spirituality and even honored  the moon, stars and sky at night while all gathering in a group and enjoying the company of each other.  It was a beautiful trip full of love.

I can affirm that Moshen is  gentle, spiritual, intelligent and an advocate for peace and love. He embraced our family and became part of it. I have bad anxiety and not the most confident human and always remember being in his presence was calming. He just has a way to make people feel good, loved and valuable.. I will always love him and be appreciative of having met him and the times we have spent together. Although my niece and Moshen may have made an adult decision to no longer be together,  I still have the same love, support and understanding of who he is. He is an amazing human being and we need so many more people  like him in the world.

**I declare that the above statements are true and correct to the best of my knowledge and ability.**

Thank you for your attention!

Ken Halpern
"Uncle Kenny"

# EXHIBIT 1-AS



Apr 19, 2025

Office of Jewish Student Life
Lehigh University Jewish Student Center
233 W. Packer Avenue
Bethlehem, PA 18-17

To whom it may concern:

I declare that the above statements are true and correct to the best of my knowledge and
ability."

I have known Mohsen Madhawi since October 2018m at which time he was
matriculating at Lehigh University. I first met him during an informational session for a
trip we were sponsoring to Israel and Palestine in the spring of 2019. I found it
fascinating that a Palestinian would want to participate in such a trip. And so began our
longtime friendship at Lehigh and beyond.

As the Director of Jewish Student Life and Associate Chaplain at Lehigh University, it is
my job to not only support our Jewish students, but all of our students. However, my
relationship with Mohsen had a profound impact not only on the general student body,
but on the Jewish students as well.

In sharing the story of his life, it never amazed me how someone who had seen such
death and violence at such a young age could end up being so dedicated to peace and
co-existence. But that is Mohsen. As I've said many times to him and to others, if there
were someone who could actually create peace between Israel and Palestine, that
person would be Mohsen. That sums him up.

Mohsen changes lives wherever he goes. Even when we may have disagreed, I always
knew that he cared for and respected me deeply. He always referred to me as his
brother in peace. That is and was true.

I know that you have received numerous letters of support for Mohsen. I would just like to add my name. It is an honor to be his friend and it would be an honor to be a citizen of the same country that has welcomed him with such open arms.

Please release him so he can continue the important work in support of human rights, peace. To do anything else would be not only a tragedy, but a travesty.

**I declare that the above statements are true and correct to the best of my knowledge and ability.**

Sincerely,

Steven Nathan
Endowed Director of Jewish Student Life
    and Associate Chaplain
610-758-4875
215-514-3463 (cell)
spn217@lehigh.edu

# EXHIBIT 1-AT

April 20, 2025

To Whom It May Concern,

My name is Julian Melo, and I am writing this letter to provide a sincere character reference for my friend, Mohsen Mahdawi. I am a U.S. Army veteran and a graduate of Columbia University, where Mohsen and I first became acquainted. Mohsen was one of my groomsmen at my wedding, underscoring the depth of our friendship. He was genuinely happy and proud to take part, quickly befriending all the other groomsmen, and warmly inviting everyone to visit him in New York City, offering his home for their stay. Everyone liked him immensely. My purpose in writing is to offer insight into Mohsen's true character, peaceful nature, and unwavering commitment to compassion and justice.

I have known Mohsen for approximately three years. We first met as fellow students at Columbia University, bonding immediately over our shared experiences as immigrants—myself originally from Brazil and Mohsen from the West Bank. Our friendship grew quickly, deeply rooted in our conversations and shared values.

From our very first interactions, Mohsen made clear his devotion to peace. As a practicing Buddhist, Mohsen consistently spoke about the need for peaceful solutions and justice—not just for his people but also for the Israelis. He consistently emphasized harmony and reconciliation in every discussion we shared.

A memory I hold vividly is the evening before my wedding in June 2023. Mohsen approached me with genuine concern, expressing uncertainty about how best to advocate for justice and peace for Palestine. He thoughtfully asked for my advice, and I suggested pursuing a legal career or founding a non-profit organization. He thanked me sincerely, demonstrating his openness to constructive dialogue and peaceful solutions. This was characteristic of Mohsen: compassionate, gentle, thoughtful, and patient.

Throughout our friendship, I have consistently observed Mohsen's kind demeanor. He regularly organized meditation circles and philosophical discussions on campus, always promoting understanding and introspection among participants. Mohsen's interactions were always respectful; I have never seen or heard him express hostility or condone violence toward anyone.

As a U.S. Army veteran, I served my country to uphold the fundamental values of free speech and liberty. It is precisely the exercise of these freedoms that validates our sacrifices as veterans. My vote for our current administration was based on the belief that our government would protect, not curtail, the rights of individuals—especially those legally residing within our borders. Mohsen is exactly the type of individual whose right to peaceful expression should be safeguarded.

Protesting peacefully and advocating for justice are fundamentally American values. Mohsen embodies these principles through his activism, compassion, and unwavering commitment to

**JA 176**

peaceful discourse. It is my firm belief, based on extensive personal experience, that Mohsen would never advocate violence or engage in harmful activities against others.

I hope this letter clearly conveys Mohsen's integrity, peaceful nature, and valuable contributions to our community. He is the embodiment of the peaceful expression we seek to protect.

Respectfully,

Julian Melo

# EXHIBIT 1-AV



**פרופ' אורן יפתחאל**   **Prof. Oren Yiftachel**
Lloyd Husrt Family Chair of Urban Studies   ראש קתדרת לויד הרסט לליסודים עירוניים
אוניברסיטת בן-גוריון בנגב   Ben-Gurion University of the Negev, Beer-Sheva, Israel 84105
Ph: ;yiftach@bgu.ac.il +Email: -972טל: 546775512
Professor (hon.), Dept. of Geography and DPU, University College London

To: Justice Geoffrey Crawford
United States District Court
District of Vermont
Vermont, USA

17 April, 2025

### Re: Statement in support of Mohsen Mahdawi

I am a geography professor at Ben-Gurion University of the Negev in Beersheba, Israel, and University College London. In the past I also taught at Columbia University. One of my areas of expertise is the Israeli-Palestian conflict. I am also  one of the founders of the peace movement 'a land for all' (ALFA - https://www.alandforall.org/english/?d=ltr ).

This statement is in **supporting Mohsen Mahdawi** – a student at Columbia University who was recently arrested  and is threatened with deportation under the unfounded claim of 'obstructing  US foreign policy'. I stronly urge you to protect his right to stay in the USA, based on the following.

I met Mohsen twice in person during my recent visit to the US in February this year. We also corresponded a few times on email and whatsapp.  As a co-counder of the movement 'land for all' we reached out for students in the US, and Mohsen offered himslef as a student leader interested in **building bridges between Jews, Israelis and Palestinians**.

As a result we started to lay down a plan for **a joint conferene** of our peace movement with Columbia university. Mohsen met several other leaders of the movement and is well known among the peace community in New York.

I had a couple of long conversatios with Mohsen, where he laid out his plans for a future peace between Israelis and Palestinians based on international law and a two state solution.  He experessed strong views against antisemitism and threats against Jews on campuses.

Hence, my observation is that Mohsen Mahdawi **fully supports peace**, coexistenec with Jews and a two state solution for the Isareli Palestinian conflcit. Mohsen stands against the use of violence either in demonstrations or political conflcits.

In other words, Mohsen actually supports the principles of US policy to the Middle East and is not a threat at all to US foreign or internal policies.  This has to be **highly**

**appreciated** in the current atmosphere of suspicion and conflict between Jews and Palestinians.

I stress that we still plan a joint Israeli-Columbia conferenec on the future of peace on our land, and feel that Mohsen Mahdaw is a notable student leader who can change the discourse on campuses all around the US and guide it towards the **horizon of peace**, mutual recognition and coexistene.  Mohsen opposes the violent ways of Hamas and the islamic resistane. He is a democrat, believing in joining hands non violently for peace.

Therefore, from what I have seen, the accusations against Mohsen of supposidly working against US foreign policy and promoting antisemistism are **totally false**.  I hope Mohsen **returns quickly to Columbia** to lead the peace iniatiative for which we still plan a joint conference in the near future.

I would be happy to add information if needed.

I declare that the above statements are all true and correct to the best of my knowledge and ability.

Sincerely Yours,

Prof. Oren Yiftachel

# EXHIBIT 1-AW

April 17, 2025

I, Irene S. Clopton, depose and state as follows:

I am an individual of sound mind and legal age. I present this affidavit based on my personal knowledge and relationship with Mohsen Mahdawi.

It is my honor and privilege to offer this letter of support for Mohsen Mahdawi.

I am a United States citizen and an attorney actively practicing in New Jersey. I am also a proud Jewish mother.  I came to this country in 1978 with my parents as a Jewish refugee from the former Soviet Union to escape antisemitism and oppression.

My husband and I met Mohsen in 2019 shortly after he started dating our daughter, Nadine, during their time together at Lehigh University. When she first told us about how she met this intriguing Palestinian man at a party...I was honestly apprehensive....for no other reason than that he was from Palestine.  The first night we met, he took us to the restaurant at Hotel Bethlehem where we sat for over three hours learning about his painful journey, discussing how it was important for "my people" to have a Jewish homeland  and his aspirations for building peace. Definitely, not the typical dinner conversation one would expect to have with their 21 year old daughter and her boyfriend at college. But there was nothing typical about Mohsen Mahdawi.

