# No. 25-1113

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————————

**MOHSEN MAHDAWI,**

**Petitioner-Appellee,**

v.

**DONALD J. TRUMP, in his official capacity as President of the
United States, PATRICIA HYDE, in her official capacity as
Acting Boston Field Office Director, Immigration and Customs
Enforcement, Enforcement and Removal Operations, J DOE, in
official capacity as Vermont Sub-Office Director of Immigration
and Customs Enforcement, Enforcement and Removal
Operations, TODD LYONS, in his official capacity as Acting
Director, U.S. Immigration and Customs Enforcement, KRISTI
NOEM, in her official capacity as Secretary of The United States
Department of Homeland Security, MARCO A. RUBIO, in his
official capacity as Secretary of State, PAMELA BONDI, in her
official capacity as U.S. Attorney General,**

**Respondents-Appellants.**

———————————

On Appeal from the United States District Court
for the District of Vermont
District Court Case No. 2:25-cv-389

———————————

**BRIEF FOR RESPONDENTS-APPELLANTS**

———————————

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney
General

DREW C. ENSIGN
Deputy Assistant Attorney General
Office of Immigration Litigation

MICHAEL P. DRESCHER
Acting United States Attorney
District of Vermont

ALANNA T. DUONG
Senior Litigation Counsel

DHRUMAN Y. SAMPAT
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice

*Attorneys for Respondents-Appellants*

# TABLE OF CONTENT

INTRODUCTION..............................................................................1

STATEMENT OF JURISDICTION......................................................2

STATEMENT OF THE ISSUE.............................................................3

STATEMENT OF THE CASE ..............................................................3

    A.  Factual Background .................................................................3

    B.  Prior Proceedings....................................................................6

SUMMARY OF ARGUMENT .............................................................9

STANDARD OF REVIEW..................................................................11

ARGUMENT .....................................................................................12

I.    The District Court Lacked Jurisdiction to Review Mahdawi's
Claims.......................................................................................12

    A.  8 U.S.C. § 1252(g) Bars Judicial Review of the
Government's Decision to Commence Removal
Proceedings.........................................................................12

    B.  8 U.S.C. §§ 1252(a)(5) and (b)(9) Channels Mahdawi's
Challenges to the Court of Appeals......................................28

II.    The District Court Lacked Inherent Authority to Release
Mahdawi Under Mapp v. Reno ...................................................39

III.    The District Court Erred in Holding that Mahdawi had Met
his Burden under *Mapp*. .............................................................42

CONCLUSION ....................................................................................45

i

# TABLE OF AUTHORITIES

PAGE(S)

Cases

Ajlani v. Chertoff,
 545 F.3d 229 (2d Cir. 2008) ................................................................. 29

Alvarez v. ICE,
 818 F.3d 1194 (11th Cir. 2016) ........................................................... 14

Bolante v. Keisler,
 506 F.3d 618 (7th Cir. 2007) ............................................................... 42

Cinquemani v. Ashcroft,
 2001 WL 939664 (E.D.N.Y. Aug. 16, 2001) ........................................ 41

Cooper Butt ex rel Q.T.R. v. Barr,
 954 F.3d 901 (6th Cir. 2020) ............................................................... 17

Curtiss-Wright Export Corp.,
 299 U.S. 304 (1936) ............................................................................. 44

Delgado v. Quarantillo,
 643 F.3d 52 (2d Cir. 2011) ........................................... 11, 33, 34, 37, 38

E. Bay Sanctuary Covenant v. Biden,
 993 F.3d 640 (9th Cir. 2021) ................................................................. 9

Elgharib v. Napolitano,
 600 F.3d 597 (6th Cir. 2010) ............................................................... 18

Gonzalez-Alarcon v. Macias,
 884 F.3d 1266 (10th Cir. 2018) ..................................................... 29, 34

Grune v. Coughlin,
 913 F.2d 41 (2d Cir. 1990) .................................................................. 42

*Hernandez v. Gonzalez*,
424 F.3d 42 (1st Cir. 2005) ..................................................... 36

*Humphries v. Various Fed. U.S. INS Emps.*,
164 F.3d 936 (5th Cir. 1999) ................................................. 19

*Hussain v. Gonzales*,
492 F. Supp. 2d 1024 (E.D. Wisc. 2007) ............................... 32

*I.N.S. v. St. Cyr*,
533 U.S. 289 (2001) ...................................................... 15, 39

*J.E.F.M. v. Lynch*,
837 F.3d 1026 (9th Cir. 2016) ...................................... 28, 38

*Jennings v. Rodriguez*,
538 U.S. 281 (2018) ........................................ 24, 30, 31, 33

*Kellici v. Gonzalez*,
472 F.3d 416 (6th Cir. 2006) .................................. 35, 36, 37

*Kerry v. Din*,
576 U.S. 86 (2015) ............................................................. 44

*Kumar v. Holder*,
2013 WL 6092707 (E.D.N.Y. Nov. 18, 2013).......................... 19

*Limpin v. United States*,
828 F. App'x 429 (9th Cir. 2020) ......................................... 14

*Mahdawi v. Trump*,
136 F.4th 443 (2d Cir. 2025) .................2, 3, 4, 5, 8, 9, 22, 23, 24, 32, 33

*Mapp v. Reno*,
241 F.3d 221 (2d Cir. 2001)...................... 1, 11, 39, 40, 41, 42

*Martinez v. Napolitano*,
704 F.3d 620 (9th Cir. 2012) .............................................. 34

*McNary v. Haitian Refugee Center, Inc.*,
  498 U.S. 479 (1991) .............................................................. 15

*Monsalvo v. Bondi*,
  145 S.Ct. 1232 (2025) ........................................................ 29

*Morales-Izquierdo v. Dep't of Homeland Sec.*,
  600 F.3d 1076 (9th Cir. 2010) ........................................... 38

*Nken v. Holder*,
  556 U.S. 418 (2009) ............................................................ 45

*Pham v. Ragbir*,
  141 S. Ct. 227 (2020) ......................................................... 20

*Preiser v. Rodriguez*,
  411 U.S. 475 (1973) ............................................................ 13

*Ragbir v. Homan*,
  923 F.3d 53 (2d Cir. 2019) ...........................14, 15, 16, 18, 19, 20, 25, 28

*Ruiz v. Mukasey*,
  552 F.3d 269 (2d Cir. 2009) .......................................... 34, 38

*Reno v. American-Arab Anti-Discrimination Committee*,
  525 U.S. 471 (1999) ..............................17, 21, 25, 26, 27, 29, 30, 44, 45

*Sissoko v. Rocha*,
  509 F.3d 947 (9th Cir. 2009) ............................................ 13

*Tazu v. Att'y Gen.*,
  975 F.3d 292 (3d Cir. 2020) ................................. 1, 18, 35, 36

*Thunder Basin Coal Co. v. Reich*,
  510 U.S. 200 (1994) ............................................................ 15

*Dep't of Homeland Sec. v. Thuraissigiam*,
  591 U.S. 103 (2020) ........................................................ 21, 27

*Tilton v. Sec. & Exch. Comm'n,*
  824 F.3d 276 (2d Cir. 2016) ................................................................ 12

*Trump v. Hawaii,*
  585 U.S. 667 (2018) ........................................................................... 44

*United States v. Martinez-Fuerte,*
  428 U.S. 543 (1976) ........................................................................... 45

*United States v. Rexach,*
  896 F.2d 710 (2d Cir. 1990) ................................................................ 12

*Vargas v. U.S. Dep't of Homeland Sec.,*
  2017 WL 962420 (W.D. La. Mar. 10, 2017) ........................................ 19

*Velasco Lopez v. Decker,*
  978 F.3d 842 (2d Cir. 2020) ................................................................ 42

