# No. 25-1113

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---

MOHSEN MAHDAWI,

*Petitioner–Appellee,*

v.

DONALD J. TRUMP, in his official capacity as President of the United States; PATRICIA HYDE, in her official capacity as Acting Boston Field Office Director, Immigration and Customs Enforcement, Enforcement and Removal Operations; J Doe, in official capacity as VERMONT SUB-OFFICE DIRECTOR OF Immigration and Customs Enforcement, Enforcement and Removal Operations; TODD LYONS, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; KRISTI NOEM, in her official capacity as Secretary of the United States Department of Homeland Security; MARCO A. RUBIO, in his official capacity as Secretary of State; and PAMELA BONDI, in her official capacity as U.S. Attorney General,

*Respondents–Appellants.*

---

**On Appeal from the U.S. District Court for the District of Vermont**

---

**PETITIONER–APPELLEE'S BRIEF IN OPPOSITION**

---

(*Counsel listed on next page*)

Nathan Freed Wessler
Brian Hauss
Esha Bhandari
Brett Max Kaufman
Michael K.T. Tan
Noor Zafar
Sidra Mahfooz
AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION
125 Broad Street, Floor 18
New York, NY 10004
(212) 549-2500
nwessler@aclu.org
bhauss@aclu.org
ebhandari@aclu.org
bkaufman@aclu.org
m.tan@aclu.org
nzafar@aclu.org
smahfooz@aclu.org

Andrew B. Delaney
MARTIN DELANEY & RICCI LAW
    GROUP
100 North Main Street
Barre, Vermont 05641
(802) 479-0568
andrew@mdrvt.com

Cyrus D. Mehta
David A. Isaacson
CYRUS D. MEHTA & PARTNERS PLLC
One Battery Park Plaza, 9th Floor
New York, New York 10004
(212) 425-0555
cm@cyrusmehta.com
disaacson@cyrusmehta.com

Lia Ernst
Monica H. Allard
Hillary A. Rich
ACLU FOUNDATION OF VERMONT
PO Box 277
Montpelier, VT 05601
(802) 223-6304
lernst@acluvt.org
mallard@acluvt.org

Ramzi Kassem
Naz Ahmad
Mudassar Toppa
Shezza Abboushi Dallal
CLEAR PROJECT
MAIN STREET LEGAL SERVICES, INC.
CUNY School of Law
2 Court Square
Long Island City, NY 11101
(718) 340-4558
ramzi.kassem@law.cuny.edu
naz.ahmad@law.cuny.edu
mudassar.toppa@law.cuny.edu
shezza.dallal@law.cuny.edu

Luna Droubi
Matthew Melewski
Keegan Stephan
BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/26th Floor
New York, New York, 10016
(212) 277-5874
ldroubi@blhny.com
mmelewski@blhny.com
kstephan@blhny.com

*Counsel for Petitioner–Appellee*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................ii

INTRODUCTION.............................................................................1

JURISDICTIONAL STATEMENT ....................................................3

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...........................4

STATEMENT OF THE CASE ...........................................................4

SUMMARY OF THE ARGUMENT ..................................................15

STANDARD OF REVIEW .............................................................18

ARGUMENT..............................................................................19

    I. The INA does not strip the district court's jurisdiction to review Mr. Mahdawi's unlawful detention claims and order his release...........................................................................19

        A. 8 U.S.C. § 1252(g) does not bar review of Mr. Mahdawi's unconstitutional detention claims........................................21

        B. 8 U.S.C. § 1252(a)(5) and (b)(9) do not channel Mr. Mahdawi's unlawful detention claims into a petition for review.....................................................................32

    II. The district court did not abuse its discretion in granting Mr. Mahdawi bail under *Mapp v. Reno* ...............................................40

        A. The district court retains inherent authority to order release on bail ....................................................................42

        B. Mr. Mahdawi's release on bail was justified under *Mapp*.....43

CONCLUSION.............................................................................46

# TABLE OF AUTHORITIES

<u>Cases</u>

*Aguilar v. ICE,*
  510 F.3d 1 (1st Cir. 2007) ................................................................34, 37

*Ali v. Mukasey,*
  524 F.3d 145 (2d Cir. 2008) ....................................................................25

*Al-Siddiqi v. Achim,*
  531 F.3d 490 (7th Cir. 2008) ...................................................................43

*Alvarez v. ICE,*
  818 F.3d 1194 (11th Cir. 2016) ...............................................................27

*Amalgamated Transit Union Local 85 v. Port Auth. of Allegheny
  County,*
  39 F.4th 95 (3d Cir. 2022) .......................................................................46

*Arce v. United States,*
  899 F.3d 796 (9th Cir. 2018) ...................................................................26

*Avendaño Hernandez v. Decker,*
  450 F. Supp. 3d 443 (S.D.N.Y. 2020)......................................................41

*Baker v. Carr,*
  369 U.S. 186 (1962) .................................................................................45

*Bello-Reyes v. Gaynor,*
  985 F.3d 696 (9th Cir. 2021) ...................................................................23

*Black v. Decker,*
  103 F.4th 133 (2d Cir. 2024).................................................................... 20

*Boumediene v. Bush,*
  553 U.S. 723 (2008) ...........................................................................38, 46

*Colorado River Water Conservation District v. United States,*
  424 U.S. 800 (1976) .................................................................................45

*Cooper Butt ex rel Q.T.R. v. Barr,*
    954 F.3d 901 (6th Cir. 2020) .................................................. 28

*Coronel v. Decker,*
    449 F. Supp. 3d 274 (S.D.N.Y. 2020) ................................. 41, 42

*Council of Alternative Political Parties v. Hooks,*
    121 F.3d 876 (3d Cir. 1997) .................................................. 46

*D'Alessandro v. Mukasey,*
    2009 WL 799957 (W.D.N.Y. Mar. 25, 2009) ........................... 41

*Delgado v. Quarantillo,*
    643 F.3d 52 (2d Cir. 2011) ........................................ 34, 37, 39

*Demore v. Kim,*
    538 U.S. 510 (2003) ...................................................... 27, 43

*DHS v. Regents of the University of California,*
    591 U.S. 1 (2020) ......................................................... 22, 34

*DHS v. Thuraissigiam,*
    591 U.S. 103 (2020) ............................................................ 29

*E.O.H.C. v. Secretary U.S. Department of Homeland Security,*
    950 F.3d 177 (3d Cir. 2020) ........................................... 37, 38

*Elgharib v. Napolitano,*
    600 F.3d 597 (6th Cir. 2010) .................................................. 28

*Elkimya v. DHS,*
    484 F.3d 151 (2d Cir. 2007) ........................................... 17, 42

*Elrod v. Burns,*
    427 U.S. 347 (1976) ............................................................ 37

*Garcia v. Attorney General of the United States,*
    553 F.3d 724 (3d Cir. 2009) ........................................... 25, 27

*German Santos v. Warden Pike County Correctional Facility,*
    965 F.3d 203 (3d Cir. 2020) .................................................. 20

iii

*Gonzalez v. ICE,*
 975 F.3d 788 (9th Cir. 2020) .................................................. 34

*Gonzalez-Alarcon v. Macias,*
 884 F.3d 1266 (10th Cir. 2018) ............................................. 40

*Guerrero-Lasprilla v. Barr,*
 589 U.S. 221 (2020) ............................................................. 20

*Humphries v. Various Federal USINS Employees,*
 164 F.3d 936 (5th Cir. 1999) ................................................ 28

*INS v. St. Cyr,*
 533 U.S. 289 (2001) ....................................................... 23, 33

*J.E.F.M. v. Lynch,*
 837 F.3d 1026 (9th Cir. 2016) .............................................. 40

*Jennings v. Rodriguez,*
 583 U.S. 281 (2018) ..................................................... *passim*

*Johnson v. Arteaga-Martinez,*
 596 U.S. 573 (2022) ............................................................. 36

*Johnson v. Guzman Chavez,*
 594 U.S. 523 (2021) ....................................................... 34, 35

*Kellici v. Gonzales,*
 472 F.3d 416 (6th Cir. 2006) ............................... 24, 34, 39, 40

*Khalil v. Joyce,*
 777 F. Supp. 3d 369 (D.N.J. 2025) ......................................... 8

*Khan Suri v. Trump,*
 2025 WL 1392143 (E.D. Va. May 14, 2025) ........................... 44

*Khan Suri v. Trump,*
 2025 WL 1806692 (4th Cir. July 1, 2025) ....................... 19, 42

*Kiadii v. Decker,*
 423 F. Supp. 3d 18 (S.D.N.Y. 2018) ...................................... 41

iv

*Kong v. United States,*
    62 F.4th 608 (1st Cir. 2023) ...................................................20, 22, 23, 25

*Kucana v. Holder,*
    558 U.S. 233 (2010) .............................................................................. 20

*Kumar v. Holder,*
    2013 WL 6092707 (E.D.N.Y. Nov. 18, 2013) .......................................... 28

*Lopez Torres v. N.Y. State Bd. of Elections,*
    462 F.3d 161 (2d Cir. 2006) ................................................................... 45

*Lorillard v. Pons,*
    434 U.S. 575 (1978) .............................................................................. 43

*Lyndonville Savings Bank & Trust Co. v. Lussier,*
    211 F.3d 697 (2d Cir. 2000) ................................................................... 18

*Madu v. United States Attorney General,*
    470 F.3d 1362 (11th Cir. 2006) .......................................................23, 26

*Mahdawi v. Trump,*
    136 F.4th 443 (2d Cir. 2025) ......................................................... *passim*

