# No. 25-1113

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

---

**MOHSEN MAHDAWI,**

**Petitioner-Appellee,**

v.

**DONALD J. TRUMP, in his official capacity as President of the
United States, PATRICIA HYDE, in her official capacity as
Acting Boston Field Office Director, Immigration and Customs
Enforcement, Enforcement and Removal Operations, J DOE, in
official capacity as Vermont Sub-Office Director of Immigration
and Customs Enforcement, Enforcement and Removal
Operations, TODD LYONS, in his official capacity as Acting
Director, U.S. Immigration and Customs Enforcement, KRISTI
NOEM, in her official capacity as Secretary of The United States
Department of Homeland Security, MARCO A. RUBIO, in his
official capacity as Secretary of State, PAMELA BONDI, in her
official capacity as U.S. Attorney General,**

**Respondents-Appellants.**

---

**On Appeal from the United States District Court
for the District of Vermont
District Court Case No. 2:25-cv-389**

---

**REPLY BRIEF FOR RESPONDENTS-APPELLANTS**

---

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

MICHAEL P. DRESCHER
Acting United States Attorney
District of Vermont

DREW C. ENSIGN
Deputy Assistant Attorney General
Office of Immigration Litigation

ALANNA T. DUONG
Senior Litigation Counsel

DHRUMAN Y. SAMPAT
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice

*Attorneys for Respondents-Appellants*

## <u>TABLE OF CONTENT</u>

INTRODUCTION .................................................................................1

ARGUMENT ......................................................................................3

I.    The INA Divests The District Court Of Jurisdiction to Adjudicate Mahdawi's Claims. .......................................................3

    A.  Section 1252(g) Forecloses Habeas Review of the Government's Decision to Commence Removal Proceedings ................................................................3

    B.  The Channeling Provisions Preclude Collateral Review of Removability ...............................................15

II.    The District Court Erred in Releasing Mahdawi under *Mapp v. Reno*.....................................................................26

CONCLUSION .................................................................................29

CERTIFICATE OF COMPLIANCE .........................................................1

CERTIFICATE OF SERVICE................................................................2

# TABLE OF AUTHORITIES

## Cases

*Aguilar v. ICE,*
  510 F.3d 1 (1st Cir. 2007) .............................................................. passim

*Azar v. Allina Health Servs.,*
  587 U.S. 566 (2019) ............................................................................ 6

*Bello-Reyes v. Gaynor,*
  985 F.3d 696 (9th Cir. 2021) ........................................................... 14

*Camarena v. Director, ICE,*
  988 F.3d 1268 (11th Cir. 2021) .................................................... 9, 11

*Cardoso v. Reno,*
  216 F.3d 512 (5th Cir. 2000) ........................................................... 15

*Delgado v. Quarantillo,*
  643 F.3d 52 (2d Cir. 2011) ......................................................... 17, 25

*Demore v. Kim,*
  538 U.S. 510 (2003) ..................................................................... 7, 26

*Dep't of Homeland Sec. v. Thuraissigiam,*
  591 U.S. 103 (2020) ......................................................................... 25

*E.F.L. v. Prim,*
  986 F.3d 959 (7th Cir. 2021) ........................................................... 15

*E.O.H.C. v Sec. U.S. Dep't of Homeland,*
  *Sec.,* 950 F.3d 177 (3d Cir. 2020) ............................................... 18, 21

*Elkimya v. Dep't of Homeland Security,*
  484 F.3d 151 (2d Cir. 2007) ........................................................ 3, 27

*Figuereo-Sanchez v. Att'y Gen.,*
  382 Fed. Appx. 211 (3d Cir. 2010) .................................................. 22

*Greene v. United States,*
  13 F.3d 577 (2d Cir. 1994) ............................................................... 12

*Gundys v. United States*,
588 U.S. 128 (2019) ................................................................ 11

*Hurtado v. Barr*,
817 Fed. Appx. 310 (9th Cir. 2020) ..................................... 23

*I.N.S. v. Chadha*,
462 U.S. 919 (1983) ................................................................ 22

*J.E.F.M. v. Lynch*,
837 F.3d 1026 (9th Cir. 2016) ....................................... 15, 18

*Jennings v. Rodriguez*,
583 U.S 281 (2018). ............................................... 17, 19, 25

*Kong v. United States*,
62 F.4th 608 (1st Cir. 2023) .................................................. 8

*Lukaj v. Att'y Gen.*,
763 Fed. Appx. 826 (11th Cir. 2019) ................................... 22

*Luna v. Holder*,
637 F.3d 85 (2d Cir. 2011) .................................................. 25

*Mapp v. Reno*,
241 F.3d 221 (2d Cir. 2001) ................................................ 26

*Massieu v. Reno*,
91 F.3d 416 (3d Cir. 1996) ....................................... 21, 22, 23

*Monsalvo v. Bondi*,
145 S.Ct. 1232 (2025) .......................................................... 16

*Nat'l Broadcasting Co. v. United States*,
319 U.S. 190 (1943) .............................................................. 11

*Noem v. Vasquez Perdomo*,
606 U.S. --,
2025 WL 258637 (Sept. 8, 2025) ......................................... 28

*Palestine Information Office v. Shultz*,
   853 F.2d 932 (D.C. Cir. 1988)................................................................11

