25-1113
*Mahdawi v. Trump*

MENASHI, *Circuit Judge*, concurring:

The court correctly holds that the zipper clause of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252(b)(9), prohibits a federal court from entertaining Mahdawi's habeas petition. Mahdawi argues that his arrest and detention violate the First and Fifth Amendments of the Constitution. "But those actions were taken to effectuate the removal of the petitioner[] and relied on the same rationale. The arguments the petitioner[] ha[s] offered to challenge the detention[] necessarily challenge the government's decision to commence removal proceedings." *Ozturk v. Hyde*, 155 F.4th 187, 192 (2d Cir. 2025) (Menashi, J., concurring in the denial of rehearing en banc). Because Mahdawi's challenge raises "questions of law and fact … arising from any action taken or proceeding brought to remove an alien from the United States," it cannot be considered by a federal court except on a petition for review of a final order of removal. 8 U.S.C. § 1252(b)(9).

As I have previously explained, other provisions of the INA also bar a federal court from considering Mahdawi's habeas petition. Pursuant to 8 U.S.C. § 1252(g), a federal court may not review "[t]he decision of the government to commence removal proceedings against an alien," and that decision "includes the detention of the alien pending the removal determination." *Ozturk*, 155 F.4th at 190 (Menashi, J., concurring in the denial of rehearing en banc). Pursuant to 8 U.S.C. § 1252(a)(2)(B), a federal court "may not entertain a challenge to a discretionary decision under the INA." *Id.* at 194. Because "the statute that authorizes the detention pending removal proceedings in the first place clearly confers discretion," *id.* (citing 8 U.S.C. § 1226(a)), the jurisdictional bar of § 1252(a)(2)(B) also prevents a federal court from considering the petition in this case.

I join the majority opinion and write separately to address two additional points. First, Mahdawi frames his habeas claim as a challenge to his *detention* rather than his *removal*. The majority opinion correctly concludes that his claim actually challenges his removal. *See ante* at 24. But even if Mahdawi's framing were correct—and his claim represented a *bona fide* challenge to his detention—the federal courts would still lack jurisdiction over this case. Pursuant to 8 U.S.C. § 1226(e), the federal courts may not review a discretionary detention decision of the Attorney General. And that bar on judicial review does not violate the Suspension Clause.

Second, Mahdawi failed to exhaust the available administrative remedies before seeking relief from a federal court. Even if there were jurisdiction to consider Mahdawi's habeas petition, therefore, the lack of exhaustion would require his petition to be dismissed or at least stayed until those remedies are exhausted.

## I

Mahdawi purports to challenge his detention rather than his removal. His claim, however, attacks the basis of his removal. The majority opinion correctly concludes that despite Mahdawi's characterization, his claim raises "questions of law and fact … arising from any action taken or proceeding brought to remove an alien from the United States." 8 U.S.C. § 1252(b)(9). But even if Mahdawi had brought a challenge to his detention independent of his removal, his habeas petition would still need to be dismissed. The INA gives the Attorney General the discretion to decide whether to detain an alien pending removal proceedings. *See id.* § 1226(a). And § 1226(e) provides that the federal courts lack jurisdiction to review those discretionary decisions.

**A**

Pursuant to § 1226(e), "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." *Id.* § 1226(e). The Attorney General takes an "action" or makes a "decision" about "the detention of an[] alien" even when detention is mandatory. *See id.* § 1226(c).[1] When detention is discretionary, *see* 8 U.S.C. § 1226(a), the Attorney General makes *both* a "discretionary judgment" regarding detention *and* a "decision" regarding detention. Neither a discretionary judgment nor a detention decision is subject to judicial review.

Under § 1226(a), the Attorney General has discretion to decide whether an alien should be detained pending removal proceedings. The statute provides that "[o]n a warrant issued by the Attorney General, an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States. … [A]nd pending such decision, the Attorney General … *may* continue to detain the arrested alien; and … *may* release the alien." *Id.* § 1226(a)(1)-(2) (emphasis added). Our court has recognized that "[u]nder § 1226(a), Congress has delegated to the Attorney General the discretion to detain noncitizens during the pendency of their removal proceedings." *Velasco Lopez v. Decker*, 978 F.3d 842, 849 (2d

---

[1] *See Miranda v. Garland*, 34 F.4th 338, 368 (4th Cir. 2022) (Richardson, J., concurring in part, dissenting in part, and concurring in the judgment) ("The Attorney General will sometimes act or make decisions that are not subject to his discretionary judgment, such as mandatory detention actions under § 1226(c).").

3

Cir. 2020). It follows that § 1226(e) bars a federal court from reviewing an exercise of that discretion.

The Supreme Court has said as much. In *Demore v. Kim*, the Supreme Court held that § 1226(e) did not bar a "challenge" to "the statutory framework that permits [an alien's] detention without bail." 538 U.S. 510, 516-17 (2003). The Court explained that § 1226(e) "deals with challenges to operational decisions, rather than to the legislation establishing the framework for those decisions." *Id.* at 517 (quoting *Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999)). But the Court acknowledged that a challenge to an operational decision would be barred. The Court emphasized that the alien in *Demore* did "not challenge a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release." *Id.* at 516. Challenges to such judgments or decisions may not proceed.

