25-1113
*Mahdawi v. Trump*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term 2025

(Argued: September 30, 2025          Decided: July 21, 2026)

No. 25-1113

_____

MOHSEN MAHDAWI,

*Petitioner-Appellee,*

-v.-

DONALD J. TRUMP, in his official capacity as President of the United States, DAVID T. WESLING, in his official capacity as Acting Boston Field Office Director, Immigration and Customs Enforcement, Enforcement and Removal Operations, J DOE, in official capacity as Vermont Sub-Office Director of Immigration and Customs Enforcement, Enforcement and Removal Operations, DAVID J. VENTURELLA, in his official capacity as Senior Official Performing the Duties of the Director, U.S. Immigration and Customs Enforcement, MARKWAYNE MULLIN, in his official capacity as Secretary of The United States Department of Homeland Security, MARCO A. RUBIO, in his official capacity as Secretary of State, TODD BLANCHE, in his official capacity as Acting U.S. Attorney General,

*Respondents-Appellants.*[1]

---

[1] Mahdawi filed his habeas petition against Patricia Hyde in her official capacity as Acting Boston Field Office Director for U.S. Immigration and Customs Enforcement's Enforcement and Removal Operations, and against Todd Lyons in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement.    David T. Wesling is the

CERTIFIED COPY ISSUED ON 07/21/2026

_____

Before:      LIVINGSTON, NARDINI, and MENASHI, *Circuit Judges*.

A host of federal government officials—the Respondents-Appellants—appeal from an April 30, 2025, order of the United States District Court for the District of Vermont ordering the release of Petitioner-Appellee Mohsen Mahdawi from federal immigration custody pending review of his petition for a writ of habeas corpus. Mahdawi, a lawful permanent resident of the United States, had challenged his pre-removal detention as violating various statutes and constitutional provisions, including the First Amendment and the Due Process Clause of the Fifth Amendment. We conclude that Section 242(b)(9) of the Immigration and Nationality Act, codified at 8 U.S.C. § 1252(b)(9), channels Mahdawi's claims initially to the administrative process. Accordingly, we **VACATE** the district court's order and **REMAND** to the district court to dismiss the petition.

Judge Menashi joins the opinion of the court and files a concurring opinion.

| | |
|---|---|
| FOR PETITIONER-APPELLEE: | MICHAEL K.T. TAN (Nathan Freed Wessler, Brian Hauss, Esha Bhandari, Brett Max Kaufman, Noor Zafar, Sidra Mahfooz, *on the brief*), American Civil Liberties Union Foundation, New York, NY. |
| | |
| | Andrew B. Delaney, Martin Delaney & Ricci Law Group, Barre, VT. |
| | |
| | Cyrus D. Mehta, David A. Isaacson, Cyrus D. Mehta & Partners PLLC, New York, NY. |

_____

current Acting Field Office Director, and David J. Venturella is the current Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement, and they are automatically substituted as parties under Federal Rule of Appellate Procedure 43(c)(2). The Clerk of Court is respectfully directed to amend the official case caption accordingly.

Lia Ernst, Monica H. Allard, Hillary A. Rich, ACLU Foundation of Vermont, Montpelier, VT.

Naz Ahmad, Mudassar Hayat Toppa, Shezza Abboushi Dallal, CLEAR Project, Main Street Legal Services, Inc., Long Island City, NY.

Luna Droubi, Matthew Melewski, Keegan Stephan, Beldock Levine & Hoffman LLP, New York, NY.

FOR RESPONDENTS-APPELLANTS: TYLER J. BECKER (Yaakov M. Roth, Drew C. Ensign, Alanna T. Duong, Dhruman Y. Sampat, *on the brief*), *for* Brett A. Shumate, Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C.

Eugenia A.P. Cowles, United States Attorney's Office for the District of Vermont, Burlington, VT.

DEBRA ANN LIVINGSTON, *Circuit Judge*:

This case presents the question whether the United States District Court for the District of Vermont erred by exercising jurisdiction over the habeas petition of Mohsen Mahdawi ("Mahdawi") notwithstanding 8 U.S.C. § 1252(b)(9), which provides that "no court shall have jurisdiction, by habeas corpus . . . or by any other provision of law," to review any questions of law and fact, "including

interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States," except on a petition for review ("PFR") of a final order of removal.[2]    We conclude that the district court erred.    In immigration matters, our Constitution is clear: "The power to regulate immigration—an attribute of sovereignty essential to the preservation of any nation—has been entrusted by the Constitution to the political branches of the Federal Government."    *United States v. Valenzuela-Bernal*, 458 U.S. 858, 864 (1982) (citation omitted).    "[O]ver no conceivable subject is the legislative power of Congress more complete."    *Reno v. Flores*, 507 U.S. 292, 305 (1993) (alteration in original) (quoting *Fiallo v. Bell*, 430 U.S. 787, 792 (1977)).    Our

---

[2] Section 242(b)(9) of the Immigration and Nationality Act ("INA"), as amended, provides:

> (9) Consolidation of questions for judicial review
> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.    Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).

decision today implements the scheme Congress enacted, which affords Petitioner-Appellee Mahdawi the opportunity to raise his claims before a federal circuit court in a petition for review of a final order of removal, but which prohibits this collateral attack on ongoing removal proceedings. 8 U.S.C. § 1252(b)(9).

This case comes before us on appeal of a release order that the district court issued after Mahdawi, a lawful permanent resident then in immigration custody, filed a habeas petition. Detained and placed into removal proceedings by the United States Government ("the Government"), Mahdawi challenged the basis for his removal. On the day of his arrest, he filed a habeas petition requesting that the district court, among other actions, invalidate a determination by Secretary of State Marco Rubio (the "Rubio Determination") that Mahdawi threatens American foreign policy (and thus is removable under the INA), bar the Government from targeting aliens for removal based on their "protected speech advocating for Palestinian rights," and order his release. Joint App'x at 18. The district court granted his motion for release pending review of this habeas petition on the basis that Mahdawi would likely succeed in showing that the Government unlawfully targeted him based on First Amendment protected activity. We conclude that the district court should not have reached this question because it did not have subject

5

matter jurisdiction over the habeas petition. 8 U.S.C. § 1252(b)(9). We therefore **VACATE** the district court's order and **REMAND** with instructions for the district court to dismiss the petition for lack of jurisdiction.

## BACKGROUND

### I. Factual Background[3]

Mahdawi, 35, was born and raised in the West Bank, but he has lived for more than a decade in the United States, where he is a resident of the State of Vermont. Mahdawi was granted a B-1/B-2 visitor visa in June 2014, and he entered the country in July 2014. Shortly thereafter, his then-wife, an American citizen, filed a Form I-130, Petition for Alien Relative, on his behalf before the U.S. Citizenship and Immigration Services ("USCIS") office, and he concurrently filed a Form I-485, Application to Register Permanent Residence or Adjust Status. In January 2015, Mahdawi became a conditional permanent resident and, in 2018, a lawful permanent resident without condition.

