# No. 25-1113

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

MOHSEN MAHDAWI,

Petitioner-Appellee,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, DAVID T. WESLING, in his official capacity as Acting Boston Field Office Director, Immigration and Customs Enforcement, Enforcement and Removal Operations, J DOE, in official capacity as Vermont Sub-Office Director of Immigration and Customs Enforcement, Enforcement and Removal Operations, DAVID J. VENTURELLA, in his official capacity as Senior Official Performing the Duties of the Director, U.S. Immigration and Customs Enforcement, MARKWAYNE MULLIN, in his official capacity as Secretary of The United States Department of Homeland Security, MARCO A. RUBIO, in his official capacity as Secretary of State, TODD BLANCHE, in his official capacity as U.S. Attorney General,

Respondents-Appellants.

On Appeal from the United States District Court
for the District of Vermont, No. 2:25-cv-389

**APPELLANTS' BRIEF ON REHEARING EN BANC**

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

TYLER J. BECKER
Counsel to the Assistant Attorney General

AUGUST E. FLENTJE
Deputy Director
Office of Immigration Litigation

ALANNA T. DUONG
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-7040

Attorneys for Respondents-Appellants

# TABLE OF CONTENT

INTRODUCTION ........ 1

STATEMENT OF JURISDICTION ........ 3

STATEMENT OF THE ISSUE ........ 3

STATEMENT OF THE CASE AND RELEVANT FACTS ........ 3

I. Mahdawi entered the United States, engaged in criminal and disruptive conduct, and DHS initiated removal proceedings based on the Secretary's determination that his presence in the United States would have serious adverse foreign-policy consequences and compromise a compelling U.S. foreign-policy interest. ........ 3

II. Mahdawi filed a habeas petition for release from custody, which the district court granted, but a panel of this Court vacated and remanded with instructions to dismiss the petition for lack of jurisdiction. ........ 7

SUMMARY OF ARGUMENT ........ 11

STANDARD OF REVIEW ........ 13

PERTINENT STATUTES AND REGULATIONS ........ 13

ARGUMENT ........ 14

I. The district court lacked jurisdiction to review Mahdawi's claims. ........ 14

A. The panel correctly held that 8 U.S.C. §1252(b)(9) channel Mahdawi's challenges to the Court of Appeals. ........ 14

B. 8 U.S.C. §1252(g) also bars judicial review of the Government's decision to commence removal proceedings. ........ 31

C. Mahdawi failed to exhaust his administrative remedies. ........ 43

II. The district court lacked inherent authority to release Mahdawi under *Mapp v. Reno*, and regardless the district court erred in applying *Mapp*. ........ 44

CONCLUSION ........ 51

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adorers of the Blood of Christ v. FERC*,
897 F.3d 187 (3d Cir. 2018) ....................22

*Ajlani v. Chertoff*,
545 F.3d 229 (2d Cir. 2008) ....................16

*Alvarez v. ICE*,
818 F.3d 1194 (11th Cir. 2016) ....................33, 34

*Bolante v. Keisler*,
506 F.3d 618 (7th Cir. 2007) ....................47

*Calcano-Martinez v. INS*,
232 F.3d 328 (2d Cir. 2000) ....................15, 16

*Cinquemani v. Ashcroft*,
2001 WL 939664 & n.6 (E.D.N.Y. Aug. 16, 2001) ....................46

*Clark v. Martinez*,
543 U.S. 371 (2005) ....................31, 32

*Cooper Butt ex rel Q.T.R. v. Barr*,
954 F.3d 901 (6th Cir. 2020) ....................37

*Curtiss-Wright Export Corp.*,
299 U.S. 304 (1936) ....................49

*Dale v. Barr*,
967 F.3d 133 (2d Cir. 2020) ....................45

*Delgado v. Quarantillo*,
643 F.3d 52 (2d Cir. 2011) ....................13, 15, 26, 27, 28

*Demore v. Kim*,
538 U.S. 510 (2003) ....................26, 50

*DHS v. Thuraissigiam*,
591 U.S. 103 (2020) .......................................................................................... 30, 39

*Drake v. Portuondo*,
553 F.3d 230 (2d Cir. 2009) ............................................................................13

*E.F.L. v. Prim*,
986 F.3d 959 (7th Cir. 2021) ..........................................................................32

*E.O.H.C. v. Sec'y DHS*,
950 F.3d 177 (3d Cir. 2020) ............................................................................21

*Elgharib v. Napolitano*,
600 F.3d 597 (6th Cir. 2010) ..........................................................................37

*Elkimya v. DHS*,
484 F.3d 151 (2d Cir. 2007) ............................................................................47

*Gonzalez-Alarcon v. Macias*,
884 F.3d 1266 (10th Cir. 2018) ................................................................ 17, 27

*Guerrero-Lasprilla v. Barr*,
589 U.S. 221 (2020) ..........................................................................................30

*Gupta v. McGahey*,
709 F.3d 1062 (11th Cir. 2013) ........................................................................34

*Hernandez v. Gonzalez*,
424 F.3d 42 (1st Cir. 2005) ....................................................................... 21, 29

*Howell v. INS*,
72 F.3d 288 (2d Cir. 1995) ..............................................................................43

*Humphries v. Various Fed. U.S. INS Emps.*,
164 F.3d 936 (5th Cir. 1999) ..........................................................................38

*Hussain v. Gonzales*,
492 F. Supp. 2d 1024 (E.D. Wisc. 2007) ........................................................25

*INS v. Chadha*,
462 U.S. 919 (1983) ........................................................................................22

*INS v. St. Cyr*,
533 U.S. 289 (2001) ........................................................................................35, 44

*J.E.F.M. v. Lynch*,
837 F.3d 1026 (9th Cir. 2016)........................................................................15, 18, 30

*Jennings v. Rodriguez*,
583 U.S. 281 (2018) ........................................................ 10, 15, 18, 19, 20, 41

*Jimenez-Angeles v. Ashcroft*,
291 F.3d 594 (9th Cir. 2002) ..........................................................................32

*Kellici v. Gonzalez*,
472 F.3d 416 (6th Cir. 2006) ..........................................................27, 28, 29

*Kerry v. Din*,
576 U.S. 86 (2015) ..........................................................................................49

*Khalil v. President, United States*,
164 F.4th 259 (3d Cir. 2026) ...................................14, 15, 16, 19, 21, 22, 23, 24, 25, 43

*Kumar v. Holder*,
2013 WL 6092707 (E.D.N.Y. Nov. 18, 2013) ...............................................38

*Limpin v. United States*,
828 F. App'x 429 (9th Cir. 2020) ...................................................................34

*Liu v. Holder*,
415 F. App'x 298 (2d Cir. 2011)......................................................................47

*Luna v. Holder*,
637 F.3d 85 (2d Cir. 2011) ..............................................................................30

*Mahdawi v. Trump*,
136 F.4th 443 (2d Cir. 2025)...........................................................3, 9, 40

*Mahdawi* v. *Trump*,
183 F.4th 103 (2d Cir. 2026)...........9, 10, 11, 15, 18, 19, 22, 23, 24, 25, 26, 43, 44, 46

*Mapp v. Reno*,
241 F.3d 221 (2d Cir. 2001) ........................................1, 44, 45, 46, 47, 48

*Martinez v. Napolitano*,
704 F.3d 620 (9th Cir. 2012) ........................................27

*Massieu v. Reno*,
91 F.3d 416 (3d Cir. 1996) ........................................21, 22

*Matter of Herrera Del Orden*,
25 I&N Dec. 589 (BIA 2011) ........................................24

*Matter of Joseph*,
22 I&N Dec. 799 (BIA 1999) ........................................11, 26

*Matter of S-H-*,
23 I&N Dec. 462 (BIA 2002) ........................................24

*McNary v. Haitian Refugee Ctr., Inc.*,
498 U.S. 479 (1991) ........................................35

*Monsalvo v. Bondi*,
604 U.S. 712 (2025) ........................................16

*Mullin v. Doe*,
146 S. Ct. 2121 (2026) ........................................31

*Nasrallah v. Barr*,
590 U.S. 573 (2020) ........................................15

*Nielsen v. Preap*,
586 U.S. 392 (2019) ........................................26

*Nken v. Holder*,
556 U.S. 418 (2009) ........................................49, 50

*Ozturk v. Hyde*,
155 F.4th 187 (2nd Cir. 2025)........................................9, 33, 41

*Patel v. Garland*,
596 U.S. 328 (2022) ....................................................................................................18

*Pham v. Ragbir*,
141 S. Ct. 227 (2020) ........................................................................................... 34, 39

*Preiser v. Rodriguez*,
411 U.S. 475 (1973) ....................................................................................................34

*Ragbir v. Homan*,
923 F.3d 53 (2d Cir. 2019) ........................................................34, 35, 36, 37, 38, 39, 42

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
525 U.S. 471 (1999) .............................. 14, 16, 17, 24, 32, 35, 36, 37, 40, 42, 43, 49, 50

*Ruiz v. Mukasey*,
552 F.3d 269 (2d Cir. 2009) ...................................................................15, 18, 21, 26, 30

*Saloum v. USCIS*,
437 F.3d 238 (2d Cir. 2006) ..........................................................................................47

*Secaida-Rosales v. INS*,
331 F.3d 297 (2d Cir. 2003) ..........................................................................................13

*Singh v. Napolitano*,
500 F. App'x 50 (2d Cir. 2012) ......................................................................................15

*Sissoko v. Rocha*,
509 F.3d 947 (9th Cir. 2009) ..........................................................................................33

*Suri v. Trump*,
184 F.4th 260 (4th Cir. 2026)............................................................... 14, 16, 20, 31

*Suri v. Trump*,
2025 WL 1806692 (4th Cir. July 1, 2025) ......................................................................34

*Tazu v. Att'y Gen. United States*,
975 F.3d 292 (3d Cir. 2020) ..........................................................................20, 32, 37

*Thunder Basin Coal Co. v. Reich*,
510 U.S. 200 (1994) ....................................................................................................35