For over the course of the next two years of their relationship, Mohsen opened our hearts and minds. Mohsen was eager to not only share his story but to listen and learn about other peoples perspectives and struggles. He cared deeply about the suffering and injustice for all people. Mohsen also just did simple acts of kindness. He saw that my husband had trouble with his feet, so he researched and ordered him special shoes to help relieve the pressure.  He noticed my mother-in-law struggling with her cane, so he found a specially shaped cane that made it easier for her to walk. He was always concerned with my health because I have diabetes, so he would ask me all the time how my blood sugar was and whether I needed something to eat.

Mohsen also had a profound impact on encouraging our daughter to build a strong relationship with my parents. Mohsen always touted the importance of caring and respecting your elders. He forged an incredible relationship with my Jewish parents, who, despite all odds, adored Mohsen. He would sit around the dinner table for hours talking to my father about life, love and politics (even though they have been avid supporters of President Trump).  Mohsen was always able to find common ground built on compassion and mutual respect. He wanted to hear and understand other people's perspectives and experiences. Mohsen was deeply moved by my parents' stories of oppression and antisemitism which they suffered in the former Soviet Union. He often expressed that if people of different faiths could just sit across the table from one another and connect through the power of love...instead of fear...peace could be possible.

**JA 182**

Mohsen relished the opportunity to take part in Jewish holidays with our family. I remember how he had tears in his eyes after we asked him to light the Chanukah candles. And one of our longest Passover dinners was with Mohsen because he wanted to recite every prayer and read every passage.

One of my fondest memories was when I came to visit Lehigh, Mohsen told my daughter he would be late to the party she wanted him to attend because he wanted to bring me to a bar in town that was built inside an old speakeasy. He picked me up and on the way to the bar stopped at the Hillel house to pick up the University rabbi, whom he befriended. It sounds like the opening line to a joke...but the rabbi, the Palestinian and the Jew, did walk into the bar together and they had a great time. We talked about Judaism, Mohsen's contribution to Lehigh, we laughed and, from what I recall, had some pretty good cocktails. My daughter called Mohsen from the party sounding upset that he was late...and I just remember him saying I am sorry I am late but I am at the bar with your mother and the rabbi and we are having a really good time.

Whether its speaking before Congregations or hanging out at a bar with a rabbi and your girlfriend's Jewish mother, Mohsen's mission was always to bring people together and to build bridges and understanding.

To claim that Mohsen Mahdawi is an anti-Semite or Hamas supporter is absurd. To incarcerate a man who is loved and admired by so many people, including countless Jews is a travesty of justice. And to deprive him of due process because he speaks out against the killing of innocent Palestinians undermines the values for which our country stands for. Mohsen Mahdawi's goals and mission as a peace keeper should be celebrated, instead of destroyed. Keeping him in jail, or deporting him knowing full well that his life would be in jeopardy, is a tragedy.

I humbly and respectfully request that Mohsen Mahdawi be afforded due process and that his rights be upheld.

Thank you for your consideration.

I declare that the above statements are true and correct to the best of my knowledge and ability.

Respectfully,

Irene S. Clopton

Page 2 of 2

# EXHIBIT 1-AX

The Honorable Judge Geoffrey Crawford
United States Court
For the District of Vermont

April 18, 2025

Your Honor,

I am writing to express my support for Mr. Mohsen Mahdawi and my shock at his detention.
I met Mr. Mahdawi as part of a series of exploratory meetings that he initiated to navigate the
conversation here in the US, particularly on campuses, away from the extreme polarization that
we have seen tear these communities and our nation apart over the past year and a half. Far
from extremism, Mr. Mahdawi was focused on uplifting constructive solutions that would create
relief for both Palestinians and Israelis suffering on the ground. In these conversations he
ardently spoke about the desire to reach a peace agreement that would provide permanent
sustainable solutions for both peoples.

I myself have been dedicated to a similar desire since my childhood in Israel. Since the horror of
October 7th, I have thrown myself into supporting peacemakers on the ground who are tirelessly
working on solutions for everyone that will permanently halt the cycle of violence. As such, I
have become the lead organizer in New York for the Friends of Standing Together and a Co-
Organizer of Israelis for Peace. I would like to refute the claim that Mr. Mahdawi is an
antisemite. He reached out in partnership to Jews and Israelis alike,  both privately in meetings
like the ones that I described above, and he decried antisemitism publicly, early on in this
heartbreaking war, in the widely circulated clip from 60 minutes in December of 2023.

Mr. Mahdawi's detention and the serious challenge to his immigration status due to these
unfounded allegations is a tragedy both for Mr. Mahdawi and for all of us as Americans.
America was founded on the full and true principle of free speech, while since then as a nation
we have evolved significant protections against hate speech. We must cherish and guard these
principles and protections, so that we can continue to live in a prosperous and thriving
democracy which is rightly a source of pride for us all and an example for the world.

I declare that the above statements are all true and correct to the best of my knowledge and
ability.

Sincerely,

Tamara Gayer

**JA 185**

# EXHIBIT 1-AY

April 17, 2024

To Whom It May Concern,

My name is Noa Baum. I am a Jewish Israeli, and a proud American citizen since 2002.
I am an author of the memoir, "A Land Twice Promised – an Israeli Woman's Quest for Peace", and a
professional storyteller. I had the honor and joy of meeting Mohsen Mahdawi in October 2019 at Lehigh
University, PA, where he was a student. I was invited by the office of Jewish Student Life as an artist in
residence for three days to speak, perform and lead a workshop. Mohsen and I had an immediate
connection. His story of childhood trauma and resilience moved me. His charm, public speaking skills and
his ability to genuinely listen with compassion, endeared him to me.

Together we lead a speaking event for students and faculty talking about our lived experience as an Israeli
and Palestinian. Mohsen was also invited to the stage for a Q & A after my performance of my one woman
show, where I tell the story of my friendship with a Palestinian woman and the stories of our families. He was
also an active participant in an interfaith workshop I conducted on campus.

We were promoting dialogue, compassionate listening and a peaceful diplomatic solution to the conflict that
has traumatized both of our societies and both of us personally. Mohsen is a passionate advocate and
supporter of peace and is always seeking ways to build bridges, connections and dialogue with Israelis and
Jews. I know Mohsen to be an extremely thoughtful and compassionate individual who deeply believes in
non-violence. He has chosen a spiritual path of Buddhism.

Mohsen is a man of peace, and a peace activist like me, dedicated to a solution of justice and coexistence
for our people. He is continually looking for ways to engage others and connect them with the lived
experience of both Israelis and Palestinians. Since our initial meeting, we have talked on numerous
occasions on the phone and have kept in touch. In one of our last conversations, he shared with me that he
wants to open a moth style storytelling club for Israelis and Palestinians at Columbia University's campus,
where they will tell their personal stories. We talked about possibly bringing my work there.

I was mortified to hear of Mohsen's detention. His passion and contributions for peace and understanding
are essential. He needs to be free.

I declare that the above statements are true and correct to the best of my knowledge and ability.

Sincerely,

Noa Baum

www.noabaum.com

13 Devon Rd., Silver Spring. MD 20910

**JA 187**

# EXHIBIT 1-AZ

April 18, 2025

To: Court considering Mohsen Mahdawi's Case
From: Robert Drysdale and Patricia Higgins
Subject: Letter of Support for Mohsen Mahdawi

Dear Sir or Madam:

Mohsen Mahdawi has attended Hanover Friends Meeting (Quaker). We are long-time members of this religious group and are very concerned about his arrest and the intention of the State Department to deport him.

Some statements about him in the memo from Secretary of State Rubio appear to be false, and no evidence has been given to support them. In particular, the statement that he "engaged in threatening rhetoric and intimidation of pro-Israeli bystanders" contradicts an article in the *Columbia Spectator*. According to the *Columbia Spectator* he said, "Shame on you" to an individual who shouted antisemitic statements. He expressed gratitude to the "Jewish brothers and sisters who stand with us today." An article in the *Gothamist* quotes Mikey Baratz, a Jewish Israeli who recently graduated from Columbia, as saying, "Meeting Moshen reminded me that the cause of peace is worth fighting for." He said that he participated in Mahdawi's weekly meetings between Palestinians and Jews.

As a former member of the New Hampshire legislature and a mediator, I (Patricia) know of nothing more fundamental to the process of 'accurate disagreement' and creative resolution of conflict than regular conversations with those with whom you disagree. Mohsen understands that principle and built opportunities for both Jews and Palestinians to participate in creating possible joint efforts to begin to heal the divide.

By all accounts that we have seen Mahdawi has been working for peace. On what basis does Secretary Rubio say that his actions could "potentially undermine" the Middle East peace process? Deporting a permanent resident should require evidence, not just an unsupported claim.

We declare that the above statements are true and correct to the best of our knowledge and ability.

Robert Drysdale
Emeritus Professor of Computer Science, Dartmouth

Patricia Higgins
Former Member,
New Hampshire House of Representatives

**JA 189**

# EXHIBIT 1-BA

April 18th, 2025

To whom it may concern,

I first met Mohsen Mahdawi when he attended a screening of a film I had just completed about the conflict between Palestinians and Israelis in the West Bank. I recall that Mohsen was very moved by the film and asked to be introduced Dov Taylor, the Rabbi who had taken a group of American Jews to Israel to see the situation first hand and who had asked me to document the trip. Rabbi Taylor invited Mohsen to join us as we showed the film throughout the northeast. His presence was a gift, not only to us, but to the audiences who came to see the film.

Mohsen is a remarkable human being. There's a radiance about him that attracts all who encounter him. He's warm and smart and kind and fun to be with. Over the years I have watched him become a leader, a scholar, a Buddhist practitioner and a very effective peacemaker. The idea that he is "a danger to America" is preposterous. We need more people like Mohsen in this country now, more than ever.