*Xiao Ji Chen v. U.S. Dep't of Justice,*
  434 F.3d 144 (2d Cir. 2006) ................................................................ 39

*Zivotofsky ex rel. Zivotofsky v. Kerry,*
  576 U.S. 1, (2015) ............................................................................... 44

*Zundel v. Gonzalez,*
  230 F. App'x 468 (6th Cir. 2007) ........................................................ 18

<u>Statutes</u>

8 U.S.C. § 1182(a)(3)(C) ..................................................................... 27

8 U.S.C. § 1225(b) .............................................................................. 16

8 U.S.C. § 1226 .................................................................................. 23

8 U.S.C. § 1226(a) .............................................................................. 26

8 U.S.C. § 1226(e) ..................................................................... 27, 40, 41

8 U.S.C. § 1227(a)(4)(C) ............................................................... 4

8 U.S.C. § 1252 .............................................................. 25, 28

8 U.S.C. § 1252(b) .......................................................... 33, 35

8 U.S.C. § 1252(a)(5) .................................... 1, 8, 10, 28, 29, 35, 38, 40

8 U.S.C. § 1252(b)(9) ............................ 1, 8, 10, 24, 28, 29, 30, 31

8 U.S.C. § 1252(g) ........................................ 1, 8, 10, 12, 13, 16, 25

Rules

Vermont Rule of Criminal Procedure 48(a) ....................................... 5, 6

Regulations

8 C.F.R. § 1003.19(f) ................................................................ 32

## INTRODUCTION

This appeal arises out of a district court order releasing Petitioner Mohsen Mahdawi from custody pending habeas review. The district court relied on this Court's decision in *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001), in granting this relief. But that order is built on multiple legal errors, starting with the court's exercise of subject matter jurisdiction. Congress expressly foreclosed habeas review of Mahdawi's claims, and he must pursue them through a petition for review ("PFR"). *See Tazu v. Att'y Gen.*, 975 F.3d 292, 294 (3d Cir. 2020) ("For an alien challenging his removal, [the legal path] begins with a [PFR] of his removal order, not a habeas petition.").

The district court erred first in holding that 8 U.S.C. § 1252(g) did not bar review of Mahdawi's claims. The provision clearly prohibits judicial review of claims that arise from the decision or action to commence removal proceedings against an alien. Mahdawi brought these claims through his habeas petition, and the district court cannot review them.

The district court erred again when it determined that the Immigration and Nationality's ("INA") channeling provisions, 8 U.S.C. §§

1

1252(a)(5), (b)(9), did not divest it of subject matter jurisdiction. Congress created a singular path for aliens to raise challenges related to removal. That path preserves Article III judicial review by way of a PFR to the appropriate court of appeals. The district court has no role to play in the process. These jurisdictional bars confirm that the district court lacked the authority to order Mahdawi's release under *Mapp*. That decision no longer remains good law after the REAL ID Act. And even if it does, the district court misapplied that decision.

Ultimately, the district court's reasoning fundamentally conflicts with the INA, as well as the Supreme Court, prior decisions of this Court, and other circuit courts who have interpreted these provisions. Therefore, this Court should find that the district court's decision is erroneous and should reverse.

## STATEMENT OF JURISDICTION

As this Court already concluded, the district court's order releasing Mahdawi under *Mapp* is an appealable order. *See Mahdawi v. Trump*, 136 F.4th 443, 448–49 (2d Cir. 2025).

## STATEMENT OF THE ISSUE

1. Whether the INA deprived the district court from entertaining Mahdawi's petition.

2. Whether the district court erred in ordering Mahdawi's release under this Court's decision in *Mapp*.

## STATEMENT OF THE CASE

A. Factual Background

Mohsen Mahdawi was born and raised in the West Bank. JA1. He is currently a lawful permanent resident who entered the United States on July 1, 2014, under a B-1/B-2 visitor visa. JA263, JA274. On September 26, 2014, shortly after entering the United States, Mahdawi's then-wife filed a Form I-130, Petition for Alien Relative ("I-130 petition") on his behalf before the U.S. Citizenship and Immigration Services ("USCIS") office. JA274. Mahdawi concurrently filed a Form I-485, Application to Register Permanent Residence or Adjust Status ("I-485 application"). *Id.* On January 7, 2015, USCIS approved Mahdawi's I-130 petition and I-485 application. *Id.* As a result, Mahdawi became a conditional permanent resident. *Id.* On June 27, 2018, USCIS approved Mahdawi's application to remove the conditions on his permanent

residency which changed his status from a conditional permanent resident to a lawful permanent resident. *Id.*

Not long after USCIS approved Mahdawi's I-485, Mahdawi divorced his wife. *Id.* This divorce, however, did not take place without incident. On November 18, 2015, two months before their divorce, Mahdawi's then-wife went to the Windsor Police Department and asked the police to "take possession of her personally owned 12GA Mossberg Shotgun" because she and her friend had a "non-physical argument" with Mahdawi. *See* JA347. This encounter with law enforcement, however, was not Mahdawi's last.

A few months before the "non-physical argument" with his wife, a concerned citizen informed the police that Mahdawi often visited a gun shop, where he sought to "purchase a sniper rifle and a machine gun." JA343. When Mahdawi inquired about these weapons, he made it known that he "used to make guns for 'Hezballah[.]'" *Id.* After further investigation, the police spoke with an employee of the gun shop who explained that Mahdawi offered to work there "for no monetary payment" because he wanted to "mak[e] guns and modify[] guns." *Id.* Mahdawi emphasized that "he had considerable firearm experience and used to

4

build modified 9mm submachine guns to kill Jews while he was in Palestine." *Id.* The police also spoke to volunteers at the Precision Museum and learned that Mahdawi visited often, took pictures of vintage firearms, expressed interest "in purchasing an automatic rifle and a sniper rifle[,]" and how Mahdawi made it explicit that he "like[d] to kill Jews." *Id.*

On January 12, 2019, a few months after he had become a lawful permanent resident, Customs and Border Protection officers stopped Mahdawi for possession of LSD, opiate mushrooms, methamphetamine, and $4,125. JA351. During this detention, Mahdawi alleged that he was returning from a two-day trip in Montreal where he visited "a woman he met on a cruise to the Caribbean two weeks before." *Id.* Thereafter, he was arrested by the Vermont State Police for possession of LSD, mushrooms, and methamphetamine. *See* JA352. The charges were ultimately dismissed pursuant to Vermont Rule of Criminal Procedure 48(a) because Mahdawi completed a diversion court program. JA275.

On March 15, 2025, Secretary of State Marco Rubio personally determined pursuant to 8 U.S.C. § 1227(a)(4)(C)(i)-(ii) that Mahdawi's "presence and activities [] in the United States would have potentially

serious adverse foreign policy consequences and would compromise a compelling U.S. foreign policy interest." *See* JA340–41. As a result, Secretary Rubio found that Mahdawi was deportable pursuant to Section 1227(a)(4)(C). *Id.* On April 14, 2025, the Department of Homeland Security initiated removal proceedings against Mahdawi, placed him in detention, and issued him a Notice to Appear ("NTA") under the Immigration and Nationality Act ("INA"). JA275. The NTA alleges that the "Secretary of State has determined that [Mahdawi's] presence and activities in the … United States would have serious adverse foreign policy consequences and would compromise a compelling U.S. foreign policy interest[]" and is removable from the United States pursuant to Section 1227(a)(4)(C)(i). JA263, JA266.[1]

B. Prior Proceedings

On April 14, 2025, Mahdawi filed a petition for writ of habeas corpus in the District of Vermont alleging that his arrest and "attempted removal" was "retaliatory[.]" JA 1. Mahdawi describes himself to be "an

---

[1] Mahdawi is currently scheduled to appear remotely for a master calendar hearing before an immigration judge on September 2, 2025 at 9:00 AM. *See* EOIR Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation (last visited June 23, 2025).