*Mapp v. Reno,*
    241 F.3d 221 (2d Cir. 2001) ......................................................... *passim*

*Martinez v. Napolitano,*
    704 F.3d 620 (9th Cir. 2012) ................................................................. 40

*McNary v. Haitian Refugee Center, Inc.,*
    498 U.S. 479 (1991) .............................................................................. 20

*Miranda v. Garland,*
    34 F.4th 338 (4th Cir. 2022) ................................................................. 20

*Mohammed H. v. Trump,*
    2025 WL 1334847 (D. Minn. May 5, 2025) ........................................... 44

*N.Y. Progress & Protection PAC v. Walsh,*
    733 F.3d 483 (2d Cir. 2013) ................................................................... 46

*Nadarajah v. Gonzales*,
  443 F.3d 1069 (9th Cir. 2006) ............................................................... 20

*Najera v. United States*,
  926 F.3d 140 (5th Cir. 2019) ................................................................. 43

*Nielsen v. Preap*,
  586 U.S. 392 (2019) ........................................................ 17, 20, 34, 35

*Öztürk v. Hyde*,
  136 F.4th 382(2d Cir. 2025) ........................................................ *passim*

*Öztürk v. Trump*,
  2025 WL 1145250 (D. Vt. Apr. 18, 2025) ............................................. 10

*Öztürk v. Trump*,
  2025 WL 1420540 (D. Vt. May 16, 2025) ............................................. 44

*Parra v. Perryman*,
  172 F.3d 954 (7th Cir. 1999) ........................................................ 23, 30

*Pham v. Ragbir*,
  141 S. Ct. 227 (2020) ........................................................................... 28

*Ragbir v. Homan*,
  2018 WL 2338792 (S.D.N.Y. May 23, 2018) ........................................ 29

Ragbir v. Homan,
  923 F.3d 53 (2d Cir. 2019) ....................................................... 28, 29, 31

*Ragbir v. Sessions*,
  2018 WL 623557 (S.D.N.Y. Jan. 29, 2018) .......................................... 29

*Reno v. American-Arab Anti-Discrimination Committee*,
  525 U.S. 471 (1999) ...................................................................... *passim*

*Ruiz v. Mukasey*,
  552 F.3d 269 (2d Cir. 2009) ................................................................. 37

*S.N.C. v. Sessions*,
  2018 WL 6175902 (S.D.N.Y. Nov. 26, 2018) ........................................ 41

vi

*Sindicato Puertorriqueño de Trabajadores v. Fortuño,*
    699 F.3d 1 (1st Cir. 2012) ....................................................... 46

*Singh v. Holder,*
    638 F.3d 1196 (9th Cir. 2011) ................................................. 43

*Tazu v. Attorney General of the United States,*
    975 F.3d 292 (3d Cir. 2020) ..................................................... 27

*Texas v. United States,*
    809 F.3d 134 (5th Cir. 2015) ................................................... 46

*Trump v. J.G.G.,*
    145 S. Ct. 1003 (2025) ........................................................... 30

*United States v. Abuhamra,*
    389 F.3d 309 (2d Cir. 2004) ..................................................... 19

*United States v. Hovsepian,*
    359 F.3d 1144 (9th Cir. 2004) ................................................. 26

*United States v. Mattis,*
    963 F.3d 285 (2d Cir. 2020) ............................................. 18, 19

*Vacchio v. Ashcroft,*
    404 F.3d 663 (2d Cir. 2005) ..................................................... 41

*Vargas v. DHS,*
    2017 WL 962420 (W.D. La. Mar. 10, 2017) ............................ 28

*Velasco Lopez v. Decker,*
    978 F.3d 842 (2d Cir. 2020) ..................................................... 43

*Zadvydas v. Davis,*
    533 U.S. 678 (2001) ............................................................... 27

*Zivotofsky v. Clinton,*
    566 U.S. 189 (2012) ............................................................... 45

*Zundel v. Gonzales,*
    230 F. App'x 468 (6th Cir. 2007) ............................................ 28

## Statutes

28 U.S.C. § 1291.................................................................................4

28 U.S.C. § 133...................................................................................3

28 U.S.C. § 2241.................................................................................3

8 U.S.C. § 1101.................................................................................33

8 U.S.C. § 1225.................................................................................27

8 U.S.C. § 1226....................................................................14, 26, 41

8 U.S.C. § 1227..........................................................................8, 38

8 U.S.C. § 1231...........................................................................14, 27

8 U.S.C. § 1252................................................................... *passim*

5 U.S.C. § 701....................................................................................3

28 U.S.C. § 2201.................................................................................3

## Constitutional Provisions

U.S. Const., art. I, § 9, cl. 2....................................................3, 37

## Other Authorities

Brief for Petitioners, *United States v. Texas*, 2022 WL 4278395 (Sep. 12, 2022) ...............................................27

Exec. Off. for Immigr. Rev., *EOIR Automated Case Information*..................24

H.R. Rep. 109-72 (2005) (Conf. Rep.) .................................................23, 34

Luc Cohen, *Palestinian Student Released on Bail as He Challenges Deportation from US*, Reuters (May 1, 2025) .........................................11

Order, *Khalil v. Trump*, No. 25-2162 (3d Cir. July 30, 2025)……………………………………………………………………..19

*Naturalization Oath of Allegiance to the United States of America*,
USCIS.................................................................................................1

Sabine Poux, *After Release from Prison, Mohsen Mahdawi is Rooted in
the Upper Valley – and in His Purpose*, Vermont Public (May 6,
2025) .............................................................................................15

Sergio Martínez-Beltrán, *Federal Judge Orders Release of Columbia
University Student Mohsen Mahdawi*, NPR (Apr. 30, 2025) .................11

Sharon Otterman, *Mohsen Mahdawi, Released from ICE Custody,
Graduates from Columbia*, N.Y. Times (May 19, 2025),.........................15

Transcript of July 15, 2015, Vol. 1, *American Association of University
Professors v. Rubio*, No. 25-cv-10685 (D. Mass.) ......................................7

Transcript, *Khalil v. Joyce*, No. 25-cv-1963 (D.N.J. June 20, 2025),
ECF 329 ..............................................................................................42

## INTRODUCTION

The government detained Petitioner Mohsen Mahdawi—a lawful permanent resident since 2015—solely because of what it concedes was his lawful speech and advocacy. Mr. Mahdawi, a long-time resident of Vermont and then-undergraduate student at Columbia University, had been outspoken in opposition to the war in Gaza, and a leader of peacebuilding dialogue on the Columbia campus. But because the government disagreed with the content of his peaceful, First Amendment–protected speech, Respondents detained him in April 2025, immediately following completion of his naturalization interview in Vermont. It is dark irony indeed that masked and armed agents unconstitutionally detained him just moments after he affirmed his intent to take the oath to "support and defend the Constitution and laws of the United States of America against all enemies, foreign and domestic."[1]

After he filed a habeas petition, the district court released Mr. Mahdawi on bail based on his substantial claims under the First and Fifth Amendments, the extraordinary circumstances of this unconstitutional retaliation, and findings that he poses neither a flight risk nor a danger to the community. But

---

[1] *Naturalization Oath of Allegiance to the United States of America*, USCIS, https://perma.cc/H7EL-UNRB.

1

rather than defend the legality of their retaliatory detention of Mr. Mahdawi, Respondents seek permission to re-detain him by claiming that the federal courts lack power to review his unlawful detention claim, at least right now. That is wrong.

A motions panel of this Court has already rejected almost every argument Respondents make on appeal as unlikely to succeed. *Mahdawi v. Trump*, 136 F.4th 443 (2d Cir. 2025) (denying motion to stay orders granting bail and barring transfer out of Vermont or removal from the country). Respondents' reprisal of those arguments here is equally meritless.

The motions panel rightly rejected Respondents' argument that the Immigration and Nationality Act ("INA") bars judicial review of Mr. Mahdawi's unconstitutional detention claims. Indeed, every court to assess those arguments in cases challenging recent detentions of students in retaliation for their protected speech has reached the same conclusion. The gravamen of Respondents' position is that if they invoke immigration authorities to detain noncitizens in violation of their constitutional rights, no federal court can hear a habeas challenge to such violation until the lengthy administrative immigration review process runs its course. But that radical position is unsupported by the text of the INA or Supreme Court precedent

2

interpreting it. Nothing in the INA requires Mr. Mahdawi or others like him to spend months or years in detention—at irreparable cost to their ability to exercise their First Amendment rights, not to mention their education and livelihood—before they can argue the unconstitutionality of their detention to a federal court. Any other conclusion would give the executive branch a powerful tool of unchecked censorship—the ability to detain noncitizens as punishment for their political viewpoints, thereby chilling the speech of untold others for as long as the government takes to administer its executive-branch immigration procedures. Such censorship of speech on issues of public importance that are directly relevant to and can shape current events constitutes harm that cannot later be remedied.

This Court should reject the government's untenable claims and affirm the district court's orders granting bail and barring transfer or removal.

## JURISDICTIONAL STATEMENT

The district court has subject-matter jurisdiction over the habeas petition under 28 U.S.C. § 1331; 28 U.S.C. § 2241; U.S. Const., art. I, § 9, cl. 2 (the Suspension Clause), and Article III of the U.S. Constitution; the Administrative Procedure Act, 5 U.S.C. § 701; and the Declaratory Judgment Act, 28 U.S.C. § 2201.

3

This Court has appellate jurisdiction under 28 U.S.C. § 1291 and the collateral-order doctrine. *See Mahdawi*, 136 F.4th at 448–49.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Whether the INA strips district courts of subject-matter jurisdiction over Mr. Mahdawi's habeas claims.