*Ragbir v. Homan*,
   923 F.3d 53 (2d Cir. 2019), *cert. granted, judgment vacated sub nom.*
   *Pham v. Ragbir*, 141 S.Ct. 227 (2020) ....................................10, 13, 15

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
   525 U.S. 471 (1998) .................................................................12, 16, 28

*Ruiz v. Mukasey*,
   552 F.3d 269 (2d Cir. 2009)....................................................................25

*Singleton v. Wulff*,
   428 U.S. 106 (1976) ................................................................................12

*Tazu v. Att'y Gen.*,
   975 F.3d 292 (3d Cir. 2020)............................................................. passim

*Whitman v. Am. Trucking Associations*,
   531 U.S. 457 (2001) ................................................................................11

*Winter v. NRDC*,
   555 U.S. 7 (2008) ....................................................................................27

*Wong Wing v. United States*,
   163 U.S. 228 (1896) ..................................................................................7

*Yakus v. United States*,
   321 U.S. 414 (1944) ................................................................................11

**Statutes**

8 U.S.C. § 1226(e) ........................................................................................26

8 U.S.C. § 1227(a)(4) ......................................................................................4

8 U.S.C. § 1251(a)(4)(C)(i) ..........................................................................22

8 U.S.C. § 1252(b)(9).............................................................................passim

8 U.S.C. § 1252(g) ..................................................................................passim

iv

18 U.S.C. § 16(b) ............................................................................... 22

U.S.C. § 1252(a)(5) ........................................................................... 15

U.S.C. § 1252(b)(9) ........................................................................... 27

U.S.C. § 1252(g) ................................................................................. 3

## INTRODUCTION

The district court disregarded multiple, clear limits on its jurisdiction to review Petitioner Mohsen Mahdawi's claims challenging the initiation of his removal proceedings and to order his release from detention. That decision was bad enough on its own; it is particularly misguided in this case, which involves an alien with a criminal background and history of boasting that he "kill[ed] Jews" while in Palestine and that he would like to continue killing Jews going forward (in the specific context of purchasing firearms).

The district court ignored Congress's clear intent to foreclose judicial review, including habeas review, of "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings[.]" 8 U.S.C. § 1252(g). That is exactly what Mahdawi seeks to do here. Mahdawi resists this characterization, asserting that he is only challenging his *detention*, rather than the Executive's efforts to remove him. That is a false distinction—especially here. The foreign-policy charge under which Mahdawi has been deemed removable provides the Executive sole discretion to determine whether

1

he be detained. And the claims in Mahdawi's habeas petition are expressly framed as challenging his removal—not his detention.

The district court's decision was independently barred by Section 1252(a)(5) and (b)(9). With Sections 1252(a)(5) and (b)(9), Congress divested district courts of jurisdiction, including habeas jurisdiction, to review challenges related to removal and channeled all factual and legal challenges, including constitutional questions, that arise during removal proceedings to the court of appeals through the petition for review process. Mahdawi claims that those channeling provisions kick in only after a final order of removal has been entered, but that reading has no basis in the statute's text or precedent. And contrary to Mahdawi's claim, this case does not present the kind of now-or-never claim that requires immediate adjudication outside the petition for review process. The immigration judge is fully capable of developing a record of Mahdawi's claims and the court of appeals is fully capable of resolving those constitutional claims. That Mahdawi might prefer a different timeline is not a basis for circumventing the INA's channeling provisions.

These jurisdictional limits are fatal to the district court's release order. Without any authority to review Mahdawi's claims, the district

2

court acted impermissibly when it exercised its authority to release him. *See Elkimya v. Dep't of Homeland Security*, 484 F.3d 151 (2d Cir. 2007).

For these reasons, this Court should reverse the district court's decision.

## ARGUMENT

## I. THE INA DIVESTS THE DISTRICT COURT OF JURISDICTION TO ADJUDICATE MAHDAWI'S CLAIMS.

The INA deprives the district court of jurisdiction to entertain Mahdawi's challenge to this detention. Its statutory provisions forbid district courts, specifically including while sitting in habeas, from adjudicating challenging to the Attorney General's decision to commence removal proceedings, and channels all such challenges to the appropriate court of appeals through the petition for review process. Mahdawi offers no basis for ignoring these clear jurisdictional bars. The Court should reverse the release order and remand with instructions to dismiss this action.

### A. Section 1252(g) Forecloses Habeas Review of the Government's Decision to Commence Removal Proceedings

The INA—8 U.S.C. § 1252(g)—precludes district courts from "hear[ing] any cause or claim" by an alien "arising from the decision or

3

action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders" against the alien. The Executive's decision to detain Mahdawi is part-and-parcel of its decision to commence removal proceedings and inextricably intertwined with it. Mahdawi's challenge is thus barred by § 1252(g). Op. Br. 12–28.

1. Mahdawi tries to avoid the clear import of § 1252(g) by seeking to bifurcate the Attorney General's decision to commence removal proceedings against him and the decision to detain him. *See* Resp's Br. 22. That effort fails for several reasons.