The three Justices who declined to join that part of *Demore* did not disagree with that point. Those Justices would have gone further to hold that § 1226(e) also barred challenges to the statutory framework because such challenges implicate the Attorney General's decisions.[2] So the entire Supreme Court in *Demore* indicated that § 1226(e)—at a minimum—bars the federal courts from reviewing the detention decisions of the Attorney General.

---

[2] *See Demore*, 538 U.S. at 536 (O'Connor, J., concurring in part and concurring in the judgment) (arguing that the majority concludes "that § 1226(e) does not bar challenges to § 1226(c) itself, as opposed to decisions implementing that subsection," but while "the Court's opinion today relies heavily on this distinction, I see no basis for importing it into the plain language of the statute") (internal quotation marks omitted).

The Supreme Court reiterated that conclusion in *Jennings v. Rodriguez*. In that case, a three-Justice plurality wrote:

> As we have previously explained, § 1226(e) precludes an alien from "challenging a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release." But § 1226(e) does not preclude "challenges to the statutory framework that permits the alien's detention without bail."

583 U.S. 281, 295 (2018) (plurality opinion) (alterations and citation omitted) (quoting *Demore*, 538 U.S. at 516-17). The *Jennings* plurality allowed the case to proceed because the respondents were "challenging the extent of the Government's detention authority under the 'statutory framework' as a whole." *Id.* at 295-96. And "[i]f that challenge fails, they are then contesting the constitutionality of the entire statutory scheme under the Fifth Amendment." *Id.* at 296. The plurality reasoned that "[b]ecause the extent of the Government's detention authority is not a matter of 'discretionary judgment,' 'action,' or 'decision,' [the] respondents' challenge to 'the statutory framework that permits their detention without bail' falls outside of the scope of § 1226(e)." *Id.* (alteration and citation omitted) (quoting *Demore*, 538 U.S. at 517).

Justice Thomas wrote separately to say that he continued "to agree with Justice O'Connor's concurring opinion in *Demore v. Kim*, which explained that § 1226(e) unequivocally deprives federal courts of jurisdiction to set aside any action or decision by the Attorney General regarding detention." *Id.* at 323 n.6 (Thomas, J., concurring in part and concurring in the judgment) (internal quotation marks and citation omitted). The *Jennings* dissenters did not address § 1226(e). *See id.* at 326-56 (Breyer, J., dissenting). So the four Justices who

addressed the provision agreed that § 1226(e) bars a claim that challenges a detention decision of the Attorney General.

In this case, Mahdawi does not challenge the "statutory framework" that permits his detention. Instead, he argues that the Attorney General exercised her *discretion* unlawfully by targeting him based on speech.[3] Whether her decision was lawful or not, however, Attorney General Bondi made a "discretionary judgment" when she detained Mahdawi. Even if Mahdawi were correct that her discretionary decision was unconstitutional, that would be a merits question that § 1226(e) bars the federal courts from considering. *Cf. Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999) (explaining that pursuant to another jurisdictional provision of the INA, "habeas relief" is "unavailable" for an immigration detainee's claim of selective enforcement in violation of the First Amendment).

To be sure, the Second Circuit once asserted that § 1226(e) "does [not] 'limit habeas jurisdiction over constitutional claims or questions of law.'" *Velasco Lopez*, 978 F.3d at 850 (quoting *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011)). We adopted that conclusion from the decision of the Ninth Circuit in *Singh*, which said that "[t]he Supreme Court held in *Demore* that § 1226(e) does not strip a district court of its traditional habeas jurisdiction, 'bar constitutional challenges' or preclude a district court from addressing a habeas petition 'challenging the statutory framework that permits the petitioner's detention without bail.'" *Singh*, 638 F.3d at 1202 (alterations omitted) (quoting *Demore*, 538 U.S. at 516-17). The Ninth Circuit added that "although the Attorney General's 'discretionary

---

[3] *See, e.g.*, Appellee's Br. 1 ("[B]ecause the government disagreed with the content of his peaceful, First Amendment-protected speech, Respondents detained him in April 2025.").

judgment shall not be subject to review,' claims that the *discretionary process itself was constitutionally flawed* are 'cognizable in federal court on habeas because they fit comfortably within the scope of § 2241.'" *Id.* (emphasis added) (alteration omitted) (quoting *Gutierrez-Chavez v. INS*, 298 F.3d 824, 829 (9th Cir. 2002)).[4]

The Ninth Circuit misread *Demore* in that case, so our court was wrong to rely on it. As detailed above, the Supreme Court held only that § 1226(e)'s "clear text does not bar respondent's constitutional challenge to the *legislation* authorizing his detention without bail." *Demore*, 538 U.S. at 517 (emphasis added). The Supreme Court never said that "discretionary judgments" of the Attorney General—the judgments that § 1226(e) squarely immunizes from judicial review—could be challenged in court. The Court said that only the statutory