---

[3] The factual background presented here is derived primarily from the district court's April 30, 2025, Opinion and Order on Motion for Release. To the extent relevant to the legal question we address, we "consider the District Court's factual findings that are predicate to a jurisdictional ruling under clear error review." *Hussein v. Maait*, 129 F.4th 99, 110 (2d Cir. 2025).

In 2021, some seven years after entering the United States, Mahdawi enrolled as an undergraduate at Columbia University. He is currently a master's student in Columbia's School of International and Public Affairs. After Israel responded to Hamas's October 7, 2023, attack by taking military action in the Gaza Strip, Mahdawi became a vocal opponent of the war, and he participated in student demonstrations. *Mahdawi v. Trump*, 781 F. Supp. 3d 214, 220–21 (D. Vt. 2025).

The removal proceedings at issue here commenced on April 14, 2025, when Homeland Security Investigations agents arrested Mahdawi at a USCIS facility in Colchester, Vermont, following the conclusion of a naturalization interview. The agents thereafter transferred him to a different USCIS facility and placed a Notice to Appear ("NTA") in his jacket.[4] The NTA states that Mahdawi is removable because Secretary of State Marco Rubio has determined that Mahdawi's "presence or activities in the United States would have potentially serious adverse foreign policy consequences for the United States." Joint App'x at 263 (citing INA § 237(a)(4)(C)(i) (codified at 8 U.S.C. § 1227(a)(4)(C)(i))). The Rubio

---

[4] An NTA formally commences removal proceedings against an alien. *See* 8 U.S.C. § 1229(a)(1).

Determination alleges, *inter alia*, that Mahdawi has called for the destruction of Israel and was identified at protests at Columbia "as having engaged in threatening rhetoric and intimidation of pro-Israeli bystanders." *Id.* at 341.

The NTA ordered Mahdawi to appear before a Department of Justice immigration judge ("IJ") at a Louisiana detention facility on May 1, 2025. *Id.* at 263. On the day of his arrest, agents transported Mahdawi to the airport in Burlington, Vermont to fly him to Louisiana, but they missed the flight.

## II. Procedural History

Mahdawi's attorney filed a petition for a writ of a habeas corpus on April 14, 2025, the day of Mahdawi's arrest. The petition states that "[t]his case concerns the government's retaliatory and targeted detention and attempted removal of Mr. Mahdawi for his constitutionally protected speech." *Id.* at 1. It alleges that the Government has "adopted a Policy of targeting noncitizens for removal on the basis of First Amendment protected speech which advocates for Palestinian rights." *Id.* at 16. In its prayer for relief, the petition requests, among other things, that the district court "[v]acate and set aside Respondents' unlawful Policy of targeting noncitizens for removal based on First Amendment protected

8

speech advocating for Palestinian rights," "[v]acate and set aside the Rubio Determination," and order Mahdawi's release.   *Id.* at 18.

That same day, Mahdawi's attorney also filed an emergency motion for a temporary restraining order ("TRO") barring Mahdawi's removal from Vermont, which the district court (Sessions, *J.*) granted.   Judge William K. Sessions III then marked the case unrelated to a pending habeas case in the same district court, *Ozturk v. Hyde*, No. 25-CV-374, and the clerk of court randomly reassigned the case to Judge Geoffrey W. Crawford on April 15, 2025.   A week later, on April 22, 2025, Mahdawi filed a motion for release from immigration custody.   On April 24, the district court (Crawford, *J.*) extended the TRO.

In a sworn declaration to the district court in support of his immediate release, Mahdawi described himself as dedicated "to understanding how to achieve a lasting peace for Palestinians and Israelis, particularly through the study of conflict resolution."[5]   *Mahdawi*, 781 F. Supp. 3d at 220 (quoting Joint App'x at

---

[5] In the district court, Mahdawi sought and received approval to file his declaration under seal because it "contain[ed] sensitive personal information." Unopposed Mot. for Leave to File Certain Exhibits Under Seal at 1, *Mahdawi v. Trump*, No. 25-CV-389 (D. Vt. Apr. 22, 2025), ECF No. 24; *see* Joint App'x at 588 (order granting the motion).   Seemingly without ever seeking or obtaining the approval of the district court or this Court to lift the sealing order, the parties filed the declaration as part of their public Joint Appendix.   *See* Joint App'x at 254–66; *see also id.* at 271–75.

255).   In "over 125 letters" filed with the district court, friends and others attesting to know Mahdawi "describe[d] him as a person who seeks common ground between students who support Israel's military response to the atrocities committed by Hamas and those who express outrage against the level of destruction and civilian casualties."   *Id.* at 221, 223 (citing, *inter alia*, Joint App'x at 50–253).

The Government's principal argument before the district court was that the court lacked jurisdiction to consider the question of release.   But in response to Mahdawi's motion, the Government produced a 2015 police report containing the statement of a Vermont gun store owner who claimed that Mahdawi had visited the store twice, sought to purchase a sniper rifle and a machine gun, and stated that he "used to build . . . submachine guns to kill Jews while he was in Palistine [sic]."[6]   Joint App'x at 343–44.   According to the police report, the gun store owner put police in touch with the owner's friend, who asserted Mahdawi had, on another occasion, expressed interest in purchasing firearms, and stated "I like to

---

[6] Later in 2015, Mahdawi's then-wife asked police to "take possession of her personally owned 12GA Mossberg Shotgun" in the wake of a "non-physical argument" with Mahdawi, according to a separate police report produced by the Government. Joint App'x at 347.   The couple divorced shortly thereafter.

kill Jews." *Id.* at 344–45. Several months later, in November 2015, a Federal Bureau of Investigation ("FBI") special agent interviewed Mahdawi about the alleged statements, which Mahdawi denied making. The agent's investigation ended that same year.[7]

The Government also pointed to an incident in 2019 in which Mahdawi was stopped by Customs and Border Protection officers at the border and was allegedly found in possession of LSD, methamphetamine, and mushrooms that tested positive for opiates, as well as $4,125 in cash. Mahdawi was charged by the Vermont State Police, but the charges were ultimately dismissed and the record expunged after Mahdawi completed a diversion program. Before the district court, Mahdawi denied possessing illegal drugs on this occasion.