*Toure v. Att'y Gen.*,
443 F.3d 310 (3d Cir. 2006) ....................24

*Trump v. Hawaii*,
585 U.S. 667 (2018) ....................49, 50

*United States v. Martinez-Fuerte*,
428 U.S. 543 (1976) ....................49

*Vargas v. DHS*,
2017 WL 962420 (W.D. La. Mar. 10, 2017) ....................38

*Velasco Lopez v. Decker*,
978 F.3d 842 (2d Cir. 2020) ....................47

*Xiao Ji Chen v. U.S. DOJ*,
434 F.3d 144 (2d Cir. 2006) ....................30

*Zundel v. Gonzalez*,
230 F. App'x 468 (6th Cir. 2007) ....................37

**Statutes**

6 U.S.C. §557 ....................31

28 U.S.C. §1331 ....................15

28 U.S.C. §2241 ....................32

28 U.S.C. §2347(b)(3) ....................24

**The Immigration and Nationality Act of 1952, as amended:**

8 U.S.C. §1186a(a)(1) ....................4

8 U.S.C. §1186a(d)(1)(A) ....................4

8 U.S.C. §1225(b) ....................36

8 U.S.C. § 1226 ....................45

8 U.S.C. §1226(a) ....36, 46, 50

8 U.S.C. §1226(c) ....36

8 U.S.C. §1226(e) ....8, 10, 12, 45, 46, 47

8 U.S.C. §1227(a)(4)(C) ....6

8 U.S.C. §1227(a)(4)(C)(i) ....6, 21, 43

8 U.S.C. §1227(a)(4)(C)(ii) ....6

8 U.S.C. §1229a(b)(1) ....24

8 U.S.C. §1252....16, 31, 42

8 U.S.C. §1252((a)(2)(B)....10

8 U.S.C. §1252(a)(5) ....2, 8, 11, 15, 16, 19, 24, 27, 28, 45

8 U.S.C. §1252(b)(2)....15

8 U.S.C. §1252(b)(9).... 1, 8, 9, 10, 11, 14, 15, 16, 17, 18, 19, 20, 21, 23, 25, 31, 41

8 U.S.C. §1252(g)....2, 8, 10, 12, 20, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42

**Rule**

Vermont Rule of Criminal Procedure 48(a) ....5

**Regulations**

8 C.F.R. §3.19(h)(2)(ii) ....26

8 C.F.R. §1003.19(b) ....24

8 C.F.R. §1003.19(f) ....25

8 C.F.R. §1003.19(h)(2)(i)(C) ....25

8 C.F.R. §1003.19(h)(2)(ii)....25

8 C.F.R. §1240.1(b) ... 24

8 C.F.R. §1240.10(a)(4) ... 24

8 C.F.R. §1240.11(c)(3)(ii) ... 24

**Other Authority**

Exec. Off. for Immigr. Review,
*Consideration of Constitutional Arguments in Agency Adjudications*
(PM 25-45, Sept. 5, 2025) ... 23-24

Illegal Immigration Reform and Immigration Responsibility Act of 1996,
Pub. L. 104-208, 110 Stat. 3009-546, Division C (Sept. 30, 1996) ... 32, 35, 50

REAL ID Act of 2005,
Pub. L. 109-13, 119 Stat. 302, Division B (May 11, 2005) ...
... 2, 16, 30, 32, 35, 38, 40, 44, 47

# INTRODUCTION

The Secretary of State has determined that Petitioner Mohsen Mahdawi's "presence and activities in the United States would have potentially serious adverse foreign policy consequences and would compromise a compelling U.S. foreign policy interest." The Executive Branch thus detained Mahdawi and initiated proceedings to remove him from this country. But a federal district court in Vermont interceded and ordered that Mahdawi be immediately released.

This appeal arises out of the district court's order releasing Mahdawi from custody pending habeas review. The district court relied on this Court's decision in *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001), in granting this relief. In doing so, the district court disregarded multiple, clear limits on its jurisdiction to review Mahdawi's claims challenging the initiation of his removal proceedings and to order his release from detention. That decision was bad enough on its own; it is particularly misguided in this case, which involves an alien with a criminal background and history of boasting that he "kill[ed] Jews" while in Palestine and that he would like to continue killing Jews going forward (made in the specific context of purchasing firearms that could be employed for just such illicit purposes).

The merits panel correctly concluded that the district court's decision was barred by 8 U.S.C. §1252(b)(9). Congress created a singular path for aliens to raise challenges related to removal. With §1252(b)(9), Congress divested district courts of jurisdiction, including habeas jurisdiction, to review challenges related to removal and channeled all

factual and legal challenges, including constitutional questions, arising from removal proceedings to the Court of Appeals through the petition-for-review ("PFR") process. The district court has no role to play in that process. 8 U.S.C. §1252(a)(5) further bolsters the panel's decision by confirming that a PFR "shall be the sole and exclusive means for judicial review of an order of removal" "[n]otwithstanding any other provision of law (statutory or nonstatutory)," including any habeas provision.

Beyond that, the district court also erred by ignoring Congress's clear intent to foreclose judicial review, including habeas review, of "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings[.]" 8 U.S.C. §1252(g). That is exactly what Mahdawi seeks to do. He resists this characterization, asserting that he is only challenging his *detention*, rather than the Executive's efforts to remove him. That is a false distinction—especially here. The Immigration and Nationality Act ("INA") provides that aliens in removal proceedings and subject to the foreign-policy charge under which Mahdawi has been deemed removable require detention pending removal proceedings. And the claims in Mahdawi's habeas petition are expressly framed as challenging his removal—not his detention. Even if Mahdawi were to overcome these jurisdictional hurdles, he failed to exhaust his administrative remedies, and the district court still would be required to dismiss or stay his habeas petition.

These jurisdictional limits are fatal to the district court's release order under *Mapp*. Moreover, *Mapp* no longer remains good law after the REAL ID Act. Even if

*Mapp* did remain good law, the district court misapplied it. Without any authority to review Mahdawi's claims, the district court acted impermissibly when it exercised its authority to release him. Ultimately, the district court's reasoning fundamentally conflicts with the INA, as well as Supreme Court precedent, prior decisions of this Court, and other Circuit courts that have interpreted these provisions.

For these reasons, this Court should reverse the district court's decision.

## STATEMENT OF JURISDICTION

The district court's order releasing Mahdawi under *Mapp* is an appealable order. *See Mahdawi v. Trump ("Mahdawi I")*, 136 F.4th 443, 448-49 (2d Cir. 2025).

## STATEMENT OF THE ISSUE

"Did the district court err in granting the Petitioner's release?" ECF 240.

## STATEMENT OF THE CASE AND RELEVANT FACTS

### I. Mahdawi entered the United States, engaged in criminal and disruptive conduct, and DHS initiated removal proceedings based on the Secretary's determination that his presence in the United States would have serious adverse foreign-policy consequences and compromise a compelling U.S. foreign-policy interest.

Mahdawi was born and raised in the West Bank. JA-1. He entered the United States on July 1, 2014, under a B-1/B-2 visitor visa. JA-263, JA-274. In September 2014, Mahdawi's then-wife filed a Form I-130, Petition for Alien Relative, on his behalf with the U.S. Citizenship and Immigration Services ("USCIS"). JA-274. Mahdawi concurrently filed a Form I-485, Application to Register Permanent Residence or Adjust Status. JA-274. In January 2015, USCIS approved the Forms I-130 and I-485,

and Mahdawi adjusted his status to that of a conditional lawful permanent resident ("LPR"). JA-274. In June 2018, USCIS approved Mahdawi's application to remove the conditions on his LPR status.[1] JA-274.

Meanwhile, Mahdawi had several encounters with law enforcement. In August 2015, a concerned citizen informed the Windsor, Vermont Police Department that Mahdawi often visited a gun shop, where he sought to "purchase a sniper rifle and a machine gun." JA-343. When Mahdawi inquired about these weapons, he made it known that he "used to make guns for 'Hezballah[.]'" JA-343. After further investigation, the police spoke with an employee of the gun shop who explained that Mahdawi offered to work there "for no monetary payment" because he wanted to "mak[e] guns and modify[] guns." JA-343. Mahdawi emphasized that "he had considerable firearm experience and used to build modified 9mm submachine guns to kill Jews while he was in Palestine." JA-343. The police also spoke to volunteers at the Precision Museum and learned that Mahdawi visited often, took pictures of vintage firearms, expressed interest "in purchasing an automatic rifle and a sniper rifle[,]" and how Mahdawi made it explicit that he "like[d] to kill Jews." JA-343. The FBI conducted a national-security investigation, and although it closed the file, JA-526-27, the

[1] USCIS's determination to remove the conditions on LPR status is based on the bona fides of the qualifying marriage, not other factors. *See* 8 U.S.C. §§1186a(a)(1) (providing for conditional LPR status two years after admission), (d)(1)(A) (requiring petition to remove conditions include a statement explaining that the qualifying marriage "was not entered into for the purpose of procuring an alien's admission as an immigrant").

investigation "turned up information that was corroborative of the statements recounted in the Windsor police report," JA-523, and "additional derogatory information" about Mahdawi, JA-524.

A few months later, in November 2015, Mahdawi's then-wife went to the Windsor Police Department and asked the police to "take possession of her personally owned 12GA Mossberg Shotgun" because she and her friend had a "non-physical argument" with Mahdawi. JA-347. The couple divorced two months later and not long after USCIS had approved the I-485, enabling Mahdawi to adjust his status to a conditional LPR. JA-274. And a few months after he had removed the conditions on his LPR status, in January 2019, U.S. Customs and Border Protection stopped Mahdawi for possession of LSD, opiate mushrooms, methamphetamine, and $4,125. JA-351. During this detention, Mahdawi alleged that he was returning from a two-day trip in Montreal where he visited "a woman he met on a cruise to the Caribbean two weeks before." JA-351. Thereafter, he was arrested by the Vermont State Police for possession of LSD, mushrooms, and methamphetamine. JA-275, JA-352. The charges were dismissed pursuant to Vermont Rule of Criminal Procedure 48(a) because Mahdawi completed a court diversion program. JA-275.

After the October 7, 2023 Hamas attack on Israel, Mahdawi "engaged in anti-Semitic conduct through leading pro-Palestinian protests and calling for Israel's destruction" at Columbia University. JA-340-41. "Mahdawi [was] identified at those

protests as having engaged in threatening rhetoric and intimidation of pro-Israeli bystanders." JA-341.

On March 15, 2025, Secretary of State Marco Rubio personally determined, pursuant to 8 U.S.C. §1227(a)(4)(C)(i) and (ii), that Mahdawi's "presence and activities [] in the United States would have potentially serious adverse foreign policy consequences and would compromise a compelling U.S. foreign policy interest." JA-340. The Secretary found that Mahdawi's "activities and presence of Mahdawi in the United States undermine[d] U.S. policy to combat anti-Semitism around the world and in the United States, in addition to efforts to protect Jewish students from harassment and violence in the United States." JA-341. Further, "protests of the type led by Mahdawi potentially undermine[d] the peace process underway in the Middle East by reinforcing anti-Semitic sentiment in the region and thereby threatening the U.S. foreign policy goal of peacefully resolving the Gaza conflict." JA-341. The Secretary thus concluded that Mahdawi was removable under §1227(a)(4)(C). JA-341.

Accordingly, on April 14, 2025, the Department of Homeland Security ("DHS") took Mahdawi into custody, issued him a Notice to Appear, and initiated removal proceedings against him. JA-275. The Notice to Appear charged Mahdawi as removable under 8 U.S.C. §1227(a)(4)(C)(i) and alleged that the "Secretary of State has determined that [Mahdawi's] presence and activities in the … United States would have serious adverse foreign policy consequences and would compromise a compelling U.S. foreign policy interest[.]" JA-263, JA-266.

Mahdawi challenged his removability in Immigration Court and filed a motion to terminate his removal proceedings; an Immigration Judge ("IJ") granted Mahdawi's motion. *See* ECF 232. DHS appealed the IJ's order to the Board of Immigration Appeals ("BIA"). ECF 232. The BIA sustained DHS's appeal, vacated the IJ's order and reinstated removal proceedings, and remanded the matter for Mahdawi to submit any relief application. ECF 232. On May 29, 2026, although no removal order was in place, Mahdawi petitioned for review of the BIA's remand order with the First Circuit, Docket No. 26-1648. ECF 232 at 4. Meanwhile, Mahdawi's removal proceedings continued: he informed the IJ that he would not file any applications, and the IJ entered a removal order on June 3, 2026. ECF 232 at 5-6. Mahdawi directly petitioned for review of the IJ's order to the First Circuit, Docket No. 26-1780 (filed July 6, 2026). Mahdawi never attempted to contest his detention before the agency.