Please return Mohsen to his community, to his studies and to his mission as he described it in 2020: ***"My purpose in life is to make peace in myself and to teach people to make peace inside themselves"***

Thank you.

Anne Macksoud

I declare that the above statement is true and correct to the best of my ability

# EXHIBIT 1-BB

"I declare that the above statements are true and correct to the best of my knowledge and ability."

I am currently retired. In my earlier careers, I taught classics at the university level. Prior to that, I was an economist for two Boston investment management firms and for Barings Bank (U.K.)

I was introduced to Mohsen Mahdawi when I was planning an adult education course on the Israel/Palestine conflict for Osher (formerly ILIAD) in collaboration with Dartmouth College. After our first conversation, I immediately invited him to lead one of the class sessions. In that class, he expressed clearly the trauma to which he had been subjected growing up in a refugee camp. He also expressed his equal empathy for the trauma of Israelis in the present and of Jewish people through the ages. Several members of the class were Jewish, and Mohsen was able to connect with them in open and caring dialogue. When I taught the class a second time, I again invited Mohsen to speak.

I also worked with Mohsen in multiple volunteer organizations and networks promoting peace in the Middle East. His commitment to non-violence and mutual understanding was unquestionable. He worked with the board of the New England Network for Justice for Palestine, the majority of whose members at that time were Jewish. All of them considered Mohsen to be a force for reconciliation.

In everything I know about Mohsen's academic career, he has pursued and advocated for human rights, mutual respect and above all, mutual compassion. I consider him a moral and spiritual leader, not only for any community he enters, but also for me personally. He has always been a force for good in the Upper Valley community and remains so. His imprisonment is grievous and traumatic for all of us.

Finally, I wish to state that any suggestion that Mohsen is anti-Semitic is entirely false.

Signed,

Mary J. Wilson
        Ph.D. (Northwestern University)
        M.B.A. (Harvard School of Business Administration)
        B.A. (Bryn Mawr College)
1052 NH Route 10
Orford, NH 0377
(603) 359-0166

JA 193

# EXHIBIT 1-BC

Joby Thompson                                          April 17th 2025
16 Church St
Woodstock VT

To Whom it may concern:

I have known my friend Mohsen Mahdawi for 8 years. I met him in
conjunction with a film about Palestine and Israel *called **Seeing
Through The Wall Meeting Ourselves in Palestine & Israel.***

To me, Mohsen personifies all that is good in the world: peace,
friendship, love, kindness and sensitivity to the feelings/suffering of
others. It is very upsetting to me that Mohsen has to endure this
difficult ordeal when he has done nothing wrong or illegal.
The thought that he could be deported to Israel where his life would
be in danger is intolerable to me and it's shameful that deportation is
even being considered.


I pray that Mohsen will be set free immediately so that he can return
to his studies, and get on with his valuable life's work of
peacemaking.

Sincerely,

*Joby Thompson*

Joby Thompson


I declare that the above statement is true and correct, to the best of
my knowledge and ability.

# EXHIBIT 1-BD

April 18, 2025

To whom it may concern,

Mohsen Mahdawi first made an impression upon me when we met in 2017, discussing his commitment to daily prayer and gratitude, dedicating time each morning to pray for his people, speak of his gratefulness for his life and all the life and people who support him.

Since then, Mohsen and I have since spent the majority of our relationship in prayer and meditation. I am firekeeper within the Indigenous traditions of the northeast, where I hold prayer ceremony, of which Mohsen has attended. Mohsen's prayers are a quaking experience. His tears in the sweat lodge are prayers for peace—prayers that have transformed people and broken many hearts open with compassion. Whether praying in his native language or in English, he often prays for the peace and well-being for the people of Abraham. I feel honesty in his words and love in his commitment to the cessation of suffering of all people, especially the descendants of Abraham.

There lies a potency in Mohsen's character which reveals an exemplary model of masculinity. He is honest and maintains a high ethic in his speech, his behavior, and his commitment to his life duties. The conviction behind his dedication to non-violent and peaceful activism is a powerful creed at this time in Earth's history. These qualities in a man are disarming and establish a strong sense of safety in social environments; and the alliance of his emotional intelligence and his heart allows him to build bridges between himself and people who might otherwise experience conflict due to their beliefs and world views.

Mohsen has a unique ability to sit with people experiencing grief and pain. This quality is an asset to our community as Mohsen reminds us the relief of suffering is a community activity. A community that grieves together will commit to itself and its prosperity. Mohsen meets the pain I express about my life with acceptance, and embraces it with poise and compassion, helping me diminish the grip of the past with the gaze of his eyes and the sincerity of his heart.

I urge the court to release Mohsen Mahdawi and return him to our community to help return us to wholeness. Mohsen's absence is a significant void and deprives us of his great gifts of love and compassionate leadership. His contributions and character demonstrate values of integrity, peace and the pursuit of freedom, and many others in which America takes pride.

I declare that the above statements are true and correct to the best of my knowledge and ability.


Sincerely,

Kyle Barrett

# EXHIBIT 1-BE

April 18, 2025

To whom it may concern,

My name is Tarik Samman. I am a Research Associate at Harvard Law School and a United States citizen. I am writing this letter in support of my friend Mohsen Mahdawi's release on bail. Mohsen is a man whose character, spirit, and moral clarity have had a profound influence on me and on many others who have had the honor of knowing him. Through this letter, I aim to provide a deeper understanding of who Mohsen was before the student protests and the media storm that followed, demonstrating clearly that he has never—and will never—pose any threat to America or its communities. By the end of this letter, I hope you will be convinced that April 14th should have marked the beginning of Mohsen's life in America as a rightfully American citizen, rather than the start of the unjust fate imposed upon him.

I have known Mohsen for more than three years. We met as students at Columbia University, and our friendship has only grown since then. Over countless late-night walks through New York City, we spoke about life, politics, faith, philosophy, love, and what it means to be a human being in a fractured world. In those conversations, Mohsen shared with me stories of his upbringing in a refugee camp, and how his love for an American girl eventually brought him to the United States. He also told me why he chose to pivot from computer science to the study of philosophy, a field that, in his words, nurtures the intellectual curiosity that lies at the heart of who he is.

That same trait, which led him to study philosophy, also shaped the way he moves through the world and interacts with others. For Mohsen, learning is not limited to books or abstract ideas; it extends into his interest in people around him. He once told me, "*You can be friends with anyone. But to do that, you first have to humanize them. Approach them with humility, with an open mind and an open heart, free from judgment, and guided by the belief that there is always something to learn, always something to share, and always a way to connect*." And he has proven this to me time and time again.

In every social setting and in every interaction, I was there, watching him break down mountains of ice and turn cold strangers into people who were suddenly willing to open up and share their stories. I saw it happen many times with Uber drivers, with food truck workers, and with students we met at various school events. One incident comes to mind. We were walking with a group of friends late at night in Harlem when we came across a semi-hostile, intoxicated man on the street who nearly acted aggressively toward us. But Mohsen changed the course of that moment when he decided to engage with him, calmly and openly. Before long, they were bonding over their shared experiences of difficult childhoods.

Mohsen's ability to learn from others, to humanize them, and to build genuine bonds did not stop at strangers. It extended even to those who disagreed with him, to those who did not see eye to eye with him, and to those on the other side of his people's conflict. Despite an upbringing shaped by trauma and war, and a body marked by bullet scars, Mohsen has never allowed hatred to grow in his heart or permitted violence to take hold of his thoughts. Instead, he favored the courageous approach of standing up peacefully for what he believes in and was even more courageous in his willingness to engage with those who think differently. He identified with them, built friendships, stood up for them when others tried to cause harm, and always sought common ground.

Mohsen's belief in respecting human dignity, in the power of peace that transcends politics, and in Dr. Martin Luther King Jr.'s words that "injustice anywhere is a threat to justice everywhere" were not mere slogans he used to impress or manipulate. They were not sentiments reserved for moments when cameras were pointing at him to manufacture a certain narrative. These were convictions that Mohsen had lived by and followed with actions years before the war in Gaza. When Mohsen was just a student, with a strict scheduled focus on his studies, school engagement, friends, and gym routine. During that time, he sought

**JA 199**

friendships with people from the other side. He shared coffee, dinners, and hours of conversation with the aim of bringing the two communities together, hoping to create a path towards peace in their country and an end to all forms of injustice. The same country, where their families continue to share fear, war, and a history soaked in blood. Through empathy and dialogue, he was able to earn their trust and build lasting friendships. It is no surprise, then, that some of them are now outspoken advocates for his release.

In a time when polarization is at an all-time high in our country, I find it painfully ironic to label Mohsen as a threat. In a nation where many of us struggle to even speak to those we disagree with, Mohsen has embraced this country's ideals with sincerity and respect. He has lived as if the principles we claim to uphold—freedom, democracy, and the self-evident truth that all men are created equal—are not just words but realities worth striving toward. He used those ideals as tools to build connection, foster understanding, and create a safe environment for engaging in hard conversations and meaningful dialogue. And yet, in the uncertain and fearful world we are entering, the voice of peace is being silenced by a reality distorted by baseless allegations, drowning us in a wave of hatred that targets the most vulnerable among us. In such a world, Mohsen has been left to face an unjust and obscure fate. I encourage you to look beyond the headlines and examine who Mohsen was long before the media spotlight. Listen to his speeches from before the student protests—like the one he gave at Packer Memorial Church after the New Zealand shooting. Read about his collaboration with Noa Baum and the weekly meetings he held with her. These efforts speak volumes and would leave anyone wondering: is this the kind of person who would ever resort to violence? Is he an actual threat? The answer is becoming increasingly clear. The growing support he is receiving from diverse communities, along with the many letters currently being sent on his behalf, make one thing undeniable: Mohsen is not a threat. He is a bridge-builder and a man of peace.