6

outspoken critic of Israel's military campaign in Gaza and an activist and organizer in student protests" and claims that his "targeted detention and attempted removal" is an attempt to "retaliate and punish noncitizens for their speech and expressive conduct related to Palestine and Israel." JA1, JA2. In addition to seeking release, Mahdawi asserted claims under the First Amendment, the Due Process Clause, the Administrative Procedure Act ("APA"), and the non-delegation doctrine. JA14–18.

On that same day, the district court granted Mahdawi's emergency motion for a temporary restraining order and further prohibited the Government from transferring Mahdawi from Vermont to Louisiana and prohibited his removal from the United States. JA21. On April 22, 2025, Mahdawi applied for release on bail pending resolution of his habeas petition. *See* JA22–52. In response, the Government filed a Pre-Hearing Memorandum, and the district court subsequently converted the memorandum into a motion to dismiss. JA 276–96; *see also* JA587. On April 23, 2025, the district court held a status conference on the motion for release under *Mapp v. Reno* and gave the parties an opportunity to further brief the matter. JA587.

7

On April 30, 2025, the district court ordered that Mahdawi be released from custody. *See* JA579. The district court concluded that the jurisdictional bars under 8 U.S.C. § 1252(g), 1226(e), 1252(a)(5), and 1252(b)(9) did not bar its review of Mahdawi's habeas claims. JA558–66. As for the merits, the court concluded the conditions for relief under *Mapp*, were satisfied. JA567–77. The Government sought a stay before the district court, which was denied. JA577-79.

On May 2, 2025, the Government requested that this Court stay the district court's order, arguing that the district court did not have jurisdiction to issue a release order or to issue the extended temporary restraining order. *See* DKT NO. 20. On May 9, 2025, this Court denied the stay finding that the Government had not met its burden, and it would be unlikely to succeed on its appeal of the order releasing Mahdawi and the order extending the TRO. *See Mahdawi v. Trump*, 136 F.4th 443 (2d Cir. 2025). This Court further found that the Government had not shown that Mahdawi's release on bail or that his continued presence in the District of Vermont pending his removal proceedings has caused the Government irreparable injury. *Id.* at 454–55. This Court lastly

determined that the balance of equities weighs heavily against a stay and declined to issue a writ of mandamus. *Id.* at 455.

On May 18, 2025, the Government filed a Petition for Rehearing en banc. DKT NO. 93. That petition remains pending. This appeal follows.

## SUMMARY OF ARGUMENT

This Court should reverse the district court's decision to order Mahdawi's release from detention under the pretense that it had subject matter jurisdiction to review his claims.[2] Congress has made it clear that district courts do not have jurisdiction to review the Executive's authority to place an alien in removal proceedings. Yet, the district court erroneously determined that it had subject matter jurisdiction to review the Executive's sole authority to detain and place Mahdawi in removal proceedings under the guise that Mahdawi brought forth challenges to the legality of his detention.

---

[2] The decision of the motion panel, while published, is not binding on the merits panel because the inquiry with respect to the motion for stay of the district court's order differs from the merits panel's inquiry as to the motion for transfer. *Cf. E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 660 (9th Cir. 2021) ("In deciding whether the court should stay the grant or denial of a preliminary injunction pending appeal, the motions panel is predicting the likelihood of success of the appeal. That is, the motions panel is predicting rather than deciding what our merits panel will decide.").

First, 8 U.S.C. § 1252(g) makes clear: "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings[.]" Yet the district court ignored this statutory provision and found that it had jurisdiction to hear Mahdawi's challenges to the Executive's decisions and actions to place him in removal proceedings simply because such challenges were presented in a habeas petition. And even in circumstances where an alien brings forth constitutional challenges, the Supreme Court has still found that such a challenge falls squarely within Section 1252(g). Because Mahdawi is explicitly challenging the Executive's decision to place him in removal proceedings, the district court did not have jurisdiction to review those claims.

Second, 8 U.S.C. §§ 1252(a)(5) and (b)(9) also precludes the district court from exercising jurisdiction to review challenges related to removal. Congress created an exclusive path to raise such challenges by way of a PFR. Only then can an alien present a constitutional challenge. Yet, the district court found that it had jurisdiction to review Mahdawi's habeas petition despite Mahdawi's explicit allegations against the Executive's decision to place him in removal proceedings.

10

Because the district court did not have subject matter jurisdiction to review Mahdawi's claims, it did not have inherent authority to release Mahdawi from detention. Yet, the district court not only found that it had jurisdiction to assess whether Mahdawi would be released, but did so pursuant to *Mapp v. Reno*, a Second Circuit case that was published *prior* to Congress expanding the jurisdictional limits to review immigration matters. Therefore, the district court erroneously relied on *Mapp* in order to find that it had jurisdiction to release him from immigration detention. Even if *Mapp* is applicable to this matter, Mahdawi did not establish that extraordinary circumstances exist.

For these reasons, this Court should reverse the district court's decision.

## STANDARD OF REVIEW

This Court reviews *de novo* the district court's determination of subject matter jurisdiction and its conclusion that the federal courts have inherent authority to release habeas petitioners on bail. *See Mapp*, 241 F.3d at 224; *Delgado v. Quarantillo*, 643 F.3d 52, 54 (2d Cir. 2011); *Tilton v. Sec. & Exch. Comm'n*, 824 F.3d 276, 281 (2d Cir. 2016); *see generally United States v. Rexach*, 896 F.2d 710, 713 (2d Cir. 1990) ("Whether the

11

district court applied correct principles of law is a matter of law that we may view *de novo*.").

## ARGUMENT

I.  THE DISTRICT COURT LACKED JURISDICTION TO REVIEW MAHDAWI'S CLAIMS

A. 8 U.S.C. § 1252(g) Bars Judicial Review of the Government's Decision to Commence Removal Proceedings

Mahdawi is challenging the Government's decision to commence removal proceedings against him, regardless of how he styled his claims. Congress, however, has made clear that "notwithstanding any other provision of law (statutory or nonstatutory), including *section 2241 of title 28*, or *any other habeas corpus* provision … no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g) (emphasis added). If an alien's claim arises from the Executive's decision to commence removal proceedings, no court—including the district court below—has jurisdiction to review such claims.

The district court did not have jurisdiction to review Mahdawi's claims because he is challenging the commencement of removal proceedings which is prohibited under Section 1252(g). The district court erred when it found jurisdiction on the ground that it was reviewing "Mr. Mahdawi's arrest and detention," JA563, because Mahdawi's detention arose from the Government's decision to commence removal proceedings against him. *See Sissoko v. Rocha*, 509 F.3d 947, 959 (9th Cir. 2009). Therefore, Mahdawi's challenge "aris[es] from the decision [and] action" to commence removal proceedings. 8 U.S.C. § 1252(g).

Mahdawi cannot bypass Congress's jurisdictional limitations by way of artful pleading. Reading Mahdawi's challenge to his detention to circumvent the bar contained in Section 1252(g) would render meaningless the provision's expressed mention of precluding habeas review. After all, habeas is meant to challenge the legality of detention. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (holding that "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody"). The district court's order upsets the plain language of the statute. Therefore, Mahdawi's challenge to his detention

13

does not erase the fact that he is indeed challenging the commencement of his removal proceedings.

Fundamentally, Mahdawi is challenging the fact that he is detained, *on the ground* that he cannot be removed, which falls squarely within Section 1252(g). *See e.g.*, *Alvarez v. ICE*, 818 F.3d 1194, 1203 (11th Cir. 2016) ("[Section 1252(g)] bars us from questioning ICE's discretionary decisions to commence removal" and reviewing "ICE's decision to take him into custody and to detain him during removal proceedings."); *see also Limpin v. United States*, 828 F. App'x 429 (9th Cir. 2020) ("[C]laims stemming from the decision to arrest and detain an alien at the commencement of removal proceedings are not within any court's discretion."). By finding it had jurisdiction, the district court allowed Mahdawi to "bypass § 1252(g) through mere styling of [his] claims." *Ragbir v. Homan*, 923 F.3d 53, 64 (2d Cir. 2019), *cert. granted, judgment vacated sub nom. Pham v. Ragbir*, 141 S. Ct. 227 (2020).