2. Whether the district court abused its discretion in releasing Mr. Mahdawi on bail under *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001).

## STATEMENT OF THE CASE

Mr. Mahdawi was born and raised in the West Bank. JA552. He entered the United States legally in July 2014 and has been a Lawful Permanent Resident for ten years. JA552. He is a Vermont resident. JA552. From 2021 until his graduation in May 2025, Mr. Mahdawi was an undergraduate student at Columbia University majoring in philosophy. JA553. Next month, he will begin attending a master's degree program at Columbia's School of International and Public Affairs. JA553. As a student at Columbia, Mr. Mahdawi dedicated himself "to understanding how to achieve a lasting peace for Palestinians and Israelis, particularly through the study of conflict resolution." JA553 (quoting Mr. Mahdawi's declaration at JA255). After Israel began its military campaign in Gaza in 2023, Mr. Mahdawi was

4

"outspoken in opposition to the war." JA553 (same).

Over 125 sworn declarations and letters of support attest "to [Mr. Mahdawi's] mild and peaceful nature, his deep intelligence, and his commitment to principles of non-violence and political activism." JA557. One letter, signed by more than 200 Israelis in the United States (many of whom attended Columbia and know him personally), called Mr. Mahdawi "a partner for peace," and explained that his "presence and leadership on campus gave us hope that Israelis and Palestinians could work together not just to understand each other, but to transform our societies and create a peaceful solution." JA375–76. A Vermont granola-seller who met Mr. Mahdawi while he was working at a local shop wrote that, even though "[i]t was clear that [Mohsen] had been through so much and seen some terrible things," it was also "clear that he did not hold any resentment in his heart," and "he wanted to understand every human's struggle and to care for them in whatever way he could." JA389. Another Vermonter who has known Mr. Mahdawi for more than ten years said she had "never met a more calming, peaceful human being than Mohsen." JA391. There are nearly 200 pages of letters and declarations like this, from people from all corners of Mr. Mahdawi's life. JA60–249; JA373–492.

On March 27, 2025, Mr. Mahdawi received notification from the United States Citizenship and Immigration Services ("USCIS") that his naturalization interview was scheduled for April 14. JA555. The interview was the last step of the naturalization process before the formal ceremony at which he would become a U.S. citizen. JA555–56. But, based on the government's then-recent retaliatory actions against other students who had spoken out in support of Palestinian rights and against the war in Gaza, Mr. Mahdawi suspected that the interview could serve as a trap, and that rather than be questioned as part of the naturalization process, he might be detained if he showed up. JA556 (citing Mr. Mahdawi's declaration at JA256). Despite those fears, he made arrangements to attend the interview. JA556.

On April 14, Mr. Mahdawi attended the naturalization interview. JA556. He answered all the questions asked of him, and he passed the citizenship test. JA556. He then signed a document affirming that he was willing to take the Oath of Allegiance to the United States. JA556. After he signed, his interviewer left the room. JA556.

That is when three masked agents wearing Homeland Security Investigations jackets and a supervisor entered the room and surrounded Mr.

6

Mahdawi. JA556 (citing Mr. Mahdawi's declaration at JA257).[2] Without presenting a warrant or any other documents, the agents separated him from his attorney, brought him into a hallway where other masked agents were waiting, and shackled him. JA556. He was taken outside to a black van, and then to another USCIS office, about ten to fifteen minutes away. *Id.* It was now around 12:30 p.m. JA257.

At the office, "agents shoved a Notice to Appear ('NTA') document into his jacket," which ordered him "to appear before an immigration judge at the South Louisiana Correctional Center on May 1." JA556–57; *see* JA263 (NTA). The NTA stated that Mr. Mahdawi was removable based on a determination by the Secretary of State that his "presence and activities in the United States would have serious adverse foreign policy consequences and would compromise a compelling U.S. foreign policy interest." JA556–57 (quoting NTA at JA263). Behind that charge was the fact that, unbeknownst to Mr. Mahdawi, one month earlier, the Secretary of State had—as he had done in

---

[2] At trial in a case challenging the government's policy of arresting, detaining, and attempting to deport students and faculty who have engaged in pro-Palestinian expression, the supervisor testified that "approximately 10 to 15" agents were present on the day of Mr. Mahdawi's arrest. Tr. of July 15, 2015, 16:18, Vol. 1, *Am. Ass'n of Univ. Professors v. Rubio*, No. 25-cv-10685 (D. Mass.), ECF 243, *available at* https://perma.cc/U4A4-JBAQ.

several other cases of student activists—secretly issued a memorandum, pursuant to 8 U.S.C. § 1227(a)(4)(C)(ii), declaring Mr. Mahdawi deportable for his "lawful" speech and associations. JA340–41.

At 12:58 p.m., Mr. Mahdawi's lawyers filed a habeas petition in the District of Vermont seeking his release. JA1–19.

Just before 2:00 p.m., the agents took Mr. Mahdawi to the airport in Burlington, Vermont, transferring him to the custody of two other agents. JA557. At that point, after he had repeatedly asked where he was going, the agents finally informed Mr. Mahdawi that they were taking him to Louisiana, JA557—just as they had done to another Columbia student, Mahmoud Khalil, and a Tufts student, Rümeysa Öztürk, the month before. *See Öztürk v. Hyde*, 136 F.4th 382, 387 (2d Cir. 2025); *Khalil v. Joyce*, 777 F. Supp. 3d 369, 373 (D.N.J. 2025).

But the flight the agents had intended to board with him left the gate before they could reach it. JA557. The agents, who were "visibly upset" about missing the flight, took him to the Immigration and Customs Enforcement ("ICE") office in St. Albans, Vermont. JA557 (quoting Mr. Mahdawi's declaration at JA257). He was able to see his attorney there, but was then re-shackled and sent to the Northwest State Correctional Facility in Swanton,

8

Vermont. JA557.

At approximately 3:11 p.m., JA28, the district court granted an emergency motion for a temporary restraining order enjoining Mr. Mahdawi's transfer from the District of Vermont or removal from the United States, JA21. The court set a status conference for April 23, ordering that Mr. Mahdawi be present. ECF 15.[3]

On April 22, Mr. Mahdawi filed a motion for release on bail pursuant to *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001). JA22. In his supporting memorandum, he detailed a clear factual record indicating that Respondents had detained him in retaliation for his speech advocating for Palestinian human rights, and that his arrest and detention were part of a government policy to silence and chill the speech of likeminded activists. JA26–32. He also argued that he satisfied the requirements for release under *Mapp* because, first, his petition raised substantial constitutional claims for habeas relief under the First and Fifth Amendments, and second, extraordinary circumstances existed in the form of First Amendment chill and the absence of any evidence of his flight risk or danger to the community. JA34–43.

---

[3] "ECF" numbers reference documents on the district court docket, No. 25-cv-389 (D. Vt.), that are not included in the Joint Appendix.

In anticipation of the April 23 hearing, Respondents filed a pre-hearing submission that addressed "jurisdictional and other issues raised by" Mr. Mahdawi's petition and motion for release. JA276–96. After the hearing, the district court converted Respondents' pre-hearing filing into a motion to dismiss; set a briefing schedule on that converted motion; and set a hearing on Mr. Mahdawi's motion for release. ECF 33.[4] On April 24, the court extended the TRO enjoining Mr. Mahdawi's transfer from Vermont or removal from the country "for a period of 90 days or until dismissal of this case or grant of a preliminary injunction, whichever is earliest," in order "to preserve the court's jurisdiction to hear and decide the issues raised by both parties." JA326–27. It also explained that "[e]njoining removal of Mr. Mahdawi from Vermont is necessary to prevent disputes about territorial jurisdiction, transfer to another court, immediate custodian, and other issues that may arise in the involuntary movement of a petitioner between states." JA327 (citing *Öztürk v. Trump*, 2025 WL 1145250 (D. Vt. Apr. 18, 2025)).

Following further briefing on Mr. Mahdawi's motion for release, on April 30, the district court held a hearing on the motion, with Mr. Mahdawi

---

[4] The district court has suspended further activity on Respondents' motion to dismiss pending resolution of this appeal. ECF 56.

in attendance. JA509–50. From the bench, the court ordered Mr. Mahdawi released on bail. JA544–48. The court also addressed Respondents' request for a stay of the order pending appeal, denying it as unjustified, and emphasizing that with respect to irreparable harm, "even another day of detention is not to be tolerated"; that "the harm [to the government] of sending Mr. Mahdawi back to his home this morning" does not "really present[] any great risk to the national interest"; and that the public interest strongly weighed against a stay given "that the First Amendment values raised in Mr. Mahdawi's petition are close to the heart of what we are about as a nation." JA549.

Minutes later, Mr. Mahdawi walked out of the courtroom. From outside the courthouse, he told a crowd of supporters that his release was "a light of hope, hope and faith in the justice system in America."[5] In a statement issued after the release, a spokeswoman for Respondent Noem, of the Department of Homeland Security, said that "The Trump Administration is committed to restoring the rule of law to our immigration system. No judge, not this one or

---

[5] Luc Cohen, *Palestinian Student Released on Bail as He Challenges Deportation from US*, Reuters (May 1, 2025), https://perma.cc/W2S4-9NV5.