*First*, the decision to detain and seek removal of Mahdawi are inseparable. The Attorney General's decision to commence removal proceedings against Mahdawi is based on the Secretary of State's determination under 8 U.S.C. § 1182(a)(3)(C)(iii) that Mahdawi's presence or activities in the United States will compromise a U.S. foreign policy interest, *see* JA340–41, and the Executive has the authority and discretion to detain Mahdawi and thereafter make a bond determination based on the charges of removability, 8 U.S.C. § 1227(a)(4); *see also* 8 C.F.R. § 1003.19(h)(2)(i)(C) (restricting authorization for immigration judges to redetermine conditions of custody imposed by DHS for aliens

4

with foreign policy charge). Removal and detention are therefore inextricably linked.

*Second*, even if detention did not automatically flow from the decision to commence removal proceedings, Mahdawi has expressly framed his challenge as being directed against the statutory provision on which the Secretary of State relied to deem him removable—the basis for both his removal proceedings and detention. *See* JA2 ("Mr. Mahdawi's unlawful arrest and detention comes after Respondents adopted a policy … It appears that Respondents seek to base Mr. Mahdawi's removal on the Rubio Determination and Section 237(a)(4)(C)(i) of the [INA][.]"); *see also* JA3 ("[T]he Rubio Determination and Mr. Mahdawi's unlawful detention also violates Mr. Mahdawi's statutory rights and due process rights."). That Mahdawi has requested that the district court use its habeas jurisdiction to "[v]acate and set aside the Rubio Determination" demonstrates that the target of his action is his removal proceedings—without the Rubio Determination, there is no charge of removability. That is precisely the kind of challenge that Congress intended to foreclose through Section 1252(g).

*Third*, reading § 1252(g) to prohibit challenges to the commencement of removal proceedings, but not the accompanying decision to detain, would render meaningless § 1252(g)'s explicit language precluding review under "*any* … habeas corpus provision." 8 U.S.C. § 1252(g) (emphasis added); *see* Op. Br. 21.

Trying to avoid the clear implication of § 1252(g)'s explicit exclusion of habeas challenges, Mahdawi relies on the Conference Report that accompanied the REAL ID Act for its statement that the law "would not preclude habeas review over challenges to detention that are independent of challenges to removal orders." Resp's Br. 22–23 (quoting H.R. Rep. 109-72, at 175 (2005)). To start, such snippets of legislative history cannot overcome clear statutory text. *See Azar v. Allina Health Servs.*, 587 U.S. 566, 581 (2019).

In any event, Mahdawi's argument rests on the false premise that his *initial* detention is "independent of challenges to removal order." H.R. Rep. 109-72, at 175. It is no such thing. But for the decision to commence removal proceedings against Mahdawi, he would not be detained. The two decisions go together, because "[d]etention during removal proceedings is a constitutionally permissible part of that process."

*Demore v. Kim*, 538 U.S. 510, 531 (2003) (citing *Wong Wing v. United States*, 163 U.S. 228, 234 (1896) ("We think it clear that detention, or *temporary* confinement, as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens would be valid.") (emphasis added)). By adding the habeas-stripping provisions to multiple provisions within Section 1252, Congress clearly recognized that detention at times would be a sufficient predicate for aliens to raise certain challenges, but the mere fact of being detained would not escape the jurisdictional bars. *See Tazu v. Att'y Gen.*, 975 F.3d 292, 298–99 (3d Cir. 2020) (Section 1252(g) bars detention claim when executing a final order of removal).

Mahdawi downplays the significance of *Tazu* by distinguishing it as a challenge to "brief" detention. Resp's Br. 27. But that misreads *Tazu*. The key takeaway from *Tazu* is that where detention and removal are inextricably linked, the district court cannot bifurcate them for purposes of the INA's jurisdictional bars. Therefore, Mahdawi cannot simply circumvent § 1252(g)'s bar by alleging that he only challenges unlawful detention.

7

Mahdawi's reliance on *Kong v. United States*, 62 F.4th 608 (1st Cir. 2023), is also misplaced. In that case, a Cambodian national with a final order of removal brought a Federal Tort Claims Act claim after he was "arrested without notice while on his way to work" and detained for more than fifty days. *Id.* at 610, 618. The First Circuit explained that Kong's claims did "not arise from the discretionary decision to execute removal but instead [arose] from the government's alleged violations of law in arresting Kong without a relevant warrant and in failing to abide by its own regulations." *Id.* at 618. Based on that framing, the First Circuit held that § 1252(g) did not apply to Kong's Federal Tort Claims Act claim for damages. *Id.* at 617–18. At the same time, however, the Court acknowledged that Section 1252(g)'s bar *does extend* to the decision to detain an alien pending execution of a removal order, despite a petitioner framing detention as being completely independent of removal. *Id.* at 618; *see e.g.*, *Tazu*, 975 F.3d at 297–99. In any event, Mahdawi is *not* bringing a collateral FTCA claim for damages resulting from detention; rather, he is bringing a direct and frontal assault on the detention itself.