---

[4] In addition to the idea that § 1226(e) does not reach constitutional or legal claims, the Ninth Circuit might be understood to suggest that § 1226(e) distinguishes between the Attorney General's decision and the process leading to that decision. But that distinction is untenable. *See Mullin v. Doe*, No. 25-1083, 2026 WL 1825840, at *8-10 (U.S. June 25, 2026) (concluding that a bar on judicial review of a "determination" by the Secretary of Homeland Security forecloses review of "procedural *or* substantive questions" regardless of "whether the term 'determination' is understood to mean a discrete decision or a process leading up to a final decision") (emphasis added); *see also Nouritajer v. Jaddou*, 18 F.4th 85, 89 (2d Cir. 2021) ("Plaintiffs cannot end-run this jurisdictional bar 'by artfully framing a challenge to the agency's substantive decision as a procedural claim.'") (quoting *Doe v. McAleenan*, 926 F.3d 910, 915 (7th Cir. 2019)); *Amgen, Inc. v. Smith*, 357 F.3d 103, 113 (D.C. Cir. 2004) ("If a no-review provision shields particular types of administrative action, a court may not inquire whether a challenged agency decision is arbitrary, capricious, or procedurally defective."); *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 506 (D.C. Cir. 2019) ("DCH's proposed distinction between methodology and estimates would eviscerate the statutory bar, for almost any challenge to an estimate could be recast as a challenge to its underlying methodology.").

framework could be challenged, *see id.* at 516-17, and *Jennings* reaffirmed that view, *see Jennings*, 583 U.S. at 295 (plurality opinion).

The holding in *Demore* "does not mean that § 1226(e) fails to preclude constitutional challenges to the Attorney General's authority under § 1226(a)." *Miranda*, 34 F.4th at 368 (Richardson, J., concurring in part, dissenting in part, and concurring in the judgment). *Demore* and *Jennings* involved challenges to "detention prescribed by the statute," and challenges to that statutory framework "focus on Congress's judgment." *Id.* Following *Demore*, the federal courts may entertain "'constitutional challenges *to the legislation*,' i.e., to the statutory framework," but "not to decisions by the executive enforcing that legislation." *Id.* at 368-69 (alteration omitted) (quoting *Demore*, 538 U.S. at 516-17).

That basic distinction explains the other types of claims that a detained alien may bring despite the jurisdictional bars of the INA: challenges to an indefinite detention and to conditions of confinement. The Supreme Court has entertained a challenge to an indefinite detention because the alien may challenge "the extent of the Attorney General's authority under the … statute" as long as he does "not seek review of the Attorney General's exercise of discretion." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001). If the detained alien can demonstrate that his pending removal "proceedings are a sham or that the government is otherwise unlikely to effectuate the removal[] at the reasonably foreseeable conclusion of those proceedings," then he may argue that "the detention no longer appear[s] to serve the [statutory] purpose of facilitating ongoing removal proceedings" and has instead become "indefinite." *Black v. Almodovar*, 156 F.4th 171, 183-89 (2d Cir. 2025) (Menashi, J., dissenting from the denial of rehearing en banc); *see Zadvydas*, 533 U.S. at 699 ("[O]nce removal is

no longer reasonably foreseeable, continued detention is no longer authorized by statute.").

Challenges to conditions of confinement—such as "claims about inhumane treatment, assaults, or negligently inflicted injuries suffered *during* detention"—also address "actions that go beyond the Government's lawful pursuit of its removal objective." *Jennings*, 583 U.S. at 319 (Thomas, J., concurring in part and concurring in the judgment). Thus, "a detained alien who needs halal or kosher food, or a diabetic who alleges that the Government is depriving him of insulin," may seek judicial relief. *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020). Because detainees challenging conditions of confinement do not "claim an entitlement to release," *DHS v. Thuraissigiam*, 591 U.S. 103, 119 (2020), the Supreme Court has "left open the question" of whether the proper avenue for seeking relief is "to challenge their confinement conditions via a petition for a writ of habeas corpus," *Ziglar v. Abbasi*, 582 U.S. 120, 144 (2017).[5] But the Court has said that "detainees may seek *injunctive* relief" to address at least some "decisions concerning the conditions of confinement." *Ziglar*, 582 U.S. at 144 (emphasis added).

---

[5] *See Wilkinson v. Dotson*, 544 U.S. 74, 86 (2005) (Scalia, J., concurring) ("It is one thing to say that permissible habeas relief, as our cases interpret the statute, includes ordering a quantum change in the level of custody, such as release from incarceration to parole. It is quite another to say that the habeas statute authorizes federal courts to order relief that neither terminates custody, accelerates the future date of release from custody, nor reduces the level of custody.") (internal quotation marks and citation omitted); *see also Thuraissigiam*, 591 U.S. at 127 (identifying "the 'core' of habeas as 'a remedy for unlawful executive detention'") (quoting *Munaf v. Geren*, 553 U.S. 674, 693 (2008)).

The jurisdictional bar of § 1226(e) would not prevent challenges to an indefinite detention or to conditions of confinement because such claims do not require a court to review the decision of the Attorney General to detain an alien pending removal proceedings. Mahdawi does not allege that his detention is indefinite—he has been detained pending removal proceedings—nor does he object to the conditions of his confinement. Because his challenge, even if construed as directed at his detention rather than his removal, would attack "the decision to detain" itself, § 1226(e) would bar the claim. *Jennings*, 583 U.S. at 294 (plurality opinion). Pursuant to § 1226(e), a federal court may not entertain Mahdawi's challenge to the discretionary decision of the Attorney General to detain him.