---

[7] The district court ordered the Government to produce the FBI agent who interviewed Mahdawi at the hearing on the motion for release. The FBI agent appeared, but the Government objected to his testifying on the ground that "questioning [him] about his investigation could compromise national security concerns." *Mahdawi*, 781 F. Supp. 3d at 221. The Government indicated it had no "material disagreement" with Mahdawi's account of the FBI interview, while noting that "the investigation turned up information that was corroborative" of the police report but "not subject to disclosure" in open court. *See* Tr. of Mot. for Release at 14–16, *Mahdawi v. Trump*, No. 25-CV-389 (D. Vt. May 2, 2025), ECF No. 57. The Government offered to brief whether the information could be presented to the court on an *ex parte* basis. *Id.* at 16, 18. But the matter was dropped when Mahdawi elected not to call the FBI agent given the Government's statement that the agent had closed his inquiry after interviewing Mahdawi. *Id.* at 15–16, 21.

After briefing and argument, the district court ordered Mahdawi's release on April 30, 2025. In its Opinion and Order on Motion for Release, the district court first examined "in a preliminary manner" the Government's arguments that the district court lacked jurisdiction under various provisions of the INA: 8 U.S.C. §§ 1252(g), 1252(a)(5), 1252(b)(9), and 1226(e). *Mahdawi*, 781 F. Supp. 3d at 223. The district court noted that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009–546, and the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 302, contain various jurisdiction-stripping provisions, but it concluded that there was "a sufficient basis for jurisdiction to proceed to the issue of release or detention," and that the court would "return to this issue after briefing is complete on the motion to dismiss." *Id.* at 223–24, 228. After determining that Mahdawi's release was appropriate under this Court's decision in *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001), the district court denied the Government's request for a stay of the release order.

The Government appealed that same day to this Court, seeking review of the district court's April 24 TRO extension and April 30 release order. The next day, May 1, 2025, the Government filed a lengthy motion for a stay pending appeal, seeking emergency relief by May 6, 2025. It also moved to consolidate

this appeal with its appeal in *Ozturk v. Hyde*, No. 25-1019.    An applications judge granted the expedited argument request and referred the motions to the motions panel hearing a similar motion for a stay pending appeal in *Ozturk*.    After hearing arguments, the motions panel denied the motion to consolidate this case with *Ozturk* and denied the motion for a stay.    *Mahdawi v. Trump*, 136 F.4th 443, 447 (2d Cir. 2025).    Because the discretionary decision whether to issue a stay requires examining the requesting party's likelihood of success on the merits, the motions panel evaluated the Government's merits arguments.    *See Nken v. Holder*, 556 U.S. 418, 434 (2009) (outlining the stay factors).    The motions panel concluded that "the provisions on which the government relies do not state, let alone clearly state, a jurisdictional bar on review of Mahdawi's detention claims" and thus determined "these jurisdictional challenges are unlikely to succeed."    *Mahdawi*, 136 F.4th at 449.

The Government petitioned for rehearing by the motions panel and *en banc*. Two days later, the Government moved to expedite the appeal and to set "oral argument during the first available sitting in September [2025]."    Opposed Mot. to Expedite Consideration of Appeal and Proposed Briefing Schedule at 3 (May 20, 2025), Dkt. 94.1.    The motions panel granted the Government's request and

13

directed that this case be heard in tandem with *Ozturk*. This Court subsequently denied the Government's petition for rehearing of the stay denial. *See Mahdawi v. Trump*, 155 F.4th 187, 188 (2d Cir. 2025). The matter was duly assigned to this merits panel, which heard oral argument in September 2025.[8]

## DISCUSSION

We first address the precedential effect of the motions panel's order denying a stay and conclude that we are not bound by this order. Turning next to the merits of this appeal, and reviewing *de novo* "the legal conclusion as to whether subject matter jurisdiction exists," *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 701 (2d Cir. 2000), we conclude that 8 U.S.C. § 1252(b)(9) strips the district court of jurisdiction over Mahdawi's claims because, as the Third Circuit recently

---

[8] On February 17, 2026, Mahdawi informed the Court "that on February 11, 2026, following a hearing, the immigration court . . . terminated removal proceedings against Mr. Mahdawi without prejudice." Mahdawi FRAP 28(j) Letter at 1 (Feb. 17, 2026), Dkt. 226.1. The IJ had issued a written order on February 13, 2026, concluding that the Government had not properly authenticated the Rubio Determination and thus failed to establish Mahdawi was removable under 8 U.S.C. § 1227(a)(4)(C)(i). *See id.* at 4–5. The Government appealed the IJ's ruling and Mahdawi filed a cross-appeal with the Board of Immigration Appeals ("BIA") "on the basis that the immigration court should have terminated removal proceedings *with* prejudice." Mahdawi FRAP 28(j) Letter at 1 (Mar. 16, 2026), Dkt. 227.1. The BIA subsequently reinstated the removal proceedings and remanded for further proceedings. *See* Mahdawi FRAP 28(j) Letter at 4–10 (May 5, 2026), Dkt. 230.1. Mahdawi immediately filed a PFR with the First Circuit. *See* Mahdawi FRAP 28(j) Letter at 1, 4 (June 10, 2026), Dkt. 232.1. Shortly thereafter, the IJ ordered removal. *See id.* at 5. Mahdawi's PFR remains pending before the First Circuit.

14

concluded in *Khalil v. President, United States*, 164 F.4th 259, 274 (3d Cir. 2026), Mahdawi's claims "raise *legal questions* challenging the government's very basis for trying to remove . . . him."[9]   Accordingly, we vacate the district court's order and remand to the district court with instructions to dismiss Mahdawi's habeas petition.

## I.   The Motions Panel's Decision

As an initial matter, we address the effect on this panel's deliberations of the motions panel order denying the Government a stay of the release order.   In a footnote, the Government argues that the motions panel's opinion, "while published, is not binding on the merits panel because the inquiry with respect to the motion for stay of the district court's order differs from the merits panel's inquiry . . . ."   Gov't Br. at 9 n.2 (citing *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 660 (9th Cir. 2021)).   We agree.   The motions panel's opinion, while entitled to thoughtful consideration, is not binding.

Under the discretionary doctrine of the law of the case, "'when a court decides upon a rule of law, that decision should continue to govern the same issues

---

[9] Given this determination, we need not reach the Government's alternative arguments that § 1226(e), § 1252(a)(5), and § 1252(g) also bar jurisdiction.

in subsequent stages in the same case.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (citation omitted). But this rule does not apply to the decision of a motions panel, particularly one tasked, as here, with predicting the likelihood of success of a jurisdictional challenge. Several reasons support this conclusion. As we have said:

> First, . . . the law of the case doctrine is discretionary, not mandatory. The doctrine expresses, in shorthand fashion, a practice of courts generally not to reconsider that which has already been decided. But it does not purport to be a legally binding limitation on the court's authority to reconsider such matters. Second, a motions panel's decision is based on an abbreviated record and made without the benefit of full briefing by the parties, which may result in a less than thorough exploration of the issues. Third, reexamination of a question regarding our jurisdiction is especially important whenever there is reason to believe that it may be lacking.

*Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 149 (2d Cir. 1999) (citation omitted); *see also Hassoun v. Searls*, 976 F.3d 121, 134 (2d Cir. 2020) ("'[N]early every . . . Circuit,' including this one, has held that a merits panel 'may revisit [a] motions panel's decision on jurisdiction.'" (alterations in original) (quoting *Rezzonico*, 182 F.3d at 149)); 18B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4478.5 (3d ed. 2025).

For all these reasons, "[a] merits panel may revisit a decision made by a motions panel." *Paskar v. U.S. Dep't of Transp.*, 714 F.3d 90, 95 (2d Cir. 2013)

(citing *Rezzonico*, 182 F.3d at 149). Sister circuits have reached the same conclusion. *See Johnson v. Burken*, 930 F.2d 1202, 1205 (7th Cir. 1991) ("We are free to reexamine the motion panel's determination of that question unembarrassed by the law of the case doctrine . . . ."); *United States v. Houser*, 804 F.2d 565, 568 (9th Cir. 1986) ("[W]hile a merits panel does not lightly overturn a decision made by a motions panel during the course of the same appeal, we do not apply the law of the case doctrine as strictly in that instance as we do when a second merits panel is asked to reconsider a decision reached by the first merits panel on an earlier appeal."), *abrogated on other grounds by Christianson*, 486 U.S. at 816–17 & n.5. And this result is unsurprising, given that "[t]he law of the case doctrine presumes a hearing on the merits," which is usually lacking before motions panels. *United States v. Hatter*, 532 U.S. 557, 566 (2001); *see United States v. U.S. Smelting Refin. & Mining Co.*, 339 U.S. 186, 199 (1950) ("We think that it requires a final judgment to sustain the application of the rule of the law of the case just as it does for the kindred rule of *res judicata*.").

To be sure, we have sometimes said, invoking the law of the case doctrine, that "a merits panel will not ordinarily revisit a ruling by a motions panel absent cogent or compelling reasons." *N.Y. Pet Welfare Ass'n v. City of New York*, 850 F.3d

17

79, 83 n.3 (2d Cir. 2017) (citing *Lora v. O'Heaney*, 602 F.3d 106, 109 (2d Cir. 2010)). This language derives from *Lora*, which relies on *Rezzonico* to conclude that "[a]lthough a merits panel will not ordinarily revisit a ruling by a motions panel 'absent cogent or compelling reasons,' we 'may revisit the motions panel's decision on jurisdiction.'" *Lora*, 602 F.3d at 109 (quoting *Rezzonico*, 182 F.3d at 149). Tellingly, however—and contrary to the dicta in *Lora*—the panel opinion in *Rezzonico* applies the "cogent or compelling reasons" standard to the reconsideration of *final* decisions in previous appeals, not to rulings by a motions panel. *See Rezzonico*, 182 F.3d at 149 ("[W]e do not revisit such a final decision 'absent "cogent" or "compelling" reasons.'" (quoting *Doe v. N.Y.C. Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983))).[10] Thus, we agree with the Government that we are not bound by the motions panel's interlocutory determination that the Government is unlikely to succeed in its jurisdictional challenge. We may revisit

---

[10] Notably, this is also the context in which *Doe*, upon which *Rezzoncio* relies, endorses the "cogent and compelling reasons" standard. *See Doe*, 709 F.2d at 783, 788–89 (describing a prior, final appellate decision, not a motions panel decision, and citing, *inter alia*, *United States v. Fernandez*, 506 F.2d 1200, 1203–04 (2d Cir. 1974)). And *Fernandez*, the case that *Doe* cites for this language, in turns relies on a definition of the law of the case in Moore's Federal Practice—a definition that explains that the rule applies to "a successive appeal." *Fernandez*, 506 F.2d at 1203 (quoting 1B JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE ¶ 0.404[10] at 573–74 (2d ed. 1974)); *see id.* (referencing "[a]n issue decided on a prior appeal").

18

the subject of jurisdiction, free of any constraint imposed by the doctrine of law of the case. *See Rezzonico*, 182 F.3d at 149.

## II.    The Scope of § 1252(b)(9)

We now turn to § 1252(b)(9). Enacted in 1996 as part of IIRIRA, § 1252(b)(9) provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this title shall be available only in judicial review of a final order [of removal]." IIRIRA, Pub. L. No. 104-208, § 306(a)(2), 110 Stat. 3009–546, 3009–610 (codified as amended at 8 U.S.C. § 1252(b)(9)). And as to habeas jurisdiction specifically, Congress amended § 1252(b)(9) in 2005 expressly to provide that "[e]xcept as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28, United States Code, or any other habeas corpus provision, . . . or by any other provision of law (statutory or nonstatutory), to review such an order [of removal] or such questions of law or fact." REAL ID Act of 2005, Pub. L. No. 109-13, § 106(a)(2), 119 Stat. 231, 311 (codified as amended at 8 U.S.C. § 1252(b)(9)); *see also id*. § 106(a)(1), 119 Stat. at 310 (codified as amended at § 1252(a)(5)) (establishing similar habeas jurisdictional

19

bar to "judicial review of an order of removal"). As the Supreme Court has recognized, § 1252(b)(9) is an "unmistakable 'zipper' clause" and "a general jurisdictional limitation." *Reno v. Am.-Arab Anti-Discrimination Comm.* (*AADC*), 525 U.S. 471, 482–83 (1999); *see also Monsalvo v. Bondi*, 604 U.S. 712, 723 (2025) ("Section 1252 permits individuals to petition for judicial review of 'final orders of removal' and indicates that those petitions supply the exclusive means for securing '[j]udicial review of all questions of law.'" (alteration in original) (citing 8 U.S.C. § 1252(b)(9))). In other words, § 1252(b)(9) channels judicial review of removal-related questions into a single PFR of a final order of removal.[11]

In his habeas petition, Mahdawi principally asserts that the Government unlawfully targeted him for removal based on First Amendment protected speech, and he asks the district court to "[v]acate and set aside" both the Rubio Determination and the Government's alleged policy of targeting noncitizens for

---

[11] *See also Calcano-Martinez v. Immigr. & Naturalization Serv.*, 232 F.3d 328, 340 (2d Cir. 2000) (explaining that Congress enacted § 1252(b)(9) in IIRIRA to "consolidat[e] all claims that may be brought in removal proceedings into one final petition for review of a final order in the court of appeals"), *aff'd*, 533 U.S. 348 (2001); *Xiao Ji Chen v. U.S. Dep't of Just.*, 471 F.3d 315, 324 n.3 (2d Cir. 2006) (noting that the REAL ID Act, by specifically addressing habeas review, "'limit[ed] all aliens to one bite of the apple . . . [and thereby] streamline[d] what the Congress saw as uncertain and piecemeal review of orders of removal.'" (second and third alterations in original) (quoting *Bonhometre v. Gonzales*, 414 F.3d 442, 446 (3d Cir. 2005))).

removal based on "First Amendment protected speech advocating for Palestinian rights."[12]   Joint App'x at 18.   The district court concluded that § 1252(b)(9) does not bar jurisdiction over these claims on the theory that "[t]he legal questions presented by Mr. Mahdawi's petition for habeas corpus . . . do not 'arise from' the Government's decision to place him in removal proceedings."   *Mahdawi*, 781 F. Supp. 3d at 228.   For the following reasons, we disagree.