## II. Mahdawi filed a habeas petition for release from custody, which the district court granted, but a panel of this Court vacated and remanded with instructions to dismiss the petition for lack of jurisdiction.

Instead of pursuing relief before the agency, on April 14, 2025, the day DHS arrested Mahdawi in furtherance of his removal proceedings, Mahdawi's attorney filed a petition for writ of habeas corpus in the District of Vermont. JA-1. The petition stated that Mahdawi's "case concerns the government's retaliatory and targeted detention and attempted removal of Mr. Mahdawi for his constitutionally protected speech." JA-1. The petition alleged that the Government "adopted a Policy of targeting noncitizens for removal on the basis of First Amendment protected speech which

advocates for Palestinian rights." JA-16. The petition described Mahdawi as "an outspoken critic of Israel's military campaign in Gaza and an activist and organizer in student protests" and claimed that his "targeted detention and attempted removal" was an attempt to "retaliate and punish noncitizens for their speech and expressive conduct related to Palestine and Israel." JA-1-2. In addition to seeking release under *Mapp*, Mahdawi asserted claims under the First and Fifth Amendments, the Administrative Procedure Act, and the non-delegation doctrine. JA-14-18. As a Prayer for Relief, Mahdawi requested, *inter alia*, that the district court "[v]acate and set aside Respondents' unlawful Policy of targeting noncitizens *for removal* based on First Amendment protected speech advocating for Palestinian rights," "[v]acate and set aside the Rubio Determination," and order his release. JA-18 (emphasis added).

That same day, the district court granted Mahdawi's emergency motion for a temporary restraining order and further prohibited the Government from transferring Mahdawi from Vermont to Louisiana for his removal proceedings and prohibited his removal from the United States. JA-21. On April 22, 2025, Mahdawi applied for release on bail. *See* JA-22-52. The Government opposed. *See* JA-276-96, JA-305.

On April 30, 2025, after a status conference and argument, the district court ordered that Mahdawi be released from custody under *Mapp*. JA-552-79. The district court concluded that the jurisdictional bars under 8 U.S.C. §§1252(a)(5), (b)(9), (g), and §1226(e) did not preclude its review of Mahdawi's habeas claims. JA-558-66. As for the merits, the court concluded the conditions for relief under *Mapp* were satisfied.

JA-567-77. The Government sought a stay before the district court, which was denied. JA-577-79. Also on April 30, 2025, the Government appealed the district court's order to this Court. JA-581. The Government requested that this Court stay the district court's order, which this Court denied. *Mahdawi I*, 136 F.4th at 443. The Government requested panel rehearing or rehearing en banc of the stay order, which this Court also denied. *Ozturk v. Hyde*, 155 F.4th 187, 187-88 (2nd Cir. 2025).

On July 21, 2026, the merits panel vacated and remanded the case with instructions to the district court to dismiss the petition for lack of jurisdiction. *Mahdawi v. Trump* ("*Mahdawi II*"), 183 F.4th 103 (2d Cir. 2026). As an initial matter, the panel concluded that the motions panel's interlocutory determination that the Government was unlikely to succeed in its jurisdictional challenge was not binding on the merits panel. *Id.* at 113-14. Turning to the jurisdictional issue, the panel concluded that §1252(b)(9) channeled Mahdawi's claims into the PFR process, and accordingly, the district court lacked jurisdiction over his habeas petition. *Id.* at 114-17. The panel reasoned that "the plain meaning of 'any action taken … to remove an alien' encompasses both the Secretary of State's removability determination and the Government's commencement of removal proceedings against Mahdawi allegedly based on conduct protected by the First Amendment." *Id.* at 116. And "the legal issues presented in Mahawi's habeas petition 'aris[e] from' the Rubio Determination and the decision to place him in removal proceedings." *Id.*

In reaching its conclusion, the panel thoughtfully rejected Mahdawi's arguments that (1) §1252(b)(9) only applied after a final order of removal had been issued, because the Supreme Court's decisions in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), squarely resolved that issue; and (2) the Government detained him to punish speech that it disagreed with and that this First Amendment retaliatory-detention claim was independent of any challenge to his removal, because his petition alleged that he was targeted for removal and detention, and his arguments against detention were identical to his arguments against removal. *Mahdawi II*, 183 F.4th at 117-19. The panel further rejected his arguments that (3) even assuming that his retaliatory-detention claim turned on the same legal question that would be presented in a PFR, the distinct injury associated with his detention rendered any substantive overlap irrelevant, because asserting an injury that cannot be remedied later did not, alone, suffice to avoid §1252(b)(9)'s bar; and (4) channeling his claims into the PFR process deprived him of any meaningful opportunity for review, because the agency can consider constitutional claims and develop the record for the PFR court, and the PFR court has mechanisms to obtain further factfinding on review should that be necessary. *Id.* at 119-23.

Judge Menashi joined the panel opinion in full and filed a concurring opinion. Judge Menashi argued that even if Mahdawi was correct that his claims represented a bona fide challenge to his detention, §1226(e)—as well as §§1252(g) and (a)(2)(B)—precluded federal courts from entertaining his petition. *Mahdawi II*, 183 F.4th at 124-33 (Menashi, J., concurring). Judge Menashi also added that, even if Mahdawi was able to

overcome the jurisdictional bars, he failed to exhaust his administrative remedies—that is, by seeking a hearing under *Matter of Joseph*, 22 I&N Dec. 799 (BIA 1999), to contest that he was not properly included in a mandatory-detention category—before seeking relief from a federal court. *Mahdawi II*, 183 F.4th at 133-36 (Menashi, J., concurring).

On September 3, 2026, this Court sua sponte granted rehearing en banc.

## SUMMARY OF ARGUMENT

This Court should reverse the district court's order releasing Mahdawi from detention because it lacked subject matter jurisdiction to review his claims. Congress has made it clear that district courts do not have jurisdiction to review the Executive's authority to place an alien in removal proceedings. Yet, the district court erroneously determined that it had jurisdiction to review the Executive's sole authority to detain and place Mahdawi in removal proceedings under the guise that Mahdawi brought forth challenges to the legality of his detention.

1. The panel correctly concluded that §1252(b)(9) precluded the district court from exercising jurisdiction to review challenges related to an alien's removal proceedings. Congress created an exclusive path to raise such challenges by way of a PFR. Only then can an alien present a constitutional challenge. Yet, the district court found that it had jurisdiction to review Mahdawi's habeas petition despite Mahdawi's explicit allegations against the Executive's decision to place him in removal proceedings. Section 1252(a)(5) further bolsters the panel's conclusion by providing that a PFR is the "sole and exclusive means for judicial review of an order of removal."

2. Section 1252(g) precludes review here too. That section makes clear: "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings[.]" 8 U.S.C. §1252(g). Yet the district court ignored this statutory provision and found that it had jurisdiction to hear Mahdawi's challenges to the Executive's decisions and actions to place him in removal proceedings simply because such challenges were presented in a habeas petition. And even in circumstances where an alien brings forth constitutional challenges, the Supreme Court has still found that such a challenge falls squarely within §1252(g)'s purview. Because Mahdawi is explicitly challenging the Executive's decision to place him in removal proceedings, the district court did not have jurisdiction to review those claims.

3. Even if Mahdawi overcame these jurisdictional hurdles, the district court still would be required to dismiss or stay his habeas petition. Mahawi failed to exhaust his administrative remedies by requesting a *Joseph* hearing with the agency and failed to establish that any exception applied.

4. Because the district court lacked jurisdiction to review Mahdawi's claims, it did not have inherent authority to release Mahdawi from detention. Yet, the district court not only found that it had jurisdiction to assess whether Mahdawi would be released, but did so pursuant to *Mapp v. Reno*, a Second Circuit case that was published *before* Congress expanding the jurisdictional limits to review immigration matters. Section 1226(e) bars juridical review of the discretionary decision whether to detain

someone placed in removal proceedings. Therefore, the district court erroneously relied on *Mapp* to find that it had jurisdiction to release Mahdawi from immigration detention. Even if *Mapp* is applicable to this matter, Mahdawi did not establish the requisite extraordinary circumstances.

For these reasons, this Court should reverse the district court's decision.

## STANDARD OF REVIEW

This Court reviews *de novo* jurisdictional questions, questions of law, and the application of law to undisputed facts. *See Delgado v. Quarantillo*, 643 F.3d 52, 54 (2d Cir. 2011); *Secaida-Rosales v. INS*, 331 F.3d 297, 307 (2d Cir. 2003). The district court's factual findings are reviewed for clear error. *See Drake v. Portuondo*, 553 F.3d 230, 239 (2d Cir. 2009).

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes are reproduced in the addendum to this brief.

*~*~*

## ARGUMENT

### I. The district court lacked jurisdiction to review Mahdawi's claims.

#### A. The panel correctly held that 8 U.S.C. §1252(b)(9) channel Mahdawi's challenges to the Court of Appeals.

The panel correctly ruled that the district court lacked jurisdiction over Mahdawi's habeas petition under 8 U.S.C. §1252(b)(9). The panel's decision is consistent with the Third Circuit's decision in *Khalil v. President, United States*, 164 F.4th 259 (3d Cir. 2026).[2]

The INA provides that "[j]udicial review of *all* questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action or proceeding brought to remove an alien … shall be available only in judicial review of a final order [of removal]." 8 U.S.C. §1252(b)(9) (emphasis added). Section 1252(b)(9) is an "unmistakable 'zipper' clause" that "channels judicial review of *all* [claims arising from deportation proceedings]" to a court of appeals in the first instance. *Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 483 (1999). As this Court has explained, §1252(b)(9) requires claims like Mahdawi's to be consolidated in one proceeding before the Court of Appeals:

---

[2] After release of the panel's decision, the Fourth Circuit split with the panel and the Third Circuit, concluding that no provision of the INA deprived the district court of subject-matter jurisdiction to hear the alien's challenges to his allegedly unconstitutional detention. *See Suri v. Trump*, 184 F.4th 260, 275 (4th Cir. 2026). The Government has sought certiorari of that decision from the Supreme Court. *See Trump v. Suri*, No. 26-380 (U.S. Sept. 21, 2026). The response brief is due November 20, 2026.

> Congress enacted 8 U.S.C. §1252(b)(9)] for the important purpose of consolidating all claims that may be brought in removal proceedings into one final petition for review of a final order in the court of appeals. … Before 8 U.S.C. §1252(b)(9)], only actions attacking the deportation order itself were brought in a petition for review while other challenges could be brought pursuant to a federal court's federal question subject matter jurisdiction under 28 U.S.C. §1331. Now, by establishing "exclusive appellate court" jurisdiction over claims "arising from any action taken or proceeding brought to remove an alien," all challenges are channeled into one petition.