As a friend of Mohsen, I feel heartbroken that he is being held in prison and extremely worried about the life-threatening risks he could face if deported. As an American, I feel disappointed in our legal system and ashamed that we may be proving Mohsen wrong about the ideals he believed this country stood for. And as a researcher at Harvard, I stand alongside many of my international peers in growing fear, watching Mohsen's case unfold and wondering whether any one of us might be next.

This current state of fear that many of us are living in must be broken before it becomes normalized and turns into a cycle. A new precedent must be set for how we treat students facing deportation. That precedent can begin now with the immediate release of Mohsen on bail, returning him to his friends, to his community, and to America, where he deserves to be.

I declare that the above statements are all true and correct to the best of my ability.

Sincerely,
Tarik Samman

# EXHIBIT 1-BF

Letter of Support for Mohsen Mahdawi


Before the pandemic, I attended services and joined the First Unitarian Universalist Society of Hartland, where Mohsen Mahdawi also attended and spoke. There are some people who are actively peaceful, whose very presence is calming and who heal divisions. Mr. Mahdawi is one of those people. I have become a Trump supporter because I was disturbed by the censorship of divergent views and inconvenient facts regarding covid-19 as well as the coercion exercised by the previous administration. I cannot talk politics with many of my old friends and even family, because even though people think of themselves as peaceful and tolerant and able to hear divergent opinions, most do not have the inner peace that Mohsen has. We desperately need healers like Mr. Mahdawi in our country. It would be our great loss if, instead of being granted citizenship, he were deported.


I declare that the above statements are true and correct to the best of my knowledge and ability


Anne Laurel Stevenson

79 Mace Hill Rd

Hartland, VT 05048

516.242,6752

April 18, 2025

**JA 202**

# EXHIBIT 1-BG

April 17, 2025

To Whom it May Concern:

I am writing in support of Mohsen Mahdawi. His detention is causing great concern among his many friends in the Upper Valley.

I have known Mohsen for nine years. I first met him while he worked as a bank teller in my neighborhood, and later spent time with him when we both attended the Unitarian Universalist Church in Hartland, Vermont. I was in touch with him before his trip with Anne Macksoud and Rabbi Taylor (below).

A former elementary school teacher, I currently work with schoolchildren in the After-School program in Hartland.

Mohsen has always been a person of love and compassion, encouraging discourse and mutual understanding. He especially valued our friendship because I am Jewish. Despite growing up in a refugee camp in difficult circumstances, he has always been a bridge-builder.

In recent years I have followed Mohsen on Facebook, where I have seen video clips of him in one of his classes at Columbia University , wherein he sincerely attempts to promote compassion, empathy, and understanding as the class addresses the Israeli-Palestinian situation.

In 2016, Mohsen traveled with and helped facilitate a trip with filmmaker Anne Macksoud and Rabbi Dov Taylor, which resulted in the documentary, "Seeing Through the Wall: Meeting Ourselves in Palestine and Israel" https://www.films.vtjp.org/ Here is a summary: "This film follows a group of American Jews who traveled with their Rabbi, Dov Taylor, to Palestine-Israel in 2016 seeking to understand what life is like for Palestinians in the Occupied West Bank, including East Jerusalem. They met with Israelis and Palestinians, Jews and Christians and Muslims, each with their own narrative, most wishing to live in peace. The journey became an intense encounter for the participants, not only with people they met, but also with their own preconceptions. For many, the experience was transformative. "Seeing Through the Wall" invites and challenges viewers to question their own assumptions and prejudices."

Even during the time at Columbia U. when Mohsen was advocating for Palestinian rights, he maintained his dignity and commitment to dialogue and intercultural/ interfaith bridge-building.

To quote today's Gothamist (please note my underlining): "Mahdawi, 34, who was active in Buddhist affairs on campus, worked to form a broad-based coalition of advocates for peace in both Israel and Gaza, even as other pro-Palestinian student protesters grew more radical, according to his classmates and associates. Mahdawi condemned antisemitism during public protests and deliberately sought to include Jewish and Israeli students in discussions. Last fall, Mahdawi began weekly meetings with Israeli students to discuss their upbringing and beliefs about the long-simmering Israeli-Palestinian conflict, the associates said."

Thank you for your consideration. I declare that the above statements are true and correct to the best of my knowledge and ability.

Ariel Arwen        11B Fox Den Rd., Hartland, VT 05048    (603) 443-3561

# EXHIBIT 1-BH

Letter of Support for Mohsen Mahdawi

April 17, 2025

Caroline Craig
44 Azalea Circle, unit 9
White River Junction, VT 05001

To whom it may concern,

I am president of the Gardens Homeowners Association where Mohsen Mahdawi resides. He is a neighbor and a friend, and I am writing in support of releasing Mohsen from incarceration and allowing him to finish his United States citizenship.

Mohsen is a representation of what everyone in the world should be, a very kind, gentle, and heart centered person. We have had conversations philosophically of the importance to find an inner connection of peace within ourselves as well as with others. When a community issue arose, he willingly offered his help to act as a mediator. He was calm and listened with empathy to both sides, guiding the conversations to come to a peaceful resolution.

Mohsen is an amazing compassionate person who lives from his heart and is rooted in this Vermont community. Please consider this letter to support his release.

I declare that the above statements are true and correct to the best of my knowledge and ability.

Sincerely,

Caroline Craig          dated- 4/17/25

Caroline Craig

**JA 206**

# EXHIBIT 1-BI

April 17, 2025

To Whom it May Concern:

My name is Christopher J. Helali and I am currently the duly elected High Bailiff of Orange County, Vermont as well as General Manager for the Middle East, Asia, and Latin America at JPA International Legal Services. I am writing in support of my dear and beloved friend, Mohsen Mahdawi.

Mohsen and I met in 2018 after I moved to the Upper Valley to attend graduate school at Dartmouth College. At the time, Mohsen was an undergraduate student at Lehigh University. Being two Middle Easterners in rural Vermont, it wasn't long before the community brought us together. We met on one of the weekly hikes our family and friends of the "High Ledge Club" would hastily organize and put together. Within the first minutes of meeting, it was as if I had found a long-lost family member. We spoke for hours, philosophizing about politics, metaphysics, the nature of reality, Buddhism, spirituality, and more fundamental questions regarding our existence and short journey through life. That hike solidified what would blossom into a deeply loving and enriching relationship, one where we saw each other as brothers.

It was with great joy that we celebrated Mohsen's purchase of a beautiful hilltop piece of land in West Fairlee, VT. It was paradise for him. A slice of heaven in an otherwise turbulent world. This land was for him a refuge, a monastic retreat, but also a space to gather the wider community. It was these gatherings that sustained and nurtured his relationships with so many people in the Upper Valley and beyond. He built a beautiful tiny cabin, a humble abode for a man who is deeply committed to spiritual practices including meditation. Mohsen exudes love, compassion, empathy, and understanding. He seeks to foster dialogue and understanding. A peacemaker, a bridge builder, rooted in the same work as Martin Luther King Jr., Mahatma Ghandi, Thích Nhất Hạnh, and Dorothy Day, he believes that overcoming injustice requires a deep commitment not only to non-violence, but to a holistic and transformative movement, rooted in loving kindness, that cares for the others well-being.

Being a resident of Vershire, VT, Mohsen's cabin was around a five-minute drive from me. We spent as much time as we could together. Late night bonfires surrounded by family and friends, afternoon barbeques where Mohsen expertly cooked up meat including local venison, spiritual ceremonies with various clergy, healers, indigenous leaders, and shamans, and hikes on his land and beyond. One thing is certain, Mohsen is the life and energy of any community gathering. If he wasn't around, people would inquire where he was. His aura is bursting with love and light. Throughout this time, Mohsen and I were engaged in deep conversations, and though we didn't always agree, we respected our differences.

We were involved in activism with Vermonters for Justice in Palestine (VTJP). When I organized a webinar with Columbia University Professor Rashid Khalidi, Mohsen also attended. He was so excited to attend Columbia University and finally got his wish when he was accepted and transferred from Lehigh. His work in Vermont and New Hampshire for Palestine, especially during the Ben and Jerry's campaign, was rooted in bringing the Jewish community into the conversation. He always reached out to local Jewish organizations, local synagogues, and befriended local Rabbis. His commitment to peace and justice did not only extend to

**JA 208**

Palestinians, but to Jews and Israelis that he believes must be part of any peaceful solution. Mohsen would always reiterate that peace in Palestine required peace with Israelis and that both peoples on the same land must come together and live peacefully with one another. The destiny of both Israelis and Palestinians is intertwined.

To transform the world, Mohsen believes it is necessary to be non-violent and to work within the confines of the law. At Columbia, Mohsen co-founded student organizations including the Palestinian Student Union and Columbia Apartheid Divest. He organized peaceful protests and fostered dialogue on campus, even reaching out to the Jewish community and Israelis, including families of hostages taken on October 7th. Mohsen has never been violent in his activism and always stayed within the bounds of the law.