When analyzing Section 1252(g), the district court failed to consider that Congress strengthened Section 1252(g)'s jurisdictional limitations after the *Reno v. American-Arab Anti-Discrimination Committee* ("*AADC*") decision: "[B]y adding unmistakably clear language, it

14

'eliminat[ed] the availability of habeas corpus relief in the United States District Courts for aliens seeking to challenge orders of removal entered against them.'" *Ragbir*, 923 F.3d at 65; *see also AADC*, 525 U.S. 471 (1999). Before the enactment of IIRIRA, district courts assumed jurisdiction over cases brought forward by aliens who sought review of their deportation proceedings. *See, e.g., McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991). Through the enactment of IIRIRA, Congress included "expansive language" demonstrating their "fairly discernable" intent to preclude district court involvement in removal cases. *See Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 215–16 (1994). However, in *I.N.S. v. St. Cyr*, the Supreme Court held that IIRIRA's judicial review amendments did not preclude district court review of removal orders and therefore aliens who were barred from raising legal questions directly in the court of appeals could raise such claims in habeas proceedings. *See* 533 U.S. 289, 297–98 (2001). In response, Congress enacted the REAL ID Act and expanded IIRIRA's jurisdictional bars to expressly preclude habeas corpus review within the same statutory body that precludes judicial review of the government's decision "to commence proceedings, adjudicate cases, or execute removal

15

orders." *See* 8 U.S.C. § 1252(g). By expanding Section 1252(g) to include habeas, Congress clearly intended to preclude review of the government's decision to detain an alien as well as the government's decision to place an individual in removal proceedings.

This expansion of Section 1252(g)'s jurisdictional limitations confirms that Congress intended to preclude review of the Government's decision to detain an alien—even while presenting constitutional claims—because like the commencement of proceedings, the decision to place someone in detention requires the government's discretion. At times, detention pending removal proceedings is mandatory and other times its discretionary. *See* 8 U.S.C. §§ 1225(b), 1226(a), 1226(c). As such, detention determinations fall squarely within government's "decision or action" to "commence proceedings." *See Ragbir*, 923 F.3d at 65–66 ("Taken together with § 1252(g)'s clear elimination of habeas corpus jurisdiction, it follows that the statute purports to forbid bringing even constitutional claims in such a proceeding …, and so Congress's legislative 'intent must be respected *even if a difficult constitutional question is presented.*") (emphasis added).

16

The mere fact that Mahdawi is presenting constitutional questions in connection to his detention and the commencement of removal proceedings does not grant the district court jurisdiction. The Supreme Court made clear in *AADC* that "an alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his deportation." *AADC*, 525 U.S. at 488. The government even admitted in *AADC* that "the alleged First Amendment activity was the basis for selecting the individuals for adverse action." *Id.* at 488 n.10. Regardless of this admission, the Supreme Court still found that the "challenge to the Attorney General's decision to 'commence proceedings' against them falls squarely within § 1252(g)[.]" *Id.* at 487; *see also Cooper Butt ex rel Q.T.R. v. Barr*, 954 F.3d 901, 908–09 (6th Cir. 2020) (holding that the district court did not have jurisdiction to review a claim that the plaintiffs' father "was removed 'based upon ethnic, religious, and racial bias' in violation of the Equal Protection Clause of the Fifth Amendment."). Accordingly, the fact that Mahdawi alleges that the commencement of proceedings against him and his detention are in retaliation for exercising his First Amendment rights do not escape Section 1252(g)'s scope. *See, e.g.*, *AADC*, 525 U.S. at 487–92 (holding that

17

Section 1252(g) deprived district court of jurisdiction over claim that certain aliens were targeted for deportation in violation of the First Amendment).

Several circuit courts and districts courts have similarly found that district courts lack jurisdiction to review both statutory and constitutional claims because Section 1252(g) bars review of "*any* cause or claim" that arises from the commencement of removal proceedings." *See, e.g.*, *Tazu*, 975 F.3d at 296–98 (holding that any constitutional claims must be brought in a PFR, not a separate district court action); *Elgharib v. Napolitano*, 600 F.3d 597, 602–04 (6th Cir. 2010) (noting that "a natural reading of 'any other provision of law (statutory or nonstatutory)' includes the U.S. Constitution" and finding additional support for the court's interpretation from the remainder of the statute); *Ragbir*, 923 F.3d at 73 (finding habeas jurisdiction appropriate only because the opportunity to present the constitutional claim in a PFR to the appropriate circuit court of appeal was no longer available); *Zundel v. Gonzalez*, 230 F. App'x 468, 475 (6th Cir. 2007) (explaining that First Amendment challenges related to immigration enforcement action "is properly characterized as a challenge to a discretionary decision to

18

'commence proceedings' ... [and] is insulated from judicial review");
*Humphries v. Various Fed. U.S. INS Emps.*, 164 F.3d 936, 345 (5th Cir.
1999) (ruling that Section 1252(g) prohibited review of an alien's First
Amendment claim based on decision to put him into exclusion
proceedings); *Vargas v. U.S. Dep't of Homeland Sec.*, Civ. No. 1:17-cv-
00356, 2017 WL 962420, at *3 (W.D. La. Mar. 10, 2017) (claim that ICE
"violated her First Amendment right to free speech by arresting her and
initiating her removal after she made statements to the media ... is
barred by 8 U.S.C. § 1252(g)."); *Kumar v. Holder*, 2013 WL 6092707, at
*6 (E.D.N.Y. Nov. 18, 2013) (claim of initiation of proceedings in a
retaliatory manner "falls squarely within section 1252(g) ... [and] [t]he
pending immigration proceedings are the appropriate forum for
addressing petitioner's retaliation claim in the first instance."). Of note,
this Court in *Ragbir* analyzed Section 1252(g) and the expansion of the
jurisdictional limits the REAL ID Act implemented and found "that by
adding the words 'statutory or nonstatutory,' Congress further clarified
... it applies even to constitutional claims." *Ragbir*, 923 F.3d at 65.

    The district court attempted to distinguish *Ragbir* by stating that
"Mr. Ragbir's habeas petition challenged his removal proceedings, not his

prior detention." JA562. This is inaccurate. By the time Ragbir filed a petition for writ of habeas corpus, his removal proceedings had been finalized, and a final order of removal had been issued. *See Ragbir*, 923 F.3d at 58–60. In fact, Ragbir was challenging ICE's decision to revoke his stay of removal as well as his detention, and alleged that ICE revoked his stay request in retaliation to his speech. *Id.* at 60–61. Not only did this Court find that DHS's discretion to grant a stay of removal and its discretion to revoke a stay of said removal fit within the confines of Section 1252(g), *see id.* n.13, but this Court also found that despite Ragbir's allegation that his stay was revoked because of his speech—and the Court agreeing that such revocation took place *because* of his speech—"the Government's challenged conduct falls squarely within the ostensible jurisdictional limitation of § 1252(g)." *Id.* Therefore, *Ragbir* supports the Government's position: the district court did not have jurisdiction to review Mahdawi's claims, regardless of the constitutional claims attached to the detention claims because 1252(g) prohibits such review.[3]

---

[3] The Supreme Court vacated *Ragbir* following its decision in *Dep't of Homeland Sec. v. Thuraissigiam. See Pham v. Ragbir*, 141 S. Ct. 227