11

any other, is going to stop us from doing that."[6]

Later that day, the district court issued a written order memorializing and further explaining the order of release. It first explained at length why Respondents' arguments that the district court lacked habeas jurisdiction were wrong. JA558–66. Next, the court addressed the *Mapp* factors for bail pending resolution of a habeas petition. First, it concluded that Mr. Mahdawi had "raised substantial questions about the use of administrative arrest to stifle his exercise of free speech," JA567, that his speech was protected, JA570, that "record evidence" showed that his "arrest and detention constitutes adverse action for the purposes of his First Amendment claim," and that "the Government's public statements" showed "evidence of retaliatory intent." JA570–71. Second, the court concluded that Mr. Mahdawi had raised a substantial Fifth Amendment claim because his detention "bears no reasonable relation to any legitimate government purpose." JA572 (cleaned up). Finally, the court found that "extraordinary circumstances support[ed] Mr. Mahdawi's release for several reasons." JA574; *see* JA574–

---

[6] Sergio Martínez-Beltrán, *Federal Judge Orders Release of Columbia University Student Mohsen Mahdawi*, NPR (Apr. 30, 2025), https://perma.cc/G7J5-MUEQ.

75 (no flight risk or danger to the community, and government chill of First Amendment protected speech). The court emphasized "the extraordinary setting of this case and others like it," recalling "the Red Scare and Palmer Raids of 1919–1920 that led to the deportation of hundreds of people suspected of anarchist or communist views," JA575, as well as "the McCarthy period in the 1950s when thousands of non-citizens were targeted for deportation for their political views," JA576. It concluded that "this case . . . is extraordinary in the sense that it calls upon the ancient remedy of habeas to address a persistent modern wrong." *Id.*; *see* JA576–77 (finding release was necessary to make the habeas remedy effective). The court also memorialized its reasons for denying a stay pending appeal. JA577–79.

Later that day, Respondents filed a notice of appeal, JA581, and on May 2, filed a motion to stay the bail order and the extended TRO, Dkt. 20.[7] Acting quickly, this Court ordered both Mr. Mahdawi's response and any reply by Respondents by May 5, and an argument before a May 6 motions panel. Dkt. 30. After briefing and the argument, the Court denied the motion for a stay. *Mahdawi*, 136 F.4th 443.

---

[7] "Dkt." numbers reference the appellate proceedings in this case.

13

In its opinion, the motions panel rejected Respondents' argument that they were likely to succeed on the merits of their appeal. Noting that "the government makes no challenge to the district court's substantive determination that Mahdawi should be released on bail pending the disposition of his habeas petition," the Court rejected Respondents' arguments that various provisions of the INA—8 U.S.C. § 1252 (g), 8 U.S.C. § 1252 (a)(5) and (b)(9), 8 U.S.C. § 1252 (a)(2)(B)(ii), and 8 U.S.C. § 1231(g)—stripped the district court of habeas jurisdiction and the authority to release Mr. Mahdawi on bail or issue the extended TRO. *See Mahdawi*, 136 F.4th at 449–54. It also concluded that Respondents had failed to demonstrate "any irreparable injury from either his release on bail or continued presence in the District of Vermont pending his removal proceeding." *Id.* at 455. And it determined that "the balance of the equities weighs heavily against a stay," noting both Mr. "Mahdawi's substantial First Amendment claims" and the importance of the Great Writ to test the legality of executive detention. *Id.* Finally, the court denied Respondents' alternative request for mandamus relief. *Id.* at 455–56.

Expedited briefing on this appeal followed. Since regaining his freedom, Mr. Mahdawi has returned to his community in Vermont, graduated

14

from Columbia, spoken frequently to the press following a groundswell of interest in his case, participated in peaceful protests, renewed his calls for peace, and begun to prepare for his graduate program at Columbia this fall.[8]

## SUMMARY OF THE ARGUMENT

The district court correctly held that it has jurisdiction to review Mr. Mahdawi's unlawful detention claims and order his release pending resolution of his habeas petition. None of the provisions of the INA that Respondents cite strip federal court jurisdiction over claims of illegal detention. *See* Br. 12–39 (proffering arguments under 8 U.S.C. § 1252(a)(5), (b)(9), and (g)).

To begin, section 1252(g) is a "narrow" provision that the Supreme Court has explained "applies only to three discrete actions" within the Attorney General's discretion: "to *commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*

---

[8] *See* Sharon Otterman, *Mohsen Mahdawi, Released from ICE Custody, Graduates from Columbia*, N.Y. Times (May 19, 2025), https://perma.cc/7T2F-7HYY; Sabine Poux, *After Release from Prison, Mohsen Mahdawi is Rooted in the Upper Valley – and in His Purpose*, Vermont Public (May 6, 2025), https://perma.cc/HSJ6-6TW9; *see also* ECF 86 at 1, 2 (lifting bail restrictions on Petitioner's travel within the United States, in recognition of his "plans to attend and speak at political events" and that "[w]ith the start of a new academic year in September, Mr. Mahdawi will have responsibilities at Columbia University").

("*AADC*"), 525 U.S. 471, 482 (1999) (citing 8 U.S.C. § 1252(g)). The decision to detain is not one of these actions; indeed, it is wholly "collateral to the removal process," *Mahdawi*, 136 F.4th at 450, as evidenced by the fact that Mr. Mahdawi's immigration case in which the government seeks his removal is currently proceeding on its own track. The Supreme Court has repeatedly rejected attempts to read into section 1252(g) more authority than its words will bear, and both the Supreme Court and courts of appeals have consistently held that (g) does not bar challenges to the legality of a noncitizen's detention.

Sections 1252(a)(5) and (b)(9) likewise do not bar review of Mr. Mahdawi's unlawful detention claims. Those provisions channel certain claims into immigration courts and then to courts of appeals exclusively through the petition for review ("PFR") process. But both sections apply only to review of final orders of removal. No such final order has been issued as to Mr. Mahdawi. Moreover, the Supreme Court has rejected "extreme" readings of section 1252(b)(9) that would strip jurisdiction over any legal question that merely touches the removal process, because such readings would render challenges to the legality of detention "effectively unreviewable." *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018) (plurality opinion); *see also Nielsen v.*

16

*Preap*, 586 U.S. 392, 402 (2019). This entrenched principle—that federal courts retain jurisdiction over claims for relief that cannot be provided through a PFR of a final order of removal—is the law of this Circuit (and others). Here, because each day in retaliatory detention violates Mr. Mahdawi's First Amendment rights on an ongoing basis by censoring his speech, forcing him to wait months or years until the lengthy PFR process concludes would mean any ruling in his favor comes far too late to redress the harm. The censorship will have been accomplished, and nothing could restore his voice to the ongoing public debate in which he seeks to participate.

Respondents are also wrong in arguing that the district court lacked authority to release Mr. Mahdawi on bail. The authority to grant bail to immigration detainees pending resolution of their habeas claims is well established in this Circuit. *See Mapp*, 241 F.3d 221. Respondents argue that 8 U.S.C. § 1252(e), enacted after *Mapp* was decided, divests courts of jurisdiction to grant bail, but they fail to acknowledge binding precedent expressly rejecting that position. *Elkimya v. DHS*, 484 F.3d 151, 154 (2d Cir. 2007). Respondents' bare suggestion that the district court failed to justify its decision to release Mr. Mahdawi is likewise unavailing. The court provided detailed explanations for its conclusions that Mr. Mahdawi's petition raises

17

substantial claims that his detention violates his rights under the First and Fourth Amendments, and that this case presents extraordinary circumstances that make the grant of bail necessary to make the habeas remedy effective. JA 567–76. Respondents identify no error in the court's reasoning.

Accordingly, this Court should affirm the district court's orders granting bail and barring transfer or removal pending final resolution of Mr. Mahdawi's habeas petition.

## STANDARD OF REVIEW

"The standard of review for determinations regarding subject matter jurisdiction is clear error for factual findings, and de novo for the legal conclusion as to whether subject matter jurisdiction exists." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 701 (2d Cir. 2000).

While this Court reviews "*de novo* the district court's conclusion that the federal courts have inherent authority to release habeas petitioners on bail," *Mapp*, 241 F.3d at 224, it applies "deferential review to a district court's bail determination and will not reverse except for clear error." *United States v. Mattis*, 963 F.3d 285, 291 (2d Cir. 2020) (cleaned up). "The clear error standard applies not only to the factual predicates underlying the district court's decision, but 'also to its overall assessment, based on those predicate

18

facts, as to the risk of flight or danger presented by defendant's release.'" *Id.* (quoting *United States v. Abuhamra*, 389 F.3d 309, 317 (2d Cir. 2004)).

## ARGUMENT

### I.    The INA does not strip the district court's jurisdiction to review Mr. Mahdawi's unlawful detention claims and order his release.

Respondents argue that 8 U.S.C. § 1252(a)(5), (b)(9), and (g) stripped the district court of jurisdiction to review Mr. Mahdawi's detention claim and order his release pending habeas review. Dkt. 100.1 at 12–39 ("Br."). A motions panel of this Court has already considered this argument and rejected it—twice. *See Mahdawi v. Trump,* 136 F.4th 443 (2d Cir. 2025); *Öztürk v. Trump*, 136 F.4th 382 (2d Cir. 2025). So, too, have panels in sister circuits. *Khan Suri v. Trump*, 2025 WL 1806692, at *7–9 (4th Cir. July 1, 2025); Order, *Khalil v. Trump*, No. 25-2162 (3d Cir. July 30, 2025) (per curiam) (denying, without opinion, motion for stay of habeas bail order pending appeal because government failed to demonstrate irreparable harm). On appeal, the government recycles the same, untenable jurisdictional arguments. This Court should, again, reject them.

"Repeatedly, including in the INA context, the Supreme Court has declared that [courts] should take account of the presumption favoring interpretations of statutes to allow judicial review absent clear statement."