2. Switching gears, Mahdawi tries to escape the reach of Section 1252(g) by framing his challenge as being against "the very authority" of

Executive action. Resp's Br. 25–27. That distinction has no basis in the statute's text: it prohibits "*any* cause or claim … arising from the decision *or* action by the Attorney General to commence proceedings…." 8 U.S.C. § 1252(g) (emphasis added). A claim that the Executive lacked authority to commence removal proceedings plainly "aris[es] from" the "action" of the Executive to "commence [those] removal proceedings." *Id*. The distinction is artificial. *See Camarena v. Director, ICE*, 988 F.3d 1268, 1272 (11th Cir. 2021) ("The bottom line is that § 1252(g) strips us of jurisdiction to hear the claims brought by Camarena and Barrios, and that statute does not offer any discretion-versus-authority distinction of the sort they claim."); *Tazu*, 975 F.3d at 297–298 (applying § 1252(g) where the petitioner styled "his constitutional and statutory objections as challenging not the Executive's *discretion*, but its *authority* to execute his removal order") (emphasis in original).

In any event, Congress expressly delegated authority to the Executive to decide whether an alien's presence or activities would compromise a compelling foreign policy interest such that the alien should be removed. 8 U.S.C. §§1182(a)(3)(C)(iii), 1227(a)(4)(C)(i). Mahdawi challenges a statute in which Congress conferred on the

9

Executive tremendous discretion to make a removability finding based on foreign policy considerations. Therefore, the Executive acted on its congressionally allocated authority to charge Mahdawi as removable, and Mahdawi cannot now circumvent judicial review by arguing that the Executive exceeded its legal authority in doing so. This Court has already made this determination and Mahdawi's case is no different. *See Ragbir v. Homan*, 923 F.3d 53, 64 (2d Cir. 2019), *cert. granted*, *judgment vacated sub nom. Pham v. Ragbir*, 141 S.Ct. 227 (2020) ("[T]he Government unquestionably had statutory authority to execute Ragbir's final order of removal, and that very conduct is the retaliation about which Ragbir complains. To remove that decision from the scope of 8 U.S.C. § 1252(g) because it was allegedly based on unlawful considerations would allow plaintiffs to bypass § 1252(g) through mere styling of their claims."). Therefore, his arguments are foreclosed. Finding otherwise would only allow Mahdawi to "bypass § 1252(g) through mere styling of [his] claims." *Ragbir*, 923 F.3d at 64*; see, e.g.*, *Tazu*, 975 F.3d at 297–98 (discussing *Garcia v. Att'y Gen.* and holding that Section 1252(g) barred review when the petitioner did not challenge the statutory authority to partake in one of the three covered actions);

10

*Camarena*, 988 F.3d at 1273–74; Regardless of how Mahdawi presents his claims, his habeas petition is an attack on the decision to commence removal proceedings against him which runs afoul of Section 1252(g).[1]

Therefore, what remains is Mahdawi's challenge of being charged removable under this foreign policy determination. And because this statute confers broad authority on the Executive, the Executive retains the authority to place Mahdawi into removal proceedings, a decision that is immune from judicial review.

3. At bottom, Mahdawi believes that he can circumvent the INA's jurisdictional bars by asserting a constitutional challenge to his detention. Resp's Br. 27. But that ignores the Supreme Court's decision

---

[1] The district court never addressed the non-delegation claim that Mahdawi raises in his petition. But it merits mentioning that the Supreme Court has consistently held that "very broad delegations" provide the "intelligible principle" necessary to avoid a non-delegation violation. *Gundys v. United States*, 588 U.S. 128, 135, 146 (2019) (plurality opinion). As an illustration, this includes delegations that are equally (if not far more) expansive than 1182(a)(3)(C)(iii), including delegations to regulate "in the public interest," *Nat'l Broadcasting Co. v. United States*, 319 U.S. 190, 216 (1943) (upholding delegation to regulate in the "public interest"), to set "fair and equitable" rates, *Yakus v. United States*, 321 U.S. 414, 422, 427 (1944), or to set air quality standards that are "requisite to protect the public health," *Whitman v. Am. Trucking Associations*, 531 U.S. 457, 472 (2001). When it comes to issues of foreign policies, the standard is even more relaxed. *See Palestine Information Office v. Shultz*, 853 F.2d 932, 944 (D.C. Cir. 1988)

11

in *Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AADC*"), where the Court held that a First Amendment retaliation claim is barred by Section 1252(g). Op. Br. 25–26. He claims that *AADC* should not apply here because he is not in this country unlawfully. Resp's Br. 30. That ignores the facts of *AADC*. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 474 (1998) ("The INS … charged Hamide and Shehadeh, who were *permanent residents*, under a different section of the McCarran-Walter Act[.]") (emphasis added). Mahdawi also invokes the never-yet-applied "outrageous conduct" exception alluded to in *AADC*. Resp's Br. 31. But he never alleged this theory in his habeas petition and cannot present a new theory on appeal. *See Greene v. United States*, 13 F.3d 577, 586 (2d Cir. 1994) ("To begin, it is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal.") (citing *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)). Even if he could, there is a high bar for outrageous conduct, and *AADC* makes clear that that standard is not met even when the government concedes that it is seeking to remove an alien based on First Amendment activity. *AADC*, 525 U.S. at 475, 488 n. 10, 491–92. Application of that exception would be particularly inappropriate here, given Mahdawi's

12

previous statements of violence, including that he previously made guns for Hezbollah and enjoyed "kill[ing] Jews." JA343, 347.