**B**

The question then arises of whether § 1226(e)—as applied even to challenges to detention that do not implicate the grounds for removal—violates the Suspension Clause. Justice O'Connor observed in *Demore* that "[b]ecause § 1226(e) plainly deprives courts of federal habeas jurisdiction over claims that [an alien's detention] is unconstitutional, one could conceivably argue that such a repeal violates the Suspension Clause." 538 U.S. at 537 (O'Connor, J., concurring in part and concurring in the judgment).

Justice O'Connor correctly explained that § 1226(e) does not violate the Suspension Clause. "[I]n 1789, and thereafter until very recently, the writ was not generally available to aliens to challenge their detention while removal proceedings were ongoing." *Id.* at 539. Because the Suspension Clause, "at a minimum, 'protects the writ as it existed in 1789,' when the Constitution was adopted," the very recent practice falls outside the scope of the clause. *Thuraissigiam*, 591 U.S. at 116 (quoting *INS v. St. Cyr*, 533 U.S. 289, 301 (2001)). Congress

has therefore permissibly limited immigration detainees to habeas claims that fall outside of the § 1226(e) bar and to administrative remedies, such as *Joseph* hearings, that the executive branch makes available.

**1**

"[A]ny argument that § 1226(e) violates the Suspension Clause is likely unavailing." *Demore*, 538 U.S. at 537 (O'Connor, J., concurring in part and concurring in the judgment). The constitutional analysis begins with "the common-law writ as it existed in 1789," *Boumediene v. Bush*, 553 U.S. 723, 746 (2008), so "[t]he constitutionality of § 1226(e)'s limitation on habeas review therefore turns on whether the writ was generally available to those in [Mahdawi's] position in 1789 (or, possibly, thereafter) to challenge detention during removal proceedings," *Demore*, 538 U.S. at 537-38 (O'Connor, J., concurring in part and concurring in the judgment).

It was not. "[H]istorical evidence suggests that [Mahdawi] would not have been permitted to challenge his temporary detention pending removal until very recently." *Id.* at 538.[6] In fact, "not until

---

[6] *Cf. Yamataya v. Fisher*, 189 U.S. 86, 100 (1903) ("[I]t has been settled that the power to exclude or expel aliens belonged to the political department of the government, and that the order of an executive officer invested with the power to determine finally the facts upon which an alien's right to enter this country, or remain in it, depended, was 'due process of law, and no other tribunal, unless expressly authorized to do so, was at liberty to re-examine the evidence on which he acted, or to controvert its sufficiency.'") (quoting *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892)); *Fong Yue Ting v. United States*, 149 U.S. 698, 709 (1893) ("In England, the only question that has ever been made in regard to the power to expel aliens has been whether it could be exercised by the king without the consent of parliament. It was formerly exercised by the king, but in later times by parliament, which passed several acts on the subject between 1793 and 1848. Eminent

1952 did [the Supreme Court] entertain such a challenge," and in that case the Court "reaffirmed the power of Congress to order the temporary detention of aliens during removal proceedings." *Demore*, 538 U.S. at 539 (O'Connor, J., concurring in part and concurring in the judgment). Given that background, Justice O'Connor—joined by Justices Scalia and Thomas—would have held in *Demore* that "§ 1226(e) unambiguously bars habeas challenges to the Attorney General's decisions regarding the temporary detention of criminal aliens under § 1226(c) pending removal." *Id.* at 540. Congress did not violate the Suspension Clause by adopting § 1226(e) because "in 1789, and thereafter until very recently, the writ was not generally available to aliens to challenge their detention while removal proceedings were ongoing." *Id.* at 539.

The other six Justices in *Demore* did not express disagreement with that conclusion but simply did not reach the issue of the Suspension Clause.[7] The Supreme Court continues to evaluate what is "required by the Suspension Clause" by reference to "the writ of habeas corpus as it was understood when the Constitution was adopted." *Thuraissigiam*, 591 U.S. at 136. That understanding shows that the Suspension Clause does not require a federal court to

---

English judges, sitting in the judicial committee of the privy council, have gone very far in supporting the exclusion or expulsion, by the executive authority of a colony, of aliens having no absolute right to enter its territory or to remain therein.") (citations omitted).

[7] As described above, those Justices concluded that § 1226(e) did not bar the detainee's challenge to "the statutory framework that permits his detention without bail" because he did "not challenge a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release." *Demore*, 538 U.S. at 516-17 (majority opinion).

entertain a habeas petition challenging the decision of the Attorney General to detain an alien pending removal proceedings.

**2**

Other jurists have relied on different grounds to conclude that § 1226(e) does not violate the Suspension Clause. The Supreme Court has explained that "Congress could, without raising any constitutional questions, provide an adequate substitute" for the availability of the writ of habeas corpus. *St. Cyr*, 533 U.S. at 314 n.38. "[T]he substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus." *Swain v. Pressley*, 430 U.S. 372, 381 (1977).[8]

Applying that standard, courts have concluded that "the alternative remedies provided to review the mandatory detention determination under § 1226(c) are adequate substitutes for habeas corpus." *Alphonse v. Moniz*, No. 21-CV-11844, 2022 WL 279638, at *6 (D. Mass. Jan. 31, 2022) (Saylor, C.J.).[9] Those courts have observed that "[m]andatory detention under § 1226(c) may be challenged in a *Joseph* hearing" and "[a]n adverse decision in the *Joseph* hearing may be appealed to the BIA." *Alphonse*, 2022 WL 279638, at *6 (citing

---

[8] *See also Alexandre v. U.S. Att'y Gen.*, 452 F.3d 1204, 1206 (11th Cir. 2006) ("If a substitute remedy provides the same scope of review as a habeas remedy, it is adequate and effective."); *Perez v. Barr*, 957 F.3d 958, 963 (9th Cir. 2020).