First, under the text of § 1252(b)(9), the relevant inquiry is whether the legal or factual questions raised by Mahdawi's habeas petition "aris[e] from *any action taken . . . to remove [him]*."   8 U.S.C. § 1252(b)(9) (emphasis added).   And here, the plain meaning of "any action taken . . . to remove an alien" encompasses both the Secretary of State's removability determination and the Government's commencement of removal proceedings against Mahdawi allegedly based on conduct protected by the First Amendment.   As the Supreme Court has repeatedly said, "the word 'any' has an expansive meaning."   *Patel v. Garland*, 596 U.S. 328, 338 (2022) (quoting *Babb v. Wilkie*, 589 U.S. 399, 405 n.2 (2020)).   But even the narrowest definition of "any action taken . . . to remove an alien" would

---

[12] While principally pressing a First Amendment claim, Mahdawi also contends that the Government violated the Fifth Amendment's Due Process Clause, the Administrative Procedure Act, the doctrine of *Accardi v. Shaughnessy*, 347 U.S. 260 (1954), and the non-delegation doctrine.

21

include a removability determination under the INA and the prioritization of an individual's removal premised on conduct alleged to be protected under the First Amendment.

Next, the legal issues presented in Mahdawi's habeas petition "aris[e] from" the Rubio Determination and the decision to place him in removal proceedings. Relying principally on the plurality opinion in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), Mahdawi argues otherwise, claiming that his detention in alleged violation of both the First and Fifth Amendments is separate and apart from the underlying removal proceedings, and is therefore not subject to § 1252(b)(9). We again disagree.

*Jennings* addressed whether § 1252(b)(9)'s jurisdictional bar reached claims that were both collateral to and essentially independent of removal proceedings. Specifically, the *Jennings* plurality considered whether § 1252(b)(9) deprived the Court of jurisdiction over the legal issue whether particular INA provisions require the prolonged detention, without bail hearings, of aliens in removal proceedings. *See* 583 U.S. at 292–95 (opinion of Alito, J., joined by Roberts, C.J., and Kennedy, J.). The plurality noted that the applicability of § 1252(b)(9) "turns on whether the legal questions that we must decide 'aris[e] from' the actions taken

22

to remove these aliens." *Id.* at 293 (alteration in original). And it rejected the most "expansive" interpretation of "arising from":

> [S]uppose that a detained alien brings a state-law claim for assault against a guard or fellow detainee. Or suppose that an alien is injured when a truck hits the bus transporting aliens to a detention facility, and the alien sues the driver or owner of the truck. The "questions of law and fact" in . . . those cases could be said to "aris[e] from" actions taken to remove the aliens in the sense that the aliens' injuries would never have occurred if they had not been placed in detention. But cramming judicial review of those questions into the review of final removal orders would be absurd.

*Id.* (third alteration in original).

Without attempting a comprehensive assessment of § 1252(b)(9)'s reach, the plurality noted that the respondents subjected to prolonged detention in *Jennings* (like the aliens in these two hypotheticals or others who might assert a claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), "based on allegedly inhumane conditions of confinement" while in immigration detention) did "not challeng[e] the decision to detain them in the first place or to seek removal," nor "any part of the process by which their removability [would] be determined." 583 U.S. at 293–94. Instead, respondents merely sought access to bail hearings for those in prolonged confinement. In such

23

circumstances, the plurality concluded that respondents' habeas claim did *not* fall within the reach of § 1252(b)(9)'s jurisdictional bar.

But Mahdawi's case is simply not the same. Mahdawi's habeas petition, unlike a challenge to the length or conditions of confinement, "raise[s] *legal questions* challenging the government's very basis for trying to remove (and thus detain[ ]) him." *Khalil*, 164 F.4th at 274. As the Third Circuit recognized in *Khalil*, such detention claims, inextricably intertwined with the claim that removal itself is unlawful, *are* barred by § 1252(b)(9)'s zipper clause, which "channel[s] 'most claims that even relate to removal' into PFRs." *Id.* at 275 (quoting *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 184 (3d Cir. 2020)). If this were not the case, as the Third Circuit thoughtfully reasoned in *Khalil*, § 1252(b)(9)'s zipper clause would be wholly undone, resulting in "the very 'piecemeal litigation' that § 1252(b)(9) is designed to prevent." *Id.* (citing *E.O.H.C.*, 950 F.3d at 184); *see also Luna v. Holder*, 637 F.3d 85, 93 (2d Cir. 2011) (describing Congress's addition of § 1252(b)(9) in IIRIRA as "rejecting the existing dual tracks of review of orders of removal in habeas courts and courts of appeals").

Mahdawi makes four arguments as to why § 1252(b)(9) does not channel his claims into the PFR process, but none of them is persuasive.

First, he argues that § 1252(b)(9)'s jurisdictional bar arises only after a final order of removal has issued, and that it has no application where removal proceedings are ongoing. Mahdawi bases this argument on the prefatory clause to § 1252(b) as a whole, which says that the subsection applies "[w]ith respect to review of an order of removal."[13] 8 U.S.C. § 1252(b); *see Jennings*, 583 U.S. at 355 (Breyer, J., dissenting, joined by Ginsburg and Sotomayor, JJ.) (pointing to the prefatory clause and arguing that § 1252(b)(9)'s jurisdictional bar was inapplicable because "[t]he respondents challenge their detention without bail, not an order of

---

[13] The text reads as follows:

(b) Requirements for review of orders of removal

With respect to review of an order of removal under subsection (a)(1), the following requirements apply: . . .

(9) Consolidation of questions for judicial review
Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b).

removal"). But "[u]se of the word 'respecting' in a legal context generally has a *broadening* effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject." *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 717 (2018) (emphasis added). And here, as Justices Thomas and Gorsuch point out in their separate opinion concurring in part and concurring in the judgment in *Jennings*, § 1252(b)(9)'s prohibition on habeas review "refers to review of '*all* questions of law and fact' arising from removal," and specifies that § 1252(a)(1)'s PFR process constitutes "the only means for reviewing" not only a final order of removal, but "'such an order *or* such questions of law or fact.'" 583 U.S. at 320 (Thomas, J., concurring in part and concurring in the judgment, joined by Gorsuch, J.) (quoting § 1252(b)(9)). Interpreting § 1252(b)(9) to govern only removal orders ignores this language and effectively "reads 'or such questions of law or fact' out of the statute." *Id*.