*Calcano-Martinez v. INS*, 232 F.3d 328, 340 (2d Cir. 2000). By law, "the sole and exclusive means for judicial review of an order of removal" is a "petition for review filed with an appropriate court of appeals," that is, "the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." 8 U.S.C. §§1252(a)(5), (b)(2). "Taken together, §1252(a)(5) and §1252(b)(9) mean that *any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed only through the [petition-for-review] process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016).

That includes challenges inextricably intertwined with the final order of removal that precede issuance of any order of removal, as well as both direct and indirect challenges to removal orders. *See Mahdawi II*, 183 F.4th at 116-17; *Khalil*, 164 F.4th at 274; *Delgado*, 643 F.3d at 55; *Ruiz v. Mukasey*, 552 F.3d 269, 274 n.3 (2d Cir. 2009); *Singh v. Napolitano*, 500 F. App'x 50, 52 (2d Cir. 2012). It also includes decisions to detain for purposes of removal. *See Jennings*, 583 U.S. at 294 (recognizing that §1252(b)(9) bar challenges to any "decision to detain [an alien] in the first place or to seek removal," which precedes any issuance of a Notice to Appear); *Nasrallah v. Barr*, 590 U.S. 573, 580

(2020) (recognizing that the REAL ID Act clarified that removal orders may not be reviewed in district courts, "even via habeas corpus"); *Khalil*, 164 F.4th at 274 (concluding that Khalil's claims "raise *legal questions* challenging the government's very basis for trying to remove (and thus detaining) him"); *Suri*, 184 F.4th at 307 (Wilkinson, J., dissenting) (recognizing that Suri's, Khalil's, and Mahdawi's detention claims were inextricably intertwined with their claims that removal itself is unlawful, and thus barred by §1252(b)(9)). Consequently, working together, both statutes prohibit the district court from assuming jurisdiction over Mahdawi's claims.

Through §1252, Congress channeled into the statutorily prescribed removal process all legal and factual questions—including constitutional issues—that may arise from the removal of an alien, with judicial review of those decisions vested exclusively in the court of appeals. *See AADC*, 525 U.S. at 483. Consequently, district courts are explicitly prohibited from adjudicating such issues. Instead, §1252 requires an alien to exhaust all issues first in Immigration Court, then the BIA, and finally, seek judicial review of any legal, constitutional, or factual question in the Court of Appeals through a PFR. *See* 8 U.S.C. §§1252(a)(5), (b)(9); *Ajlani v. Chertoff*, 545 F.3d 229, 235 (2d Cir. 2008); *accord Monsalvo v. Bondi*, 604 U.S. 712, 720 (2025) ("Section 1252 permits individuals to petition for judicial review of 'final orders of removal' and indicates that those petitions supply the *exclusive* means for securing '[j]udicial review of all questions of law.'") (emphasis added). Section 1252(b)(9) supports this goal because it covers "all questions of law and fact … arising from any action taken or proceeding brought to

remove an alien" and that language covers detention-related challenges, especially when combined with challenges that question the validity of removal proceedings. *See Gonzalez-Alarcon v. Macias*, 884 F.3d 1266, 1275 (10th Cir. 2018) ("Although Gonzalez-Alarcon seeks release from detention, his claim is based on the alleged invalidity of his removal order.").

Congress has thus divested the district courts of jurisdiction, including habeas jurisdiction, over claims like Mahdawi's and instead channeled all challenges to immigration proceedings and to the Court of Appeals. *See* 8 U.S.C. §1252(b)(9) ("no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision" to review questions of law or fact that arises "from any action taken or proceeding brought to remove an alien from the United States" by any other means but review of a final order of removal). Consistently, the Supreme Court has recognized §1252(b)(9) as an "unmistakable 'zipper' clause" that "channels judicial review of *all* [claims arising from deportation proceedings]" to a court of appeals in the first instance. *AADC*, 525 U.S. at 483. This includes constitutional challenges to the charges of removability.

All this follows from a straightforward reading of §1252(b)(9): Section 1252(b)(9) is a 'general jurisdictional limitation' that applies to 'all claims arising from deportation proceedings' … [including] [d]etaining an alien" and further describes "detention during removal proceedings as an 'aspect of the deportation process.'" *Jennings*, 538 U.S. at 317 (Thomas, J., concurring in part). As this Court has explained, only when the action

is "*unrelated* to any removal action or proceeding" is it within a district court's jurisdiction. *Ruiz*, 552 F.3d at 274 n.3 (emphasis added). Therefore, "[c]laims challenging detention during removal proceedings [] fall within the heartland of 1252(b)(9)." *Jennings*, 583 U.S. at 318 (Thomas, J., concurring in part). The district court erred when it found jurisdiction by delineating the removal proceeding claims from the detention claims, when in fact they are one in the same. JA-565-66. The operative language in §1252(b)(9) is the "arising from any action taken … to remove [him]" language. When a claim by an alien, however it is framed, challenges a determination that is inextricably linked to removal proceedings, as Mahdawi's claims are here, it is covered by §1252(b)(9). *Cf. J.E.F.M.*, 837 F.3d at 1031 ("Section 1252(b)(9) is … breathtaking in scope and vise-like in grip and therefore swallows up virtually all claims that are tied to removal proceedings."). Indeed, "the word 'any' has an expansive meaning." *Mahdawi I*, 183 F.4th at 116 (quoting *Patel v. Garland*, 596 U.S. 328, 338 (2022)). "And here, the plain meaning of 'any action taken … to remove an alien' encompasses both the Secretary of State's removability determination and the Government's commencement of removal proceedings against Mahdawi allegedly based on conduct protected by the First Amendment." *Id.* at 115.

This result is simply a reflection of the fact that "detention *is* an 'action taken … to remove' an alien." *Jennings*, 583 U.S. at 318 (Thomas, J., concurring). Indeed, five Justices in *Jennings* agreed that detention claims—such as those presented here—would be barred by §1252(b)(9). In fact, the plurality recognized that "U.S. immigration law

… authorizes the Government to detain certain aliens already in the country pending the outcome of their removal proceedings[.]" *Jennings*, 583 U.S. at 289. And the aliens in *Jennings* presented a "legal question," which was whether the relevant statutory authorities permitted "prolonged" detention, *id.* at 291, not whether they could be detained in the first place, *id.* at 294. Mahdawi's challenges are not to the former but rather the latter. And a majority of the Supreme Court agrees that such a challenge would be unreviewable. *See* 583 U.S. at 294 (not applying §1252(b)(9) because the aliens were not "challenging the decision to detain them in the first place"); *id.* at 314-23 (Thomas, J., concurring) (stating that §1252(b)(9) would bar the entire challenge to detention related claims); *cf. Khalil*, 164 F.4th at 277 ("But Khalil's claim is not one of them: it just repackages his challenges to his removal. In essence, he argues that his detention is impermissible retaliation and unlawful because it depends on the unconstitutionally vague foreign policy ground. So his 'punitive detention' claim rises or falls with the others. … Khalil cannot plead around § 1252(b)(9) by calling his challenge to removal a challenge to his detention.").

That Mahdawi did not (but does now) have a final order of removal is irrelevant. *See Mahdawi II*, 183 F.4th at 117-18. Stated differently, §1252(b)(9)'s channeling function does not apply only after there is a final order of removal. The statute is clear: it channels "[j]udicial review of all questions of law and fact" arising from a removal proceeding to "judicial review of a final order." And §1252(a)(5) says that such judicial review happens in the Court of Appeals through the PFR process. Contrary to the

Fourth Circuit's decision that (b)(9) does not apply unless there is a final removal order, *Suri*, 184 F.4th at 290, nothing in the statutory language suggests that district courts may nonetheless adjudicate issues "arising from any action taken or proceeding brought to remove an alien" while removal proceedings are ongoing and up until a final order of removal is entered. And that rule would make no sense: it would mean a district court could lose jurisdiction midway through a case once the parallel immigration proceedings produced a final order. Such chaos is precisely what Congress intended to prevent. *See Tazu v. Att'y Gen. United States*, 975 F.3d 292, 296 (3d Cir. 2020) (noting that the additions of §§1252(b)(9) and (g) were meant to "prevent removal proceedings from becoming fragmented, and hence prolonged") (cleaned up).

Moreover, a majority of the Justices in *Jennings* recognized that §1252(b)(9) applies before a final order is issued. Justice Alito, joined by Chief Justice Roberts and Justice Kennedy, concluded that §1252(b)(9) did not apply to aliens challenging their prolonged detention because they were "not challenging the decision to detain them in the first place" or "challenging any part of the process by which their removability will be determined"—steps that precede a final order. *See* 583 U.S. at 294-95 (plurality opinion). Meanwhile, Justices Thomas and Gorsuch thought that §1252(b)(9) should apply to a challenge to prolonged pre-final-order detention. *Id.* at 314-23 (Thomas, J., concurring). Thus, while the Justices did not necessarily agree on the *precise* scope of §1252(b)(9), five Justices understood that §1252(b)(9) is operational *during* the removal proceedings—not just at the end. If §1252(b)(9) did not apply at all before a final order,

there would have been no need for the plurality (or Justices Thomas and Gorsuch) to debate the scope of §1252(b)(9). And the fact that three Justices in dissent suggested that §1252(b)(9) cannot apply pre-final order, helps the Government—it shows that a majority of the Court was aware of this limited reading of §1252(b)(9) and rejected it in favor of their own differing constructions.

That Mahdawi raises "constitutional" claims and, as he asserts, "now-or-never" concerns do not change the analysis. If cognizable, such claims would only be a small subset consisting of actions that are "unrelated to any removal action or proceeding." *Ruiz*, 552 F.3d at 274 n.3; *see E.O.H.C. v. Sec'y DHS*, 950 F.3d 177, 185, 186 (3d Cir. 2020); *Hernandez v. Gonzalez*, 424 F.3d 42, 42-43 (1st Cir. 2005) ("[According to] the legislative history of the Act, those [INA] provisions were not intended to 'preclude habeas review over challenges to detention that are not independent of challenges to removal orders.'"). But Mahdawi's claims do not fit the bill, because (aside from the detention claims being repackaged-removal claims) §1252(b)(9) explicitly channels "constitutional" claims through the PFR process, *see* 8 U.S.C. §1252(b)(9), and courts of appeals have consistently adjudicated such claims under that framework.

Crucially, in *Khalil*, 164 F.4th at 275, and *Massieu v. Reno*, 91 F.3d 416 (3d Cir. 1996) (Alito, J.), the Third Circuit held that aliens like Mahdawi can obtain judicial review by way of a PFR. Khalil argued that the foreign-policy charge (8 U.S.C. §1227(a)(4)(C)(i)) (and his fraud charge) violated the First and Fifth Amendments, whereas Massieu argued that the predecessor to the foreign-policy charge was

unconstitutionally vague. *Khalil*, 164 F.4th at 276; *Massieu*, 91 F.3d at 417. The Third Circuit reversed the lower courts' orders. The court held that the aliens "can litigate all those challenges on a PFR after the Board issues a final order of removal, since the alleged policy is a 'matter[] on which the validity of the final order is contingent.'" *Khalil*, 164 F.4th at 276 (citing *Massieu*, 91 F.3d at 422). Indeed, the court explained that "an alien attempting to prevent an exclusion or deportation proceeding from taking place in the first instance" must seek review through the PFR process, and the Circuit court can review the removal order and "'all matters on which the validity of the final order is contingent.'" *Massieu*, 91 F.3d at 421, 422 (quoting *INS v. Chadha*, 462 U.S. 919, 937-39 (1983)); *see id.* at 423 (reaffirming that review is not meaningfully precluded when "the challenge by the aliens is neither procedural nor collateral to the merits"). This process "ensures that petitioners get only one bite at the apple." *Khalil*, 164 F.4th at 275. Mahdawi's claims must thus be consolidated in one proceeding before the Court of Appeals. The alternative is what has happened here: multiple parallel proceedings—in federal court and immigration court—taking place simultaneously, contrary to Congress's decision of channeling review through the courts of appeals.