Mohsen is a brilliant young man, and his academic achievements are a testament to this. He is a philosophy major due to graduate next month. He was accepted to graduate school at Columbia. Mohsen's dreams are to become a lawyer and to work in the field of human rights law. He believes in the rule of law. When I was accepted to law school, Mohsen told me that we would be right behind me and catch up. I believe he will not only attain this goal but become one of the finest litigators and defenders of human rights.

I am deeply concerned about his well-being and the effects a long period of detention will have on him, the community, and his academic pursuits. Mohsen is beloved by everyone in the Upper Valley who has met him. Everyone is feeling a profound sense of loss due to his absence and what transpired which I captured on video. I believe Mohsen is not a flight risk, and his deep roots in our community are a testament to this.

**I declare that the above statements are true and correct to the best of my knowledge and ability.**

Respectfully,

Christopher J. Helali

# EXHIBIT 1-BJ

To Whom It May Concern,                                          April 17, 2025

I am writing this letter in strong support of Mohsen Mahdawi, a dear friend whom I have had the privilege of knowing since the spring of 2021. Over the past several years, we have spent meaningful time together in both Vermont and New York—sharing meals, engaging in deep conversations about global peace efforts, and playing music. These moments have offered me a consistent window into Mohsen's extraordinary character, which is rooted in empathy, clarity, and deep integrity.

When I first met Mohsen, I was working as a Waldorf teacher in Vermont. During a pivotal time in my life, when I transitioned to a new teaching position, Mohsen offered his support in a way that was both generous and grounding—helping me move and offering emotional steadiness through a stressful period. This is just one example of his quiet, unwavering commitment to the people in his life.

Mohsen is not only a friend but also a deeply principled person whose life is devoted to inner growth, social justice, and collective liberation. His commitment to non-violence is not performative—it is rooted in practice, study, and a constant effort to understand himself and others more deeply. He brings a calm, thoughtful presence into every space he enters, and models compassion in moments that demand courage and nuance.

His academic and campus contributions are significant. Mohsen co-founded both the Palestinian Student Union and Columbia Apartheid Divest, organizations that have played a vital role in raising awareness, building solidarity, and fostering respectful dialogue around pressing global issues. He has organized peaceful protests, consistently encouraging approaches rooted in nonviolence and bridge-building. His engagement in interfaith and intercultural activities has demonstrated a rare capacity for listening, synthesis, and creating space for mutual understanding among communities that often struggle to connect.

Mohsen also has a long-standing history of prosocial behavior—offering support to peers, mentoring younger students, and volunteering his time and labor to collective projects. In addition to his organizing work, Mohsen has literally helped build community: he has been part of local building projects, showing up physically to help others create spaces of care, learning, and mutual aid. Whether through philosophical dialogue or showing up with tools in hand, he offers himself wholly.

Academically, Mohsen is a serious and gifted student of philosophy. His intellectual rigor, combined with his ethical commitment, has led to his acceptance into a master's program at Columbia—an achievement that speaks to both his brilliance and his steady

**JA 211**

work ethic. He is not only pursuing knowledge, but integrating it into action, shaping his life around principles that serve both individual growth and collective liberation.

His current detention has sent a tremor through our community. His absence is felt deeply—emotionally, professionally, and socially. Mohsen is a pillar in our shared efforts to cultivate justice, empathy, and thoughtful resistance. His presence is not only stabilizing—it is transformative.

I can say without hesitation that Mohsen is not a flight risk. He is profoundly rooted here: in relationships, in responsibilities, in commitments both academic and personal. His dedication to his studies, his work, and his community is steadfast.

I miss him. We miss him. His absence is not only a loss for those who love him, but a loss to the very institutions and communities that he has so patiently and powerfully helped to build.

I declare that the above statements are true and correct to the best of my knowledge and ability.

Sincerely,

Cory Waletzko

Portland, ME

# EXHIBIT 1-BK

April 17, 2025

I, Daniel D. Fraser, depose and state as follows:

I am an individual of sound mind and legal age writing this of my own free will. I submit this affidavit based on my personal knowledge and relationship with Mohsen K. Mahdawi, my dear friend and roommate.

Mohsen and I met over nine years ago, in Dec. of 2015. He was looking for a place to live and I had a room available. We met and instantly connected, he moved in on Jan. 4, 2016. Since that time our friendship has grown having been built on trust and respect for each other. He was new to the area, but quickly learned his way around, he studied hard to fine tune his language skills and understand how our culture was different from the one he grew up in. He has flurished in every area, studying long and hard to become fluent in English, finding employment, pursuing higher education.

As our bond as friends grew we found our lives overlapping more and more. The Upper Valley area of VT/NH is a small place and everyone knows everyone else. At the time, I was running and managing my family business, a general store. Mohsen was balancing taking classes at Dartmouth College, in Hanover, NH (1 mile away from where we live) with trying to find employment that would be flexible for his class schedule and academic work load. I hired him to be a manager at our family store. Mohsen was given a key to the front door, the code to the alarm system, full access to financial information, opened and closed the store independently when scheduled, managed staff, and did everything from stocking shelves, running register to office management and handling thousands of dollars (in cash) on a daily basis. If this was not enough, he used his technology skills to install a more thorough security system throughout the entire store (many rooms and 3 floors). He successfully negoiated a new credit card rate with our carrier saving us in the ballpark of $20,000 to $30,000 in just one year! Finally he used his computer skills to successfully navigate our computer point of sale system allowing us to no longer require the services of our existing contractor. This alone saved us over $15,000.00 in service calls, maintenance, etc. Mohsen could do it all and was available 24/7 to assist (unlike the previous company that worked a regular 9-5, Mon.-Fri. schedule, providing us with no night or weekend support. Finally Mohsen upgraded the system and after much research changed our platform to a much faster, efficient system.

Mohsen and I have traveled together repeated to different destinations in the USA. We have met many people from a wide range of backgrounds who have become friends of ours that we still stay in contact with. He has an amazing talent when it comes to connecting and establishing bonds with people. He loves to learn each persons story, goals and adventures. He has establishe close friendships with people from many countries around the world and a wide range of religions including those of the Jewish, Catholic, Unitarian Universalist and Buddist religions. He is well respect by many religious leaders of various faiths across the country.

**JA 214**

Mohsen has welcomed me into his family via phone and facetime (since they live in Palestine) and I have brought him to many of my family gatherings on various holidays (Thanksgiving, Christmas), cookouts, etc. He knows all my siblings, nieces, nephews, parents as well as many extended family members too.

He loves to cook and is extremely talented at it too. On more than one occasion while at Dartmouth he has invited students over to share meals. He once invited 12 students all from different countries to join us. He made authenic dishes such as mansaf, maqloobah, kuftah, just to name a few. His friends have become mine and mine his. I am still in contact with several from this group many years later. He helps people bond over meals and our home has become a melting pot for individuals around the world to learn, respect each other and enjoy different cultures. Mohsen forms very strong bonds with all people regardless of age, religion, economic status or any other factor. People instantly sense his commitment and pasion for making the world a more loving and peaceful place and want to surround themselves with Mohsen's energy.

He happily shares his life story and has spoken dozens of times around the Upper Valley at many schools, houses of worship and for non-profits. He has also presented at several conventions and workshops around the country (Chicago, California)  as the key-note speaker.

In our comunity, he has supported many non-profits by attending fundraising events and/or helping to set up or work at activities: everything from The Lions Club annual Fair, The Women's Club Ciitizen of the Year event, Dismas House (support for first time offenders), The Haven (homless/food shelter) the list goes on and on.

Mohsen is dedicated to making the world a better place, using peace as the unifying and underlying common thread. I have witnessed him do this  in our neighborhood, in the town, and through his participation in groups and clubs at colleges/universities.  He always wants to foster dialogue and give everyone a voice in finding a non violent solution to any problematic situation.

I am concerned about the effect detention will have on Mohsen, not only for him, but for the void it leaves in our community. Mohsen is dedicated to his educational goals, his friends and most importantly at solving problems through peaceful means. He is genuinely kind and compassionate.

I urge those with the power to do so  to understand the positive impact that Mohsen has on so many in all of his various communities; be it school, houses of worship or the larger town  and various school communities he is connected to. Since he has established such deep roots in so many of our communities  he is not a flight risk.

I submit this affidavit in support of Mohsen Mahdawi affirming his commitment to our community and his non-violent approach to problem solving that creates a more peaceful environment for everyone.

**JA 215**

I affirm that the statements made in this affidavit are true and correct to best of my knowledge and belief.

Wholeheartedly with unwavering support for Mohsen Mahdawi,

Dan Fraser
Norwich, VT

# EXHIBIT 1-BL

David W. Allen, Jr.

60 Laurel Lane

White River Junction, VT 05001

(952) 835-2009

dallenminn@gmail.com

April 17, 2025

To Whom It May Concern:

I am writing this letter in support of my former neighbor, Mohsen Madawi.

I am an active member of my community. I am a member and past President of the Hanover Rotary. I am a board member of local non-profits. I am an active volunteer with the American Red Cross (in fact, I am writing this letter from a hotel room in Jonesboro, Arkansas where I have been helping with a response to horrific flooding and tornado damage). Politically, I am a centrist independent.

Mohsen Madawi is a fine young man who would be a wonderful citizen of the United States of America. As a motivated, very intelligent and compassionate young man, I have no doubt he will accomplish great and positive things. I have heard him express political views which emphasize peaceful resolution of problems and reject antisemitism. I also have heard him express his love for living in Vermont.

It would be a great injustice and loss to our country if Mohsen was deported or denied his citizenship application.

I declare that the above statements are true and correct to the best of my knowledge and ability.