*Continued on next page.*

The district court also misapplied *AADC* and *Jennings* because it determined that the holding in those matters would allow for "exercise of habeas jurisdiction in cases that do not seek to challenge the removal proceedings but are directed instead at administrative detention alleged to be employed to stifle protected speech." JA563. Yet, this matter is identical to *AADC* because Mahdawi is challenging the fact that he has been placed in removal proceedings. As a point of comparison, in *AADC*, "Respondents sued petitioners for allegedly targeting them for deportation because of their affiliation with a politically unpopular group." 525 U.S. at 472. This is no different from Mahdawi's claim that "[t]his case concerns the government's retaliatory and targeted detention and attempted removal of Mr. Mahdawi for his constitutionally protected speech." *See* JA1. Although Mahdawi's challenge extends to his detention, the challenge is based on his belief that he should not be in removal proceedings in the first place, and that decision to detain is

_____

(2020). That is telling because there the Supreme Court held that alien petitioners could not rely on habeas to obtain review on whether they would be permitted to remain in the country. *See Dep't of Homeland Sec. v. Thuraissigiam,* 591 U.S. 103, 125 (2020). The decision reaffirms the impropriety of the district court to entertain a habeas petition challenging actions related to removal.

incidental to the decision to commence removal proceedings. *See e.g.*, JA2 ("Respondents seek to base Mr. Mahdawi's removal on the Rubio Determination and Section 237(a)(4)(C)(i) of the [INA]); JA16 ("The government has adopted a Policy of targeting noncitizens for removal on the basis of First Amendment protected speech which advocates for Palestinian rights."); JA18 (Mahdawi generally challenges the Executive Branch's authority to place noncitizens in removal proceedings.). Notably, the fact that Mahdawi requested that the district court "vacate and set aside Respondents' unlawful Policy of targeting noncitizens for removal based on First Amendment protected speech" and to "Vacate and set aside the Rubio Determination" clearly demonstrates that he is challenging the decisions that were the impetus to commence removal proceedings. *See* JA18 (Prayer for Relief).

This Court noted in its decision to deny the Government's stay request that *AADC* and this matter are distinct in that "[t]he habeas claims in that case did not sound in unlawful detention at all, and *AADC* is therefore of no help to the government." *Mahdawi*, 136 F.4th at 451. That makes no difference. *AADC* held that Section 1252(g) barred those petitioners' challenges to the commencement of removal proceedings

22

against them. Because the decision to detain is inextricably intertwined with the Executive's discretionary decision to commence removal proceedings, Mahdawi's claim is barred for the same reason as the petitioners' in *AADC*. Moreover, at the time *AADC* was decided, Congress had not expanded Section 1252(g)'s reach of judicial limit to explicitly cover habeas proceedings—a change that makes crystal clear that Congress sought to sweep challenges to detention within the scope of Section 1252(g). *See supra* at 12–13.

In addition, the stay panel sought to disregard Section 1252(g) on the ground that Mahdawi's claims do not "'arise from the decision to adjudicate [his] removal case' since it does not 'implicant the Executive's discretion' to continue or withdraw such a proceeding" and "since no removal order has been entered, Mahdawi's detention-related claims could not 'possibly "arise from" the execution of a removal order.'" 136 F.4th at 451. That is wrong. The INA gives the Executive discretion whether to detain an alien pending removal proceedings, 8 U.S.C. § 1226, to ensure that an alien attends his removal proceedings or that he is to be removed from the country after a removal order is issued. The commencement of proceedings, the adjudication of proceedings, and the

23

execution of a final order of removal all require the Executive to exercise its discretion to detain an individual and for this reason Congress precluded habeas review within Section 1252(g).[4]

The district court also misapplied *Jennings*. The district court analyzed *Jennings* and interpreted the decision to state that Section 1252(g) is restricted "to 'the three listed actions of the Attorney General.'" *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018). However, upon closer review of the *Jennings* decision, it is clear that the Supreme Court was comparing Section 1252(g) with Section 1252(b)(9). In doing so, the Supreme Court found that Section 1252(b)(9), *unlike* Section 1252(g), *does not* present a jurisdictional bar in "asking for review of an order of removal; *they are not challenging the decision to detain them in the first place* or to seek removal; and they are not even challenging any part of the process by which their removability[.]" *Jennings*, 583 at 294. In other words, Section 1252(g) bars review of an alien's challenge to "the decision

---

[4] It makes no difference that Petitioner's detention was not "mandated" by the commencement of removal proceedings. *Cf.*, *Mahdawi*, 136 F.4th at 451. What matters is that in this case the government exercised its discretion to detain Mahdawi upon arresting him and commencing removal proceedings. Detention and commencement cannot be separated.

24

to detain them[.]" *Id.* Mahdawi's challenge is exactly that. As a result, pursuant to 8 U.S.C. § 1252(g), the district court cannot question the Executive's decision to place Mahdawi in removal proceedings and or detention.

Mahdawi, however, is not without recourse. Based on the statutory scheme, Congress intended to preclude judicial review of a decision to place an individual in removal proceedings—which includes the decision to place someone in detention—because it has created a streamlined process to review such actions. *See AADC*, 525 U.S. at 494 (Ginsburg, R., concurring in part). Under 8 U.S.C. § 1252, Congress channeled into the statutorily prescribed removal process all legal and factual questions—including constitutional issues—that may arise from the removal of an alien, with judicial review vested exclusively in the court of appeals. *See AADC*, 525 U.S. at 483. Unlike in *Ragbir*—where the Second Circuit recognized that Ragbir "state[d] a cognizable claim but, through its adoption of § 1252(g), Congress foreclosed all grants of jurisdiction," and such a claim arose *after* the conclusion of Ragbir's removal proceedings, *Ragbir*, 923 F.3d at 73—here, Mahdawi's removal proceedings have recently commenced which allows him the opportunity to litigate his

25

removability charge in immigration court, as well as present constitutional and legal questions before the appropriate appellate court. Therefore, review of his claims by the district court is not only improper but also interrupts the statutorily enacted streamlined process that allows for review of the claims Mahdawi presents. Indeed, Section 1252(g)'s language protects the government's authority to make "discretionary determinations" and discourages "separate rounds of judicial intervention outside the streamlined process that Congress has designed." *See AADC*, 525 U.S. at 485. Importantly, Congress provided discretion to detain aliens pending removal proceedings. In this case, Mahdawi has been found to be removable under 8 U.S.C. § 1227(a)(4)(C)(i), and Congress authorized his detention pursuant to 8 U.S.C. § 1226(a).

Section 1252(g) is meant to prevent "a particular evil: attempts to impose judicial constraints upon [certain categories of] prosecutorial discretion." *AADC*, 525 U.S. at 485 n.9. In other words, Congress's goal in drafting Section 1252(g) was to protect the Executive's discretion and at the same time avoid "deconstruction, fragmentation, and hence prolongation of removal proceedings." *Id.* at 487. This protection ensures

26

that the government maintains discretion to determine whether and when to commence removal proceedings against an alien, and if judicial review is to take place over specific claims, "providing that if they are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed." *Id.* at 485. The same logic applies to the government's decision to detain an individual at the commencement of their removal proceedings. *See e.g.*, 8 U.S.C. § 1226(e).

Congress intended "to 'protec[t] the Executive's discretion' from undue interference by the courts; indeed, 'that can fairly be said to be the theme of [IIRIRA][.]'" *Thuraissigiam*, 591 U.S. at 112 (quoting *AADC*, 525 U.S. at 486). But here, several rounds of judicial intervention has already taken place—significantly, the district court's decision to assume jurisdiction to review the very claims Congress prohibited and subsequently order Mahdawi's release. Secretary of State Rubio however exercised his statutory authority pursuant to 8 U.S.C. § 1182(a)(3)(C) and personally determined that Mahdawi is removable under Section 1227(a)(4)(C)(i). The district court does not have authority nor the expertise to question the Executive's duly assigned statutory power to

place an individual in removal proceedings. Therefore, the district court erred in finding that it had jurisdiction to review Mahdawi's claims.