19

*Mahdawi*, 136 F.4th at 449 (cleaned up) (quoting *Kucana v. Holder*, 558 U.S. 233, 237 (2010), and citing *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 483–84 (1991)). The presumption can "only be overcome by clear and convincing evidence of congressional intent to preclude judicial review." *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020) (cleaned up). Here, "the provisions on which the government relies do not state, let alone clearly state, a jurisdictional bar on review of Mahdawi's detention claims." *Mahdawi*, 136 F.4th at 449.

In fact, the Supreme Court has repeatedly affirmed that, notwithstanding the jurisdiction-stripping provisions of the INA, district courts have habeas jurisdiction over claims of illegal civil immigration detention. *See, e.g., Jennings*, 583 U.S. at 293 (plurality opinion); *Nielsen*, 586 U.S. at 402. And the Second Circuit and others have reviewed such claims in habeas. *See, e.g., Black v. Decker*, 103 F.4th 133, 138–139 (2d Cir. 2024); *Kong v. United States*, 62 F.4th 608, 609 (1st Cir. 2023); *Miranda v. Garland*, 34 F.4th 338, 352–53 (4th Cir. 2022); *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210 (3d Cir. 2020); *Nadarajah v. Gonzales*, 443 F.3d 1069, 1079 (9th Cir. 2006). None of the INA provisions that Respondents

20

cite preclude the district court's release order or review of Mr. Mahdawi's claims of unconstitutional detention.[9]

### A. 8 U.S.C. § 1252(g) does not bar review of Mr. Mahdawi's unconstitutional detention claims.

Respondents contend that section 1252(g) strips jurisdiction here because "Mr. Mahdawi's detention arose from" and is "inextricably intertwined with the Executive's discretionary decision to commence removal proceedings." Br. 13, 23. But this interpretation "dramatically overstates the reach of § 1252(g)," *Mahdawi*, 136 F.4th at 450, is contradicted by the text and longstanding Supreme Court precedent, and is unsupported by the authorities that Respondents cite.

Section 1252(g) is "narrow[ly]" tailored and "applies only to three discrete actions" that are subject to the Attorney General's discretion: "to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *AADC*, 525 U.S. at 482 (citing 8 U.S.C. § 1252(g)). While there are other "decisions

---

[9] The district court noted it would reserve further discussion on Mr. Mahdawi's non-detention claims until fuller briefing on the dismissal motion. JA563, JA566. Accordingly, he focuses his jurisdictional arguments on the detention claim, as the other claims are not at issue here. *See Mahdawi*, 136 F.4th at 450 n.3 ("So long as part of [Petitioner's] challenge to his detention falls outside of [the INA's jurisdictional stripping provisions], his petition survives, as does the district court's authority to order his release.").

or actions that may be part of the deportation process," they do not fall within 1252(g)'s limited scope because they do not interfere with the Attorney General's prosecutorial discretion—the "particular evil" that section 1252(g) was directed against. *Id.* at 482, 485 n.9; *accord Mahdawi*, 136 F.4th at 450. Since *AADC*, the Supreme Court has continued to emphasize 1252(g)'s "narrow" ambit. *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020); *Jennings*, 583 U.S. at 294 (Section 1252(g) "refer[s] to just those three specific actions themselves" (citing *AADC*, 525 U.S. at 482–83)). As the district court explained, section 1252(g) must be applied "in a manner consistent with the actual text of the provision," which "allows for the exercise of habeas jurisdiction" in cases challenging "administrative detention alleged to be employed to stifle protected speech." JA563.

The government's suggestion that, through the REAL ID Act of 2005, "Congress clearly intended to preclude review" of challenges to unlawful detention is wrong. Br. 16. To be sure, the 2005 amendments added language to 1252(g) that "explicitly applied the statute's jurisdictional limitations to habeas cases." *Kong*, 62 F.4th at 615 (reviewing legislative history). But the Conference Report accompanying the amendments expressly stated that they "would not preclude habeas review over challenges to detention that are

22

independent of challenges to removal orders." H.R. Rep. 109-72, at 175 (2005) (Conf. Rep.). This statement appeared immediately after an "extensive examination" of precedent describing the types of jurisdiction-stripping provisions that would not violate the right to habeas corpus. *Kong*, 62 F.4th at 614–16 (reviewing legislative history). Congress's careful review of precedent demonstrates its "attentiveness to the constitutional limitations on withdrawing habeas relief from those seeking release from unlawful detention," *id*. at 615, and does not evince "a clear statement of congressional intent to repeal habeas jurisdiction" over all detention claims. *Id*. (citing *INS v. St. Cyr*, 533 U.S. 289, 298 (2001)). In line with this legislative history, courts have consistently held that section 1252(g) "does not preclude jurisdiction over the challenges to the legality of [a noncitizen's] detention," *Kong*, 62 F.4th at 609, because such claims "may be resolved without affecting pending proceedings." *Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999); *see also Öztürk*, 136 F.4th at 398; *Madu v. U.S. Atty. Gen.,* 470 F.3d 1362, 1368 (11th Cir. 2006) (1252(g) did not apply to petitioner's "constitutional challenge to his detention"); *Bello-Reyes v. Gaynor*, 985 F.3d 696, 698, 700 n.4 (9th Cir. 2021) (1252(g) did not bar First Amendment detention challenge); *Kellici v. Gonzales*, 472 F.3d 416, 420 (6th Cir. 2006) (REAL ID

23

act did not strip jurisdiction over challenges to "constitutionality of [petitioners'] arrest and detention").

Confronted with the plain text of the provision and overwhelming case law exempting unlawful detention claims, Respondents attempt to cast Mr. Mahdawi's detention claim as nothing more than a challenge to his removal proceedings. Br. 23. But "[t]his contention is . . . mistaken." *Öztürk*, 136 F.4th at 397. The phrase "arising from" in section 1252(g) is not "infinitely elastic" and "does not reach claims that are independent of, or wholly collateral to, the removal process." *Id.* (cleaned up) (collecting cases). Here, Mr. Mahdawi's detention claim is "collateral to the removal process" because it can be resolved without impacting those proceedings. *Mahdawi*, 136 F.4th at 450. Indeed, even though he has been released on bail, his removal case continues apace.[10]

Respondents urge this Court to adopt a broad reading of section 1252(g) to "sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General," but this contradicts the narrow

---

[10] *See* Exec. Off. for Immigr. Rev., *EOIR Automated Case Information*, https://acis.eoir.justice.gov/en (where entering Mr. Mahdawi's "A#" reveals that his upcoming master hearing is currently scheduled for September 2, 2025 at 9:00 AM).

reading that the Supreme Court has required. *Cf. Jennings*, 583 U.S. at 294 (quoting *AADC*, 525 U.S. at 482–83) (eschewing "uncritical literalism" when interpreting "capacious phrases like 'arising from'"); *see also AADC*, 525 U.S. at 482 ("It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings."). Mr. Mahdawi's unlawful detention claims are not covered by 1252(g) because they "do not arise from the three discrete exercises of prosecutorial discretion that are shielded by" that provision, *Öztürk*, 136 F.4th at 398 (collecting cases). Adopting Respondents' sweeping position would shield virtually all unlawful detention claims from review, allowing the government to "detain noncitizens indefinitely without needing to provide a justification to anyone." *Kong*, 62 F.4th at 616. This is not the result Congress contemplated, and it contradicts the text of 1252(g) and well-established precedent.

Nor does section 1252(g) reach challenges, like Mr. Mahdawi's, to the "very *authority*" of the executive's actions. *Garcia v. Att'y Gen. of the U.S.*, 553 F.3d 724, 729 (3d Cir. 2009); *see also Ali v. Mukasey*, 524 F.3d 145, 150 (2d Cir. 2008) (section 1252(g) inapplicable where petitioner alleges they were "placed in removal proceedings unlawfully or for reasons that would offend

25

the Constitution"); *Madu*, 470 F.3d at 1368 (section 1252(g) "does not proscribe substantive review of the underlying legal bases for those discretionary decisions" (citing *AADC*, 525 U.S. 485 n.9)); *Arce v. United States*, 899 F.3d 796, 801 (9th Cir. 2018) (similar); *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (en banc) ("The district court may consider a purely legal question that does not challenge the Attorney General's discretionary authority . . . ."). Contrary to the government's claim, Mr. Mahdawi does not challenge a "discretionary" decision to detain him pending removal. Br. 16, 23–24. Rather, he alleges that the government detained him to retaliate against and punish him for his speech in support of Palestinian human rights, JA2, JA14–16, and the district court found that he had raised "substantial claim[s]" that he was targeted in violation of his First and Fifth Amendment rights. JA567–73. Far from challenging the government's routine exercise of discretion to detain someone pending removal, *see* 8 U.S.C. § 1226(a), he argues the government had no power to do what it did. *Mahdawi*, 136 F.4th at 450 (Mr. Mahdawi "challenges his *detention* on the grounds that it violates his rights under the Constitution").[11]

---

[11] The contention that "detention and commencement cannot be separated," Br. 24 n.4, is incorrect. The government routinely initiates removal proceedings against individuals without detaining them. *See, e.g.,* Br. for

26

As such, his challenge does "not implicate[]" section 1252(g). *Garcia*, 553 F.3d at 729.