Mahdawi's errors do not end there. He also ignores the host of other courts who have since read Section 1252(g)'s jurisdictional bar as applying to constitutional claims. Op. Br. 26 (collecting cases). In fact, this Court has previously joined its sister courts in recognizing that Section 1252(g) bars constitutional claims. Op. Br. 26 (citing *Ragbir*, 923 F.3d at 64).

Like the district court, Mahdawi tries to distinguish *Ragbir* on the grounds that the petitioner there "challenged his removal proceedings, not his prior detention." Resp's Br. 28–29. But if that were the case, there would be no reason for the Court to analyze whether the Suspension Clause preserved judicial review for Ragbir's claims. *See Ragbir*, 923 F.3d at 74–79. Indeed, this Court had to conclude that Ragbir met the "in custody" requirement for habeas jurisdiction purposes so that it could reach the Suspension Clause claim. *Id.* at 74–76. Moreover, although the posture of Ragbir's removal proceedings was different from Mahdawi's (initiation of proceedings versus execution of removal order), Ragbir (like Mahdawi) alleged that the government had

13

retaliated against him due to his speech. As in *Ragbir*, Mahdawi is attempting to bypass clear congressional intent to strip district courts from reviewing government action to commence proceedings to obtain a final order or execute orders of removal after removal proceedings have concluded. Therefore, this Court should arrive at the same conclusion in this matter as it previously had in *Ragbir*.

Mahdawi also relies on *Bello-Reyes v. Gaynor*, 985 F.3d 696 (9th Cir. 2021) for the premise that "1252(g) did not bar First Amendment detention challenge," Resp's Br. 23, but that case is wholly distinguishable. There, the petitioner was challenging the government's decision to revoke bond, which is an independent claim from those listed in Section 1252(g), *Bello-Reyes*, 985 F.3d at 698, and is therefore distinct from the Executive's decision to initially detain Mahdawi and commence proceedings.

Ultimately, Section 1252(g)'s prohibition applies regardless of whether an alien "restyle[s]" his challenge as being directed "to the Executive's general lack of authority to violate due process, equal protection, the Administrative Procedure Act, or some other federal law." *Tazu*, 975 F.3d at 298. "To remove that decision from the scope of section

14

1252(g) because it was allegedly made based on unlawful considerations would allow plaintiffs to bypass § 1252(g) through mere styling of their claims." *Ragbir*, 923 F.3d at 64; *see also E.F.L. v. Prim*, 986 F.3d 959, 965–65 (7th Cir. 2021) (reading § 1252(g) as divesting courts over challenges to "executive branch decisions or actions"); *Cardoso v. Reno*, 216 F.3d 512, 516 (5th Cir. 2000) (recognizing that aliens may not "make an end-run around the terms of [§ 1252(g)] by simply characterizing their complaint").

## B. The Channeling Provisions Preclude Collateral Review of Removability

The INA—8 U.S.C. § 1252(a)(5) and (b)(9)—channels "all questions of law and fact … arising from any action taken or proceeding brought to remove an alien" through a petition for review filed with the appropriate court of appeals. 8 U.S.C. § 1252(b)(9). "Taken together, [8 U.S.C.] § 1252(a)(5) and § 1252(b)(9) mean that *any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through the [petition for review] process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (emphasis in original); *see* Op. Br. 28–39.

1. Mahdawi first says that Sections 1252(a)(5) and (b)(9) are inapplicable because they only come into play when there is a final order

15

of removal. Resp's Br. 33. That is not the law. *See e.g. AADC*, 525 U.S. at 483 (labeling § 1252(b)(9) as an "unmistakable zipper clause," which is defined as "[a] clause that says 'no judicial review in deportation cases unless this section provides judicial review.'"); *see also Monsalvo v. Bondi*, 145 S.Ct. 1232, 1241 ("Section 1252 permits individuals to petition for judicial review of 'final orders of removal' and indicates that those petitions supply the *exclusive* means for securing 'judicial review of all questions of law.'") (citing 8 U.S.C. § 1252(b)(9)) (emphasis added). Section 1252(b)(9) channels "[j]udicial review of all questions of law and fact" through the petition for review process and prohibits judicial review of "such questions of law or fact" in any other forum, including habeas proceedings. 8 U.S.C. § 1252(b)(9). Nothing in that language suggests that its channeling function only arises *after* a final order of removal has been entered. Such a rule makes no sense: it would mean a district court could lose jurisdiction midway through a case once the parallel immigration proceedings produced a final order. That is exactly the sort of "fragmented" proceedings the INA's channeling provisions were designed to avoid. *See Aguilar v. ICE*, 510 F.3d 1, 13–14 (1st Cir. 2007).

16

A majority of the Justices in *Jennings* recognized that Section 1252(b)(9)'s channeling comes into play *before* a final order is issued and unequivocally bars review of the decision to detain an alien in the first place. Justice Alito, joined by Chief Justice Roberts and Justice Kennedy, concluded that Section 1252(b)(9) did not apply to aliens challenging their prolonged detention because they were "not challenging the decision to detain them in the first place" or "challenging any part of the process by which their removability will be determined"—steps that precede a final order. *See* 583 U.S. at 294–95 (plurality opinion). Meanwhile, Justice Thomas and Justice Gorsuch determined that Section 1252(b)(9) should apply to challenges against prolonged pre-final-order detention. *Id.* at 314–23 (Thomas, J., concurring). So while the Justices did not necessarily agree on the precise scope of Section 1252(b)(9), five Justices understood that Section 1252(b)(9) is operational *during* removal proceedings—not just at the end—and covers the first decision resulting in an alien's detention.