[9] *See also P.L. v. ICE*, No. 19-CV-1336, 2019 WL 2568648, at *3 (S.D.N.Y. June 21, 2019) (explaining that it would not violate the Suspension Clause for aliens who have "challenged their detention" to lack access to habeas relief because the aliens "still have the ability to bring their claims in a BIA proceeding or to file a petition for review").

8 C.F.R. § 1236.1(d)(3)). Moreover, district courts retain "jurisdiction to address whether the length of [a] petitioner's detention comports with due process." *Id.*; *see Zadvydas*, 533 U.S. at 699. Alongside these avenues for relief, the "process established in § 1252 to appeal a removal order to the BIA, and subsequently to the circuit court, provides an adequate substitute to habeas relief." *Alphonse*, 2022 WL 279638, at *6 n.7; *see* 8 U.S.C. § 1252(b)(2).[10]

When a detained alien such as Mahdawi is determined to be ineligible to be released on bond pending removal proceedings, the alien may request a *Joseph* hearing.[11] The *Joseph* hearing allows the

_____

[10] *See also Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 234 (2020) ("Congress'[s] amendments are designed to provide an adequate and effective alternative to habeas corpus in the courts of appeals.") (internal quotation marks omitted).

[11] Some aliens detained pending removal proceedings pursuant to § 1226(a) may be released on bond. *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 1003.19; *id.* § 1236.1(c)(8). "At a bond hearing conducted pursuant to … § 1226(a), the burden of proof is on the [alien] to demonstrate to the satisfaction of the Immigration Judge that his release would not pose a danger to property or persons, and that the respondent is likely to appear for any future proceeding." *Matter of Salas Pena*, 29 I. & N. Dec. 173, 174 (BIA 2025). If the alien disagrees with the decision of the IJ, he may appeal to the BIA. *See* 8 C.F.R. § 1236.1(d)(3). Some aliens, however, are ineligible to be released on bond. That category includes aliens detained under § 1226(c)—the mandatory detention provision—as well as aliens such as Mahdawi who were charged as removable under 8 U.S.C. § 1227(a)(4). An alien so charged is subject to discretionary detention by the Attorney General under § 1226(a). But if the Attorney General decides to detain the alien, "an immigration judge may not redetermine conditions of custody imposed." 8 C.F.R. § 1003.19(h)(2)(i); *id.* § 1003.19(h)(2)(i)(C). It makes sense that if the United States has determined that an alien's "presence or activities in the United States" has "potentially serious adverse foreign policy consequences for the United States"—and has further determined that the alien should be detained pending the removal proceedings—an agency

14

alien to "seek[] a determination by an immigration judge that the alien is not properly included" in the category of those ineligible for bond. 8 C.F.R. § 1003.19(h)(2)(ii).[12]  At the hearing, the government has "the initial burden of showing there is 'reason to believe' that the alien is deportable or inadmissible under a ground" that renders him ineligible for a bond hearing. *De La Rosa v. Barr*, No. 19-CV-6418, 2019 WL 5842906, at *2 n.1 (W.D.N.Y. Nov. 7, 2019) (quoting *Joseph*, 22 I. & N. Dec. at 803-04). The "'reason to believe' standard is equivalent to [the] 'probable cause' standard." *Id.* (quoting *Matter of U-H-*, 23 I. & N. Dec. 355, 356 (BIA 2002)). "Once the Government has carried that burden," the alien "may secure a bond hearing only if he or she is able to affirmatively demonstrate that the Government's charges are meritless, and therefore, he or she is not 'properly included'" in the category of aliens ineligible for bond. *Id.* (quoting *Joseph*, 22 I. & N. Dec. at 806-07). "If a detainee is found not to be 'properly included'" in that category, "she may then seek release on bond under 8 U.S.C. § 1226(a)." *Gayle*, 12 F.4th at 328 (quoting *Joseph*, 22 I. & N. Dec. at 806).

---

adjudicator would not be able to countermand that decision. 8 U.S.C. § 1227(a)(4). But an alien who falls into this category still receives a *Joseph* hearing at which he may contest his classification as an alien ineligible for bond.

[12]  *See Demore*, 538 U.S. at 514 (explaining that the *Joseph* hearing entitles the alien "to raise any nonfrivolous argument available to demonstrate that he was not properly included in a mandatory detention category"); *Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 12 F.4th 321, 328 (3d Cir. 2021) ("Under *Joseph*, such detainees are entitled to a hearing before an Immigration Judge (IJ) to determine 'whether the Government has properly included them within a category that is subject to mandatory detention.'") (alterations omitted) (quoting *Matter of Joseph*, 22 I. & N. Dec. 799, 805 (BIA 1999)).