Moreover—and conclusively—if Mahdawi's reading of the prefatory clause were correct, the *Jennings* plurality would have had no occasion to draw its distinction between those claims presenting "questions of law and fact" bound up with the Government's ongoing removal efforts (and thus subject to § 1252(b)(9)'s jurisdictional bar) and other claims collateral to the removal process. If the zipper

26

clause in § 1252(b)(9) applied only after a final order of removal, as Mahdawi contends, there would be no reason for the *Jennings* plurality to contemplate that it might bar challenges to "the decision to detain . . . in the first place or to seek removal . . . ." *Jennings*, 583 U.S. at 294. Mahdawi's argument draws not on the plurality's analysis, but upon two sentences from the *dissent*. But as the Third Circuit correctly recognized in *Khalil*, citing *Marks v. United States*, 430 U.S. 188, 193 (1977), it is the *plurality's* reading of § 1252(b)(9) that binds us. *Khalil*, 164 F.4th at 278.

On the assumption that we reject his claim that § 1252(b)(9) applies only in the context of final orders of removal, Mahdawi next presses the argument that the Government has detained him to punish speech with which it disagrees and that this retaliatory detention claim, based on the First Amendment, is independent of any challenge to his removal. The motions panel accepted this argument, concluding that such a claim "may be resolved without affecting pending removal proceedings" and that Mahdawi's detention may "violate the Constitution—quite separate from the removal procedures followed by the immigration courts." *Mahdawi*, 136 F.4th at 452.

But Mahdawi's habeas petition alleges that he was targeted for *removal*—not just detention—based on First Amendment protected activity. *See* Joint App'x at 1, 16 (stating that "[t]his case concerns the government's retaliatory and targeted detention and attempted removal of Mr. Mahdawi for his constitutionally protected speech" and alleging that the Government "has adopted a Policy of targeting noncitizens for removal on the basis of First Amendment protected speech which advocates for Palestinian rights"). As in *Khalil*, Mahdawi's arguments against detention are thus "identical to his arguments against removal." [14] *Khalil*, 164 F.4th at 276. Accordingly, and notwithstanding his efforts to elide the point, Mahdawi's retaliatory detention claim requires a court to decide "legal questions" that arise from "the actions taken to remove" him, and it

---

[14] Though Mahdawi's brief before this Court focuses on his First Amendment claim, the district court also found that Mahdawi raised a Fifth Amendment Due Process challenge to his detention. As the Third Circuit explained in *Khalil*, some such claims are "detention-specific" and thus fall outside § 1252(b)(9)'s reach. *Khalil*, 164 F.4th at 277. For instance, a petitioner might "challenge[ ] the statutory framework that permits his detention without bail," *Demore v. Kim*, 538 U.S. 510, 517 (2003), or challenge "inhumane conditions of confinement," *Jennings*, 583 U.S. at 293 (plurality opinion). Here, however, Mahdawi's Fifth Amendment claim "just repackages his challenges to his removal." *Khalil*, 164 F.4th at 277. In other words, it "rises or falls with the others" because they all turn on the validity of the Government's alleged removal policy. *Id.; see* Joint App'x at 16 (claiming, in habeas petition, that "[t]he sole basis for Mr. Mahdawi's detention is to punish him for his speech and to chill similar speech"). In such circumstances, and as in *Khalil*, *Mahdawi* "cannot plead around § 1252(b)(9) by calling his challenge to removal a challenge to his detention." *Khalil*, 164 F.4th at 277.

thus falls within the scope of § 1252(b)(9). *Jennings*, 583 U.S. at 293 (plurality opinion); *see id.* at 295 n.3; *Khalil*, 164 F.4th at 275–76.

The interpretation of § 1252(b)(9) we adopt today is consistent with how we have understood a related INA provision, § 1252(a)(5), which provides that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5). In *Delgado v. Quarantillo*, we concluded that § 1252(a)(5) stripped the district court of jurisdiction where a litigant was "indirectly challenging her reinstated order of removal" by "seek[ing] to force an adjudication on the merits of an I-212 application." 643 F.3d 52, 55 (2d Cir. 2011). Delgado argued that she was not directly challenging her order of removal, and that even if she were to successfully obtain an I-212 waiver, this would not "'per se prevent her removal.'" *Id*. (quoting Delgado's brief). But we noted that obtaining an I-212 waiver was "a necessary prerequisite to [Delgado's] ultimate goal of adjustment of status," and that "an 'adjustment-of-status challenge is inextricably linked to the reinstatement of [an alien's] removal order,' because '. . . adjustment of status to that of [a lawful permanent resident]' would render the reinstatement order 'invalid.'" *Id.* (second and fourth alterations in original)

29

(quoting *Morales-Izquierdo v. Dep't of Homeland Sec.*, 600 F.3d 1076, 1082–83 (9th Cir. 2010)); *see also id.* (noting that "whether the district court has jurisdiction will turn on the substance of the relief that a plaintiff is seeking"). In such circumstances, where the substance of the relief sought by Delgado amounted to an attack on the order of removal, we concluded that Delgado could not "evade the restrictions of section 1252(a)(5)" through artful pleading. *Id.* at 55–56.

Following *Delgado*, in *Gonzalez-Alarcon v. Macias*, the Tenth Circuit similarly rejected a petitioner's argument "that his habeas petition [did] not seek review of a removal order but merely attack[ed] his detention." 884 F.3d 1266, 1274–75 (10th Cir. 2018). The court explained that when an alien "seeks release from detention," if "his claim is *based* on the alleged invalidity of his order of removal" "he is seeking 'judicial review of an order of removal' which is barred." *Id.* at 1275 (emphasis added) (quoting 8 U.S.C. § 1252(a)(5)). The Ninth Circuit has likewise held that "[w]hen a claim by an alien, however it is framed, challenges the procedure and substance of an agency determination that is 'inextricably linked' to the order of removal, it is prohibited by section 1252(a)(5)." *Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012) (citations omitted).

By its terms, § 1252(b)(9) sweeps more broadly than § 1252(a)(5), providing not only that a PFR "shall be the sole and exclusive means for judicial review of an order of removal," 8 U.S.C. § 1252(a)(5), but also that outside the prescribed procedure for consideration of the PFR in a court of appeals, "no court shall have jurisdiction, by habeas corpus . . . or by any other provision of law," to review either the order of removal *or* any "questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States." 8 U.S.C. § 1252(b)(9). It would be anomalous, at best, to conclude that § 1252(b)(9), unlike § 1252(a)(5), permits courts to exercise jurisdiction over claims that necessarily challenge removal simply because they are framed as a challenge to detention.