Any claim that the PFR process would not provide meaningful review because the review would be delayed, resulting in injuries, or the record inadequate, is meritless. *See Mahdawi II*, 183 F.4th at 119-23. The availability of review of constitutional questions in the Court of Appeals is all that is needed to require an alien to follow the administrative process. *See Adorers of the Blood of Christ v. FERC*, 897 F.3d 187, 195-96

(3d Cir. 2018) ("Finally, although the constitutional claims may be outside of FERC's expertise, this is tempered by the court of appeals' review, which regularly resolves constitutional issues.") (citation omitted). As this Court and the Third Circuit has observed, "our legal system routinely forces petitioners—even those with meritorious claims—to wait to raise their arguments." *Mahdawi II*, 183 F.4th at 120-21 (citing *Khalil*, 164 F.4th at 275) (cleaned up). "Congress struck a balance in §1252(b)(9) that does not foreclose meaningful review, but promotes the orderly adjudication of claims by requiring bringing legal questions later if they can be answered later." *Id.* (citing *Khalil*, 164 F.4th at 275-76) (cleaned up).

Further, EOIR adjudicators have authority to adjudicate constitutional claims, including claims that a statute is constitutional as applied to a specific alien. *See* Exec. Off. for Immigr. Review, *Consideration of Constitutional Arguments in Agency Adjudications* (PM 25-45, Sept. 5, 2025);[3] *accord Mahdawi II*, 183 F.4th at 132-33 (Menashi, J., concurring). The Policy Memorandum reflects two exceptions. First, "EOIR adjudicators cannot consider structural constitutional challenge to their own existence." PM 25-45 at 3 n.5. Second, the Board has "expressed that issues concerning the general constitutionality of statutes are beyond their purview." PM 25-45 at 3. Nonetheless, the agency can address constitutional challenges to the application of statutes, and "nothing in [the Policy Memorandum] affects EOIR's precedent that adjudicators may

[3] https://www.justice.gov/eoir/media/1413276/dl?inline

consider constitutional issues related to the application of a statute in a particular case." PM 25-45 at 1, 4. Moreover, the Immigration Court *is* empowered to develop a record to aid in review of the issues by the Court of Appeals. *See* 8 U.S.C. §1229a(b)(1); 8 C.F.R. §§1003.19(b), 1240.1(b), 1240.10(a)(4), 1240.11(c)(3)(ii). Indeed, it has a duty to do so. *See Toure v. Att'y Gen.*, 443 F.3d 310, 325 (3d Cir. 2006); *Matter of Herrera Del Orden*, 25 I&N Dec. 589, 591 (BIA 2011); *Matter of S-H-*, 23 I&N Dec. 462, 465 (BIA 2002). And if Mahdawi's removal case turns out to be one of the incredibly rare cases in which the record is insufficient, the Circuit court could appoint a special master or transfer the proceedings to a district court for limited factfinding. *See* 28 U.S.C. §2347(b)(3); *AADC*, 525 U.S. at 496-97 & n.3 (Ginsburg, J., concurring); *Mahdawi II*, 183 F.4th at 122-23.

The district court also erred in determining that because "Mahdawi's habeas petition challenges only his arrest and detention—not the removal proceedings—§1252(a)(5) is very unlikely to bar his petition." JA-565. But "Mahdawi's habeas petition, unlike a challenge to the length or conditions of confinement, raises *legal questions* challenging the government's very basis for trying to remove (and thus detain) him." *Mahdawi II*, 183 F.4th at 117 (citing *Khalil*, 164 F.4th at 274) (cleaned up). Indeed, Mahdawi's habeas petition is riddled with claims challenging his removal proceedings, including the Secretary's determination that led to the commencement of those proceedings, and even requests that the court—in a habeas petition—"[v]acate and set aside Respondents' unlawful Policy of targeting noncitizens *for removal*[.]" JA-18

(emphasis added). Mahdawi's attempt to distinguish his detention and removal claims rests on the flawed premise that the Secretary's determination is wholly distinct from detention and removal proceedings. Even if Mahdawi only challenged the Secretary's determination, §1252(b)(9) *would still apply* because the Secretary's determination is an "action taken … to remove" him. "As the Third Circuit recognized in *Khalil*, such detention claims, inextricably intertwined with the claim that removal itself is unlawful, *are* barred by §1252(b)(9)'s zipper clause, which channels most claims that even relate to removal into PFRs." *Mahdawi II*, 183 F.4th at 117 (citing *Khalil*, 164 F.4th at 275) (cleaned up). Mahdawi's challenge to his removal is flatly improper here.

The EOIR custody process confirms that Mahdawi's detention cannot be resolved without affecting his removal proceedings. IJs cannot review custody determinations for someone like Mahdawi, who is properly included as an alien described under §1227(a)(4). *See* 8 C.F.R. §1003.19(h)(2)(i)(C). However, Mahdawi can request that an IJ determine whether he is properly included as an alien described under §1227(a)(4). *See* 8 C.F.R. §1003.19(h)(2)(ii); *Hussain v. Gonzales*, 492 F. Supp. 2d 1024, 1033 (E.D. Wisc. 2007), *aff'd sub nom. Hussain v. Mukasey*, 510 F.3d 739 (7th Cir. 2007). He can submit evidence and legal authority as to whether he is properly included within the removability charge to allow the IJ to make the determination in the first place. *Hussain*, 492 F. Supp. 2d at 1033. If Mahdawi disagrees with the determination, he can seek review before the BIA. 8 C.F.R. §1003.19(f); *see Hussain*, 492 F. Supp. 2d at 1033 (discussing the BIA's decision determining proper detention authority and custody

review process). Instead of pursuing his administrative remedies, Mahdawi "forwent a hearing at which he would have been entitled to raise any nonfrivolous argument available to demonstrate that he was not properly included in a mandatory detention category." *Demore v. Kim*, 538 U.S. 510, 514 (2003) (citing 8 C.F.R. §3.19(h)(2)(ii); *Joseph,* 22 I&N Dec. at 799); *accord Mahdawi II*, 183 F.4th at 121, 130-32. A *Joseph* hearing would have provided Mahdawi "the opportunity to offer evidence and legal authority on the question whether the [Government] has properly included [him] within a category that is subject to mandatory detention." 22 I&N Dec. at 805. "That means a detainee receives 'individualized review' of the legality of his detention at the outset." *Mahdawi II*, 183 F.4th at 121 (citing *Demore*, 538 U.S. at 514 n.3; *Nielsen v. Preap*, 586 U.S. 392, 418 n.8 (2019) ("Detainees who deny that they satisfy any §1226(c) predicate may challenge their mandatory detention in a *Joseph* hearing.")).

At bottom, Mahdawi has failed to utilize the channels of review and instead is seeking federal court review outside of the process Congress created. Even when the substance of a suit is an *indirect* challenge to removal, the district court is still barred from reviewing under the INA. *See Delgado*, 643 F.3d at 55. Conversely, only when an action is "unrelated to any removal action or proceeding" is it within the district court's jurisdiction." *Ruiz*, 552 F.3d at 274 n.3. Ultimately, "the substance of the relief that a plaintiff is seeking" will determine whether the district court has jurisdiction. *Delgado*, 643 F.3d at 55. And here, Mahdawi is arguing that his removal proceedings are unlawful, the charge of removability is unconstitutional, and as a result any detention

*connected* to such proceedings is invalid. But this "habeas petition" is a challenge to the commencement of Mahdawi's removal proceedings, and such a challenge *cannot* be heard in district court. *See Delgado*, 643 F.3d at 55 (stating that if an alien "is indirectly challenging her reinstated order of removal, … 1252(a)(5)'s jurisdictional bar applies equally to preclude such an indirect challenge"); *Gonzalez-Alarcon*, 884 F.3d at 1275 ("Although Gonzalez-Alarcon seeks release from detention, his claim is based on the alleged invalidity of his removal order."); *Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012) ("When a claim by an alien, however it is framed, challenges the procedure and substance of an agency determination that is inextricably linked to the order of removal, it is prohibited by section 1252(a)(5).").

The district court cited both *Delgado* and *Kellici v. Gonzalez*, 472 F.3d 416 (6th Cir. 2006), to find jurisdiction because Mahdawi is challenging the constitutionality of his arrest, not that he has been placed in removal proceedings. The district court misapplied *Delgado*. The court relied on *Delgado* for the premise that "a challenge to an individual's arrest and detention is different," from indirect attacks on removal orders. JA-565. However, at no point did this Court in *Delgado* discuss the distinction between challenging detention in a habeas proceeding and challenging a removal order. *See* 643 F.3d at 55-56. In fact, *Delgado* further supports the Government's position. As the district court noted, the question of district court jurisdiction "will turn on the substance of the relief that a plaintiff is seeking." *Id.* In *Delgado*, Delgado challenged USCIS's decision to deny her I-212 application because such a decision ultimately impacted her

application to adjust status. *See id.* at 55. This Court recognized that such a challenge "is inextricably linked to the reinstatement of [an alien's] removal order" and the I-212 waiver "would render the reinstatement order 'invalid.'" *Id.* (citation omitted). Naturally, such a challenge is an indirect challenge to "her reinstated order of removal, and accordingly, we hold that section 1252(a)(5)'s jurisdictional bar applies equally to preclude such an indirect challenge." *Id.* Here, Mahdawi is *explicitly* challenging his removal. *See* JA-1, JA-18. These challenges, however, are meant to be brought through the PFR process.

The district court also misapplied *Kellici*. The court relied on *Kellici* for the premise that it had jurisdiction because "Mahdawi's habeas petition challenges only his arrest and detention—not the removal proceeding[.]" JA-565. However, context matters. In *Kellici*, the parties had already appeared before the agency and filed a PFR. *Id.* at 416-17. After the PFR was denied, ICE sent a letter, directing the parties to "report to the INS office in Detroit, Michigan." *Id.* That letter, however, was returned as undeliverable. *Id.* A few months later, ICE arrested Ardian Kellici who then filed a habeas petition, challenging the Government's failure to provide him with notice of the date, time, and place of hearing. *Id.* Kellici was removed before the court could render a decision, but he subsequently filed an amended habeas petition where he brought challenges to the removal order. *Id.*

The Sixth Circuit concluded that it only had jurisdiction to review the first-filed habeas petition. Then the Sixth Circuit analyzed whether the habeas petition challenged

"the 'final order of removal,'" which would provide the court with jurisdiction to review. *Id.* at 419. "Where a habeas case does not address the final order, it is not covered by the plain language of the [REAL ID] Act … Here, Ardian's first petition and Marsida's petition did not contest or even mention the hearings before the IJ and the BIA and the final order of removal." *Id.* at 419-20 (citing *Hernandez*, 424 F.3d at 42-43). In sum, the Sixth Circuit found that it did not have jurisdiction because there was no final removal order to review pursuant to §1252(a)(5). Furthermore, "the Kellici's habeas petition challenged only the constitutionality of the arrest and detention, *not* the underlying administrative order of removal." *Id.* at 420.