Thank you for consideration.

Sincerely,

*David W. Allen Jr.*

**JA 218**

# EXHIBIT 1-BM

# Letter of Support for Mohsen Mahdawi

April 18, 2025

Dear Honorable Judge,

My name is Hannah Jeffery and I am an Upper Valley community member currently residing in Lebanon, NH. I met Mohsen in 2016 at the former Center for Transformational Practice, a meditation center in White River Junction, VT. Mohsen would frequent the Center, where I lived at the time, to join us for meditation practice, community dinners, film screenings and discussions. His presence always brought warmth, joy and heartfelt love.

As a Jew, I speak for Mohsen's clear, consistent and unwavering commitment to peace, justice and liberation for all peoples. I have never in my experience of Mohsen witnessed or felt the slightest notion of antisemitism nor violence toward any people. As I continued to follow his work for justice at Columbia's campus through his social media postings, I felt and continue to feel a deep resonance with his messaging and steadfast resolution that the future of Israel/Palestine is one where all peoples have equal rights under the law. Mohsen has been quoted many times saying that antisemitism is unjust and that injustice anywhere is a threat to justice everywhere.

Our friendship as an American Jew and Palestinian refugee is a testament to Mohsen's loving, bridge-building character. We've broken bread together, shared stories, laughed together, cried together, and marched together. Despite the harm Jewish Israelis have inflicted upon his people, he has never once held that against me or any Jews he's come into contact with. Instead, Mohsen has called me his sister. Mohsen is a person who reaches across differences, brings people together in peace and believes in the dignity of all life. The removal of his presence would be incongruent with the values upheld by this country, and would stand as a great injustice to the many communities that he has engaged with and supported.

I beseech you for his due process under the law, the upholding of his right to freedom of speech, and his immediate release and return back to Columbia University where he can continue to pursue his degree.

I declare that the above statements are true and correct to the best of my knowledge and ability.

Sincerely,

Hannah Jeffery

Upper Valley community member

# EXHIBIT 1-BN

4/18/2025

To whom it may concern,

My name is Henry Harris, Treasurer and former Chair of the Vermont & New Hampshire National Lawyers Guild. Though I don't know Mr. Mohsen Madawi, I am writing on behalf of the Vermont & New Hampshire Chapter of the National Lawyers Guild to request his immediate release. Many of us are aware of his work at Columbia University, and praise his moral fiber for taking the risk of nonviolent organizing to stop the ongoing genocide and assymetrical warfare against his country and his people. Though such work does take strength of character, being involved in interfaith and intercultural dialog, or clearly peaceful protest, should not be a risk to your right to be a resident of the United States. Of course such activities are protected by law and the constitution for citizens and visitors alike.

Since Mohsen's detention, the community response has been stunning. People who know and love him are driving in from across the country to be involved in the groundswell of community support around White River Junction. As I write 68 people who love him are writing to a text thread that I am party to incessantly, as they organize an event for him today in Hartland. My phone has been buzzing with hundreds of messages from these people for 3 days. His godfather, schoolmates, community leaders, church leaders, and many elders in the Upper Valley community are more animated than I have ever seen them as they rush to support their friend and community member, Mohsen Madawi.


Mohsen is exactly the kind of student we want in our state and in our country, and has been offered the opportunity to earn a masters degree and make his community and his college proud. He stands up respectfully and peacefully for what he believes in, works hard, and lives lawfully. He is not a legal candidate for detention or deportation. Please release him on his own recognizance as soon as possible. I declare that the above statements are true and correct to the best of my knowledge and  ability.

Thank you for your time.


Henry Harris, Treasurer
On Behalf of The Vermont New Hampshire National Lawyers Guild

**JA 222**

# EXHIBIT 1-BO

April 17th, 2025

To Whom It May Concern,

I, John Marshall Hall of Strafford Vermont, am preparing this affidavit on behalf of my friend
Mohsen Mahdawi. I know Mohsen as a friend. I know Mohsen as a teacher. I know Mohsen as a
healer and facilitator.

The central theme I've observed in my 7 year relationship with Mohsen is his recurring
expression of unquestionable devotion to the pursuit of peace. I have never heard or witnessed
any word or behaviour in Mohsen that is in conflict with this theme. In fact, my understanding of
what it means for a man to carry himself, at all times and in all places, with incorruptible integrity
has been decisively illuminated in me by the way that Mohsen has demonstrated this quality in
all of my interactions with him.

This is a good man. He has made our lives better. We need him in our community. Please
release Mohsen Mahdawi from detention and allow him to come back to us, back to his home
and his neighbors and his loved ones.

I declare that the above statements are true and correct to the best of my knowledge and ability.

_____
John Hall          April 17th, 2025

# EXHIBIT 1-BP

April 17, 2025

To whom it may concern:

I write this letter to describe what I know of Mohsen Mahdawi. As quick summary of myself, I'm 54 years old, married, and have four children ranging in age from 9 to 19. I live in Norwich, Vermont, and work as a lawyer in New Hampshire.

I consider my relationship with Mohsen to be between fond acquaintance and friendship. I've known him for approximately 10 years. If I remember correctly, we first met shortly after he moved to the US, to Norwich, Vermont, where I continue to live. He got a job in the general store in town, Dan & Whit's. The store is a couple blocks from my home and I am a frequent customer. Mohsen was working the cash register and with his welcoming, friendly demeanor, I couldn't help but strike up conversation with him. Within a short time, I felt comfortable enough with him to pry a little into his background, and soon we were talking about our shared grief over the lack of peace for all people in the Middle East. His friendly, respectful engagement with me was unchanged when I revealed that I am Jewish—Mohsen accepted this without the slightest tinge of hesitation or added wariness in our relationship.

Mohsen and I had only sporadic interactions after he moved away to begin college, though he would revisit the Upper Valley (the area Vermont & New Hampshire including Norwich and his later, neighboring home town of White River Junction) and our paths sometimes crossed. Each time, I immediately felt Mohsen's heart open to me again.

Over these years, I have heard Mohsen speak publicly about the situation in Israel/Palestine several times. The most recent instance was this past November, 2024. Mohsen was guest lecturer at a lifelong education course on the history of the Israeli-Palestinian conflict. Mohsen described his vision for peaceful coexistence between Israelis and Palestinians and his thoughts on how a Palestinian state could be established alongside Israel.

There is no question in my mind whatsoever that Mohsen Mahdawi is wholly committed to peaceful coexistence among all people, and to the ideals of liberty and justice which have inspired the best of American history and present. The United States can only benefit by welcoming Mohsen as a fellow citizen, and will lose a person of deep wisdom and conviction if he is excluded from our community.

Under penalty of perjury, I declare that the above statements are true and correct to the best of my knowledge and belief.

Sincerely,

Jonathan Teller-Elsberg
60 Church St.
Norwich, Vermont

**JA 226**

# EXHIBIT 1-BQ

**Josiah Proietti**
Vershire, Vermont
Friday, April 18th 2025

To Whom It May Concern:

My name is Josiah Proietti. I am a resident of Vershire, Vermont and a 20 year professional in Higher Education. I write today with the strongest possible plea for the release of my dear friend Mohsen Mahdawi.

I have known Mohsen for five years. In that time, he has become a brother to me. Our friendship has grown through helping each other build homes, walks in the hills of Vermont —hours spent reflecting on life, peace, philosophy, and nature. In every moment, Mohsen has shown himself to be a person of exceptional character—thoughtful, curious, humble, and deeply committed to the wellbeing of others.

Never once have I witnessed Mohsen express hostility or pose even the slightest threat to his community. On the contrary, he has always spoken with profound compassion about the Israeli-Palestinian conflict, seeking peace and mutual understanding over division and fear. His is the voice of a peacemaker, a bridge builder, a scholar, and a friend to many.

Mohsen is not a flight risk. He has no other home but this one. He is a stateless man seeking the safety and dignity of belonging. And no one I know is more deserving of a place to call home than Mohsen. His community is here. I am part of that community, and I, along with many others, take full responsibility for his wellbeing. We will ensure he remains here, safe and accounted for. There is no other place he wants to be.

To detain Mohsen is not only a loss to those of us who love him—it is a loss to the greater civic fabric of this country. He is precisely the kind of individual any nation would be fortunate to embrace: someone who uplifts others, who builds understanding across differences, and who models what it means to be both principled and kind.

Please, let him return to us. Let him walk again among the trees of Vermont. Let him continue his education, his healing work, and his commitment to peace. We need his voice in this country. We need his spirit in our communities.

I urge you, with everything I have, to release Mohsen Mahdawi on bail and allow him to remain where he belongs.

With deepest sincerity,

**Josiah Proietti**
Vershire, Vermont

# EXHIBIT 1-BR

April 17, 2025

To Whom it May Concern:

I am writing this letter in support of Mohsen Madawi.

I am a resident of Hartford, VT and have volunteered side by side with Mohsen on a community project. I found him to be wise and compassionate and dedicated to improving the well-being of those around him, including the most vulnerable among us. We spent many hours over multiple days helping some people in need.

I have also taken my daughters to hear him speak two times. They learned so much from being in his presence and listening to his presentation. He is a role model for young people in that he has learned so much from his difficult life and can speak about complex issues with nuance, empathy and honesty.

Though I don't have a personal relationship with him, I feel compelled to share my limited experience of him. And to say that he is a valued community member. He is well thought of by so many people I know and respect. He is missed by many. And our community benefits from his presence as he is committed to bringing people together.

I declare that the above statements are true and correct to the best of my knowledge and ability.