### B. 8 U.S.C. §§ 1252(a)(5) and (b)(9) Channels Mahdawi's Challenges to the Court of Appeals.

The district court also erred when it found that 8 U.S.C. § 1252(a)(5) and (b)(9) did not preclude it from reviewing Mahdawi's claims. As previously discussed, Mahdawi is challenging the commencement of removal proceedings. However, as previously noted, 1252(g) "purports to forbid bringing even constitutional claims in such a proceeding." *Ragbir*, 923 F.3d at 65. Both Sections 1252(a)(5) and 1252(b)(9) further Section 1252(g)'s goal. "Taken together, § 1252(a)(5) and § 1252(b)(9) mean that *any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed only through the [petition-for-review] process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016). Therefore, both statutes further prohibit the district court from assuming jurisdiction to review Mahdawi's claims.

Through the enactment of 8 U.S.C. § 1252, Congress channeled into the statutorily prescribed removal process all legal and factual questions—including constitutional issues—that may arise from the removal of an alien, with judicial review of those decisions vested

28

exclusively in the court of appeals. *See AADC*, 525 U.S. at 483. As a result, district courts are explicitly prohibited from adjudicating such issues. Section 1252 requires an alien to exhaust all issues first in immigration court and then the Board of Immigration Appeals ("BIA"), and if the alien is subjected to a final order of removal, he or she may seek judicial review of any legal, constitutional, or factual question in the court of appeals through a PFR. *See* 8 U.S.C. §§ 1252(a)(5), (b)(9); *see also Ajlani v. Chertoff*, 545 F.3d 229, 235 (2d Cir. 2008); *accord Monsalvo v. Bondi*, 145 S.Ct. 1232, 1241 (2025) ("Section 1252 permits individuals to petition for judicial review of 'final orders of removal' and indicates that those petitions supply the *exclusive* means for securing '[j]udicial review of all questions of law.'" (emphasis added)).

Section 1252(b)(9) supports this goal because it covers "all questions of law and fact … arising from any action taken or proceeding brought to remove an alien" and that language covers detention-related challenges, especially when combined with challenges that question the validity of their removal proceedings. *See, e.g.*, *Gonzalez-Alarcon v. Macias*, 884 F.3d 1266, 1275 (10th Cir. 2018) ("Although Gonzalez-Alacron seeks

29

release from detention, his claim is based on the alleged invalidity of his removal order.").

Congress divested the district courts from having jurisdiction, including habeas jurisdiction, over claims like Mahdawi's and channeled all challenges to immigration proceedings and to the court of appeals. *See* 8 U.S.C. § 1252(b)(9) ("no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision" to review questions of law or fact that arises "from any action taken or proceeding brought to remove an alien from the United States" by any other means but review of a final order of removal). The Supreme Court has recognized Section 1252(b)(9) as an "unmistakable 'zipper' clause" that "channels judicial review of *all* [claims arising from deportation proceedings]" to a court of appeals in the first instance. *AADC*, 525 U.S. at 483. This includes constitutional challenges to the charges of removability. As Justice Thomas aptly noted, "Section 1252(b)(9) is a 'general jurisdictional limitation' that applies to 'all claims arising from deportation proceedings' . . . [including] [d]etaining an alien" and further describes "detention during removal proceedings as an 'aspect of the deportation process.'" *Jennings*, 538 U.S. at 317 (Thomas, J. concurring

30

in part). Therefore, "[c]laims challenging detention during removal proceedings [] fall within the heartland of 1252(b)(9)." *Id.* The district court erred when it found jurisdiction by delineating the removal proceeding claims from the detention claims, when in fact they are one in the same. JA565–66.

The district court also erred in finding that Section 1252(a)(5) does not preclude judicial review. Specifically, the district court determined that because "Mahdawi's habeas petition challenges only his arrest and detention—not the removal proceedings—§ 1252(a)(5) is very unlikely to bar his petition." JA565. However, the habeas petition is riddled with claims challenging the removal proceedings, including the determination that led to the commencement of removal proceeding, and even requests that the court—in a habeas petition—"[v]acate and set aside Respondents' unlawful Policy of targeting noncitizens *for removal*[.]" *See* JA18. Therefore, it is clear that Mahdawi's challenge to the merits of his charges of removability are improper here. Because Mahdawi is challenging his removal proceedings before the district court, the district court lacked jurisdiction to review.

31

The custody redetermination process confirms that Mahdawi's detention cannot be resolved without affecting his removal proceedings. Immigration judges ("IJ") cannot review custody determinations for someone like Mahdawi, who is charged removable under Section 1227(a)(4). 8 C.F.R. § 1003.19(h)(2)(i)(C). Madhawi can request that an IJ determine whether he is properly subject to removal under Section 1227(a)(4). 8 C.F.R. § 1003.19(h)(2)(ii); *see also Hussain v. Gonzales*, 492 F. Supp. 2d 1024, 1033 (E.D. Wisc. 2007), *aff'd sub nom. Hussain v. Mukasey*, 510 F.3d 739 (7th Cir. 2007). He can submit evidence and legal authority as to whether he is properly included within the removability charge to allow the IJ to make the determination in the first place. *Hussain*, 492 F. Supp. 2d at 1033. If Mahdawi disagrees with the determination, he can seek review before the BIA. 8 C.F.R. § 1003.19(f); *see also Hussain*, 492 F. Supp. 2d at 1033 (discussing the Board's decision determining proper detention authority and custody review process).

The stay panel determined that Section 1252(b) contradicts the Government's argument and "Mahdawi's unlawful detention claims may be resolved without affecting pending removal proceedings." 136 F.4th at 451–52. That is not what matters. Section 1252(b) encompasses claims

"arising from *any* action taken or proceeding brought to remove an alien…." 8 U.S.C. § 1252(b). "[D]etention *is* an 'action taken … to remove' an alien," *Jennings*, 583 U.S. at 318 (Thomas, J., concurring), and so the adjudication of Mahdawi's detention necessarily affects the government's efforts at removal. This result is not "absurd," as the stay panel thought. *See Mahdawi*, 136 F.4th at 452. It simply reflects the close relationship between the decision to *detain* pending removal proceedings and the *commencement* of those proceedings. If Mahdawi is to challenge his detention, he must do so through the petitioner for review channel that Congress has created. The alternative is what has happened here: multiple parallel proceedings—in federal court and immigration court—taking place simultaneously, contrary to Congress's decision of channeling review through the courts of appeals.

Here, Mahdawi has not exhausted these channels of review and instead is seeking immediate review outside of the streamlined process Congress has created. Even when the substance of a suit is an *indirect* challenge to removal, the district court is still barred from reviewing pursuant to the INA. *See Delgado*, 643 F.3d at 55. Conversely, only when an action is "unrelated to any removal action or proceeding" is it within

33

the district court's jurisdiction." *Ruiz v. Mukasey*, 552 F.3d 269, 274 n.3 (2d Cir. 2009). Ultimately, "the substance of the relief that a plaintiff is seeking" will determine whether the district court has jurisdiction. *Delgado*, 643 F.3d at 55. And here, Mahdawi is arguing that his removal proceedings are unlawful, the charge of removability is unconstitutional, and as a result any detention *connected* to such proceedings is invalid. In sum, this "habeas petition" is a challenge to the commencement of Mahdawi's removal proceedings, and such a challenge *cannot* be heard in district court. *See, e.g., Gonzalez-Alarcon*, 884 F.3d at 1275 ("Although Gonzalez-Alacron seeks release from detention, his claim is based on the alleged invalidity of his removal order."); *Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012) ("When a claim by an alien, however it is framed, challenges the procedure and substance of an agency determination that is inextricably linked to the order of removal, it is prohibited by section 1252(a)(5)."); *Delgado*, 643 F.3d at 55 (if petitioner "is indirectly challenging her reinstated order of removal, ... we hold that section 1252(a)(5)'s jurisdictional bar applies equally to preclude such an indirect challenge").