Respondents contend that Mr. Mahdawi's constitutional claims "do not escape Section 1252(g)'s scope." Br. 17. But this argument relies on an overreading of the cases Respondents cite in support, none of which even involve claims of unlawful detention. *Tazu v. Attorney General of the United States*, 975 F.3d 292 (3d Cir. 2020), was a challenge to the execution of a removal order and the "brief door-to-plane detention" required to execute that order, *id.* at 298, and its reasoning has no applicability here. *Alvarez v. ICE*, which was an after-the-fact *Bivens* challenge to government action—not an effort to seek release—held that 1252(g) did *not* strip jurisdiction to review a claim by a post-final order plaintiff that ICE had no legal authority to detain him past the initial 90-day removal period. 818 F.3d 1194, 1204–05

---

Pet'rs, *United States v. Texas*, 2022 WL 4278395, at *8–9 (Sep. 12, 2022) (noting that "perennial constraints on detention capacity" prevent executive from detaining everyone subject to removal). Moreover, the Supreme Court has reviewed unlawful detention claims regardless of whether detention is mandated by statute. *See, e.g., Zadvydas v. Davis*, 533 U.S. 678 (2001) (reviewing unlawful detention claims by noncitizens subject to mandatory detention under 8 U.S.C. § 1231(a)(2)); *Demore v. Kim*, 538 U.S. 510 (2003) (same as to 8 U.S.C. § 1226(c)); *Jennings*, 583 U.S. 281 (same as to 8 U.S.C. § 1225(b)).

(11th Cir. 2016); *see also id.* at 1203 (no jurisdiction to review challenge to "ICE's decision to lodge a detainer against" petitioner). *Elgharib v. Napolitano,* 600 F.3d 597, 599–606 (6th Cir. 2010), involved a constitutional challenge to the execution of a final removal order, and *Zundel v. Gonzales,* 230 F. App'x 468, 474 (6th Cir. 2007), considered the "decision to issue an order of removal," as did *Humphries v. Various Fed. USINS Emps.,* 164 F.3d 936, 945 (5th Cir. 1999) (barring challenge to "decision to place [petitioner] in exclusion proceedings" but allowing challenge to unconstitutional detention conditions to proceed). *See also Cooper Butt ex rel Q.T.R. v. Barr,* 954 F.3d 901, 907 (6th Cir. 2020) (no jurisdiction to review claim by child seeking to enjoin his father's removal).[12]

*Ragbir v. Homan* is not to the contrary. 923 F.3d 53, 63 (2d Cir. 2019), *cert. granted, judgment vacated sub nom. Pham v. Ragbir,* 141 S. Ct. 227

---

[12] Respondents additionally cite two unpublished district court cases, but those are of no help to them, either. *Vargas v. DHS,* 2017 WL 962420, at *2 (W.D. La. Mar. 10, 2017), held that the court has "jurisdiction to consider [petitioner's] pre-removal detention" and *supports* Mr. Mahdawi's position. *See id.* (noting that the REAL ID Act was "not intended to preclude habeas review over challenges to detention that are independent of challenges to removal orders"). And *Kumar v. Holder,* 2013 WL 6092707, at *6 (E.D.N.Y. Nov. 18, 2013), involved a "challenge to the commencement of removal proceedings," not unlawful detention.

28

(2020). That case involved a noncitizen who "sought to prevent the Government from executing [a] final order of removal against him" on the basis of his protected speech. *Id.* at 61. As the district court rightly noted, "Mr. Ragbir's habeas petition challenged his removal proceedings, not his prior detention." JA562. Indeed, prior to initiating the action challenging the execution of his removal order, Mr. Ragbir had already been released from detention pursuant to an earlier habeas petition. *See Ragbir v. Sessions*, 2018 WL 623557, at *1 (S.D.N.Y. Jan. 29, 2018) (ordering release); *see also Ragbir v. Homan*, 2018 WL 2338792, at *2 (S.D.N.Y. May 23, 2018) (recounting sequence of events). Here, because Mr. Mahdawi challenges the constitutionality of his *detention*—and not the execution of a removal order—1252(g) poses no bar to review. *See Öztürk*, 136 F.4th at 398 n.7 (finding *Ragbir* inapplicable because "[t]he habeas petition in that case says nothing of unlawful detention").[13]

---

[13] In a footnote, the government suggests that the Supreme Court's vacatur of *Ragbir* after its decision in *DHS v. Thuraissigiam,* 591 U.S. 103 (2020), "reaffirm[ed] the impropriety of the district court to entertain a habeas petition challenging actions related to removal." Br. 20 n.3. But *Thuraissigiam*—which addressed the historical common-law understandings of habeas, and not the habeas statute—did not sweep so broadly and, in any case, it affirmed that "the writ could be invoked by aliens already in the country who were held in custody pending deportation," which is precisely how Mr. Mahdawi has invoked it here. *Thuraissigiam*, 591 U.S. at 137–38;

*AADC* and *Jennings* likewise do little to bolster Respondents' position. *Contra* Br. 21.

Respondents contend that the district court "misapplied" *AADC* because the selective prosecution claims at issue there are "no different" from Mr. Mahdawi's claim of retaliatory detention. Br. 21. But *AADC* "did not sound in unlawful *detention* at all, and [it] is therefore of no help." *Mahdawi*, 136 F.4th at 451; *see also* JA561–62. Nor does maintaining habeas jurisdiction for detention claims risk the "deconstruction, fragmentation, and . . . prolongation of removal proceedings," Br. 26 (quoting *AADC*, 525 U.S. at 487), because such claims can be resolved "without affecting pending proceedings." *Parra*, 172 F.3d at 957.

Moreover, unlike in *AADC*, Mr. Mahdawi is not an "alien unlawfully in this country" whom the government has selectively targeted for removal on additional terrorism-related grounds. 525 U.S. at 491–92. He is a lawful permanent resident whom the government has attempted to render removable via the retaliatory acts challenged by his petition. And *AADC*

---

*see also Trump v. J.G.G.*, 145 S. Ct. 1003, 1005 (2025) (per curiam) (holding that "claims for relief that necessarily imply the invalidity of [petitioners'] confinement and removal . . . fall within the core of the writ of habeas corpus" (cleaned up)).

30

specifically warned that even judicial review of selective prosecution claims might not be barred by 1252(g) where, as here, on "the alleged basis of discrimination is so outrageous" that its analysis cannot hold. *Id.* at 491. Here, Mr. Mahdawi has "adduced plausible—indeed, strong" and uncontroverted— "evidence" that the government retaliated against him based on his speech. *Ragbir*, 923 F.3d at 73 (finding that petitioner had "alleged discrimination" that "qualifies as 'outrageous' under *AADC*"). As this Court held in *Ragbir*, "[t]o allow this retaliatory conduct to proceed would broadly chill protected speech, among not only activists subject to . . . deportation but also . . . citizens and other residents who would fear retaliation . . . ." *Id.* at 71.

Next, Respondents propose a strained reading of *Jennings* to suggest that the Supreme Court's construction of *another* jurisdictional provision (§ 1252(b)(9)) as permitting judicial review of unlawful detention claims somehow means that 1252(g) must "bar review" of Mr. Mahdawi's challenge "'to the decision to detain [him].'" Br. 24–25 (citing *Jennings*, 583 at 294). But *Jennings* said no such thing; instead, it affirmed that 1252(g) must be construed narrowly. 583 U.S. at 841. Moreover, the language that Respondents cite is dicta in which the *Jennings* plurality merely noted that its discussion was limited to the prolonged detention claims before it and was

31

not purporting to opine on claims that challenged the constitutionality of the initial detention decision. Indeed, the plurality expressly rejected Respondents' expansive interpretation, which would lead to "staggering results." *Jennings*, 583 U.S. at 293; *accord Öztürk*, 136 F.4th at 399.

Ultimately, Respondents' attempt to recast Mr. Mahdawi's challenge to his retaliatory detention as one that attacks "the Executive's duly assigned statutory power to place an individual in removal proceedings," Br. 27–28, is doomed. No amount of artful framing or mischaracterization can obscure the fact that the plain text of section 1252(g), legislative history, and longstanding precedent affirm that the provision must be narrowly construed to permit review of unlawful detention claims—which are presently the *only* claims before the Court.

### B.    8 U.S.C. § 1252(a)(5) and (b)(9) do not channel Mr. Mahdawi's unlawful detention claims into a petition for review.

Respondents further argue that 8 U.S.C. § 1252(a)(5) and (b)(9) bar review of Mr. Mahdawi's unlawful detention claims, which instead must be channeled to the immigration courts through the PFR process. Br. 28–39. This argument, too, fails.

As an initial matter, section 1252(a)(5) applies only to review of final orders of removal,[14] but there has been no such order issued here. *See, e.g., St. Cyr*, 533 U.S. at 311, 313 (section 1252(a) applies to "[j]udicial review of a final order of removal"); *Mahdawi*, 136 F.4th at 453. The same is true of section 1252(b)(9). While that provision requires that claims "arising from any action taken or proceeding brought to remove an alien . . ." be raised "only in judicial review of a final order," 8 U.S.C. § 1252(b)(9), "the very text of § 1252(b) sets out requirements only '[w]ith respect to review of an order of removal under subsection (a)(1).'" *Mahdawi*, 136 F.4th at 451–52 (quoting 8 U.S.C. § 1252(b)). Again, "[n]o [final] order of removal is at issue here." *Id.* at 452.

Even if 1252(b)(9) applied to pre-final-order cases, it would pose no obstacle to review. The Supreme Court explained in *Jennings*, that "the applicability of 1252(b)(9) turns on whether the legal questions that we must decide 'aris[e] from' the actions taken to remove" noncitizens, and construed that phrase narrowly to avoid "extreme" results that would render claims of

---

[14] An order of removal becomes "final" upon the earlier of a determination by the Board of Immigration Appeals ("BIA") affirming the order, or the expiration of the appeal period. 8 U.S.C. § 1101(a)(47)(B).