The courts of appeals, including this one, have agreed. *See Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (reading the provisions as "Congress's clear intent to *consolidate* review of challenges *to* orders of

removal"); *E.O.H.C. v Sec. U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 183, 187–88 (3d Cir. 2020) (applying provision to aliens who had their proceedings reopened and argued that their statutory right-to-counsel was being infringed upon); *J.E.F.M*, 837 F.3d at 1033 (requiring children to raise right-to-counsel claim through the PFR process after obtaining a final order of removal); *Aguilar*, 510 F.3d at 9 ("[T]he petitioners claim that the district court's habeas jurisdiction remains intact for all legal challenges that are unaccompanied by any challenge to a particular removal proceeding. That is wishful thinking … By its terms, the provision aims to consolidate '*all* questions of law and fact' that 'arise from' either an 'action' or a 'proceeding' brought in connection with the removal of an alien.").

2.    Mahdawi asserts that Section 1252(b)(9) poses "no obstacle" because *Jennings* required courts to assess whether the "legal questions" at issue "arise from the action to remove" aliens. Resp's Br. 33. That gets Mahdawi nowhere.  As noted, five Justices in *Jennings* agreed that detention claims—such as those presented here—would be barred by Section 1252(b)(9).  In fact, the plurality recognized that "U.S. immigration law … authorizes the Government to detain certain aliens

18

already in the country pending the outcome of their removal proceedings[.]" *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). And the aliens in *Jennings* presented a "legal question," which was whether the relevant statutory authorities permitted "prolonged" detention, *id.* at 291, not whether they could be detained in the first place, *id.* at 294. Mahdawi's challenges are not to the former but rather the latter. And a majority of the Supreme Court agrees that such a challenge would be unreviewable. *See* 583 U.S. at 294 (not applying Section 1252(b)(9) because the aliens were not "challenging the decision to detain them in the first place"); *id.* at 314–23 (Thomas, J., concurring) (stating that Section 1252(b)(9) would bar the entire challenge to detention related claims). There is no issue of "extreme results" or concerns of "render[ing] claims of excessive detention" "effectively unreviewable." Resp's Br. 33. This Court need look no further than comparing the petitioners' prayer for relief in *Jennings*, where they asked for individual bond hearings, *see Jennings*, 586 U.S. at 286, which is drastically different from Mahdawi's Prayer for Relief, wherein he essentially seeks that his charge of removability be vacated, JA18. And where the decision to detain is part-and-parcel of the decision to commence proceedings and seek removal—

19

as it is here—the legal issues arising from those decisions are subject to Section 1252(b)(9) and must be channeled through a petition for review.

Mahdawi tries to avoid this logic by characterizing his claim as challenging *only* his detention, not removal. Resp's Br. 34–35. That is incompatible with the relief he seeks in his pending habeas action— notably his request before the district court to "vacate and set aside Respondents' unlawful Policy of targeting noncitizens *for removal* based on First Amendment protected speech" and to "Vacate and set aside the Rubio Determination." JA18 (emphasis added). That is not a bare challenge to detention; he expressly challenges use of the Secretary of State's determination as a ground *for removal*.

The First Circuit's decision in *Aguilar* supports the Government, not Mahdawi. *Cf.* Resp's Br. 34. There, the plaintiffs had withdrawn their request for "immediate release" and instead argued that ICE's actions had violated "the right to be free from arbitrary, *prolonged, and indefinite detention*; (ii) the right to a prompt bond hearing[] (iii) the right to counsel; and (iv) the right to family integrity." 510 F.3d at 7 (emphasis added). The First Circuit determined that all these claims (except the last) "[could not] plausibly be viewed as either independent of, or

20

collateral to, removal proceedings," and so "the channeling mechanism of section 1252(b)(9) governs such claims[.]" *Id.* at 18.

3. Contrary to Mahdawi's contentions, his claims do not present the "now-or-never" concerns that would allow immediate judicial review outside the petition-for-review process. Resp's Br. 36–38. To be sure, Section 1252(b)(9) does not strip district courts of jurisdiction if an alien cannot obtain meaningful review alongside a final order of removal, because such "now-or-never" claims do not "arise from detention or removal proceedings." *E.O.H.C.*, 950 F.3d at 185, 186. But only a small subset of claims fit into that category—those "claims that are independent of, or wholly collateral to, the removal process," like "claims that cannot effectively be handled through the available administrative process." *Id.* at 186 (quotation marks omitted).