In this case, Mahdawi could have obtained a *Joseph* hearing. *See* Appellant's Br. 32; Appellee's Br. 38. But like the litigant in *Demore*, he "forwent a hearing" and "instead filed a habeas corpus action." *Demore*, 538 U.S. at 514. If Mahdawi had exhausted the administrative remedies available to him, the government would have been required to establish probable cause to believe that Mahdawi qualifies as "[a]n alien whose presence or activities in the United States the Secretary of State has reasonable ground to believe would have potentially serious adverse foreign policy consequences for the United States." 8 U.S.C. § 1227(a)(4)(C)(i); *see* J. App'x 263. If the Secretary's determination that Mahdawi falls under § 1227(a)(4)(C)(i) could be shown to be unlawful—under the First Amendment or otherwise—the IJ might conclude that the government failed to meet its burden. Alternatively, even if the government could meet the probable cause standard based on the Secretary's determination, Mahdawi could have argued that the government was "substantially unlikely to establish that he is in fact subject to mandatory detention" because the Secretary's determination violated the First Amendment or another law. *Demore*, 538 U.S. at 514 n.3. In short, Mahdawi would have received a standard bond hearing unless (1) the government established that there was probable cause to believe he was removable under § 1227(a)(4), and (2) Mahdawi failed to establish that the government's case against him lacked merit.[13]

---

[13] *See Joseph*, 22 I. & N. Dec. at 806 ("[A] lawful permanent resident will not be considered 'properly included' in a mandatory detention category when an Immigration Judge or the Board is convinced that the [government] is substantially unlikely to establish at the merits hearing, or on appeal, the charge or charges that would otherwise subject the alien to mandatory detention."); *id.* at 809 (explaining that if the alien "is not properly included in a mandatory detention category," then "the lawful permanent resident

Mahdawi asserts that the IJ and the BIA in this process would not consider his constitutional arguments because those adjudicators "do not have jurisdiction to decide constitutional issues." Appellee's Br. 38.[14]  But that is incorrect. As the government observes, IJs and the BIA frequently address constitutional questions. *See* Appellant's Reply Br. 31 n.3. The Department of Justice has explained:

> [A]djudicators [in the Executive Office for Immigration Review] may generally consider arguments arising out of constitutional law, as they have done for many years. … To that end, all EOIR adjudicators should maintain familiarity with established jurisprudence on constitutional law issues likely to arise in proceedings before them, particularly issues related to the First, Fourth, Fifth, and Seventh Amendments, the Appointments Clause, and the major questions and nondelegation doctrines.[15]

One decision of the BIA, for example, found "no violation of the Establishment Clause of the First Amendment in review of a visa

---

could be considered by the Immigration Judge for release under the general bond provisions").

[14]  "No one disputes," however, that Mahdawi may raise his constitutional challenges in a petition for review of a final order of removal. *Khalil v. President*, 164 F.4th 259, 280 (3d Cir. 2026). "And the availability of the PFR process satisfies the Suspension Clause." *Id.* at 279; *see also id.* at 275 (explaining that a "delay does not foreclose meaningful review" or entitle a petitioner "to seek immediate release through habeas").

[15]  Executive Office for Immigration Review, U.S. Department of Justice, PM 25-45: Consideration of Constitutional Arguments in Agency Adjudications at 3 (Sept. 5, 2025), https://perma.cc/8D74-23HT.

petition filed by a religious organization." [16] The adjudicators in immigration cases "are fully competent to decide most constitutional issues arising in EOIR proceedings and have done so for decades."[17] The Office of Legal Counsel has also rejected "the view that agencies lack the power to adjudicate certain constitutional issues."[18] It noted that "recent scholarship has documented the 'long history' of agencies 'engaging with constitutional questions,'"[19] and it explained that "an agency's intimate familiarity with the statutes and regulations it administers may make it particularly well suited to address most other constitutional questions" besides the limited set of "structural challenges to their own enabling acts."[20] Even though Mahdawi was determined to be ineligible for a bond hearing, he could have pursued a *Joseph* hearing at which he would have been entitled to challenge the determination of ineligibility with "any nonfrivolous argument available." *Demore*, 538 U.S. at 514.

In sum, § 1226(e) prohibits a federal court from reviewing a discretionary detention decision made by the Attorney General under § 1226(a). It does not offend the Suspension Clause to prohibit a detained alien from challenging that decision in habeas. Even though

---

[16] *Id*. (describing *Matter of Church Scientology Int'l*, 19 I. & N. Dec. 593, 603 (BIA 1988)).

[17] *Id.* at 4.

[18] The Merit Systems Protection Board's Authority to Adjudicate Constitutional Questions within an Administrative Proceeding, 49 Op. O.L.C. (Sept. 26, 2025), 2025 WL 2817559, at *6.

[19] *Id.* (quoting Yonatan Gelblum, *The Myth that Agency Adjudications Cannot Address Constitutional Claims*, 32 Geo. Mason L. Rev. 223, 243-45, 255-56 (2025)).

[20] *Id.* (internal quotation marks omitted); *see also infra* notes 28-29 and accompanying text.

immigration detainees have alternative administrative avenues for relief, Mahdawi did not even attempt to pursue those remedies.