Citing the Third Circuit's decision in *E.O.H.C.*, Mahdawi next argues that even assuming his retaliatory detention claim turns on the same legal questions he would press in a PFR to challenge the lawfulness of his removal, the distinct injury associated with his detention claim renders any substantive overlap irrelevant. Section 1252(b)(9) does not bar his detention claim, Mahdawi urges, because he seeks relief "that a court of appeals cannot meaningfully provide on petition for review of a final order of removal." Mahdawi Br. at 36–38 (quoting *E.O.H.C.*, 950

F.3d at 180). In other words, Mahdawi urges that the district court has jurisdiction over his "now-or-never" claim on the theory that if his challenge to the legality of his detention is deemed to fall within the channeling contemplated by § 1252(b)(9), relief will come too late to redress the injury of being unlawfully detained for any period during the administrative process. *Id.*

This is incorrect. Moreover, this is the very claim that the Third Circuit itself has now rejected, concluding that "assert[ing] an injury that cannot be remedied later" does not alone suffice to avoid § 1252(b)(9)'s jurisdictional bar. *Khalil*, 164 F.4th at 275. Section 1252(b)(9), by its terms, "channels 'legal questions' that are 'bound up with (and thus "aris[e] from") an "action taken" to remove' an alien." *Id.* (alteration in original) (quoting *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 299 (3d Cir. 2020)); *see also Aguilar v. U.S. Immigr. & Customs Enf't Div.*, 510 F.3d 1, 13–14 (1st Cir. 2007) (concluding that a right-to-counsel claim was channeled to the PFR because it was "inextricably intertwined with" the alien's removal proceeding). A now-or-never habeas claim must thus raise not only an alleged injury that will occur before the conclusion of removal proceedings, as the Third Circuit concluded, but also "legal or factual *questions*" (such as a challenge to the conditions in a facility in which an individual is detained) that are *not* bound

32

up in the ongoing removal proceedings and that "a court of appeals will not later

be able to review meaningfully on a PFR." *Khalil*, 164 F.4th at 274–75.

The Third Circuit concluded, correctly, that this result is apparent from the

text of § 1252(b)(9), which ensures that removal proceedings are not hamstrung by

collateral habeas attacks raising legal questions that could be pursued in removal

proceedings. *See Johnson v. Whitehead*, 647 F.3d 120, 124 (4th Cir. 2011) ("Congress

[in § 1252(b)(9)] has specifically prohibited the use of habeas corpus petitions as a

way of obtaining review of questions arising in removal proceedings."). In the

words of our sister circuit:

> [Section 1252(b)(9)] ensures that petitioners get only one bite at
> the apple. Letting petitioners raise now-or-never injuries through
> habeas based on claims that can be litigated later would subvert that
> channeling scheme. If, for instance, a detained alien claimed that the
> INA section that made him removable was unconstitutionally vague,
> he could bring that claim right away on habeas (because illegal
> detention cannot be remedied later). With a final judgment in hand,
> the winning side could use issue preclusion or law of the case in the
> later PFR, leaving that court nothing to decide. *See Paulo v. Holder*,
> 669 F.3d 911, 918 (9th Cir. 2011) (holding that habeas finding that alien
> was not removable precluded relitigating that issue in removal
> proceedings). That prospect would encourage the very "piecemeal
> litigation" that § 1252(b)(9) is designed to prevent. *E.O.H.C.*, 950
> F.3d at 184.

*Khalil*, 164 F.4th at 275.

Mahdawi argues, finally, that channeling his claims into the PFR process deprives him of any meaningful opportunity for review. But as our sister circuit observed in *Khalil*, "[o]ur legal system routinely forces petitioners—even those with meritorious claims—to wait to raise their arguments." *Id*. Congress struck a balance in § 1252(b)(9) that "does not foreclose meaningful review," but promotes "the orderly adjudication of claims" by "requir[ing] bringing legal questions later if they can be answered later." *Id*. at 275–76.

Moreover, Mahdawi could have sought release pending his removal through the administrative process. Though individuals charged as removable by the Secretary of State pursuant to 8 U.S.C. § 1227(a)(4) may not receive a bond hearing in the first instance, *see* 8 C.F.R. § 1003.19(h)(2)(i)(C) (2026), the Government stated in its briefing and confirmed at oral argument that Mahdawi, when detained, could have sought an administrative hearing pursuant to *Matter of Joseph*, 22 I. & N. Dec. 799 (B.I.A. 1999). As the Supreme Court has recognized, a detained alien in a *Joseph* hearing is "entitled to raise any nonfrivolous argument available to demonstrate that he was not properly included in a mandatory detention category." *Demore*, 538 U.S. at 514; *see also* 8 C.F.R. § 1003.19(h)(2)(ii) (2026). If the individual succeeds at the hearing, an IJ will "consider the question

34

of bond." *Joseph*, 22 I. & N. Dec. at 806. The IJ can then order release on bond if the alien has "demonstrate[d] to the satisfaction of the Immigration Judge that his release would not pose a danger to property or persons, and that the respondent is likely to appear for any future proceeding." *Matter of Salas Pena*, 29 I. & N. Dec. 173, 174 (B.I.A. 2025). The denial of relief may be appealed to the BIA.

Mahdawi did not seek a *Joseph* hearing and, at oral argument, asserted that such a hearing would be futile in his case. But a *Joseph* hearing provides "the opportunity to offer evidence and legal authority on the question whether the [Government] has properly included [an alien] within a category that is subject to mandatory detention." 22 I. & N. Dec. at 805. "[L]egal authority" includes provisions of the Constitution. *See* Gov't Suppl. Submission after Oral Arg., *Khalil*, No. 25-2162 (3d Cir. Oct. 22, 2025), Dkt. 122 (invoking a "recent [Department of Justice] Policy Memorandum" that affirms IJs can decide constitutional questions, including "'constitutional challenges to the application of statutes'" (quoting the memorandum)). And *Joseph* holds that "a lawful permanent resident will not be considered 'properly included' in a mandatory detention category" (thus entitling the detained individual to an administrative bail hearing) "when an Immigration Judge or the Board is convinced that the [Government] is

35

substantially unlikely to establish at the merits hearing, or on appeal, the charge

or charges that would otherwise subject the alien to mandatory detention." 22

I. & N. Dec. at 806.

As the Supreme Court has affirmed, that means a detainee receives

"individualized review" of the legality of his detention at the outset. *Demore*, 538

U.S. at 514 n.3; *see also Nielsen v. Preap*, 586 U.S. 392, 418 n.8 (2019) ("Detainees who

deny that they satisfy any § 1226(c) predicate may challenge their mandatory

detention in a *Joseph* hearing."). And in the event that removal proceedings

involving a detained individual are unreasonably prolonged, this Court's

precedent provides that a petitioner may file a habeas petition and challenge his

detention "on the ground that it [has] reached an unreasonable length."[15] *Velasco*

*Lopez v. Decker*, 978 F.3d 842, 852 (2d Cir. 2020).