In contrast, Mahdawi has challenged his underlying removal proceedings. Although Mahdawi now has a final removal order, unlike the parties in *Kellici*, Mahdawi had not yet finalized proceedings before the agency, and instead presented a habeas petition that clearly challenged the commencement of those removal proceedings the very same day the proceedings were commenced. JA-1, JA-273-74. Ultimately, *Kellici* involves a different procedural posture but still supports the premise that a district court should only have jurisdiction to review a habeas petition that "challenge[s] *only* the constitutionality of the arrest and detention" with respect to claims that have nothing to do with removal proceedings, not the removal proceedings themselves. *Id.* at 420. And here, the district court did not have jurisdiction because Mahdawi is clearly challenging his removal.

Congress clearly wanted to preclude the district court from reviewing such cases, even when an alien presents ancillary challenges to the removal proceedings.[4] *See J.E.F.M.*, 837 F.3d at 1031; *id.* at 1035 ("§§1252(a)(5) and [(b)(9)] channel review of all claims, including policies-and-practices challenges … whenever they 'arise from' removal proceedings"); *accord Ruiz*, 552 F.3d at 274 n.3 (only when the action is "unrelated to any removal action or proceeding" is it within the district court's jurisdiction); *cf. Xiao Ji Chen v. U.S. DOJ*, 434 F.3d 144, 151 n.3 (2d Cir. 2006) (a "primary effect" of the REAL ID Act is to "limit all aliens to one bite of the apple"). Because Congress created a streamlined process to review final removal orders, the district court overreached and disregarded §1252's clear jurisdictional bar.

In concluding otherwise, the Fourth Circuit's rule creates a roadmap for circumventing the INA's careful jurisdiction-channeling scheme. The Fourth Circuit's interpretation of §1252(b)(9) would make judicial review perversely more available when there is no final removal order. And rather than "consolidate judicial review … into one action," *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 230 (2020), the Fourth Circuit's

[4] Accepting the Government's reading of §1252(b)(9) would not raise Suspension Clause questions. To the extent Mahdawi is using this habeas action to challenge his detention *only* and not seeking relief other than simple release from custody, this Court has already confirmed that the REAL ID amendments to the INA satisfy Suspension Clause concerns. *See Luna v. Holder*, 637 F.3d 85, 95 (2d Cir. 2011). To the extent that Mahdawi is trying to invoke Suspension Clause concerns for relief other than release from custody, the Supreme Court has foreclosed such use of the Clause. *See DHS v. Thuraissigiam*, 591 U.S. 103, 119 (2020). ("Claims so far outside the 'core' of habeas may not be pursued through habeas.") (cleaned up).

approach would incentivize a profusion of district court suits throughout the duration of removal proceedings. The Fourth Circuit also put significant weight on the presumption in favor of judicial review. But that presumption has little or no purchase here; the INA "does not foreclose meaningful review," but "just streamlines the process for seeking it" by channeling all claims into a single round of litigation. *Suri*, 184 F.4th at 307 (Wilkinson, J., dissenting). Regardless, where, as here, Congress has spoken to the "jurisdiction" of the federal courts in a provision cabining "judicial review," 8 U.S.C. §1252(b)(9), courts should honor that plain language and not artificially expand judicial power at the expense of Congress's intended direction. *See Mullin v. Doe*, 146 S. Ct. 2121, 2134 (2026).

### B. 8 U.S.C. §1252(g) also bars judicial review of the Government's decision to commence removal proceedings.

Mahdawi is challenging the Government's decision to commence removal proceedings against him, regardless of how he styles his claims. By its plain terms, 8 U.S.C. §1252(g) eliminates district court jurisdiction over challenges to commencing removal proceedings. Section 1252(g) specifically deprives courts of jurisdiction, including habeas jurisdiction, to review "any cause or claim by or on behalf of an alien arising from the decision or action by [the Secretary] to [1] *commence proceedings*, [2] adjudicate cases, or [3] execute removal orders against any alien under this chapter."[5]

---

[5] Certain functions, including in 8 U.S.C. §1252, were transferred to the Secretary of Homeland Security. 6 U.S.C. §557; *Clark v. Martinez*, 543 U.S. 371, 374 n.1 (2005).

*Id.* (emphasis added). Section 1252(g) eliminates jurisdiction "[e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title."[6] Though this section "does not sweep broadly," *Tazu*, 975 F.3d at 296, its "narrow sweep is firm," *E.F.L. v. Prim*, 986 F.3d 959, 964-65 (7th Cir. 2021).

Section 1252(g) is "directed against a particular evil: attempts to impose judicial constraints upon [certain categories of] prosecutorial discretion." *AADC*, 525 U.S. at 485 n.9. Indeed, §1252(g) was designed to protect the Executive's discretion and avoid the "deconstruction, fragmentation, and hence prolongation of removal proceedings." *Id.* at 487. It also preserves the Government's authority to make "discretionary determinations" over whether and when to commence removal proceedings against an alien, "providing that if [the claims] are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed." *Id.* at 485; *see Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 599 (9th Cir. 2002) ("We construe §1252(g), which removes our jurisdiction over 'decisions to commence proceedings' to include not only a decision in an individual case *whether*

---

[6] Congress passed §1252(g) in the Illegal Immigration Reform and Immigration Responsibility Act of 1996 ("IIRIRA"). In 2005, Congress amended §1252(g) by adding "(statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title" after "notwithstanding any other provision of law." REAL ID Act of 2005, 119 Stat. at 311.

to commence, but also *when* to commence, a proceeding.") (cleaned up). In short, if an alien's claim arises from the Executive's decision to commence removal proceedings, no court—including the district court—has jurisdiction to review such a claim.

That is exactly the situation here: the district court lacked jurisdiction to review Mahdawi's claims because he is challenging the Government's decision to commence removal proceedings against him—which §1252(g) squarely prohibits. *See Ozturk*, 155 F.4th at 189-90 (Menashi, J., concurring in denial of rehearing en banc) ("[The Government] did not detain the petitioners for any reason independent of its decision to commence removal proceedings. It detained them because of those proceedings."). Although the district court found jurisdiction on the ground that it was reviewing "Mahdawi's arrest and detention," JA-563, Mahdawi's detention arose from the Government's decision to commence removal proceedings against him. *See Sissoko v. Rocha*, 509 F.3d 947, 959 (9th Cir. 2009) (applying §1252(g) to a Fourth Amendment false-arrest claim that "directly challenge[d] [the] decision to commence expedited removal proceedings"); *Alvarez v. ICE*, 818 F.3d 1194, 1203 (11th Cir. 2016) ("By its plain terms, §1252(g)] bars us from questioning ICE's discretionary decisions to commence removal" and to review "ICE's decision to take him into custody and to detain him during removal proceedings"). Mahdawi has not alleged any reason for his detention that is also not the reason for the Government's decision to commence removal proceedings.

Moreover, Mahdawi cannot bypass Congress's jurisdictional limitations by artful pleading. Reading Mahdawi's challenge to his detention to circumvent the bar contained in §1252(g) would render meaningless the provision's expressed mention of precluding habeas review. After all, habeas is meant to challenge the legality of detention. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (holding that "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody"). But fundamentally, Mahdawi is challenging the fact that he is detained, *on the ground* that he cannot be removed, which falls squarely within §1252(g). *See, e.g.*, *Alvarez*, 818 F.3d at 1203; *Gupta v. McGahey*, 709 F.3d 1062, 1065 (11th Cir. 2013) ("Securing an alien while awaiting a removal determination constitutes an action taken to commence proceedings."); *Suri v. Trump*, 2025 WL 1806692, at *11 (4th Cir. July 1, 2025) (Wilkinson, J., dissenting) ("[W]hen the government detains an alien under §1226(a)—which authorizes detention 'pending a decision on whether the alien is to be removed'—the detention arises from the commencement of proceedings or adjudication of cases."); *Limpin v. United States*, 828 F. App'x 429 (9th Cir. 2020) ("[C]laims stemming from the decision to arrest and detain an alien at the commencement of removal proceedings are not within any court's discretion."). By finding it had jurisdiction, the district court allowed Mahdawi to "bypass §1252(g) through mere styling of [his] claims." *Ragbir v. Homan*, 923 F.3d 53, 64 (2d Cir. 2019), *cert. granted, judgment vacated sub nom. Pham v. Ragbir*, 141 S. Ct. 227 (2020).

When analyzing §1252(g), the district court failed to consider that Congress strengthened §1252(g)'s jurisdictional limitations after *AADC*: "[B]y adding unmistakably clear language, it 'eliminat[ed] the availability of habeas corpus relief in the United States District Courts for aliens seeking to challenge orders of removal entered against them.'" *Ragbir*, 923 F.3d at 65; *see AADC*, 525 U.S. at 471. Before the enactment of IIRIRA, district courts assumed jurisdiction over cases brought forward by aliens who sought review of their deportation proceedings. *See, e.g.*, *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479 (1991). Through the enactment of IIRIRA, Congress included "expansive language" demonstrating its "fairly discernable" intent to preclude district court involvement in removal cases. *See Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 215-16 (1994). However, in *INS v. St. Cyr*, the Supreme Court held that IIRIRA's judicial review amendments did not preclude district court review of removal orders and therefore aliens who were barred from raising legal questions directly in the Court of Appeals could raise such claims in habeas proceedings. *See* 533 U.S. 289, 297-98 (2001). In response, Congress enacted the REAL ID Act and expanded IIRIRA's jurisdictional bars to expressly preclude habeas corpus review within the same statutory body that precludes judicial review of the Government's decision "to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. §1252(g). By expanding §1252(g) to include habeas, Congress clearly intended to preclude review of the Government's decision to detain an alien as well as the Government's decision to place an individual in removal proceedings.

This expansion of §1252(g)'s jurisdictional limitations confirms Congress's intent to preclude review of the Government's decision to detain an alien—even while presenting constitutional claims—because like the commencement of proceedings, the decision to place someone in detention requires the Government's discretion. At times, detention pending removal proceedings is mandatory and other times it is discretionary. *See* 8 U.S.C. §§1225(b), 1226(a), 1226(c). As such, detention determinations fall squarely within the Government's "decision or action" to "commence proceedings." *Ragbir*, 923 F.3d at 65-66 ("Taken together with §1252(g)'s clear elimination of habeas corpus jurisdiction, it follows that the statute purports to forbid bringing even constitutional claims in such a proceeding …, and so Congress's legislative 'intent must be respected *even if a difficult constitutional question is presented*.'") (emphasis added).