Sincerely,

Kelly Armbrust (West Hartford, VT)

**JA 230**

# EXHIBIT 1-BS

April 17, 2025


To Whom it May Concern,

My name is Kim Souza. I am a resident of Hartford, Vermont where I operate a small business in the village of White River Junction.

I am writing in support of my friend, Mohsen Mahdawi with a plea to recognize his humanity and the injustice of his detainment.

Mohsen is a friend and beloved member of our community here in Hartford, VT. We first met several years ago at my retail shop where he stopped in after arriving in White River Junction on the train. I meet many, many people in my work and was struck immediately at the profound kindness and warmth he exhibited even during our first encounter.

It was only later that I became more familiar with the heartbreaking and devastating experiences that Mohsen and his family had endured in the refugee camps of the West Bank. To have endured the hardships and trauma that Mohsen has been through and still be able to carry himself with such grace, dignity and compassion for all living beings is nothing short of heroic to me.

Mohsen and I are not close friends, but fellow Vermonters who share a hug when we cross paths in our, seemingly idyllic, town. He is, however, my absolute model for the kind of human being that I strive to be in this life.

Please, please dismiss the absurd charges against Mohsen and allow him to be free to share his genuine love for humanity with everyone he encounters.

I declare that the above statements are true and correct and to the best of my knowledge and ability.


Thank you for your consideration.

*Kim Souza*

Kim Souza
PO Box 663
White River Junction, VT
05001


**JA 232**

# EXHIBIT 1-BT

April, 18 2025

TO WHOM IT MAY CONCERN
Letter of Support for Mohsen Mahdawi

*I declare that the below statements are true and correct to the best of my knowledge and ability.*

My name is Marta Ceroni. I am an environmental sustainability professional and community leader in the Upper Valley of the Connecticut River.

I met Mohsen in 2018 at a regional multi-faith community gathering that had peace building for turbulent times as its focus. We met around a long dinner table. Many of us started to know Mohsen then through the story of his life and his challenging upbringings in the conflicted West Bank.

Over time, while not cultivating an assiduous friendship, I remained tuned in to his community involvement, his entrepreneurial dreams, his life dreams.

I have rarely met someone so invested in building a thriving community, intentionally laying the foundations of its own home, physically and metaphorically. Mohsen exercised his right to peacefully protest the violence in his home country. Simultaneously he has demonstrated deep attachment and care for his new home in Vermont.

Mohsen is a brilliant man with deep integrity and a highly recognized (and demonstrated) moral character. He has unsurpassed leadership and entrepreneurial skills, is a creative problem-solver who can really make a difference in the lives of many. It feels wrong and unnecessary to detain him; he is a loved and esteemed community member who does not pose a threat of any sorts, nor to the US nor to the fabric of our region. I beg anyone in a position of responsibility and authority to do everything in their own moral and professional capacity to return Mohsen to his life of purpose and to us as his neighbors and friends.

With much appreciation for your attention,

Marta Ceroni

Marta Ceroni
Resident of Enfield, NH

JA 234

Friday, April 18, 2025

I pray this letter gets to those who care about the arc of justice.

I want to introduce you to my godson, Mohsen Mahdawi. He is one of the most spiritually gifted young men that I have met; and that is why I accepted him as my spiritual godson in ceremony.

I've known Mohsen for over 10 years, and I've seen him grow with the most caring and compassionate heart for peace for his people, the Palestinian people. Yet his heart of compassion kept growing despite the horrific things he saw as a young child growing up in the West Bank. His heart kept growing. His compassion kept growing, not just for his people, but for the Israelis and the Jewish people.

Please find in your heart get to know the heart of Mohsen. He has made so many friends here in the United States, and many of those friends who've grown to love him are within the Jewish community. A rabbi could speak to the true heart of who Mohsen is. I have never ever heard him utter anything antisemitic. I've only heard his heart of love and care for justice and freedom and peace, which he wants to bring to his people and the people of Israel.

I urge the court to release Mohsen Mahdawi and return him to our community. We feel the vacancy of his absence and his is return will return our community to wholeness.

I declare that the above statements are true and correct to the best of my knowledge and ability.


Sincerely,

Michael G. Denmeade

Michael G Denmeade

# EXHIBIT 1-BV

# Letter of support for Mohsen Mahdawi

My name is Peter Avery and I am writing this letter in support of
Mohsen Mahdawi. I am a retired college professor of mathematics
and know him as a neighbor in my homeowners' community in
Hartford, Vermont. I have also heard him speak in church and have
even walked his dog Sage on occasion. Although I do not know him
as well as some others, he and I have many mutual friends who all
speak very well of him. So my estimation of Mohsen is mainly guided
by their high opinions.

He has been a resident of the community, town and state for 10
years. He is widely respected and admired for his efforts in
overcoming his extremely difficult early life in Palestine. He espouses
and practices peace and co-existence. He is a gentle person and by
all accounts not at all prejudiced or anti-semitic.

As an immigrant myself, I have great admiration for the welcome that
the United States of America has extended to immigrants. Mohsen
has a lot to offer the country if he is allowed to remain here and
become a citizen. He is committed to completing his studies and I am
sure he will be a credit to his adopted country in the future. Please
give him the opportunity to continue to contribute to this great
country.

Thank you for your consideration.

Yours faithfully,

*Peter Avery*

Peter Avery, Ph.D.
48 Laurel Lane, Hartford VT 05001
17 April, 2025

"I declare that the above statements are true and correct to the best
of my knowledge and ability."

**JA 237**

# EXHIBIT 1-BW

**April 18, 2025**

**Love Letter for Mohsen**
*In faith that he is free, peaceful, loving, and will be safely released from unjust detainment.*

To whom it may concern:

I remember the exact moment I met Mohsen.

At the time, I was serving as Director of Religious Education at the First Universalist Society of Hartland (FUSH)—a role I still hold today. It must have been early 2016, perhaps March. I remember it was springtime, and I was filled with joy after another long Vermont winter.

I entered the Fellowship Hall, the downstairs meeting area of the church, for "Coffee Hour." I had just led our Religious Education (RE) program outside in the yurt and was returning the children to their parents and guardians. If it was March, I'm sure the lesson was something about renewal, joy, mud, flowers, and most importantly… love.

As I navigated through the sea of folks chatting merrily and enjoying brunch-style refreshments, my eyes met Mohsen's for the first time.

His peaceful gaze felt familiar. His eyes were warm, welcoming, wise—and carried a hint of pain. I say *familiar* because it didn't feel like meeting someone new; it felt like remembering someone. Someone who had felt both love and fear deeply and had found the wisdom to go inward and choose peace. I recognized that in him, because I've learned to do that as well. I could see he was someone who carried himself with admirable grace. I wanted to be close with him.

Over the years, I have had the pleasure of listening to Mohsen speak so eloquently at FUSH—sharing poems, songs, reflections… his heart. This is a brave thing to do. It requires a vulnerability and openness that many shy away from. But he did not. And people love him for it.

From my own experiences with pain and suffering, I've learned that when you share your truth in a loving way, people can listen in a loving way. When you feel safe to open up, others feel safe to listen and share, too. When you connect with people in the heart space, you co-create a safe space… a home. Mohsen speaks of this often, and it resonates deeply with my own concept of home, community, sanctuary… love.

Through his time at FUSH, it's my understanding that Mohsen found "his people" and his home here in Vermont. There are many wise leaders who attend services at FUSH—it is one of the most welcoming community spaces I've ever encountered. Beyond the church, the Upper Valley community is special: full of beautiful, supportive people. This community has changed my life, and I believe Mohsen would say the same.

Circling back—I do feel that Mohsen and I have become closer over the years, both as heart-centered leaders and as friends within the same community. I'm grateful for the many memories we've shared: countless community dinners, living in the same home, going out for dessert and dancing, celebrating at my daughter's birthday parties, enjoying Halloween parades, attending the memorial service for our dear friend, leading children's RE lessons together, meditating, and sharing our joys and sorrows. In more recent years, we've stayed in touch through social media while he has been away at Columbia University.

This past week, I've found myself reminiscing and wondering when I'll see Mohsen again. It brings a touch of pain to even consider the possibility that I might not. But I dash that fear away with love—because I know that love is the more powerful force. I believe that anything is possible when you are, as Mohsen says, "centered in the power of love."

Mohsen and I have shared a playful, fun, lighthearted connection, and I pray he is released safely so we can celebrate life together again. I miss his sweet smile and laugh. He is such a lovely person, and I miss him dearly. My daughter loves and misses him too—they have a special bond, and she plans to write her own letter about Mohsen.

Below is a link to a video from Mohsen that I believe is essential for people to see in order to better understand who he is, and why he's such a valuable leader in our community. Mohsen's message is rooted in love, unity, and peace. Please take some time today to listen—with your heart. His message has the power to change our world for the better.

[https://catv.cablecast.tv/CablecastPublicSite/show/40985?site=2](https://catv.cablecast.tv/CablecastPublicSite/show/40985?site=2)
*From Junction Arts & Media (JAM) – (3/23/21): Upon learning of Mohsen's detention, Unitarian Universalist Congregation of the Upper Valley (Norwich) member Bob Lucier contacted JAM to share Mohsen's reflections on the challenges he has faced in the U.S. and his hopes for peace. Mohsen is a member of the First Universalist Society of Hartland, VT.*

Please—if you are reading this—I ask that you release my friend safely. I love him. Many people love him. He is an irreplaceable presence in our community and in our world. He has a pure heart, and his intentions are to bring people together for peace.