The district court cited both *Delgado* and *Kellici v. Gonzalez* for the premise that it had jurisdiction because Mahdawi is challenging the constitutionality of his arrest, not the fact that he has been placed in removal proceedings. As an initial matter, the district court misapplied *Kellici*. The district court relied on *Kellici* for the premise that it had jurisdiction to review Mahdawi's habeas petition because "Mahdawi's habeas petition challenges only his arrest and detention—not the removal proceeding[.]" JA565 (citing *Kellici*, 472 F.3d 416, 420 (6th Cir. 2006)). However, context matters. In *Kellici*, the parties had already appeared before an IJ, the BIA, and filed a PFR before the court of appeals. *See id.* at 416–17; *see also* 8 U.S.C. § 1252(a)(5). After the PFR was denied, ICE sent a letter, directing the parties to "report to the INS office in Detroit, Michigan." *Id.* That letter, however, was returned to Postal Service as undeliverable. *Id.* A few months later, ICE arrested Ardian Kellici who then filed a habeas petition, challenging the government's failure to provide him with notice of the date, time, and place of hearing. *Id.* Ardian was removed before the court could render a decision, but he subsequently filed an amended habeas petition where he brought challenges to the final order of removal. *Id.* The Sixth Circuit

35

ultimately concluded that it only had jurisdiction to review the first filed habeas petition. Then the Sixth Circuit analyzed whether the habeas petition challenged "the 'final order of removal,'" which would provide the court with jurisdiction to review. *Id.* at 419. "Where a habeas case does not address the final order, it is not covered by the plain language of the [REAL ID] Act … Here, Ardian's first petition and Marsida's petition did not contest or even mention the hearings before the IJ and the BIA and the final order of removal." *Id.* at 419–20 (citing *Hernandez v. Gonzalez*, 424 F.3d 42, 42–43 (1st Cir. 2005) ("[According to] the legislative history of the Act, those provisions were not intended to 'preclude habeas review over challenges to detention that are not independent of challenges to removal orders.'")). In sum, the Sixth Circuit found that it did not have jurisdiction to review because there was no final order of removal to review pursuant to Section 1252(a)(5). Furthermore, "the Kellicis' habeas petition challenged only the constitutionality of the arrest and detention, *not* the underlying administrative order of removal." *Id.* at 420.

In this instance, Mahdawi, however, has not. It is true that Mahdawi does not yet have a final order of removal. However, unlike the parties in *Kellici*, Mahdawi has not yet finalized proceedings before an

36

IJ, and instead has presented a habeas petition that clearly challenges the commencement of removal proceedings. Ultimately, the *Kellici* matter is at a different procedural posture from this matter, but it still supports the premise that a district court should only have jurisdiction to review a habeas petition that "challenge[s] *only* the constitutionality of the arrest and detention," not the removal proceedings themselves. *Id.* at 420. And here, the district court did not have jurisdiction because Mahdawi is clearly challenging the removal proceedings.

The district court also misapplied *Delgado*. The district court relied on *Delgado* for the premise that "a challenge to an individual's arrest and detention is different," from indirect attacks on removal orders. JA565. However, at no point did this Court in *Delgado* discuss the distinction between challenging detention in a habeas proceeding and challenging an order of removal. *See generally Delgado*, 643 F.3d at 55–56. In fact, *Delgado* further supports the Government's position. As the district court noted, the question of district court jurisdiction "will turn on the substance of the relief that a plaintiff is seeking." *Id.* In *Delgado*, Delgado challenged USCIS's decision to deny her I-212 application because such a decision ultimately impacted her application to adjust status. *See id.* at

37

55. This Court recognized that such a challenge "is inextricably linked to the reinstatement of [an alien's] removal order" and the I-212 waiver "would render the reinstatement order 'invalid.'" *Id.* (quoting *Morales-Izquierdo v. Dep't of Homeland Sec.*, 600 F.3d 1076, 1082–83 (9th Cir. 2010) (internal quotations omitted)). Naturally, such a challenge is an indirect challenge to "her reinstated order of removal, and accordingly, we hold that section 1252(a)(5)'s jurisdictional bar applies equally to preclude such an indirect challenge." *Id.* Here, Mahdawi is *explicitly* challenging his removal proceedings. These challenges, however, are meant to be brought through the petition-for-review process. Therefore, the Court should find that Section 1252(a)(5) applies, and the district court erred when it found that it had jurisdiction to review.

Congress clearly wanted to preclude the district court from reviewing such cases, even when an alien presents indirect challenges to the removal proceedings. *See J.E.F.M.*, 837 F.3d at 1031; *see id.* at 1035 ("§§1252(a)(5) and [(b)(9)] channel review of all claims, including policies-and-practices challenges … whenever they 'arise from' removal proceedings"); *accord Ruiz v. Mukasey*, 552 F.3d 269, 274 n.3 (2d Cir. 2009) (only when the action is "unrelated to any removal action or

proceeding" is it within the district court's jurisdiction); *cf. Xiao Ji Chen v. U.S. Dep't of Justice*, 434 F.3d 144, 151 n.3 (2d Cir. 2006) (a "primary effect" of the REAL ID Act is to "limit all aliens to one bite of the apple[.]" (internal quotation marks omitted)). Because Congress created a streamlined process to review final orders of removal, the district court overreached and disregarded Section 1252's clear jurisdictional bar.

## II. THE DISTRICT COURT LACKED INHERENT AUTHORITY TO RELEASE MAHDAWI UNDER MAPP V. RENO

The district court lacked inherent authority to release Mahdawi. *Mapp* recognized that federal courts have "inherent authority to admit to bail" but "this power is a limited one, to be exercised in special cases only." 241 F.3d at 226. But as argued above, this is not one of those cases. The district court cannot properly assert subject matter jurisdiction over Mahdawi's habeas petition in light of the jurisdictional limitations in the INA, which were expanded post-*Mapp*. Prior to passage of the REAL ID Act of 2005, aliens could seek review of their removal orders through the filing of a habeas petition in federal district court. *See, e.g.*, *INS v. St. Cyr*, 533 U.S. at 311–14. The REAL ID Act removed habeas as a permissible avenue for challenging a removal order, stripped district courts of jurisdiction to review removal orders, and vested the courts of

appeals with exclusive jurisdiction to review challenges to final removal orders. *See* 8 U.S.C. § 1252(a)(5). This Court recognized that district courts could not override a statute to grant relief. *Mapp*, 241 F.3d at 227–29. Because a statute applies here, *Mapp* cannot create authority that is otherwise limited by statute. Therefore, *Mapp* no longer remains good law.

Additionally, this Court recognized that a court's inherent authority to consider bail for habeas petitioners, "may well be subject to appropriate limits imposed by Congress," and that "Congress has not, to date, curtailed this feature of federal judicial power." *Id.* at 223. This Court "acknowledge[d] that, in cases involving challenges to [ICE] detention, Congress's plenary power over immigration matters renders this authority readily subject to congressional limitation." *Id.* at 231. No such limitation was at issue in *Mapp*, but here 8 U.S.C. § 1226(e) is an "express statutory constraint[]" that limits the Court's authority in this context. *Mapp*, 241 F.3d at 231.