"excessive detention" "effectively unreviewable." 583 U.S. at 293; *see also Nielsen*, 586 U.S. at 402 (finding 1252(b)(9) did not preclude review of detention challenge); *Johnson v. Guzman Chavez*, 594 U.S. 523, 533 n.4 (2021) (same); *Regents*, 591 U.S. at 19.

Indeed, in enacting the REAL ID Act of 2005, Congress "stated unequivocally" that 1252(b)(9) "should not be read to preclude" "challenges to detention," because detention claims are "independent of challenges to removal orders." *Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007) (citing H.R. Rep. No. 109-72). Against this backdrop, lower courts have consistently applied section 1252(b)(9) narrowly to permit consideration of unlawful detention claims. *See, e.g.*, *Gonzalez v. ICE*, 975 F.3d 788, 810 (9th Cir. 2020) ("claims challenging the legality of detention pursuant to an immigration detainer are independent of the removal process" and not barred by 1252(b)(9)); *Kellici*, 472 F.3d at 420 (jurisdiction not stripped where "habeas petitions challenged only the constitutionality of the arrest and detention"); *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (district court has jurisdiction where "habeas petitions challenged only the constitutionality of the arrest and detention" (citations omitted)). Here, Mr. Mahdawi "seeks

34

release from detention," so this claim does not "arise from" removal proceedings. *Öztürk*, 136 F.4th at 400.

Respondents concede that Mr. Mahdawi's "unlawful detention claims may be resolved without affecting pending removal proceedings," *Mahdawi*, 136 F.4th at 452, but rely on a minority position to argue that it does "not [] matter[]," Br. 32, because "detention *is* an 'action taken'" to remove him. Br. 33 (citing *Jennings*, 583 U.S. at 318 (Thomas, J., concurring) (cleaned up)). But the *Jennings* plurality "rejected the argument"—advanced by the government here—"that detention is part and parcel of removal and is covered by the 'arising from' language." JA566. Instead, the plurality noted that "[t]he question is not whether *detention* is an action taken to remove an alien but whether *the legal questions* in this case arise from such an action." *Jennings*, 583 U.S. at 295 n.3; *accord Öztürk*, 136 F.4th at 399. And the legal questions before this Court—whether "the government arrested [and detained Mr. Mahdawi] to punish speech with which it disagrees"—arise from his *detention*, not his removal proceedings. *Mahdawi*, 136 F. 4th at 452.[15]

---

[15] Since *Jennings*, the Supreme Court has continued to review challenges to detention, notably rejecting the views of the Justices whom the government cites, Br. 33, who would have held detention claims jurisdictionally barred by section 1252(b)(9). *See Nielsen*, 586 U.S. at 401–02; *id.* at 421–22 (Thomas, J., concurring in part); *Guzman Chavez*, 594 U.S. at 533 n.4; *id.* at 549

And contrary to Respondents' suggestion, (b)(9) does not bar detention claims that have a "close relationship" with or are "connected to" removal proceedings. Br. 33, 34. "[O]verlap, even substantial substantive overlap, does not make one claim arise out of the other." *Öztürk*, 136 F.4th at 400. Such a broad reading would lead to "staggering results" because, as this Court suggested, an individual bringing a First Amendment challenge to their removal would be barred from raising the same claim as to their conditions of confinement, or prolonged detention "merely because there is substantive overlap between the claims." *Id.* at 400. Under the government's position, someone challenging their removal on the ground of mistaken identity could not challenge their detention on that same ground simply because of the overlap in claims—a position contradicted by *Jennings* because such detention would then be effectively unreviewable.

Consistent with *Jennings*' instruction that 1252(b)(9) must allow for meaningful review, the Third Circuit derived a simple "now-or-never" principle: "When a detained alien seeks relief that a court of appeals cannot

---

(Thomas, J., concurring in part); *Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022) (deciding merits of detention challenge without even reiterating that § 1252(b)(9) does not apply); *see id.* at 585 (Thomas, J., concurring).

meaningfully provide on petition for review of a final order of removal, 1252(b)(9) does not bar consideration by a district court." *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 180 (3d Cir. 2020); *see also Aguilar*, 510 F.3d at 11 (explaining that reading 1252(b)(9) to cover claims that "cannot be raised efficaciously" on a petition for review would effectively bar "any meaningful judicial review"). This Court has likewise explained that "whether the district court has jurisdiction will turn on the substance of the relief that a plaintiff is seeking." *Öztürk*, 136 F.4th at 400 (citing *Delgado*, 643 F.3d at 55, and *Ruiz v. Mukasey*, 552 F.3d 269, 274 n.3 (2d Cir. 2009)). Here, Mr. Mahdawi's "core argument is that his free speech and due process rights are being violated, *now*." *Mahdawi,* 136 F.4th at 452. By subjecting him to retaliatory detention, Respondents seek to censor his speech and that of others who similarly would speak out in support of Palestinian rights. Unlawfully depriving him of his physical liberty effectively deters him and others from speaking, and it effectuates the unconstitutional objective of censoring "timel[y]" political speech when it could still influence public debate. *Elrod v. Burns*, 427 U.S. 347, 374 n.29 (1976). If Mr. Mahdawi were forced to wait until the end of a lengthy PFR process to raise his claims, "relief [would] come too late to redress these conditions of confinement," *E.O.H.C.,*

950 F.3d at 186, and First Amendment injuries, rendering his constitutional claims "effectively unreviewable" and accomplishing the unlawful object of his detention, *Jennings*, 583 U.S. at 293. The censorship of speech that would have influenced public debate at a particular point in time can never be remedied—a quintessential "now or never" claim.[16]

Moreover, constitutional challenges to detention cannot even be heard on a PFR of a removal order. *See Mahdawi*, 136 F.4th at 452. Respondents concede as much, stating that Mr. Mahdawi cannot seek release through a bond hearing before an Immigration Judge ("IJ") and, at best, can only seek a determination of whether he is properly subject to removal under 8 U.S.C. § 1227(a)(4). Br. 32. And even if such challenges could somehow be heard on a PFR, the IJ and BIA do not have jurisdiction to decide constitutional issues, nor can they develop a sufficient factual record for expeditious review by the court of appeals. *See Öztürk*, 136 F.4th at 400–401. This is not meaningful review.

---

[16] Moreover, reading section 1252(b)(9) to bar Mr. Mahdawi's detention challenge would raise serious questions under the Suspension Clause, U.S. Const. art. I, § 9, cl. 2. *Cf. Boumediene v. Bush*, 553 U.S. 723, 792 (2008).

38

Finally, Mr. Mahdawi's detention claim does not present an "indirect challenge to removal," Br. 33, and the cases Respondents cite lend their argument no support. The district court correctly held that a challenge to an unlawful "arrest and detention is different" from the "indirect attacks on removal orders" that this Court prohibited in *Delgado*. JA564–65. Respondents argue that this overreads *Delgado*, which did not "discuss the distinction between challenging detention in a habeas proceeding and challenging an order of removal." Br. 37. But *Delgado* explicitly noted that district courts have jurisdiction to consider "the constitutionality of the arrest and detention." 643 F.3d at 55 (citing *Kellici*, 472 F.3d at 420). Moreover, the relief sought by the petitioner in *Delgado*—forcing adjudication of her I-212 waiver—was "inextricably linked" to the reinstatement of her removal order and, if granted, would "render the [removal] order invalid." *Id.* (cleaned up). By contrast, ordering Mr. Mahdawi's release from unlawful detention does not "invalid[ate]" his removal proceedings, which continue. And Respondents' convoluted attempt to distinguish *Kellici* fares no better: the Sixth Circuit explicitly concluded that the district court was not stripped of jurisdiction where petitioners "challenged only the constitutionality of the arrest and detention, *not* the underlying administrative order of removal."

39

472 F.3d at 420; *contra* Br. 34 (citing *Gonzalez-Alarcon v. Macias*, 884 F.3d 1266, 1275 (10th Cir. 2018) (section 1252(a)(5) barred challenge to detention where it was "based on the alleged invalidity of his removal order"); *Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012) (section 1252(a)(5) barred review of denial of asylum, withholding of removal, and CAT relief); and *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1029 (9th Cir. 2016) (involving right to counsel, not unlawful detention, claims)).

## II.  The district court did not abuse its discretion in granting Mr. Mahdawi bail under *Mapp v. Reno*.

In *Mapp v. Reno*, this Court affirmed federal courts' inherent authority to grant bail to habeas petitioners, including individuals in immigration detention. 241 F.3d at 226–29. The Court acknowledged that Congress has the power to limit the courts' ability to grant bail to immigration detainees, but concluded that Congress had not done so, and that none of the INA's jurisdictional bars constrain a court's power to make bail determinations. *Id.* at 228–29.