Mahdawi's claims do not fit the bill. Section 1252(b)(9) explicitly channels "constitutional" claims through the petition for review process, *see* 8 U.S.C. § 1252(b)(9), and courts of appeals have consistently adjudicated such claims under that framework. Thus, in *Massieu v. Reno*, 91 F.3d 416 (3d Cir. 1996) (Alito, J.), the Third Circuit held that aliens like Mahdawi can obtain judicial review by way of a petition for

21

review. In that case, an alien argued that the predecessor to the current foreign-policy ground (8 U.S.C. § 1251(a)(4)(C)(i)) was unconstitutionally vague. *Id*. at 417. The court there reversed the lower court's injunction of the removal proceedings, holding that "an alien attempting to prevent an exclusion or deportation proceeding from taking place in the first instance" must seek review through the petition for review process, and the court of appeals can review the final removal order and "'all matters on which the validity of the final order is contingent.'" *Id*. at 421, 422 (quoting *I.N.S. v. Chadha*, 462 U.S. 919, 937–39 (1983)); *see also id*. at 423 (reaffirming that review is not meaningfully precluded when "the challenge by the aliens is neither procedural nor collateral to the merits").[2]

---

[2] *See also, e.g.*, *Chadha*, 462 U.S. at 927) ("Chadha filed a petition for review … in the United States Court of Appeals for the Ninth Circuit … arguing that § 244(c)(2) is unconstitutional. … [T]he Court of Appeals held that the House [of Representative] was without constitutional authority to order Chadha's deportation."); *Figuereo-Sanchez v. Att'y Gen.*, 382 Fed. Appx. 211, 213 (3d Cir. 2010) (reviewing constitutional claim that "his right to equal protection has been violated because the statute governing his removal does not recognize an exception for individuals in his circumstances[.]"); *Lukaj v. Att'y Gen.*, 763 Fed. Appx. 826, 829–30 (11th Cir. 2019) (reviewing claim that "the residual clause of the statute, 18 U.S.C. § 16(b) was unconstitutional" and determining that the "provision cannot serve as the basis for classifying Lukaj's

*Continued on next page.*

Nonetheless, Mahdawi argues that waiting "until the end of a lengthy PFR process to raise his claims," would afford relief "too late to redress these conditions of confinement,' and First Amendment injuries, rendering his constitutional claims 'effectively unreviewable' and accomplishing the unlawful object of his detention[.]"  Resp's Br. 37–38 (cleaned up).  That is unpersuasive.  By arguing that relief would come "too late," Mahdawi concedes that some review would in fact be available. That relief may come later than desired does not make it a "now-or-never claim."  And *Massieu* confirms that this is exactly what Congress intended by streamlining and channeling challenges through a petition for review.  *Massieu*, 91 F.3d at 417.

Here, the immigration judge is empowered to build a record while presiding over Mahdawi's immigration proceedings.  *See Aguilar*, 510 F.3d at 15 ("[I]mmigration judges possess ample evidence-gathering faculties, including the authority to administer oaths, receive evidence, issue subpoenas, call witnesses, and entertain cross-examination.").  *If*

conviction as a crime of violence and as an aggravated felony[.]"); *Hurtado v. Barr*, 817 Fed. Appx. 310, 312–13 (9th Cir. 2020) (reviewing Petitioner's constitutional challenges that Immigration Judges and members of the Board of Immigration Appeals "do not satisfy the Appointments Clause of the U.S. Constitution.").

23

Mahdawi receives an adverse decision at the end of those removal proceedings, he can appeal that adverse decision to the Board of Immigration Appeals and then to the appropriate court of appeals. That is the path for his constitutional challenges set out by Sections 1252(a)(5) and (b)(9)—not a collateral attack on his detention in district court.

Accepting Mahdawi's readings of Section 1252(b)(9) would only invite chaos and fragmentation of removal proceedings—exactly what Congress sought to avoid by adopting Section 1252(a)(5) and (b)(9). *See Tazu*, 975 F.3d at 296. If district courts can interrupt immigration proceedings upon their commencement, then theoretically they could continue interrupting proceedings each time a petitioner presents an artful claim that challenges anything and everything related to removal proceedings. That is the opposite of the streamlining of removal proceedings that Congress means to achieve by adopting Section 1252(b)(9).

4. In a footnote, Mahdawi suggests that accepting the Government's proposed reading of Section 1252(b)(9) would raise serious Suspension Clause questions. Resp's Br. 38 n.16. That is not true. To the extent Mahdawi is using this habeas action to challenge his detention

24

*only* and not seeking relief other than simple release from custody, this Court has already confirmed that the REAL ID Amendments to the INA satisfy Suspension Clause concerns. *See Luna v. Holder*, 637 F.3d 85, 95 (2d Cir. 2011). To the extent that Mahdawi is trying to invoke Suspension Clause concerns for relief other than release from custody, the Supreme Court has foreclosed such use of the Clause. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 119 (2020) ("Claims so far outside the 'core' of habeas may not be pursued through habeas.") (quotation marks and citations omitted).

At bottom, Mahdawi is not challenging actions that are "unrelated to any removal action or proceedings," *Ruiz v. Mukasey*, 552 F.3d 269, 274 n.3 (2d Cir. 2009), but is instead seeking a workaround to challenge his removal and the process by which his removability is being determined, *Jennings*, 583 U.S. at 294. He is not only seeking release from custody but also seeking to enjoin the removability charge. JA18. Given the relief that he seeks, his claims run into Section 1252(b)(9). *See Delgado*, 643 F.3d at 55.

## II. THE DISTRICT COURT ERRED IN RELEASING PETITIONER UNDER *MAPP V. RENO*

The district court erred in ordering that Petitioner be released under *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001). The REAL ID Act displaced the district court's inherent authority to order release, *see* 8 U.S.C. § 1226(e), and even if *Mapp* still governs, the lower court misapplied its standard.