## II

Mahdawi's failure to exhaust the available administrative remedies means that even if the jurisdictional bars could be overcome, the district court still would be required to dismiss or to stay his habeas petition. *See Monestime v. Reilly*, 704 F. Supp. 2d 453, 456 (S.D.N.Y. 2010) ("A habeas petitioner generally must exhaust administrative remedies before seeking federal court intervention.").[21]

The exhaustion requirement in this context is not judicially created, despite what some district courts have suggested.[22] As our court has explained, the "exhaustion requirement arises as a result of the administrative remedies available to [the alien] pursuant to the

---

[21] *See also Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) ("When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused."); *Cepeda v. Shanahan*, No. 15-CV-9446, 2016 WL 3144394, at *2 n.3 (S.D.N.Y. Apr. 22, 2016) ("A stay is appropriate when the [c]ourt has jurisdiction over the habeas petition but the petitioner must, or should, seek administrative relief first.").

[22] *See, e.g., Araujo-Cortes v. Shanahan*, 35 F. Supp. 3d 533, 538 (S.D.N.Y. 2014) ("There is no statutory requirement that a habeas petitioner exhaust his administrative remedies before challenging his immigration detention. Since Congress is silent on the issue, courts have applied a judicially created requirement that, generally, a petitioner must exhaust his administrative remedies before seeking federal court intervention."); *Garcia v. Shanahan*, 615 F. Supp. 2d 175, 179 (S.D.N.Y. 2009) ("[I]t is a matter of the [c]ourt's discretion whether a petitioner must exhaust his administrative remedies before applying for relief in federal court.").

statutory and regulatory schemes." *Howell v. INS*, 72 F.3d 288, 293 (2d Cir. 1995). The requirement follows from the applicable legislative and administrative framework.

"Under the doctrine of exhaustion of administrative remedies, 'a party may not seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself.'" *Id.* at 291 (quoting *Guitard v. U.S. Sec'y of the Navy*, 967 F.2d 737, 740 (2d Cir. 1992)). "The requirement of exhaustion 'may arise from explicit statutory language or from an administrative scheme providing for agency relief.'" *Id.* (quoting *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 592 (2d Cir. 1993)).

In *Howell*, we held that an alien could not seek relief from a federal court regarding the denial of her application for adjustment of status "once deportation proceedings commenced, because she failed to exhaust her administrative remedies." *Id.* at 293. In those proceedings, the alien had "the opportunity, pursuant to the regulations, to renew her application for adjustment of status before an immigration judge," and we explained that she "must pursue these remedies rather than seek review in the district court." *Id.*

Thus, even if Mahdawi were able ultimately to challenge his detention via habeas in federal court, he would be required first to exhaust his administrative remedies. As in *Howell*, there are "administrative remedies available to [Mahdawi] pursuant to the statutory and regulatory schemes involving [immigration detention]," and Mahdawi "must pursue these remedies rather than seek review in the district court." *Id.*

We have identified "established exceptions to the exhaustion rule." *Id.* at 291. But none apply here. First, "[e]xhaustion of

administrative remedies may not be required" when "irreparable injury may occur without immediate judicial relief." *Id.* (quoting *Guitard*, 967 F.2d at 741). But Mahdawi has not identified the kind of injury that would excuse exhaustion. Mahdawi may seek the same relief he sought from the district court—release from detention pending removal proceedings—through a *Joseph* hearing. Even if he did not prevail in that hearing and remained detained, as an immigration detainee Mahdawi would be on the priority calendar for removal proceedings. "Since its creation in 1983, EOIR has prioritized all cases involving individuals in detention or custody, regardless of the custodian."[23] EOIR has established a performance metric that "[n]inety-five percent (95%) of all non-status detained removal cases should be completed within 60 days of filing of the Notice to Appear (NTA), reopening or recalendaring of the case, remand from the Board of Immigration Appeals (BIA), or notification of detention."[24] A report of the Government Accountability Office records the actual "[m]edian number of days from case start to initial completion" for detained aliens for fiscal years 2016 through 2023.[25] In 2023 it was 47 days; in 2022 it was 50 days; in 2021 it was 50 days; in 2020 it was 92 days; in 2019 it was 52 days; in 2018 it was 39 days; and in 2017 it was 40 days.[26]

---

[23] Executive Office for Immigration Review, U.S. Department of Justice, PM 25-47: Case Priorities and Immigration Court Performance Measures at 2 (Sept. 12, 2025), https://perma.cc/K99B-Z2B9.

[24] *Id.* at 7 (footnotes omitted).

[25] Government Accountability Office, GAO-25-106867: Immigration Courts: Actions Needed to Track and Report Noncitizens' Hearing Appearances (Dec. 19, 2024), https://perma.cc/7CWR-3A7N.

[26] *Id.*

"[O]ur legal system routinely forces petitioners—even those with meritorious claims—to wait to raise their arguments." *Khalil*, 164 F.4th at 275. And the Supreme Court has reiterated its "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Demore*, 538 U.S. at 526. The circumstances here do not require a departure from that normal rule.