Mahdawi argues that channeling his First and Fifth Amendment claims into

a PFR will deprive him of a meaningful opportunity for review because

constitutional challenges to detention cannot be heard on a PFR of a removal order

and that even if this were not the case, neither the IJ nor the BIA can develop the

---

[15] If a district court concludes detention has been unreasonably prolonged, it may "order[ ] a new [bond] hearing at which the Government [will be] called upon to justify continued detention." *Velasco Lopez*, 978 F.3d at 855.

factual record needed for consideration of his arguments.[16]  Once again, we disagree.

Like the petitioner in *Khalil*, Mahdawi argues that the Government unlawfully targeted him for removal pursuant to a policy punishing aliens' pro-Palestinian speech.  But this "alleged policy is a 'matter[ ] on which the validity of the final order is contingent,'" and it thus *can* be litigated on a PFR, which Mahdawi has now filed.  *Khalil*, 164 F.4th at 276 (alteration in original) (quoting *Massieu v. Reno*, 91 F.3d 416, 422 (3d Cir. 1996) (Alito, J.)); *cf. Argueta v. Holder*, 617 F.3d 109, 112 (2d Cir. 2010) (noting appellate courts "retain jurisdiction to review all 'constitutional claims or questions of law raised upon a petition for review'"

---

[16] In a footnote, Mahdawi also claims that "reading section 1252(b)(9) to bar [his] detention challenge would raise serious questions under the Suspension Clause" of the Constitution.  Mahdawi Br. at 38 n.16 (citing U.S. CONST., art. I, § 9, cl. 2).  But Mahdawi has not successfully pointed to any ambiguity in § 1252(b)(9)'s channeling provision, much less raised "a head-on constitutional challenge" to this provision.  *Preap*, 586 U.S. at 420 ("While respondents might have raised a head-on constitutional challenge to [the statutory provision], they did not.").  *See also Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) (noting "'settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived'" (citation omitted)); *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Pursuant to this rule, we have held that an argument made only in a footnote was inadequately raised for appellate review.").  At any rate, even assuming *arguendo* that Mahdawi had developed a Suspension Clause argument and did not waive it, he has not "met [his] burden of establishing that the [PFR] process is, on its face, an inadequate substitute for habeas corpus."  *Boumediene v. Bush*, 553 U.S. 723, 792 (2008); *see Iasu v. Smith*, 511 F.3d 881, 888 (9th Cir. 2007) (concluding that the REAL ID Act does not facially violate the Suspension Clause in the context of review of final orders of removal).

(quoting 8 U.S.C. § 1252(a)(2)(D))). Indeed, "the courts of appeals generally may provide meaningful review as to any properly exhausted claims directly attacking a final order of [removal]." *Massieu*, 91 F.3d at 422. Mahdawi's argument to the contrary is without support.

As for the development of the factual record, we are unpersuaded by Mahdawi's claim that the PFR process does not afford litigants like him a meaningful opportunity to develop the necessary facts to present their claims. To be sure, as the motions panel noted, a court of appeals considering a PFR "is obliged to 'decide the petition only on the administrative record on which the order of removal is based.'" *Mahdawi*, 136 F.4th at 452 (emphasis removed) (quoting 8 U.S.C. § 1252(b)(4)(A)). But "aliens in immigration proceedings may put on testimony and exhibits, which become part of the record." *Khalil*, 164 F.4th at 279 (citing 8 C.F.R. § 1240.9). And even if this were not the case, the Government has affirmed that "the INA 'does not preclude a court of appeals from obtaining additional fact-finding if the agency record is inadequate' either through the Hobbs Act's remand process, by appointing a special master, or through another 'appropriate mechanism' born out of 'constitutional necessity.'"[17] *Id.* at

---

[17] The Third Circuit noted in *Khalil* that a provision of the Hobbs Act, 28 U.S.C.

280 (quoting the Government's post-argument letter); *see also Gallo-Alvarez v. Ashcroft*, 266 F.3d 1123, 1129 (9th Cir. 2001) ("Because genuine issues of material fact remain, we transfer the consolidated cases to the district court pursuant to 28 U.S.C. § 2347(b)(3) . . . ."); *AADC*, 525 U.S. at 496 n.2 (Ginsburg, J., concurring in part and concurring in the judgment) ("While it is best left to the courts of appeals in the first instance to determine the appropriate mechanism for factfinding

---

§ 2347(b)(3), "lets the PFR court remand a case to a district court for a hearing with more factfinding if (1) the agency has not held a hearing before taking the challenged action, (2) it need not do so by law, and (3) there are genuine issues of material fact" to be resolved. *Khalil*, 164 F.4th at 280.

Section 2347(b)(3) provides as follows:

> (b) When the agency has not held a hearing before taking the action of which review is sought by the petition, the court of appeals shall determine whether a hearing is required by law. After that determination, the court shall—
> (1) remand the proceedings to the agency to hold a hearing, when a hearing is required by law;
> (2) pass on the issues presented, when a hearing is not required by law and it appears from the pleadings and affidavits filed by the parties that no genuine issue of material fact is presented; or
> (3) transfer the proceedings to a district court for the district in which the petitioner resides or has its principal office for a hearing and determination as if the proceedings were originally initiated in the district court, when a hearing is not required by law and a genuine issue of material fact is presented. The procedure in these cases in the district court is governed by the Federal Rules of Civil Procedure.

28 U.S.C. § 2347(b).

necessary to the resolution of a constitutional claim, I am confident that provision

for such factfinding is not beyond the courts of appeals' authority."). We thus

again agree with our sister circuit that "a PFR court has the tools to supplement

the factual record if needed." *Khalil*, 164 F.4th at 281.

*    *    *

Congress has specifically prohibited the use of habeas corpus petitions to

review any questions of law or fact, "including interpretation and application of

constitutional and statutory provisions," arising from actions taken to remove an

alien from the United States, channeling such questions to courts of appeals on

review of a PFR. 8 U.S.C. § 1252(b)(9); *see also Whitehead*, 647 F.3d at 124

("Congress has specifically prohibited the use of habeas corpus petitions as a way

of obtaining review of questions arising in removal proceedings."). In so doing,

"Congress intended to delay federal court review of claims by aliens against whom

[removal] proceedings have been instituted until the conclusion of the

administrative proceedings." *Massieu*, 91 F.3d at 422. Mahdawi invites us to

undo this scheme, interpreting § 1252(b)(9) so as to produce the very proliferation

of parallel proceedings on the same essential matters that this statutory provision

was designed to avoid. We decline his invitation, and leave in place the scheme

40

legislated by Congress. Accordingly, we vacate and remand to the district court with instructions to dismiss the petition.

## CONCLUSION

For the foregoing reasons, we **VACATE** the district court's order and **REMAND** for the district court to dismiss Mahdawi's habeas petition for lack of jurisdiction.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

41