The mere fact that Mahdawi is presenting constitutional questions in connection with his detention and the commencement of removal proceedings does not alter this analysis or grant the district court jurisdiction. As §1252(g) prohibits judicial review of "any cause or claim" that arises from the commencement of proceedings, this provision applies to constitutional as well as statutory claims. The Supreme Court made clear in *AADC* that "an alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his deportation." 525 U.S. at 488. There, the Government admitted that "the alleged First Amendment activity was the basis for selecting the individuals for adverse action." *Id.* at 488 n.10. And the petitioners argued that a lack of immediate review would have a "chilling effect" on their First Amendment

rights. *Id.* at 488. Yet regardless of this admission and the chilling effect of the aliens' rights, the Supreme Court still found that the "challenge to the Attorney General's decision to 'commence proceedings' against them falls squarely within §1252(g)[.]" *Id.* at 487; *see Cooper Butt ex rel Q.T.R. v. Barr*, 954 F.3d 901, 908-09 (6th Cir. 2020) (holding that the district court did not have jurisdiction to review a claim that the plaintiffs' father "was removed based upon ethnic, religious, and racial bias in violation of the Equal Protection Clause of the Fifth Amendment"). Accordingly, that Mahdawi alleges that the commencement of proceedings and his detention are in retaliation for exercising his First Amendment rights does not mean his claim escapes §1252(g)'s scope. *See AADC*, 525 U.S. at 487-92 (holding §1252(g) deprived district court of jurisdiction over claim that aliens were targeted for deportation in violation of the First Amendment).

Several Circuit courts and districts courts have similarly found that district courts lack jurisdiction to review both statutory and constitutional claims because §1252(g) bars review of "*any* cause or claim" that arises from the commencement of removal proceedings." *See, e.g.*, *Tazu*, 975 F.3d at 296-98 (holding that any constitutional claims must be brought in a PFR, not a separate district court action); *Elgharib v. Napolitano*, 600 F.3d 597, 602-04 (6th Cir. 2010) (noting that "a natural reading of 'any other provision of law (statutory or nonstatutory)' includes the U.S. Constitution" and finding additional support for the court's interpretation from the remainder of the statute); *Ragbir*, 923 F.3d at 73 (finding habeas jurisdiction appropriate only because the opportunity to present the constitutional claim in a PFR was no longer available); *Zundel*

*v. Gonzalez*, 230 F. App'x 468, 475 (6th Cir. 2007) (explaining that First Amendment challenges related to immigration-enforcement action "is properly characterized as a challenge to a discretionary decision to 'commence proceedings' … [and] is insulated from judicial review"); *Humphries v. Various Fed. U.S. INS Emps.*, 164 F.3d 936, 345 (5th Cir. 1999) (ruling §1252(g) prohibited review of First Amendment claim based on decision to put alien into exclusion proceedings); *Vargas v. DHS*, 2017 WL 962420, at *3 (W.D. La. Mar. 10, 2017) (claim that ICE "violated her First Amendment right to free speech by arresting her and initiating her removal after she made statements to the media … is barred by 8 U.S.C. §1252(g)."); *Kumar v. Holder*, 2013 WL 6092707, at *6 (E.D.N.Y. Nov. 18, 2013) (claim of initiation of proceedings in a retaliatory manner "falls squarely within section 1252(g) … [and] [t]he pending immigration proceedings are the appropriate forum for addressing petitioner's retaliation claim in the first instance."). Of note, this Court in *Ragbir* examined §1252(g) and the expansion of the jurisdictional limits the REAL ID Act implemented and found "that by adding the words 'statutory or nonstatutory,' Congress further clarified … it applies even to constitutional claims." 923 F.3d at 65.

The district court attempted to distinguish *Ragbir* by stating that "Ragbir's habeas petition challenged his removal proceedings, not his prior detention." JA-562. This is wrong. By the time Ragbir filed a habeas petition, his removal proceedings had been finalized, and a removal order had been issued. *See Ragbir*, 923 F.3d at 58-60. In fact, Ragbir was challenging DHS's decision to revoke his stay of removal as well as his

detention, and alleged that DHS revoked his stay request in retaliation to his speech. *Id.* at 60-61. Not only did this Court find that DHS's discretion to grant a stay of removal and its discretion to revoke a stay of said removal fit within the confines of §1252(g), *see id.* at 64 n.13, but this Court also found that despite Ragbir's allegation that his stay was revoked because of his speech—and the Court agreeing that such revocation took place *because* of his speech—"the Government's challenged conduct falls squarely within the ostensible jurisdictional limitation of §1252(g)." *Id.* *Ragbir* thus supports the Government's position: the district court lacked jurisdiction to review Mahdawi's claims, regardless of the constitutional claims attached to the detention claims because §1252(g) prohibits such review.[7]

The district court also misapplied *AADC* and *Jennings* because it determined that the holding in those matters would allow for "exercise of habeas jurisdiction in cases that do not seek to challenge the removal proceedings but are directed instead at administrative detention alleged to be employed to stifle protected speech." JA-563. Yet, this matter is identical to *AADC* because Mahdawi is challenging the fact that he has been placed in removal proceedings. In *AADC*, "Respondents sued petitioners for

[7] The Supreme Court vacated *Ragbir* following its decision in *Thuraissigiam*. *See Ragbir*, 141 S. Ct. at 227. That is telling because there the Supreme Court held that alien petitioners could not rely on habeas to obtain review of whether they would be permitted to remain in the country. *See Thuraissigiam,* 591 U.S. at 125. The decision reaffirms the impropriety of the district court to entertain a habeas petition challenging actions related to removal.

allegedly targeting them for deportation because of their affiliation with a politically unpopular group." 525 U.S. at 472. This is no different from Mahdawi's claim that "[t]his case concerns the government's retaliatory and targeted detention and attempted removal of Mr. Mahdawi for his constitutionally protected speech." JA-1. Although Mahdawi's challenge extends to his detention, the challenge is based on his belief that he should not be in removal proceedings in the first place, and that decision to detain is incidental to the decision to commence removal proceedings. *See, e.g.*, JA-2 ("Respondents seek to base Mr. Mahdawi's removal on the Rubio Determination and Section 237(a)(4)(C)(i) of the [INA]), JA-16 ("The government has adopted a Policy of targeting noncitizens for removal on the basis of First Amendment protected speech which advocates for Palestinian rights."), JA-18 (Mahdawi generally challenges the Executive Branch's authority to place aliens in removal proceedings.). Notably, that Mahdawi requested the district court to "vacate and set aside Respondents' unlawful Policy of targeting noncitizens for removal based on First Amendment protected speech" and to "Vacate and set aside the Rubio Determination" clearly demonstrates that he is challenging the decisions that were the impetus to commence removal proceedings. JA-18 (Prayer for Relief).

That *AADC* "did not sound in unlawful detention at all" makes no difference. *Mahdawi I*, 136 F.4th at 451. *AADC* held that §1252(g) barred those petitioners' challenges to the commencement of removal proceedings against them. Because the decision to detain pending removal proceedings is the congressionally authorized

implication of the Executive's discretionary decision to commence removal proceedings, Mahdawi's claim is barred for the same reason as the petitioners' in *AADC*. *See Ozturk*, 155 F.4th at 190 (Menashi, J., concurring in denial of rehearing en banc) ("The decision of the government to commence removal proceedings against an alien includes the detention of the alien pending the removal determination. In other words, the decision to detain is a 'specification of the decision to 'commence proceedings' which ... § 1252(g) covers.'") (citations omitted). Moreover, at the time *AADC* was decided, Congress had not expanded §1252(g)'s reach of judicial limit to cover habeas proceedings—a change that makes clear that Congress sought to sweep challenges to detention within §1252(g)'s scope.

The district court also misapplied *Jennings*. The district court analyzed *Jennings* and interpreted the decision to state that §1252(g) is restricted "to 'the three listed actions of the Attorney General.'" *Jennings*, 583 U.S. at 294. However, closer review of the *Jennings* decision shows that the Supreme Court was comparing §1252(g) with §1252(b)(9). In doing so, the Supreme Court found that §1252(b)(9), *unlike* §1252(g), *does not* present a jurisdictional bar in "asking for review of an order of removal; *they are not challenging the decision to detain them in the first place* or to seek removal; and they are not even challenging any part of the process by which their removability[.]" *Jennings*, 583 U.S. at 294 (emphases added). In other words, §1252(g) bars review of an alien's challenge to "the decision to detain them[.]" *Id.* Mahdawi's challenge is exactly that.

Accordingly, the district court cannot question the Executive's decision to place Mahdawi in removal proceedings and or detention.

Mahdawi, however, is not without recourse. Based on the statutory scheme, Congress intended to preclude judicial review of a decision to place an alien in removal proceedings—which includes statutory requirement that they be detained pending proceedings—because it has created a streamlined process to review such actions. *See AADC*, 525 U.S. at 494 (Ginsburg, R., concurring in part). Under §1252, Congress channeled into the statutorily prescribed removal process all legal and factual questions—including constitutional issues—that may arise from the removal of an alien, with judicial review vested exclusively in the Court of Appeals. *See AADC*, 525 U.S. at 483. These proceedings move promptly when individuals are detained. Unlike in *Ragbir*—where the Second Circuit recognized that Ragbir "state[d] a cognizable claim but, through its adoption of §1252(g), Congress foreclosed all grants of jurisdiction," and such a claim arose *after* the conclusion of Ragbir's removal proceedings, *Ragbir*, 923 F.3d at 73—here, Mahdawi's removal proceedings allowed him the opportunity to litigate his removal charge in Immigration Court and the BIA, as well as present constitutional and legal questions before the appropriate Circuit court (as he is doing). Therefore, review of his claims by the district court is not only improper but also interrupts the statutorily enacted streamlined process that allows for review of the claims Mahdawi presents. Indeed, §1252(g)'s language protects the Government's authority to make "discretionary determinations" and discourages

"separate rounds of judicial intervention outside the streamlined process that Congress has designed." *AADC*, 525 U.S. at 485. Importantly, Congress authorized detention for aliens pending removal proceedings. And here, Mahdawi was charged and found removable under 8 U.S.C. § 1227(a)(4)(C)(i), and Congress authorized his detention.

In short, Mahdawi alleges that the Government arrested, detained, and commenced removal proceedings against him in retaliation for his exercise of the First Amendment—and he seeks habeas relief on that basis. But the district court does not have authority, nor the expertise, to question the Executive's duly assigned statutory power to place an alien in removal proceedings. And that sort of suit is firmly within §1252(g)'s reach and are the issues that can be raised in a PFR. *See AADC*, 525 U.S. at 487-92; *Khalil*, 164 F.4th at 276 ("But addressing any of [Khalil's] claims would require deciding whether removing Khalil would be unlawful—the very issue decided through the PFR process."). The district court thus erred in finding that §1252(g) did not bar Mahdawi's claims.