Sincerely,

Samantha Cronin


I declare that the above statements are true and correct to the best of my knowledge and ability.

# EXHIBIT 1-BX

April 17th, 2025

To Whom It May Concern,

We are writing a letter to request the release of Mohsen Mahdawi from his detainment. When, as a couple, we purchased land and built our home off the beaten path on a Vermont dirt road we weren't sure if our neighbors would want to be left alone or to get to know us. The warmest welcome we received was from our neighbor, Mohsen. He invited us over for dinner and led us on a walk through the woods to explore his quiet, well-loved homestead. We got to know Mohsen in the way that neighbors do, friendly waves, passing conversations, borrowed equipment, shared plowing bills. We learned that Mohsen was a kind, empathetic person with a clear love of the natural world and a peaceful, compassionate presence. We were pleased to discover we shared mutual friends from the community and it was clear that during his time in the US, he has worked hard to form and maintain relationships and put down roots here in Vermont. Mohsen did not speak or boast about his role as a peaceful organizer at his campus but we have not been surprised to learn of his work promoting intercultural and interfaith dialogues because it is very much in keeping with his character. He always seemed like he was eager to contribute in any way he could to this place he has come to call home. One of us is a small business owner and the other a mental health-care professional and a general rule of thumb that our family strives to follow is to care for and show up for our neighbors. Mohsen obviously lives by this rule as well and we are deeply ashamed of the way that the current governing forces of this country and state have re-paid his generous commitment to building bridges. His detention is a harmful and unjust decision that is taking a huge emotional and communal toll on his neighbors, classmates, and friends. Please afford him the treatment that any legal resident is deserving of and end his detainment. He is not a criminal.

We declare that the above statements are true and correct to the best of both of our knowledge and ability.

Sarah Zwikelmaier

Samuel Newman

JA 242

# EXHIBIT 1-BY



**STATE OF VERMONT**
**SENATE CHAMBER**
**115 STATE STREET**
**MONTPELIER, VT**
**05633-5201**

April 17, 2025

To Whom It May Concern:

My name is Rebecca Elizabeth White, and I am a State Senator representing the
Windsor County district and I reside in the village of White River Junction, Vermont. I am
an American born citizen. I am writing in support of my constituent, community member
and friend Mohsen Mahdawi. I urgently request the court return Mohsen Mahdawi.

Mohsen and I met for the first time at the Autumn Moon Festival in Windsor when I was
early in my public service career. We had many mutual connections from the small pond
of being in our twenties and thirties in Hartford, Vermont. What moved us past
acquaintances to friends was that anytime we would bump into each other at social
outings he'd make sure that I knew he was glad I was involved in politics and community
organizing. He seemed to make it a point to say something kind to me that wasn't just
surface level, but was genuine.

Like most millennial Vermonters Mohsen was often exploring the outdoors and even
went so far as to create a space to be in nature for himself in West Fairlee, Vermont. He
had invited my husband and I to visit during the pandemic but we never were able to; I
hope to one day visit that nature space of peace and contemplation with him. To keep
him indoors without access to the environment he has found comfort in, well that is
exceptionally cruel.

Mohsen has also participated in the First Unitarian Universalist Church of Hartland
services, a faith community which I am a member of. I remember one particular lay lead
service he did for the fellow Upper Valley Unitarian Universalist Church. Even over zoom
he still had the ability to convey a gentle calmness when speaking. He joked about the
language barrier of calling ice cubes "snow" where he was from. That stuck with me as a
New Englander because it was a funny cultural difference that helped me understand his
journey of moving to the United States of America.

In a more profound way, that is who Mohsen has been for the Upper Valley community,
a man who has been able to create understanding. Most Vermonters will never visit
Palestine, but we could understand the experiences of growing up in Palestine through
Mohsen. He expressed peaceful and nonviolent responses in the face of state violence,
and was thoughtful in his words in every way.

When Mohsen went to New York City for college I was excited for him, he was sharing
his voice on the path of education like I was on the path of public service. I followed his
peaceful demonstrations at Columbia University on social media from Vermont and
received updates on his studies from mutual friends here. When he reached out asking if

**JA 244**

I would support his path to citizenship I didn't have to think. Of course I would be there for him, just like he has been there for our community.

Following his shocking detainment on April 14th during what was meant to be a citizenship interview but was instead a cruel rouse, I have received an outpouring of constituent inquiries to Mr. Mahdawi's condition. The community of his friends in the Upper Valley are in despair and frightened by the unfathomable reality of his abduction. His detention is causing deep anxiety.

I urgently compel you to allow Mohsen Mahdawi to return to the Upper Valley community, let him be in the natural world and to allow him to continue his educational journey as he chooses.

I declare that the above statements are all true and correct to the best of my knowledge and ability.

Senator Becca White

Windsor County District

# EXHIBIT 1-BZ

To Whom It May Concern:                                      April 17, 2025

I write in support of justice for Mohsen Mahdawi, who was detained by DHS agents on April 14, 2025, despite being a lawful permanent resident of the United States.

I first met Mohsen in a course on the history of Europe leading to the founding of the state of Israel, conducted by Dr. David Bisno in 2015. Bisno invited Mohsen to speak before the class on the contemporary Palestinian experience. I expected an angry presentation. Instead, Mohsen delivered his experiences through the eyes of an innocent child. I was in tears, when I approached him at the end of the speech. That was his introduction as a public figure in our community.

Since then, he has spoken before many faith groups in the region around Hanover, NH and Hartford, VT, espousing understanding and compassion for both the Palestinians and the Jews, resident in Israel, Gaza and the West Bank.

On many occasions my wife, Janet, and I have dined with Mohsen, canoed, with him and discussed matters of the human condition. I have visited his property in Vershire, Vermont and taught him how to cross-country ski.

I have followed his quest to find a resolution of differences between Palestinians and Israelis through compassion, empathy and non-violence. I have watched his interview on CBS 60 Minutes and with CBS News, just prior to his detention.

Most significantly, I heard about a draft blueprint under development with Jewish collaborators for reconciliation between Israel and the Palestinians, founded on mutual understanding of the trauma that both have experienced, often inflicted on one by the other party. Mutual acknowledgment of those traumas is an avenue to such reconciliation. Assuring the future well-being of the next generations of innocent Jewish and Palestinian children is a key motivation for ultimate success.

With the important component of his adoption of Buddhism with its principals of stoicism and non-violence, I see Mohsen as best situated of anyone that I can think of to show the way out of the decades-long accumulation of injury and distrust between the Israelis and the Palestinians.

One of Mohsen's fondest desires was to become a US citizen, a country whose values he admires and treasures. He was so committed to becoming an American who can contribute to the greater good of all that he willingly faced the likelihood of detention by appearing for his citizenship interview in Colchester, VT, where he was indeed detained by DHS agents. He could have fled the country, but elected to face the events that ultimately befell him, trusting that due process and justice would prevail.

I declare that the above statements are true and correct to the best of my knowledge and ability.

Stephen Flanders

Stephen Flanders
3 Cummings Road, Apartment 1037
Hanover, NH

**JA 247**

# EXHIBIT 1-CA

Letter of Support
      for Mohsen Mahdawi
Good Friday, April 18th, 2025

From:

Dr. William Potter,
Emeritus Professor of Biochemistry
64 Azalea Circle, #15
White River Junction, VT
      05001


Dear Officials:

Mr. Mahdawi is my neighbor in the same condominium complex where my family and I now reside. We moved here last summer following my retirement from the University of Tulsa, Department of Chemistry and Biochemistry, to be closer to my new grandson!

Mr. Mahdawi appears to me to be a very good neighbor. I have had several "hi neighbor" conversations in passing with him when he was in town.  During this last winter he did help me shovel out my car. I found him to be a friendly, helpful, intelligent person.

I am quite surprised to find that he was arrested while trying to obtain his citizenship.  To arrest this person is an affront to what America stands for!  We all need to appreciate our constitutional rights for freedom of speech.  These rights are what makes America strong.


Sincerely,

William Potter, PhD

"I declare that the above statements are true and correct to the best of my knowledge and ability."

# EXHIBIT 1-CB

# COLUMBIA UNIVERSITY
## IN THE CITY OF NEW YORK

SCHOOL OF GENERAL STUDIES
OFFICE OF THE DEAN OF STUDENTS

April 21, 2025

To Whom It May Concern:

I write on behalf of Columbia University's School of General Studies ("GS") regarding Mohsen Mahdawi. Mr. Mahdawi is a GS student and has authorized Columbia University to release information regarding his status as a student.

Mr. Mahdawi has completed 111 of 124 credits required to graduate from GS with a Bachelor of Arts (B.A.) degree. He has applied to and is currently scheduled to graduate from GS on May 21, 2025. In order to be eligible for this scheduled graduation, Mr. Mahdawi must complete the required credits by addressing the following: (i) three incomplete courses which he must complete, and (ii) one course in which he is currently enrolled which must complete. Were he available to fulfill these requirements, Mr. Mahdawi would be in a position to graduate on May 21, 2025. If he is unavailable to complete the requirements, Mr. Mahdawi will be unable to graduate at the end of this semester.

Mr. Mahdawi has been admitted to a Master's Degree program with Columbia University's School of International and Public Affairs ("SIPA"), to begin Fall semester 2025. If he does not receive his B.A. degree prior to the start of the semester, Mr. Mahdawi will be ineligible to register in the SIPA program.

Sincerely,

Sara Remedios Bloom, Ph.D.
Associate Dean for Student Success Programming
Columbia University, School of General Studies

**JA 251**

# EXHIBIT 1-CC