Section 1226(e) restricts this Court's authority in two ways. *First*, Section 1226(e) provides a "clear direction from Congress," *Mapp*, 241 F.3d at 227, that "[n]o court may set aside any action or decision by [ICE]

40

under [§ 1226] regarding the detention or release of any alien," 8 U.S.C. § 1226(e).[5] Thus, this Court lacks authority to grant interim release to a habeas petitioner who is subject to detention under Section 1226(a). *Second*, ICE's discretionary decision to detain the petitioner cannot readily be set aside through a *Mapp* motion. As this Court explained, where Congress provided for discretionary detention, federal courts may be further constrained from granting release on bail where the agency has exercised such discretion. *See Mapp*, 241 F.3d at 229 n.12 ("[W]hile it may be the case that had the INS exercised its discretion under § 1231(a)(6) and decided not to release Mapp on bail, *we would be required to defer to its decision*, where there has been no such consideration of a detainee's fitness for release, deference to the INS . . . is not warranted."); *see also Cinquemani v. Ashcroft*, No. 00 Civ. 1460 (RJD), 2001 WL 939664, at *6–8 & n.6 (E.D.N.Y. Aug. 16, 2001) (citing *Mapp*). ICE did so here. JA272–75. And this Court has indeed recognized

---

[5] This is not to say that district courts lack jurisdiction at all over the release of an alien in immigration habeas proceedings, but under the circumstances here, that authority may be exercised only at the conclusion of the habeas case and upon a merits determination that the petitioner's detention is unlawful. That is not the inquiry in a *Mapp* motion, and so there is no tension with this distinction.

the jurisdictional limitation contained in Section 1226(e), and it applies here where Mahdawi challenges the initial decision to detain him. *See Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (finding that Section 1226(e) did not bar review because the petitioner did not challenge "his initial detention"). Thus, the district court was wrong to supplant ICE's discretionary decision to detain in this context.

Accordingly, the district court was precluded from considering *Mapp* to release Mahdawi from detention. *Mapp*, 241 F.3d at 227–29; *accord Bolante v. Keisler*, 506 F.3d 618, 620–21 (7th Cir. 2007) ("Even if in the absence of legislation a federal court could grant bail to an alien challenging a removal order, it cannot do so if Congress has forbidden it.").

III. THE DISTRICT COURT ERRED IN HOLDING THAT MAHDAWI HAD MET HIS BURDEN UNDER *MAPP*.

Even if *Mapp* remains viable, the district court misapplied it here. This Court has been clear: "the standard for bail pending habeas litigation is a difficult one to meet: The petitioner must demonstrate that the habeas petition raises substantial claims and that extraordinary circumstances exist that make the grant of bail necessary to make the habeas remedy effective." *Mapp*, 241 F.3d at 226 (quoting *Grune v.*

42

*Coughlin*, 913 F.2d 41, 43–44 (2d Cir. 1990)). A petitioner also must establish that he does not present a threat or that there is no risk of nonappearance to demonstrate that release on bail is in the public interest. *Id.* at 231 n.14.

Here, at a minimum, the district court erroneously determined that extraordinary circumstances exist to release Mahdawi from detention and instead based its decision on the premise that this matter is "extraordinary in the sense that it calls upon the ancient remedy of habeas to address a persistent modern wrong." JA576. The district court, however, failed to consider the fact that Congress has created a process that allows review of constitutional claims or claims related to the immigration process.

First, the district court diminished the Executive's authority to make foreign policy determinations: "The court is aware that he has offended his political opponents and apparently given rise to concerns at the State Department that he is an obstacle to American foreign policy." JA575. Again, "[t]he Executive should not have to disclose its 'real' reasons for deeming nationals of a particular country a special threat … and even if it did disclose them a court would be ill equipped to determine

43

their authenticity and utterly unable to assess their adequacy." *AADC*,
525 U.S. at 491; *Trump v. Hawaii*, 585 U.S. 667, 703–04 (2018) ("'respect
for the political branches' broad power over the creation and
administration of the immigration system meant that the Government
need provide only a statutory citation to explain a visa denial."); *see also
Kerry v. Din*, 576 U.S. 86, 105 (2015) (Kennedy, J., concurring). There is
no constitutional basis to probe beyond the Secretary's determination
that Mahdawi's continued presence impacts foreign policy. For the
reasons mentioned above, it is not in the public's interest to release an
individual who has been deemed to be a foreign policy concern by experts
on the matter. *Curtiss-Wright Export Corp.*, 299 U.S. 304, 320 (1936)
(describing the President as "the sole organ of the federal government in
the field of international relations"); *cf. Zivotofsky ex rel. Zivotofsky v.
Kerry*, 576 U.S. 1, 32, (2015) ("To allow Congress to control the
President's communication in the context of a formal recognition
determination is to allow Congress to exercise that exclusive power itself.
As a result, the statute is unconstitutional.").

Finally, the district court failed to consider that it is well settled
that it is in the public's interest that the United States' immigration laws

44

be enforced. *See, e.g.*, *United States v. Martinez-Fuerte*, 428 U.S. 543, 556–58 (1976); *Nken v. Holder*, 556 U.S. 418, 435 (2009). There is "always a public interest in prompt execution of removal orders." *Nken*, 556 U.S. at 436. This includes the prompt resolution of determining removability because "[t]he continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings IIRIRA established, and 'permit[s] and prolong[s] a continuing violation of United States law.'" *Id.* (quoting *AADC*, 525 U.S. at 490).

Therefore, as a matter of law, the district court erred in ordering Mahdawi's release.

## CONCLUSION

For the foregoing reasons, this Court should reverse district court's order. It should remand the case with instructions to dismiss, or alternatively, vacate the release order as improvidently granted.

45

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant
Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney General
Office of Immigration Litigation

MICHAEL P. DRESCHER
Acting United States Attorney
District of Vermont

ALANNA T. DUONG
Senior Litigation Counsel

*s/ Dhruman Y. Sampat*
DHRUMAN Y. SAMPAT
Senior Litigation Counsel
Office of Immigration Litigation
General Litigation and Appeals
        Section
PO Box 878, Ben Franklin Station
Washington, D.C. 20044
dhruman.y.sampat@usdoj.gov

*Attorneys for Respondents-Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 8904 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*s/ Dhruman Y. Sampat*
DHRUMAN Y. SAMPAT
Senior Litigation Counsel
U.S. Department of Justice

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system. I further certify that all participants in the case are registered ACMS users and that service will be accomplished through that system.

_s/ Dhruman Y. Sampat_
DHRUMAN Y. SAMPAT
Senior Litigation Counsel
U.S. Department of Justice

**ADDENDUM**

# TABLE OF CONTENTS

8 U.S.C. § 1252(g) ............................................................................. A1

8 U.S.C. § 1252(a)(5) ........................................................................ A2

8 U.S.C. § 1252(b)(9) ........................................................................ A3

8 U.S.C. § 1226(e) ............................................................................. A4

8 U.S.C. § 1227(a)(4)(C) ................................................................... A5

**8 U.S.C. § 1252(g)**

**§ 1252(g). Exclusive jurisdiction**

Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

**8 U.S.C. § 1252(a)(5)**

**§ 1252(a)(5). Exclusive means of review**

Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e). For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms "judicial review" and "jurisdiction to review" include habeas corpus review pursuant to section 2241 of Title 28, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory).

**8 U.S.C. § 1252(b)(9)**

**§ 1252(b)(9). Consolidation of questions for judicial review**

Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

**8 U.S.C. § 1226(e)**

**§ 1226(e) Judicial review**

The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

**8 U.S.C. § 1227(a)(4)(C)**

**§ 1227(a)(4)(C) Foreign policy**

**(i) In general**

An alien whose presence or activities in the United States the Secretary of State has reasonable ground to believe would have potentially serious adverse foreign policy consequences for the United States is deportable.

**(ii) Exceptions**

The exceptions described in clauses (ii) and (iii) of section 1182(a)(3)(C) of this title shall apply to deportability under clause (i) in the same manner as they apply to inadmissibility under section 1182(a)(3)(C)(i) of this title.