Under *Mapp*, "a court considering a habeas petitioner's fitness for bail" must analyze (1) whether the habeas petition raises "substantial claims" and (2) whether "extraordinary circumstances" exist "that make the grant of bail necessary to make the habeas remedy effective." *Id.* at 230 (cleaned up). This

40

Court and numerous courts within this Circuit have ordered release pursuant to *Mapp* in contexts involving challenges to detention, removal, or a combination of both. *See, e.g., Vacchio v. Ashcroft*, 404 F.3d 663, 672–73 (2d Cir. 2005); *Avendaño Hernandez v. Decker*, 450 F. Supp. 3d 443 (S.D.N.Y. 2020); *D'Alessandro v. Mukasey*, 2009 WL 799957 (W.D.N.Y. Mar. 25, 2009); *S.N.C. v. Sessions*, 2018 WL 6175902 (S.D.N.Y. Nov. 26, 2018); *Kiadii v. Decker*, 423 F. Supp. 3d 18 (S.D.N.Y. 2018). As those courts explain, to raise a substantial claim, "the Second Circuit does not require that the petitioner convince every court, let alone the court considering the bail application, that he *will* succeed; rather, he need only show that his claims are 'substantial.'" *D'Alessandro*, 2009 WL 799957, at *3 (emphasis in original). At the same time, a broad range of circumstances may qualify as "extraordinary," including lack of flight risk or dangerousness, health issues, and the nature of the government behavior giving rise to the habeas claim. *See, e.g., Coronel v. Decker*, 449 F. Supp. 3d 274, 289 (S.D.N.Y. 2020); *D'Alessandro*, 2009 WL 799957, at *3. Where, as in this case, the petitioner would face "the very outcome they seek to avoid" if they remained in detention pending

41

determination of the merits, release is necessary to make the habeas remedy effective. *See Coronel*, 449 F. Supp. 3d at 289.

### A. The district court retains inherent authority to order release on bail.

Respondents contend that 8 U.S.C. § 1226(e), enacted after this Court's decision in *Mapp*, "restricts" the district court's inherent authority to consider bail for habeas petitioners, and "[t]herefore, *Mapp* no longer remains good law." Br. 40. This is incorrect, and ignores on-point, intervening precedent from this Court expressly affirming courts' ability to order release on bail in light of section 1226(e). And this Court and every other court to consider release *pendente lite* under similar circumstances in recent months has rejected Respondents' argument. *See Öztürk,* 136 F.4th at 401; *Khan Suri*, 2025 WL 1806692, at *7–9; Tr. at 15:23–17:10, *Khalil v. Joyce*, No. 25-cv-1963 (D.N.J. June 20, 2025), ECF 329, *stay denied*, Order, No. 25-2162 (3d Cir. July 30, 2025) (per curium).

In *Elkimya v. DHS*, this Court found that the REAL ID Act "did not qualify our inherent authority to admit to bail to petitioners in immigration cases." 484 F.3d at 154. Then-judge Sotomayor explained that "Congress is presumed to be aware of a judicial interpretation of a statute" as permitting release on bail in the immigration habeas context, "and the Real ID Act's

42

silence regarding our holding in *Mapp* constitutes an implicit adoption" of this interpretation. *Id.* (citing *Lorillard v. Pons,* 434 U.S. 575, 580 (1978)). Consistent with this conclusion, this Court recently affirmed that, "because § 1226(e) 'contains no explicit provision barring habeas review,' the Supreme Court has held that its 'clear text' does not bar jurisdiction over a constitutional challenge to detention under § 1226." *Öztürk,* 136 F.4th at 401 (citing *Demore*, 538 U.S. at 517); *see also Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (holding that section 1226(e) does not "limit habeas jurisdiction over constitutional claims or questions of law" (cleaned up)). Other circuits are in accord. *See, e.g., Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) (under 1226(e), "district court had habeas jurisdiction to review [petitioner's] claims of constitutional and legal error"); *Al-Siddiqi v. Achim*, 531 F.3d 490, 494 (7th Cir. 2008) (same); *Najera v. United States*, 926 F.3d 140, 141 (5th Cir. 2019) (same).

In light of this overwhelming precedent, Respondents' argument that section 1226(e) bars Mr. Mahdawi's release on bail is untenable.

### B.    Mr. Mahdawi's release on bail was justified under *Mapp*.

The district court based its bail decision on unrebutted evidence of substantial questions and extraordinary circumstances presented by Mr.

43

Mahdawi's detention, as required under *Mapp*, 241 F.3d at 230, not the "premise" that this matter is "extraordinary . . . [because] it calls upon the ancient remedy of habeas," Br. 43; JA567–76. Specifically, the district court based its decision on (1) uncontroverted record evidence, including "the Government's public statements," that Mr. Mahdawi was targeted for arrest and detention due to his protected political speech, JA569–71, (2) the "over 125 letters of support" from a wide range of individuals attesting to Mr. Mahdawi's "mild and peaceful nature, his deep intelligence, and his commitment to principles of non-violence and political activism," JA557, (3) careful consideration and rejection of the government's evidence that he poses a danger, JA574–75, and (4) the "extraordinary setting of this case" where a "legal resident[] . . . [is] being arrested and threatened with deportation for stating [his] views on the political issues of the day." JA575. The government points to no error, and numerous courts have recently granted bail based on similar challenges to the government's policy of retaliation against and punishment of campus dissent. *See, e.g., Öztürk v. Trump*, 2025 WL 1420540, at *8 (D. Vt. May 16, 2025); *Khan Suri v. Trump*, 2025 WL 1392143, at *1 (E.D. Va. May 14, 2025) (memorializing oral ruling); *Mohammed H. v. Trump*, 2025 WL 1334847, at *7 (D. Minn. May 5, 2025).

44

Indeed, Respondents "do[] not contest the district court's findings that [Mr.] Mahdawi is neither a danger to the public nor a flight risk," *Mahdawi*, 136 F.4th at 455, relying instead on general statements about the executive branch's authority over immigration and the sweeping assertion that the court did not have jurisdiction to "probe beyond the Secretary's determination." Br. 43–44. But it is an "obligation of the federal courts to exercise the jurisdiction given them," *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), even in cases they "would gladly avoid," *Zivotofsky v. Clinton*, 566 U.S. 189, 194 (2012). Here, Mr. Mahdawi does not challenge the wisdom of a discretionary decision, but the legality of the Executive's action as against long-standing constitutional principles; thus courts "will not stand impotent before an obvious instance of a manifestly unauthorized exercise of power." *Baker v. Carr*, 369 U.S. 186, 217 (1962).

Finally, Respondents invoke "the public's interest" in the government's general enforcement of immigration laws, Br. 44, but there is no public interest in the unconstitutional enforcement of any law, and the continuation of unconstitutional government conduct "cuts sharply against the public interest," *Lopez Torres v. N.Y. State Bd. of Elections*, 462 F.3d 161, 207 (2d Cir. 2006), *rev'd on other grounds*, 552 U.S. 196 (2008) (citing *Council of*

45

*Alt. Political Parties v. Hooks*, 121 F.3d 876, 883–84 (3d Cir. 1997) ("the public interest clearly favors the protection of constitutional rights")). This is particularly true where the unconstitutional enforcement of a law would censor a political debate on matters of public importance, including at the time when it is most relevant to current events. *See N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013) ("[S]ecuring First Amendment rights is in the public interest."); *Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.*, 39 F.4th 95, 109 (3d Cir. 2022); *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 15 (1st Cir. 2012). Similarly, there is a strong public interest in ensuring that the executive branch acts lawfully, *Texas v. United States*, 809 F.3d 134, 187 (5th Cir. 2015), particularly with respect to the rights protected by the Great Writ, "itself an indispensable mechanism for monitoring the separation of powers," *Boumediene*, 553 U.S. at 765.

The district court did not err in ordering Mr. Mahdawi's release.

## CONCLUSION

The Court should affirm the district court's bail order.

Dated: August 18, 2025                    */s/ Noor Zafar*

46

Nathan Freed Wessler
Brian Hauss
Esha Bhandari
Brett Max Kaufman
Noor Zafar
Sidra Mahfooz
Michael K.T. Tan
AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION
125 Broad Street, Floor 18
New York, NY 10004
(212) 549-2500
nwessler@aclu.org
bhauss@aclu.org
m.tan@aclu.org
ebhandari@aclu.org
bkaufman@aclu.org
nzafar@aclu.org
smahfooz@aclu.org

Andrew B. Delaney
MARTIN DELANEY & RICCI LAW
   GROUP
100 North Main Street
Barre, Vermont 05641
(802) 479-0568
andrew@mdrvt.com

Cyrus D. Mehta
David A. Isaacson
CYRUS D. MEHTA & PARTNERS PLLC
One Battery Park Plaza, 9th Floor
New York, New York 10004
(212) 425-0555
cm@cyrusmehta.com
disaacson@cyrusmehta.com

Lia Ernst
Monica H. Allard
Hillary A. Rich
ACLU FOUNDATION OF VERMONT
PO Box 277
Montpelier, VT 05601
(802) 223-6304
lernst@acluvt.org
mallard@acluvt.org

Ramzi Kassem
Naz Ahmad
Mudassar Toppa
Shezza Abboushi Dallal
CLEAR PROJECT
MAIN STREET LEGAL SERVICES, INC.
CUNY School of Law
2 Court Square
Long Island City, NY  11101
(718) 340-4558
ramzi.kassem@law.cuny.edu
naz.ahmad@law.cuny.edu
mudassar.toppa@law.cuny.edu
shezza.dallal@law.cuny.edu

Luna Droubi
Matthew Melewski
Keegan Stephan
BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/26th Floor
New York, New York, 10016
(212) 277-5874
ldroubi@blhny.com
mmelewski@blhny.com
kstephan@blhny.com

*Counsel for Petitioner–Appellee*

47

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2025, I electronically filed the foregoing document with the Clerk of the United States Court of Appeals for the Second Circuit by using the CM/ECF system. Counsel in this case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

/s/ Noor Zafar
Noor Zafar
*Counsel for Petitioner–Appellee*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 9,894 words and complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) because it has been prepared in a proportionally spaced typeface using Microsoft Word 14-point Charter typeface.

/s/ Noor Zafar

Noor Zafar
*Counsel for Petitioner–Appellee*