A. The REAL ID Act displaced the district court's inherent authority to order release. Op. Br. 39–42. Mahdawi does not engage with the text of 8 U.S.C. § 1226(e)—which prohibits courts from "set[ting] aside any action or decision by the Attorney General … regarding the detention or release of any alien … or denial of bond or parole." *See* Op. Br. 40–41 (discussing same). He does not engage with the statutory text, which prohibits *any* court from reviewing the Executive's discretionary decision to detain an alien.[3]

---

[3] Mahdawi contends that § 1226(e) lacks the habeas-stripping language, which permits judicial review of a constitutional question involving detention. But that misconstrues Mahdawi's challenge, which is to the specific decision to detain rather than a "constitutional challenge to the legislation authorizing [one's] detention without bail." *Demore*, 538 U.S. at 517. Moreover, *Demore* predates the REAL ID Act, where Section 1252 was amended to include habeas-jurisdiction stripping language.

*Continued on next page.*

26

Instead, Petitioner relies exclusively on *Elkimya v. DHS*, 484 F.3d 151 (2d Cir. 2007), to argue that this Court has "expressly affirm[ed]" federal courts' ability to "order release on bail in light of section 1226(e)." Resp's Br. 42. But, *Elkimya* did not hold that *district courts'* inherent authority to grant release survived the REAL ID Act. It could not have, as it came to this Court on a petition for review from the Board of Immigration Appeals, not on appeal from a district court order. *Elkimya* simply does not hold that district courts may circumvent the channeling function of the REAL ID Act as to bail.[4]

B.    Even if the district court had authority to adjudicate Mahdawi's request for bail, the Court erred in granting him release under *Mapp v. Reno*. *First*, the district court erred in granting Mahdawi release without even determining that he is likely to succeed on any of his claims, as required in *Winter v. NRDC*, 555 U.S. 7, 20 (2008) when seeking preliminary injunctive relief.

---

Accepting Mahdawi's challenge as a constitutional one related to detention confirms the Government's argument: he is seeking judicial review of a question of law that arises out of an action taken to remove him from the United States. 8 U.S.C. § 1252(b)(9).

[4] This Court's stay decision did not address or rely on *Elkimya*.

27

*Second*, and in any event, the district court erred in finding "extraordinary circumstances" justifying Mahdawi's release. Op. Br. 42–45. Mahdawi says that the Government "does not contest the district court's findings that [he]" is not "a danger to the public." Resp's Br. 45. That is wrong—the Government identified record evidence indicating Mahdawi's admissions that he "used to build modified 9mm submachine guns to kill Jews while he was in Palestine" and "like[d] to kill Jews." *See* Op. Br. 5 (citing JA343). Detaining an alien with that track record is not "extraordinary." It is even *less* so given the substantial deference owed to the Executive in identifying aliens whose presence or activities in the United States pose a threat to the country's foreign policy. Op. Br. 44. Mahdawi does not dispute the Executive's substantial discretion, but says he is merely challenging "the legality of the Executive's action against long-standing constitutional principles," rather than to "the wisdom of a discretionary decision." Resp. Br. 45. That is mere wordplay that would allow courts to simply ignore the Executive's foreign policy role. *See AADC*, 525 U.S. at 491 (stating emphatically that courts have no place in reviewing evidence related to foreign policy); *see also Noem v. Vasquez Perdomo*, 606 U.S. --, 2025 WL 2585637, at *5 (Sept. 8, 2025)

28

(Kavanaugh, J. concurring) ("The Judiciary does not set immigration policy or decide enforcement priorities … Article III judges may have views on which policy approach is better or fairer. But judges are not appointed to make those policy calls.").

*Finally*, Mahdawi has no answer to the district court's public interest considerations, except to say that there is no public interest in the unconstitutional enforcement of a law. Resp's Br. 46. But the district court *did not hold* that Mahdawi is likely to succeed in his challenge to the removability charge. *See generally* JA5–32. Mahdawi has been charged as removable based on the Secretary of State's foreign policy determination, and there is a strong governmental interest in finalizing and executing a removal order against the alien if one comes. Op. Br. 53.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's order. It should remand the case with instructions to dismiss, or alternatively, vacate the release order.

29

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant
Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney General
Office of Immigration Litigation

MICHAEL P. DRESCHER
Acting United States Attorney
District of Vermont

ALANNA T. DUONG
Senior Litigation Counsel

*s/ Dhruman Y. Sampat*
DHRUMAN Y. SAMPAT
Senior Litigation Counsel
Office of Immigration Litigation
General Litigation and Appeals
        Section
PO Box 878, Ben Franklin Station
Washington, D.C. 20044
dhruman.y.sampat@usdoj.gov

*Attorneys for Respondents-Appellants*

30

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5888 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*s/ Dhruman Y. Sampat*
DHRUMAN Y. SAMPAT
Senior Litigation Counsel
U.S. Department of Justice

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system. I further certify that all participants in the case are registered ACMS users and that service will be accomplished through that system.

*s/ Dhruman Y. Sampat*
DHRUMAN Y. SAMPAT
Senior Litigation Counsel
U.S. Department of Justice