Second, exhaustion of administrative remedies may not be required when "available remedies provide no genuine opportunity for adequate relief" or an "administrative appeal would be futile." *Howell*, 72 F.3d at 291 (quoting *Guitard*, 967 F.2d at 741). An exhaustion requirement may be "improper" when the "administrative remedy furnishes no effective remedy at all." *McCarthy v. Madigan*, 503 U.S. 140, 156 (1992) (Rehnquist, C.J., concurring in the judgment). As explained above, however, immigration adjudicators entertain constitutional claims such as Mahdawi's.[27]

---

[27] In the case argued alongside this one, *Ozturk v. Hyde*, No. 25-1019, the alien received relief from an IJ on constitutional grounds. *See In re Rumeysa Ozturk* (Immigr. Ct. Boston Jan. 29, 2026) ("[T]he Court must determine whether the [visa] revocation legally supports removal where such revocation would violate the Constitution. The DHS has not met its burden by proving removability by clear and convincing evidence because the DHS may not rely on language of a purported visa revocation if such revocation exceeds statutory or constitutional limits."), *available at* Immigration Court's Decision, *Ozturk v. Hyde*, No. 25-1019 (2d Cir. Feb. 10, 2026), ECF No. 238; *see also* ACLU, Press Release, Immigration Judge Terminates Removal Proceedings Against Child Development Scholar Rumeysa Ozturk (Feb. 9, 2026), https://perma.cc/G6YF-8GGA. In Mahdawi's removal proceedings, the BIA suggested that constitutional claims should be raised "in any appeal from an administratively final order." *In re Mohsen Khader Mahdawi* (BIA Apr. 29, 2026), *available at* Rule 28(j) Letter Regarding Board of Immigration Appeals Decision, *Mahdawi v. Trump*, No. 25-1113 (2d Cir. May

Third, exhaustion may not be required when "in certain instances a plaintiff has raised a substantial constitutional question." *Howell*, 72 F.3d at 291 (quoting *Guitard*, 967 F.2d at 741). Some constitutional claims concern errors that are not "correctable by the administrative tribunal." *Reid v. Engen*, 765 F.2d 1457, 1461 (9th Cir. 1985). "EOIR adjudicators," for example, "cannot consider structural constitutional challenges to their own existence, which they cannot remedy."[28] That sort of constitutional claim could be excused from exhaustion based on "administrative law's well-known exhaustion exception for constitutional claims that an agency cannot consider." *Singh v. Rosen*, 984 F.3d 1142, 1155 (6th Cir. 2021).[29] But not all

_____

5, 2026), ECF No. 230. To the extent that the BIA believed it could not consider a constitutional claim, it was mistaken. *See supra* notes 15-20 and accompanying text.

[28] Executive Office for Immigration Review, *supra* note 15, at 3 n.5. But "even if EOIR could not consider such a structural constitutional challenge in the first instance, it would nevertheless be bound to apply any circuit court or Supreme Court precedent that had addressed such a challenge," in which case "it would simply be applying established precedent, just as it does in all other cases." *Id.*; *see also* Gelblum, *supra* note 19, at 227 (identifying decisions of the Supreme Court "declining to require administrative exhaustion of structural constitutional claims" and "describing the supposed uselessness of administratively exhausting constitutional challenges to agency structure, stating that agencies are 'generally ill suited to address structural constitutional challenges'") (quoting *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 195 (2023)).

[29] *But cf. Elgin v. Dep't of the Treasury*, 567 U.S. 1, 22-23 (2012) (considering the argument of the petitioners that "their constitutional claims are not the sort that Congress intended to channel through the MSPB because they are outside the MSPB's expertise" and responding that the petitioners "overlook the many threshold questions that may accompany a constitutional claim and to which the MSPB can apply its expertise," that "preliminary questions unique to the employment context may obviate the

23

constitutional claims fall under that exception. The Ninth Circuit has held that an alien challenging his detention on constitutional due process grounds had not "demonstrated grounds for excusing the exhaustion requirement." *Leonardo*, 646 F.3d at 1161. In this case, Mahdawi also raises a constitutional claim that the agency can adjudicate.

Mahdawi had administrative remedies available and did not exhaust those remedies. Because he has not "demonstrated grounds for excusing the exhaustion requirement," even if there were jurisdiction over his petition, the district court would still have been required to "either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies." *Id.* at 1160-61.

\* \* \*

Mahdawi purports to challenge his detention, but his habeas petition instead challenges the basis of his removal. For that reason, the court correctly holds that the petition raises "questions of law and fact … arising from any action taken or proceeding brought to remove an alien from the United States" that the district court lacked jurisdiction to decide. 8 U.S.C. § 1252(b)(9).

In my view, § 1252(g) and § 1252(a)(2)(B) also bar the federal courts from entertaining the petition. *See Ozturk*, 155 F.4th at 190-94 (Menashi, J., concurring in the denial of rehearing en banc). Moreover, even if the petition were construed as a *bona fide* challenge to Mahdawi's detention, it still would need to be dismissed pursuant to

---

need to address the constitutional challenge," and that "the challenged statute may be one that the MSPB regularly construes, and its statutory interpretation could alleviate constitutional concerns").

24

§ 1226(e). That provision precludes judicial review of a discretionary decision of the Attorney General regarding the detention of an alien pending removal proceedings. That denial of jurisdiction does not violate the Suspension Clause. And even if Mahdawi could somehow overcome the jurisdictional bars, he had administrative remedies available that he failed to exhaust. I join the majority opinion and concur for these additional reasons.