**C. Mahdawi failed to exhaust his administrative remedies.**

Even if Mahdawi were to overcome the jurisdictional bars, he failed to exhaust his administrative remedies, and the district court still would be required to dismiss or stay his habeas petition. *Mahdawi II*, 183 F.4th at 133-36 (Menashi, J., concurring). As this Court has explained, the "exhaustion requirement arises as a result of the administrative remedies available to [the alien] pursuant to the statutory and regulatory schemes." *Id.* at 133 (citing *Howell v. INS*, 72 F.3d 288, 293 (2d Cir. 1995)). Mahdawi

simply declined to request a *Joseph* hearing before the agency. And he failed to establish that any of the exceptions to the exhaustion requirement applies: Mahdawi has not identified any kind of injury that would excuse exhaustion, as the relief he sought in the district court is the same as that he would have sought before the agency; and the available remedy would provide a genuine opportunity for adequate relief on his constitutional question, as EOIR adjudicators may consider constitutional claims. *See id.* at 134-36 (Menashi, J., concurring).

## II. The district court lacked inherent authority to release Mahdawi under *Mapp v. Reno*, and regardless the district court erred in applying *Mapp*.

The district court lacked inherent authority to release Mahdawi because this Court's decision in *Mapp* no longer remains good law. Regardless, the district court's particular application of *Mapp* to justify Mahdawi's release here was erroneous.

1. This Court recognized in *Mapp* that federal courts have "inherent authority to admit to bail," but "this power is a limited one, to be exercised in special cases only." 241 F.3d at 226. Importantly, this authority is limited by congressional enactments that limit a Court's authority, like the INA provisions discussed above. The district court cannot properly assert subject-matter jurisdiction over Mahdawi's habeas petition in light of the jurisdictional limitations in the INA, which were expanded post-*Mapp*. Before passage of the REAL ID Act, aliens could seek review of their removal orders through the filing of a habeas petition in district court. *See St. Cyr*, 533 U.S. at 311-14. The REAL ID Act removed habeas as a permissible avenue for challenging a

removal order, stripped district courts of jurisdiction to review removal orders, and vested the Courts of Appeals with exclusive jurisdiction to review challenges to final removal orders. *See* 8 U.S.C. §1252(a)(5). This Court recognized that district courts could not override a statute to grant relief. *Mapp*, 241 F.3d at 227-29. Because a statute applies here, *Mapp* cannot create authority that is otherwise limited by statute. Therefore, *Mapp* no longer remains good law. Regardless, the en banc Court is not bound by *Mapp*. *See Dale v. Barr*, 967 F.3d 133, 142 (2d Cir. 2020).

Additionally, this Court recognized that a court's inherent authority to consider bail for habeas petitioners, "may well be subject to appropriate limits imposed by Congress," and that "Congress has not, to date, curtailed this feature of federal judicial power." *Id.* at 223. This Court "acknowledge[d] that, in cases involving challenges to [DHS] detention, Congress's plenary power over immigration matters renders this authority readily subject to congressional limitation." *Id.* at 231. No such limitation was at issue in *Mapp*, but here, along with the channeling provisions addressed above, 8 U.S.C. §1226(e) is an "express statutory constraint[]" that limits the Court's authority in this context. *Mapp*, 241 F.3d at 231.

Section 1226(e) restricts this Court's authority in two ways. First, §1226(e) provides a "clear direction from Congress," *Mapp*, 241 F.3d at 227, that "[n]o court may set aside any action or decision by [DHS] under [§ 1226] regarding the detention or

release of any alien," 8 U.S.C. § 1226(e).[8] Section 1226(a) is the discretionary detention statute that authorizes detention pending a final decision in removal proceedings. *See* 8 U.S.C. §1226(a) (authorizing DHS to arrest and detain an alien "pending a decision on whether the alien is to be removed from the United States"). Section 1226(e), in turn, bars judicial review of the discretionary decision whether to detain someone placed in removal proceeding. Thus, "[n]either a discretionary judgment nor a detention decision is subject to judicial review." *Mahdawi II*, 183 F.4th at 125 (Menashi, J., concurring). Second, DHS's decision to detain Mahdawi cannot readily be set aside through a *Mapp* motion. As this Court explained, where Congress provided for discretionary detention, federal courts may be further constrained from granting release on bail where the agency has exercised such discretion. *See Mapp*, 241 F.3d at 229 n.12 ("[W]hile it may be the case that had the INS exercised its discretion under §1231(a)(6) and decided not to release Mapp on bail, *we would be required to defer to its decision*, where there has been no such consideration of a detainee's fitness for release, deference to the INS … is not warranted."); *Cinquemani v. Ashcroft*, 2001 WL 939664, at *6-8 & n.6 (E.D.N.Y. Aug. 16, 2001) (citing *Mapp*). DHS did so here. JA-272-75.

---

[8] This is not to say that district courts lack jurisdiction at all over the release of an alien in immigration habeas proceedings, but under the circumstances here, that authority may be exercised only at the conclusion of the habeas case and upon a merits determination that Mahdawi's detention is unlawful. That is not the inquiry in a *Mapp* motion, and so there is no tension with this distinction.

Although this Court has stated that §1226(e) "does [not] limit habeas jurisdiction over constitutional claims or questions of law," *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020), it has routinely recognized that one cannot circumvent judicial-review bars to discretionary decisions by cloaking them in constitutional garb, and a constitutional challenge to initial detention—that is, this case—is covered by §1226(e). *Velasco Lopez*, 978 F.3d at 850 (finding that §1226(e) did not bar review because the petitioner did not challenge "his initial detention"); *see Saloum v. USCIS*, 437 F.3d 238, 243-44 (2d Cir. 2006); *Liu v. Holder*, 415 F. App'x 298, 300 (2d Cir. 2011). Moreover, *Elkimya v. DHS*, 484 F.3d 151 (2d Cir. 2007), does not expressly affirm federal courts' ability to order release on bail considering §1226(e). *Elkimya* did not hold that *district courts'* inherent authority to grant release survived the REAL ID Act, because it could not have. That case came to this Court on a PFR, not on appeal from a district court order. *Elkimya* thus simply does not hold that district courts may circumvent the channeling function of the REAL ID Act as to bail. The district court was thus wrong to supplant DHS's discretionary decision to detain Mahdawi.

The district court was thus precluded from considering *Mapp* to release Mahdawi from detention. *Mapp*, 241 F.3d at 227-29; *Bolante v. Keisler*, 506 F.3d 618, 620-21 (7th Cir. 2007) ("Even if in the absence of legislation a federal court could grant bail to an alien challenging a removal order, it cannot do so if Congress has forbidden it.").

2. Even if *Mapp* remains viable after changes to the INA, the district court erred in ordering Mahdawi's release under *Mapp*. That error is reversible under any standard of review.

This Court has been clear that "the standard for bail pending habeas litigation is a difficult one to meet: The petitioner must demonstrate that the habeas petition raises substantial claims and that extraordinary circumstances exist that make the grant of bail necessary to make the habeas remedy effective." *Mapp*, 241 F.3d at 226 (citation omitted). A petitioner also must establish that he does not present a threat, or there is no risk of nonappearance, to show that release is in the public interest. *Id.* at 231 n.14.

Here, at a minimum, the district court erroneously determined that extraordinary circumstances exist to release Mahdawi from detention and instead based its decision on the premise that this matter is "extraordinary in the sense that it calls upon the ancient remedy of habeas to address a persistent modern wrong." JA-576. No "extraordinary circumstances" justify Mahdawi's release. The record contains evidence demonstrating Mahdawi's admissions that he "use to build modified 9mm submachine guns to kill Jews while he was in Palestine" and "like[d] to kill Jews." JA-343. Detaining an alien with that track record is not "extraordinary." It is even *less* so given the substantial deference owed to the Executive in identifying aliens whose presence or activities in the United States pose a threat to the country's foreign policy.

The district court also failed to consider the fact that Congress has created a process that allows review of constitutional claims or claims related to the immigration

process. First, the district court diminished the Executive's authority to make foreign-policy determinations: "The court is aware that he has offended his political opponents and apparently given rise to concerns at the State Department that he is an obstacle to American foreign policy." JA-575. Again, "[t]he Executive should not have to disclose its 'real' reasons for deeming nationals of a particular country a special threat … and even if it did disclose them a court would be ill equipped to determine their authenticity and utterly unable to assess their adequacy." *AADC*, 525 U.S. at 491; *see Trump v. Hawaii*, 585 U.S. 667, 703-04 (2018) ("'[R]espect for the political branches' broad power over the creation and administration of the immigration system meant that the Government need provide only a statutory citation to explain a visa denial."); *Kerry v. Din*, 576 U.S. 86, 105 (2015) (Kennedy, J., concurring). There is no constitutional basis to probe beyond the Secretary's determination that Mahdawi's continued presence impacts foreign policy. And it is not in the public's interest to release an individual who has been deemed to be a foreign-policy concern by experts on the matter. *See Curtiss-Wright Export Corp.*, 299 U.S. 304, 320 (1936) (describing the President as "the sole organ of the federal government in the field of international relations").

Second, the district court failed to consider that it is well settled that it is in the public's interest that the United States' immigration laws be enforced. *See United States v. Martinez-Fuerte*, 428 U.S. 543, 556-58 (1976). There is "always a public interest in prompt execution of removal orders." *Nken v. Holder*, 556 U.S. 418, 436 (2009). This includes the prompt resolution of determining removability because "[t]he continued

presence of an alien lawfully deemed removable undermines the streamlined removal proceedings IIRIRA established, and 'permit[s] and prolong[s] a continuing violation of United States law.'" *Id.* (quoting *AADC*, 525 U.S. at 490). By seeking an order preventing DHS from detaining him, Mahdawi frustrates the public interest in enforcing the immigration laws and in determining his removability. DHS has a valid statutory basis for detention, *see* 8 U.S.C. §1226(a), and "detention during [removal] proceedings is a constitutionally valid aspect of the process," *Demore*, 538 U.S. at 511; *accord Hawaii*, 585 U.S. at 670, 706 (holding that review of the President's entry policy "is limited to whether the Executive gives a 'facially legitimate and bona fide' reason for its action," which can be satisfied by "a legitimate grounding in national security concerns"). Therefore, the district court erred in ordering Mahdawi's release.

*~*~*

## CONCLUSION

This Court should reverse the district court's order and remand with instructions to dismiss, or alternatively, vacate the release order as improvidently granted.

Respectfully submitted,

*/s/ Alanna T. Duong*

ALANNA T. DUONG
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-7040
alanna.duong@usdoj.gov

BRETT A. SHUMATE
Assistant Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney General

TYLER J. BECKER
Counsel to the Assistant Attorney General

AUGUST E. FLENTJE
Deputy Director
Office of Immigration Litigation

October 14, 2026

Attorneys for Respondents-Appellants

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B)(i) and (C), and Second Circuit Rule 32(a)(2), I certify that Microsoft Word 365 was used to prepare this brief and that the brief complies with the type-volume limitation because it uses proportionately spaced, 14-point Garamond typeface, and contains 12996/13000 words, excluding the exempted parts.

## CERTIFICATE OF SERVICE

I certify that on October 14, 2026, I filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate ACMS system. I further certify that all participants in the case are registered ACMS users and that service will be accomplished through that system.

*/s/ Alanna T. Duong*
ALANNA T. DUONG
Senior Litigation Counsel
U.S. Department of Justice

October 14, 2026

Attorney for Respondents-Appellants