# No. 25-1113

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

MOHSEN MAHDAWI,

*Petitioner–Appellee*,

v.

DONALD J. TRUMP, in his official capacity as President of the United States; DAVID T. WESLING, in his official capacity as Acting Boston Field Office Director, Immigration and Customs Enforcement, Enforcement and Removal Operations; J DOE, in official capacity as Vermont Sub-Office Director of Immigration and Customs Enforcement, Enforcement and Removal Operations; DAVID J. VENTURELLA, in his official capacity as Senior Official Performing the Duties of the Director, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, in his official capacity as Secretary of the United States Department of Homeland Security; MARCO A. RUBIO, in his official capacity as Secretary of State; TODD BLANCHE, in his official capacity as U.S. Attorney General,

*Respondents–Appellants*.

On Appeal from the U.S. District Court for the District of Vermont,
No. 2:25-cv-389

**PETITIONER–APPELLEE'S BRIEF ON REHEARING EN BANC**

Nathan Freed Wessler
Brian Hauss
Esha Bhandari
Brett Max Kaufman
Michael K.T. Tan
Noor Zafar
Sidra Mahfooz
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, Floor 18
New York, NY 10004
(212) 549-2500
nwessler@aclu.org
bhauss@aclu.org
ebhandari@aclu.org
bkaufman@aclu.org
m.tan@aclu.org
nzafar@aclu.org
smahfooz@aclu.org

Andrew B. Delaney
MARTIN DELANEY & RICCI LAW GROUP
100 North Main Street
Barre, Vermont 05641
(802) 479-0568
andrew@mdrvt.com

Cyrus D. Mehta
David A. Isaacson
CYRUS D. MEHTA & PARTNERS PLLC
One Battery Park Plaza, 9th Floor
New York, New York 10004
(212) 425-0555
cm@cyrusmehta.com
disaacson@cyrusmehta.com

Lia Ernst
Monica H. Allard
Hillary A. Rich
ACLU FOUNDATION OF VERMONT
PO Box 277
Montpelier, VT 05601
(802) 223-6304
lernst@acluvt.org
mallard@acluvt.org

Naz Ahmad
Mudassar Toppa
Shezza Abboushi Dallal
CLEAR PROJECT
MAIN STREET LEGAL SERVICES, INC.
CUNY School of Law
2 Court Square
Long Island City, NY 11101
(718) 340-4558
naz.ahmad@law.cuny.edu
mudassar.toppa@law.cuny.edu
shezza.dallal@law.cuny.edu

Luna Droubi
Matthew Melewski
Keegan Stephan
BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/26th Floor
New York, New York, 10016
(212) 277-5874
ldroubi@blhny.com
mmelewski@blhny.com
kstephan@blhny.com
talfoqaha@blhny.com

*Counsel for Petitioner–Appellee*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

STATEMENT OF THE CASE ........ 4

Petitioner's Speech & Government Retaliation ........ 4

Prior Proceedings ........ 8

SUMMARY OF ARGUMENT ........ 12

STANDARD OF REVIEW ........ 16

ARGUMENT ........ 17

I. The district court had jurisdiction under habeas to review Mr. Mahdawi's claims challenging retaliatory and punitive detention and to order his release ........ 17

A. Habeas Corpus review of executive detention is presumed, and can be overridden only by a clear statement ........ 17

B. This case is about detention, not removal ........ 20

C. 8 U.S.C. § 1252(g) does not bar habeas review of Mr. Mahdawi's detention claims ........ 22

D. 8 U.S.C. § 1252(b)(9) does not bar habeas review of Mr. Mahdawi's detention claims ........ 30

E. If section 1252(g) and (b)(9) did bar Mr. Mahdawi's detention claims, they would violate the Suspension Clause ........ 41

1. A PFR is not an adequate and effective substitute for habeas with respect to a detention claim ........ 42

2. A Joseph hearing is not an adequate and effective substitute for habeas with respect to a detention claim ........ 46

II. The district court did not abuse its discretion in granting Mr. Mahdawi bail under *Mapp v. Reno* ........ 51

A. The district court retains inherent authority to order release on bail ........ 53

B. Mr. Mahdawi's release on bail was justified under *Mapp* ........ 55

CONCLUSION ........ 58

CERTIFICATE OF SERVICE ........ 60

CERTIFICATE OF COMPLIANCE ........ 61

# TABLE OF AUTHORITIES

## Cases

*ACLU v. Ashcroft*,
322 F.3d 240 (3d Cir. 2003) ............ 58

*Aguilar v. ICE*,
510 F.3d 1 (1st Cir. 2007) ............ 32

*Ahmed v. Rubio*,
No. 26-2509 (2d Cir. filed Sep. 9, 2026) ............ 40

*Al-Siddiqi v. Achim*,
531 F.3d 490 (7th Cir. 2008) ............ 55

*Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.*,
39 F.4th 95 (3d Cir. 2022) ............ 58

*Avendaño Hernandez v. Decker*,
450 F. Supp. 3d 443 (S.D.N.Y. 2020) ............ 52

*Axon Enter., Inc. v. FTC*,
598 U.S. 175 (2023) ............ 32, 40

*Baker v. Carr*,
369 U.S. 186 (1962) ............ 57

*Balde v. Genalo*,
No. 26-cv-8227, 2026 WL 3010436 (S.D.N.Y. Oct. 6, 2026) ............ 53

*Beharry v. Ashcroft*,
329 F.3d 51 (2d Cir. 2003) ............ 50

*Bell v. Wolfish*,
441 U.S. 520 (1979) ............ 17

*Bello-Reyes v. Gaynor*,
985 F.3d 696 (9th Cir. 2021) ............ 27

*Black v. Decker*,
103 F.4th 133 (2d Cir. 2024) ............ 20

*Boumediene v. Bush*,
553 U.S. 723 (2008) .......... *passim*

*Calcano-Martinez v. INS*,
232 F.3d 328 (2d Cir. 2000) .......... 32

*Califano v. Sanders*,
430 U.S. 99 (1977) .......... 50

*Castro v. DHS*,
835 F.3d 422 (3d Cir. 2016) .......... 41

*Chung v. Rubio*,
No. 25-1660 (2d Cir. filed July 7, 2025) .......... 41

*Clark v. Martinez*,
543 U.S. 371 (2005) .......... 41

*Coalition for Indep. Tech. Rsch. v. Rubio*,
No. 26-815, 2026 WL 2030770 (D.D.C. July 14, 2026) .......... 41

*Colo. River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976) .......... 57

*Coronel v. Decker*,
449 F. Supp. 3d 274 (S.D.N.Y. 2020) .......... 53

*Council of Alt. Political Parties v. Hooks*,
121 F.3d 876 (3d Cir. 1997) .......... 57

*D'Alessandro v. Mukasey*,
No. 08-CV-914, 2009 WL 799957 (W.D.N.Y. Mar. 25, 2009) .......... 52, 53

*Delgado v. Quarantillo*,
643 F.3d 52 (2d Cir. 2011) .......... 37, 38

*Demore v. Kim*,
538 U.S. 510 (2003) .......... 19, 24, 47, 54

*DHS v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020) .......... 13, 23, 31

*DHS v. Thuraissigiam*,
591 U.S. 103 (2020) .......... 42

*Doe v. Trump Corp.*,
6 F.4th 400 (2d Cir. 2021) .......... 50

*Duenas v. Garland*,
78 F.4th 1069 (9th Cir. 2023) .......... 46

*E.O.H.C. v. Sec'y U.S. DHS*,
950 F.3d 177 (3d Cir. 2020) .......... 32

*Elkimya v. DHS*,
484 F.3d 151 (2d. Cir. 2007) .......... 53, 54

*Elrod v. Burns*,
427 U.S. 347 (1976) .......... 32

*Fort Wayne Books, Inc. v. Indiana*,
489 U.S. 46 (1989) .......... 40

*Fulton v. Mullin*,
181 F.4th 292 (2d Cir. 2026) .......... 52

*Gayle v. Warden Monmouth Cnty. Corr. Inst.*,
12 F.4th 330 (3d Cir. 2021) .......... 50

*German Santos v. Warden Pike Cnty. Corr. Facility*,
965 F.3d 203 (3d Cir. 2020) .......... 20

*Gonzalez-Alarcon v. Macias*,
884 F.3d 1266 (10th Cir. 2018) .......... 38

*Hamdan v. Rumsfeld*,
548 U.S. 557(2006) .......... 18

*Hernandez v. Starbuck*,
69 F.3d 1089 (10th Cir. 1995) .......... 43

*In re Diaz*,
2010 WL 4972444 (B.I.A. Nov. 16, 2010) .......... 48

*INS v. St. Cyr*,
533 U.S. 289 (2001) ... *passim*

*Jennings v. Rodriguez*,
583 U.S. 281 (2018) ... *passim*

*Johnson v. Guzman Chavez*,
594 U.S. 523 (2021) ... 31

*Kellici v. Gonzales*,
472 F.3d 416 (6th Cir. 2006) ... 27, 38

*Khalil v. Joyce*,
777 F. Supp. 3d 369 (D.N.J. 2025) ... 8

*Khalil v. Joyce*,
780 F. Supp. 3d 476 (D.N.J. 2025) ... 31, 40

*Khalil v. Trump*,
164 F.4th 269 (3d Cir. 2026) ... *passim*

*Khalil v. Trump*,
176 F.4th 295 (3d Cir. 2026) ... 20, 43

*Kiadii v. Decker*,
423 F. Supp. 3d 18 (S.D.N.Y. 2018) ... 52

*Kong v. United States*,
62 F.4th 608 (1st Cir. 2023) ... 20, 24, 27

*Kucana v. Holder*,
558 U.S. 233 (2010) ... 19

*Liu v. Holder*,
415 F. App'x 298 (2d Cir. 2011) ... 54

*Lopez Torres v. N.Y. State Bd. of Elections*,
462 F.3d 161 (2d Cir. 2006) ... 57

*Lorillard v. Pons*,
434 U.S. 575 (1978) ... 54

*Luna v. Holder*,
637 F.3d 85 (2d Cir. 2011) ........ *passim*

*Lyndonville Sav. Bank & Tr. Co. v. Lussier*,
211 F.3d 697 (2d Cir. 2000)........ 16

*Madu v. U.S. Atty. Gen.*,
470 F.3d 1362 (11th Cir. 2006)........ 27

*Mahdawi v. Blanche*,
No. 26-1780 (1st Cir. July 6, 2026) ........ 11

*Mahdawi v. Blanche*,
No. 26-1648 (1st Cir. May 29, 2026)........ 11

*Mahdawi v. Trump*,
136 F.4th 443 (2d Cir. 2025) ........ *passim*

*Mahdawi v. Trump*,
183 F.4th 103 (2d. Cir. 2026) ........ *passim*

*Mapp v. Reno*,
241 F.3d 221 (2d Cir. 2001........ *passim*

*Martinez v. Napolitano*,
704 F.3d 620 (9th Cir. 2012) ........ 38

*Matter of C-*,
20 I. & N. Dec. 529 (B.I.A. 1992) ........ 50

*Matter of Joseph*,
22 I. & N. Dec. 799 (B.I.A. 1999) ........ 3, 46, 48, 49

*Matter of M-K-*,
29 I. & N. Dec. 556 (B.I.A. 2026) ........ 39, 48

*Matter of Ruiz-Massieu*,
22 I. & N. Dec. 833 (B.I.A. 1999) ........ 39

*McNary v. Haitian Refugee Ctr., Inc.*,
498 U.S. 479 (1991)........ 19

*Miranda v. Garland*,
34 F.4th 338 (4th Cir. 2022) .......... 20, 25

*Mohammed H. v. Trump*,
781 F. Supp. 3d 886 (D. Minn. 2025) .......... 56

*Montemuro v. Jim Thorpe Area Sch. Dist.*,
99 F.4th 639 (3d Cir. 2024) .......... 43

*N.Y. Progress & Prot. PAC v. Walsh*,
733 F.3d 483 (2d Cir. 2013) .......... 57

*Nadarajah v. Gonzales*,
443 F.3d 1069 (9th Cir. 2006) .......... 20

*Najera v. United States*,
926 F.3d 140 (5th Cir. 2019) .......... 55

*Nat'l Socialist Party of Am. v. Vill. of Skokie*,
432 U.S. 43 (1977) .......... 40

*Nielsen v. Preap*,
586 U.S. 392 (2019) .......... 2, 19, 31

*NRA v. Vullo*,
602 U.S. 175 (2024) .......... 39

*Oesterich v. Selective Serv. Sys. Local Bd. No. 11*,
393 U.S. 233 (1968) .......... 40

*Osorio-Martinez v. U.S. Att'y Gen.*,
893 F.3d 153 (3d Cir. 2018) .......... 41, 43, 44, 45

*Öztürk v. Hyde*,
136 F.4th 382 (2d Cir. 2025) .......... *passim*

*Öztürk v. Hyde*,
155 F.4th 187 (2d Cir. 2025) .......... *passim*

*Öztürk v. Trump*,
779 F. Supp. 3d 462 (D. Vt. 2025) .......... 46

*Öztürk v. Trump*,
783 F. Supp. 3d 801 (D. Vt. 2025)........................................................................ 56

*Parra v. Perryman*,
172 F.3d 954 (7th Cir. 1999) ............................................................................... 27

*Patin v. Trump*,
824 F. Supp. 3d 484 (D. Vt. 2026)........................................................................ 52

*Pham v. Ragbir*,
592 U.S. 901 (2020) ............................................................................................. 30

*Ragbir v. Homan*,
923 F.3d 53 (2d Cir. 2019) ................................................................................... 30

*Ravindran v. INS*,
976 F.2d 754 (1st Cir. 1992).................................................................................. 50

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
525 U.S. 471 (1999) ........................................................................................*passim*

*Rodriguez v. Robbins*,
804 F.3d 1060 (9th Cir. 2015) .............................................................................. 47

*Ruiz v. Mukasey*,
552 F.3d 269 (2d Cir. 2009).................................................................................. 37

*S.N.C. v. Sessions*,
18 Civ. 7680, 2018 WL 6175902 (S.D.N.Y. Nov. 26, 2018) ................................ 52

*Saloum v. USCIS*,
437 F.3d 238 (2d Cir. 2006).................................................................................. 54

*Santos-Zacaria v. Garland*,
598 U.S. 411 (2023) ............................................................................................. 51

*Sarsour v. Swearingen*,
839 F. Supp. 3d 716 (S.D. Ind. 2026)................................................................... 56

*Shuttlesworth v. Birmingham*,
394 U.S. 147 (1969) ........................................................................................32, 40

*Sindicato Puertorriqueño de Trabajadores v. Fortuño*,
699 F.3d 1 (1st Cir. 2012) .......... 58

*Singh v. Holder*,
638 F.3d 1196 (9th Cir. 2011) .......... 54

*Suri v. Trump*,
184 F.4th 260 (4th Cir. 2026) .......... *passim*

*Suri v. Trump*,
No. 25-1560, 2025 WL 1806692 (4th Cir. July 1, 2025) .......... 37

*Suri v. Trump*,
No. 25-cv-480, 2025 WL 1392143 (E.D. Va. May 14, 2025) .......... 56

*Swain v. Pressley*,
430 U.S. 372 (1977) .......... 42

*Texas v. United States*,
809 F.3d 134 (5th Cir. 2015) .......... 58

*Thunder Basin Coal Co. v. Reich*,
510 U.S. 200 (1994) .......... 31

*United States v. Gonzalez-Roque*,
301 F.3d 39 (2d Cir. 2002) .......... 50

*United States v. Hansen*,
599 U.S. 762 (2023) .......... 33

*United States v. Mattis*,
963 F.3d 285 (2d Cir. 2020) .......... 16, 17, 56

*United States v. Salerno*,
481 U.S. 739 (1987) .......... 17

*Vacchio v. Ashcroft*,
404 F.3d 663 (2d Cir. 2005) .......... 52

*Velasco Lopez v. Decker*,
978 F.3d 842 (2d Cir. 2020) .......... 35, 41, 54

*Zadvydas v. Davis*,
533 U.S. 678 (2001) .......... 18, 19, 20, 25

*Zhong v. DOJ*,
480 F.3d 104 (2d Cir. 2007) .......... 51

*Zivotofsky v. Clinton*,
566 U.S. 189 (2012) .......... 57

**Statutes**

28 U.S.C. § 2241 .......... 17

28 U.S.C. § 2243 .......... 45

8 U.S.C. § 1226 .......... 24

8 U.S.C. § 1226(a) .......... 10

8 U.S.C. § 1226(c) .......... 3, 26

8 U.S.C. § 1226(e) .......... 16, 24, 53

8 U.S.C. § 1227 .......... 24

8 U.S.C. § 1227(a)(4)(C)(i) .......... 48

8 U.S.C. § 1227(a)(4)(C)(ii) .......... 4, 7

8 U.S.C. § 1231(g) .......... 10

8 U.S.C. § 1252(a)(2)(B)(ii) .......... 10

8 U.S.C. § 1252(a)(5) .......... 10

8 U.S.C. § 1252(b)(9) .......... *passim*

8 U.S.C. § 1252(g) .......... *passim*

**Other Authorities**

*Beerman Foundation Fellows for Peace and Justice*, Leonard I. Beerman Foundation for Peace and Justice: Fellows .......... 9

Br. for Pet'rs, *United States v. Texas*, No. 22-58, 2022 WL 4278395 (U.S. Sep. 12, 2022) ........ 25

Br. for Resp't 18, *Khalil v. Blanche*, No. 26-60344 (5th Cir. Oct. 14, 2026) ........ 22

H.R. Rep. No. 109-72 (2005) ........ 24, 32

John Woodrow Cox, *Trump's DOJ Told a Judge How To Rule. Then It Pulled Her From Court*, Wash. Post (Oct. 25, 2026) ........ 46

*Mohsen Mahdawi, Wink Fellow 2026-27*, Fellowship of Reconciliation USA ........ 9

Pet., *Khalil v. Trump*, No. 26-530 (U.S. filed Oct. 19, 2026) ........ 12

Pet., *Trump v. Suri*, No. 26-380 (U.S. filed Sept. 21, 2026) ........ 12

Tr. of July 15, 2015 Vol. 1, *Am. Ass'n of Univ. Professors v. Rubio*, No. 25-cv-10685 (D. Mass.) ........ 7

Transactional Records Access Clearinghouse, *Detention Drops As New Immigration Court Cases Surge* (June 26, 2026) ........ 26

**Treatises**

18A Charles Alan Wright et al., *Federal Practice & Procedure* § 4432 (3d ed. 2005) ........ 37

**Regulations**

8 C.F.R. § 1003.14(a) ........ 24

8 C.F.R. § 1003.19(h)(2)(i) ........ 47

8 C.F.R. § 1003.19(h)(2)(i)(C) ........ 26, 47

8 C.F.R. § 1003.19(h)(2)(ii) ........ 47

8 C.F.R. § 1003.19(i)(2) ........ 49

8 C.F.R. § 287.3(d) ........ 26

8 C.F.R. § 335.2(b). ........ 6

## INTRODUCTION

In April 2025, the government detained Petitioner Mohsen Mahdawi, a decade-long lawful permanent resident, solely because of what it concedes was his lawful speech and advocacy in support of Palestinian rights. Faced with this avowed retaliation in violation of the First Amendment, Mr. Mahdawi turned to habeas corpus, our nation's time-tested and constitutionally guaranteed check against unlawful executive detention. The district court quickly saw Mr. Mahdawi's detention for what it was: an outrageous abuse reminiscent of "the Red Scare and Palmer Raids" and "the McCarthy period," when thousands of noncitizens were shamefully targeted for their political views. JA575-76. Invoking the court's inherent power to release habeas petitioners on bail, it set Mr. Mahdawi free, pending further litigation of his habeas petition, which raised a First Amendment challenge to his retaliatory detention as well as a separate Fifth Amendment challenge based on the lack of flight risk or danger justifying detention. Mr. Mahdawi's release was both well within the court's power and justified by the record evidence, which included more than 125 letters of support attesting to Mr. Mahdawi's "commitment to principles of non-violence [in his] political activism," JA557, and his "leadership in Columbia's protest movement" that "[did] more to reduce anti-semitism than any other individual on [the] campus." JA95.

Nothing in the Immigration & Nationality Act ("INA") prevented Mr. Mahdawi from immediately accessing habeas relief in the district court. The provisions the government cites, 8 U.S.C. § 1252(g) and (b)(9), channel certain challenges to a noncitizen's removal proceedings or final order of removal to the administrative process and then a petition for review ("PFR") in a federal court of appeals. But they do not bar a challenge to unlawful detention, which is "wholly collateral [] to the removal process," *Mahdawi v. Trump* ("*Mahdawi I*"), 136 F.4th 443, 450 (2d Cir. 2025) (denying stay), and cannot be reviewed on a PFR. Mr. Mahdawi's First and Fifth Amendment challenges to his detention are independent of any claims he might make in an eventual PFR from a removal order. That some—but by no means all—aspects of his detention claims might overlap with some aspects of claims he might make to challenge his removal, after his illegal detention has gone unremedied for months or years, does not convert his detention claims into removal claims or divest the district court of jurisdiction. As this case itself shows, because a detention challenge is collateral to the merits of removal, it can proceed in habeas alongside and without affecting the removal-focused immigration proceedings. Without habeas, Mr. Mahdawi's detention claims would be "effectively unreviewable," *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018) (plurality op.); *see also Nielsen v. Preap*, 586 U.S. 392, 402 (2019).

If the government prevails in this appeal, the courthouse doors would be slammed shut to someone's detention challenge whenever the government also pursued their removal for similar illicit reasons. That would give this government a wide-open road to imprison lawful permanent residents for their speech on any topic in order to censor, suppress, and chill disfavored viewpoints—precisely what the government seeks here.

Belatedly recognizing the radical implications of its position, the government now latches onto the panel's unprecedented suggestion that Mr. Mahdawi should have pursued his constitutional challenges to detention through an administrative *Joseph* hearing. Dkt.254 ("Gov't Br.") at 25[1]; *see Matter of Joseph*, 22 I. & N. Dec. 799 (B.I.A. 1999). But a *Joseph* hearing is a limited process meant for noncitizens who dispute their statutory classification for detention purposes, such as when a noncitizen claims that his criminal convictions do not fall within the category for mandatory detention under 8 U.S.C. § 1226(c). A *Joseph* hearing is not and never has been a forum to challenge the constitutionality of detention. In fact, until just a few months ago, the government's position had been that immigration judges cannot hear constitutional challenges at all. And in reviewing Mr. Mahdawi's removal order,

[1] "Dkt." numbers reference the appellate proceedings in this case.

the Board of Immigration Appeals ("BIA") held that it cannot review the Secretary of State's determination under the "foreign policy ground" ("FPG"), 8 U.S.C. § 1227(a)(4)(C)(ii), and also that it lacked the power to decide Mr. Mahdawi's constitutional arguments. Pursuing the panel's conjectural *Joseph* course was beyond futile for Mr. Mahdawi in this case, and it cannot save the government's reading of section 1252 from the grave constitutional concerns that would be raised under the Suspension Clause and the First Amendment were it to foreclose challenges to unlawful retaliatory executive detention like Mr. Mahdawi's.

This Court should affirm the district court's bail order and preserve the "remedial heart of the Great Writ" that has given essential protection "throughout our constitutional history." *Öztürk v. Hyde* (*Öztürk II*) & *Mahdawi v. Trump* (*Mahdawi II*), 155 F.4th 187, 210 (2d Cir. 2025) (Nathan, J., concurring in the denial of rehearing en banc) (citation omitted).

## STATEMENT OF THE CASE

### <u>Petitioner's Speech & Government Retaliation</u>

Like two generations before him, Mr. Mahdawi was born and raised in a refugee camp in the West Bank. JA552. He entered the United States legally in July 2014 and became a Lawful Permanent Resident ("LPR") in 2015. JA552. He is a resident of Vermont. JA552. He practices Buddhism. JA255; JA553. From

2021 until 2025, Mr. Mahdawi was an undergraduate student at Columbia. JA553. Since graduating, he has been enrolled in a master's degree program at Columbia's School of International and Public Affairs. JA553.

At Columbia, Mr. Mahdawi dedicated himself "to understanding how to achieve a lasting peace for Palestinians and Israelis, particularly through the study of conflict resolution." JA553 (quoting Mr. Mahdawi's declaration at JA255). After Israel began its military campaign in Gaza in 2023, Mr. Mahdawi was "outspoken in opposition to the war." JA553 (quoting JA255). Over 125 sworn declarations and letters of support filed with the district court attest "to [Mr. Mahdawi's] mild and peaceful nature, his deep intelligence, and his commitment to principles of non-violence and political activism." JA557. One letter, signed by more than 200 Israelis in the United States (many of whom attended Columbia and know him personally), called Mr. Mahdawi "a partner for peace," and explained that his "presence and leadership on campus gave us hope that Israelis and Palestinians could work together not just to understand each other, but to transform our societies and create a peaceful solution." JA375-76; *see* Dkt.276 (Br. for Israeli Citizens as Amici Curiae). In another, a Jewish master teacher of Buddhism who has participated in meditation sessions with Mr. Mahdawi wrote about his "strong conviction that Mohsen is a dedicated and gifted community leader devoted to Buddhist values of mutual

respect and understanding, social harmony, and peaceful social progress." JA73. And in another, one of Mr. Mahdawi's peers wrote that he was "one of the most measured and thoughtful people that [she had] had the pleasure of knowing." JA114. There are nearly 200 pages of letters and declarations like this in the record, from people from all corners of Mr. Mahdawi's life. JA60-249; JA373-492.

On March 27, 2025, Mr. Mahdawi received notification from the United States Citizenship and Immigration Services ("USCIS") that his naturalization interview, the last step of the naturalization process before the formal ceremony at which he would become a U.S. citizen, was scheduled for April 14. JA555-56. This interview would only have been scheduled after the completion of all required background checks following the submission of his naturalization application in February 2024. 8 C.F.R. § 335.2(b). Mr. Mahdawi attended the interview, answered all questions asked and passed the citizenship test. JA556. He then affirmed that he was willing to take the Oath of Allegiance to the United States. JA556.

At that point, his interviewer left the room, and three masked agents wearing Homeland Security Investigations jackets and a supervisor entered, surrounding Mr. Mahdawi. JA556 (citing Mr. Mahdawi's declaration at JA257); *see* Tr. of July 15, 2015 Vol. 1, 16:15-18:20, *Am. Ass'n of Univ. Professors v. Rubio*,

No. 25-cv-10685 (D. Mass.), https://perma.cc/U4A4-JBAQ. The agents shackled him and whisked him away to another USCIS office, about ten to fifteen minutes away. JA556.

At the office, "agents shoved a Notice to Appear ('NTA') document into his jacket," which ordered him "to appear before an immigration judge at the South Louisiana Correctional Center on May 1." JA556-57; *see* JA263 (NTA). The NTA stated that Mr. Mahdawi was removable based on the Secretary of State's determination that his "presence and activities in the United States would have serious adverse foreign policy consequences and would compromise a compelling U.S. foreign policy interest." JA556-57 (quoting NTA at JA263). Unbeknownst to Mr. Mahdawi, on March 15, 2025, the Secretary of State secretly issued a memorandum, pursuant to 8 U.S.C. § 1227(a)(4)(C)(ii), declaring Mr. Mahdawi deportable for his "lawful" speech and associations—as he had done for several other students advocating Palestinian rights or criticizing Israel. JA340-41.

Agents from the Department of Homeland Security ("DHS") drove Mr. Mahdawi to the airport in Burlington, Vermont, transferring him to the custody of two other agents who intended to escort him on flights to Louisiana—just as they had done to another Columbia student, Mahmoud Khalil, a Tufts student, Rümeysa Öztürk, and a Georgetown scholar, Dr. Badar Khan Suri the month

before. JA557. *See Öztürk v. Hyde* ("*Öztürk I*"), 136 F.4th 382, 387 (2d Cir. 2025); *Khalil v. Joyce*, 777 F. Supp. 3d 369, 373 (D.N.J. 2025); *Suri v. Trump* ("*Suri II*"), 184 F.4th 260 (4th Cir. 2026).

But they missed the flight from Burlington. JA557. The agents, "visibly upset," took him to the Immigration and Customs Enforcement ("ICE") office in St. Albans, Vermont. JA557 (quoting Mr. Mahdawi's declaration at JA257). He was able to briefly see his attorney there but was then re-shackled and sent to the Northwest State Correctional Facility in Swanton, Vermont. JA557.

**Prior Proceedings**

Within thirty minutes of Mr. Mahdawi's arrival at the second USCIS office, Mr. Mahdawi's lawyers filed a habeas petition in the District of Vermont challenging his detention and seeking his release. JA1-19. The petition maintained, inter alia, that Mr. Mahdawi had been detained in retaliation for protected speech in violation of the First Amendment, and without any evidence that he was a flight risk or danger to the community, in violation of the Fifth Amendment. JA14-16. Later that day, the district court granted an emergency motion for a temporary restraining order enjoining Mr. Mahdawi's transfer from the District of Vermont or removal from the United States, JA21; JA326-27 (extending TRO). The next week, Mr. Mahdawi filed a motion for

release on bail pursuant to *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001). JA22.

On April 30, the district court held a hearing on the bail motion and ordered Mr. Mahdawi released pending the litigation of his habeas petition. JA509-50; JA544-48.[2]

Later that day, the district court issued a written order memorializing and further explaining the order of release. It explained at length why Respondents' arguments that the district court lacked habeas jurisdiction were wrong. JA558-66. And it addressed the *Mapp* factors for bail pending resolution of a habeas petition, explaining in further depth that Mr. Mahdawi had raised substantial First and Fifth Amendment claims, JA570-72, and that "extraordinary circumstances support[ed] Mr. Mahawi's release for several reasons." JA574-75.

Respondents appealed, JA581, and filed a motion to stay the bail order and the extended TRO, Dkt.20. After briefing and argument, this Court denied the motion for a stay. *See Mahdawi I*, 136 F.4th 443. In its opinion, the motions

[2] Since his release from detention, Mr. Mahdawi obtained his undergraduate degree from and then began his graduate studies at Columbia, and continued his efforts to support peace initiatives and human rights, including through fellowships he was awarded by peace-driven non-profit organizations. *See Beerman Foundation Fellows for Peace and Justice*, Leonard I. Beerman Foundation for Peace and Justice: Fellows, https://perma.cc/Z6HX-XK4Z; *Mohsen Mahdawi, Wink Fellow 2026-27*, Fellowship of Reconciliation USA, https://perma.cc/BXU6-4F9L.

panel rejected Respondents' argument that they were likely to succeed on the merits of their appeal. Noting that "the government makes no challenge to the district court's substantive determination that Mahdawi should be released on bail pending the disposition of his habeas petition," *id.* at 449, the Court rejected Respondents' arguments that various provisions of the INA—8 U.S.C. § 1252(g), 8 U.S.C. § 1252(a)(5) and (b)(9), 8 U.S.C. § 1252(a)(2)(B)(ii), 8 U.S.C. § 1231(g), and 8 U.S.C. § 1226(a)—stripped the district court of habeas jurisdiction and the authority to release Mr. Mahdawi on bail or issue the extended TRO. *See id.* at 449-54. It also concluded that Respondents had failed to demonstrate "any irreparable injury from either his release on bail or continued presence in the District of Vermont pending his removal proceedings." *Id.* at 455. It determined that "the balance of the equities weighs heavily against a stay," noting both Mr. "Mahdawi's substantial First Amendment claims" and the importance of the Great Writ to test the legality of executive detention. *Id.* Finally, the court denied Respondents' request for mandamus relief. *Id.* at 455-56. The government sought en banc review, which was denied. Dkt.193.

Expedited briefing and argument on this appeal before the merits panel followed, and as the panel deliberated, Mr. Mahdawi's immigration proceedings continued. On February 11, 2026, following a hearing, the immigration court held (as memorialized in a February 13 order) that DHS had not met its burden

of proving removability, and as a result, the immigration court terminated removal proceedings without prejudice. *See* Dkt.226. The government appealed to the BIA, *see* Dkt.227, which reinstated removal proceedings on April 29, holding that the government had established removability on the sole basis of the Secretary of State's determination under the "foreign policy ground" of the INA, and remanded for consideration of any relief from removal, including asylum. *See* Dkt.230 at 4.[3] Mr. Mahdawi notified the immigration court that he is not seeking relief from removal (and instead is seeking judicial review of the BIA's decision that he is removable), and on June 3, 2026, the immigration court issued an order of removal. *See* Dkt.232. Mr. Mahdawi timely appealed that removal order to the BIA on July 3. He has also timely filed two PFRs in the First Circuit—one from the BIA's remand order, and another from the IJ's entry of a removal order, arguing that they qualify as final orders because, in light of the BIA's prior ruling establishing removability, there are no remaining substantive issues to adjudicate before the BIA. *Id.* at 4; *see Mahdawi v. Blanche*, Nos. 26-1648, 26-1780 (1st Cir. May 29, 2026 & July 6, 2026). Meanwhile, the BIA

[3] The BIA remanded proceedings to a different immigration judge than the one who had initially terminated proceedings against Mr. Mahdawi, as the government fired that judge shortly after the termination decision. *See id.* at 2.

continues to evaluate his appeal of the IJ's June 2026 removal order, with briefing complete as of October 19.

On July 21, a panel of this Court reversed the district court's bail order, holding that 8 U.S.C. § 1252(b)(9) barred Mr. Mahdawi's constitutional challenges to detention. *Mahdawi v. Trump* ("*Mahdawi III*"), 183 F.4th 103, 108-09 (2d. Cir. 2026) (largely following the Third Circuit's earlier decision in *Khalil v. Trump*, 164 F.4th 269 (3d Cir. 2026)). *But see Suri II*, 184 F.4th 260 (disagreeing with both courts one day later).[4] On September 3, this Court, *sua sponte*, granted en banc review. Dkt.244.

## SUMMARY OF ARGUMENT

1. The district court had habeas jurisdiction over Mr. Mahdawi's constitutional claims, which challenge his detention as unconstitutional under the First and Fifth Amendments and seek his release. Those are the only claims that were considered by the district court in granting Mr. Mahdawi's bail. Judicial review is presumed over those types of claims, and that presumption may only be displaced by a clear statement from Congress to the contrary. The INA lacks any such clear statement.

[4] The habeas petitioner in *Khalil* and the government in *Suri* have both filed petitions for certiorari in the Supreme Court. *See* Pet., *Khalil v. Trump*, No. 26-530 (U.S. filed Oct. 19, 2026); Pet., *Trump v. Suri*, No. 26-380 (U.S. filed Sept. 21, 2026).

2. The government cites two INA subsections that it says stripped the district court of jurisdiction, but neither hold up.

First, 8 U.S.C. § 1252(g) does not bar jurisdiction over detention claims because it covers only three specific aspects of removal over which the government enjoys prosecutorial discretion: the commencement of removal proceedings, the adjudication of cases, and the execution of removal orders. The Supreme Court has been clear on the extremely "narrow" reach of (g) for more than twenty-five years. *Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 87-92 (1999). Mr. Mahdawi's removal proceedings were not "commenced" through detention. Detention and removal require separate decisions by the government, are authorized by distinct statutory provisions, and are governed by different substantive legal standards. Mr. Mahdawi's detention claims do not affect his removal at all.

Second, 8 U.S.C. § 1252(b)(9)'s channeling of claims that "aris[e] from . . . action[s] taken . . . to remove" a noncitizen "does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (citation modified). Mr. Mahdawi asks for none of those things here, and his detention claims are collateral to his removal because a habeas court evaluating them is

not addressing the same "questions of law or fact" as a PFR court addressing the legality of removal. 8 U.S.C. § 1252(b)(9). To read (b)(9) to channel claims challenging a noncitizen's detention to administrative immigration proceedings and later a PFR in a court of appeals would relegate a noncitizen to months or years of unconstitutional detention before he could even seek judicial review, long after the "allegedly [unlawful] detention would have already taken place"—a result that would be "staggering" and "absurd." *Jennings*, 583 U.S. at 293 (plurality op.).

The government argues that (b)(9) channels Mr. Mahdawi's detention claims because they overlap with claims he might bring against his removal. That is wrong. Mr. Mahdawi brings an independent Fifth Amendment challenge to his detention based on a lack of flight risk and danger, and those considerations are totally irrelevant to whether he may be lawfully removed. And his First Amendment challenge to retaliatory and punitive detention is also distinct from any future First Amendment claim against his removability; the mere fact that both claims arise under the First Amendment does not change the character or objective of his detention claims. Subsection (b)(9) does not bar those claims, and it certainly does not meet the clear statement required to preclude habeas jurisdiction over them.

3. If 1252(g) and (b)(9) do mean what the government says, they would violate the Suspension Clause.

First, a PFR, which focuses exclusively on removal, is not an adequate or effective substitute for habeas review of detention claims. The government's precedent addresses only a Suspension Clause question related to removal, not detention. *Luna v. Holder*, 637 F.3d 85, 93 (2d Cir. 2011). A PFR court cannot remedy past unlawful detention, and forcing a detainee to wait for a PFR would only delay and frustrate, rather than facilitate, detention review while subjecting the writ of habeas corpus to executive manipulation.

Second, a *Joseph* hearing is not an adequate substitute for review of Mr. Mahdawi's detention claims. It is meant as a threshold classification hearing for no-bond detention categorization, not a forum to consider constitutional challenges. It has never been used in the context of an FPG charge, it cannot direct his release, and it cannot meaningfully consider his constitutional claims. Further, a *Joseph* hearing would be futile, as the BIA has already held that Mr. Mahdawi's arguments against the government's use of the FPG cannot be considered by the BIA or the immigration court. For that and other reasons, he had no need to exhaust the *Joseph* option before filing his habeas petition.

4. Finally, the district court did not abuse its discretion in granting Mr. Mahdawi's release on bail. The court enjoys jurisdiction under *Mapp* to grant

bail to habeas petitioners. 241 F.3d at 226-29. Nothing in the INA, including 8 U.S.C. § 1226(e), has stripped that authority. And Mr. Mahdawi's release was soundly justified by the district court under the *Mapp* factors.

## STANDARD OF REVIEW

"The standard of review for determinations regarding subject matter jurisdiction is clear error for factual findings, and de novo for the legal conclusion as to whether subject matter jurisdiction exists." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 701 (2d Cir. 2000). While this Court reviews "*de novo* the district court's conclusion that the federal courts have inherent authority to release habeas petitioners on bail," *Mapp*, 241 F.3d at 224, it applies "deferential review to a district court's bail determination and will not reverse except for clear error." *United States v. Mattis*, 963 F.3d 285, 291 (2d Cir. 2020) (citation modified). "The clear error standard applies not only to the factual predicates underlying the district court's decision, but 'also to its overall

assessment, based on those predicate facts, as to the risk of flight or danger presented by defendant's release.'" *Id.*

## ARGUMENT

### I. The district court had jurisdiction under habeas to review Mr. Mahdawi's claims challenging retaliatory and punitive detention and to order his release.

The district court exercised jurisdiction to review Mr. Mahdawi's allegedly unlawful detention under 28 U.S.C. § 2241, which has since 1789 authorized district courts to issue writs of habeas corpus against executive detention. Respondents argue that 8 U.S.C. § 1252(g) and (b)(9) strip the district court of that jurisdiction to review Mr. Mahdawi's detention claims and order his release pending review of his habeas petition. A motions panel of this Court has already rejected these arguments. *See Mahdawi I*, 136 F.4th 443; *Öztürk I*, 136 F.4th 382. So has the Fourth Circuit. *Suri II*, 184 F.4th 260. The full court should also reject them.

#### A. Habeas Corpus review of executive detention is presumed, and can be overridden only by a clear statement.

The Supreme Court has repeatedly upheld the basic principle that "[i]n our society, liberty is the norm." *See United States v. Salerno*, 481 U.S. 739, 755 (1987). Whether in the context of pre-trial criminal detention, *see id.*, or civil detention, *see Bell v. Wolfish*, 441 U.S. 520, 539 n.20 (1979), the Constitution demands that detention before conviction at criminal trial must be justified and

cannot be punitive. Moreover, Congress must speak with clarity if it intends to circumscribe the ability of an individual to challenge their detention as unlawful. *See Hamdan v. Rumsfeld*, 548 U.S. 557, 575 (2006). The same principles apply to immigration detention. Detention during or after removal proceedings, even when authorized by statute, must not be punitive. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

Against this backdrop, the Supreme Court has explained that multiple presumptions apply when courts are interpreting statutes to determine whether Congress intended to strip habeas jurisdiction over detention claims. Those presumptions include (i) "the strong presumption in favor of judicial review of administrative action," (ii) "the longstanding rule requiring a clear statement of congressional intent to repeal habeas jurisdiction," (iii) the rule that a "clear indication" of congressional intent is expected when a proposed interpretation would push "the outer limits of Congress' power," and (iv) the canon of constitutional avoidance. *INS v. St. Cyr*, 533 U.S. 289, 289, 300 (2001). Moreover, the protections of habeas are at their strongest—and therefore are the most difficult to displace through anything short of explicit and unambiguous congressional commands—when it comes to executive detention. *See Boumediene v. Bush*, 553 U.S. 723, 783 (2008); *St. Cyr*, 533 U.S. at 301, 314. Further, in interpreting such statutes, the Court has consistently recognized the

grave constitutional questions that would be raised were Congress to shut off a noncitizen detainee's path through habeas to challenge unlawful executive detention. *See, e.g.*, *Zadvydas*, 533 U.S. at 689; *St. Cyr*, 533 U.S. at 300; *see Suri II*, 184 F.4th at 284.

"As explained below, the provisions on which the government relies do not state, let alone clearly state, a jurisdictional bar on review of Mahdawi's detention claims." *Mahdawi I*, 136 F.4th at 449. "Repeatedly, including in the INA context, the Supreme Court has declared that [courts] should take account of the presumption favoring interpretations of statutes to allow judicial review absent clear statement." *Id.* (citation modified) (quoting *Kucana v. Holder*, 558 U.S. 233, 237 (2010), and citing *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 483-84 (1991)). "That command from the Supreme Court . . . helps avoid Suspension Clause issues that may stem from overly broad readings of the INA's jurisdiction-stripping provisions." *Öztürk II*, 155 F.4th at 207 (Nathan, J., concurring in denial of rehearing en banc) (citing *Luna*, 637 F.3d at 93).

With those presumptions in mind, the Supreme Court has repeatedly rejected claims that the INA prohibits non-citizens from challenging their immigration detention as unlawful or unconstitutional during, or even after, their removal proceedings. *See Preap*, 586 U.S. at 401-04; *Jennings*, 583 U.S. at 292-96 (plurality op.); *Demore v. Kim*, 538 U.S. 510, 516-17 (2003); *Zadvydas*,

533 U.S. at 688. This Court and other circuits have consistently reviewed such claims in habeas. *See, e.g.*, *Black v. Decker*, 103 F.4th 133, 138-139 (2d Cir. 2024); *Kong v. United States*, 62 F.4th 608, 609 (1st Cir. 2023); *Miranda v. Garland*, 34 F.4th 338, 352-53 (4th Cir. 2022); *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210 (3d Cir. 2020); *Nadarajah v. Gonzales*, 443 F.3d 1069, 1079 (9th Cir. 2006).

Notably, neither the panel opinion in this case nor the *Khalil* majority upon which it relied made "any mention of the Supreme Court's strong default presumption[s]," which "substantially undermines" their "reasoning overall." *Suri II*, 184 F.4th at 295 (citing *Khalil v. Trump*, 176 F.4th 295, 297 (3d Cir. 2026) (Krause, J., dissenting from denial of rehearing en banc)).

**B. This case is about detention, not removal.**

Throughout its brief, the government insists that Mr. Mahdawi is challenging his removal, and only "incident[ally]" challenging his detention. Gov't Br. 40.[5] But Mr. Mahdawi has, and is litigating here, an independent interest in his liberty from unlawful detention *even* if he is eventually deemed removable.

[5] *See, e.g.*, Gov't Br. 24, 39, 40.

The gravamen of Mr. Mahdawi's petition is overwhelmingly and indisputably that his detention is unconstitutional under the First and Fifth Amendments, and on those grounds he seeks release. And that is exactly how the district court understood the petition—indeed, Mr. Mahdawi's detention challenges were the *only* claims that the court's bail order even purported to address.[6] Even if Mr. Mahdawi's habeas petition might be construed to challenge his removal, that has no effect on his independent detention claims. In any event, the district court disregarded any such challenge, and Mr. Mahdawi has not pursued it since. *See Mahdawi I*, 136 F.4th at 450 n.3 ("So long as part of [Petitioner's] challenge to his detention falls outside of [the INA's jurisdictional stripping provisions], his petition survives, as does the district court's authority to order his release."). After he filed his habeas petition challenging his unlawful detention and seeking immediate release, the district

[6] *See, e.g.*, JA563 (describing this case as one "that does not seek to challenge the removal but addresses instead Mr. Mahdawi's arrest and detention"); JA559 ("The Government argues that the 'jurisdiction stripping' provisions shielded *the decision to detain* Mr. Mahdawi from habeas review." (emphasis added)); JA562 (distinguishing another case because "[i]n contrast to this case," the habeas petitioner there "challenged his removal proceedings, not his prior detention").

court set him free in April 2025. That decision had no effect on Mr. Mahdawi's removal proceedings, which have gone forth with nary a hiccup.[7]

### C. 8 U.S.C. § 1252(g) does not bar habeas review of Mr. Mahdawi's detention claims.

The government contends that section 1252(g) strips jurisdiction here because Mahdawi's detention "arises from the Executive's decision to commence removal proceedings." Gov't Br. 33. But this expansive interpretation "dramatically overstates the reach of § 1252(g)." *Mahdawi I*, 136 F.4th at 450. Nothing in the text of (g) suggests Congress intended to displace the presumptions that favor habeas review of detention claims.[8]

As the Supreme Court has explained, section 1252(g) is a "narrow[ly]" tailored provision that bars non-PFR challenges "only to three discrete actions"

---

[7] The lone hiccup in Mr. Mahdawi's immigration proceedings occurred when the Attorney General fired the IJ that had terminated his proceedings. *See supra* note 4.

[8] Notably, while the government insists that its interpretation of section 1252(g) does not leave Mr. Mahdawi "without recourse"—because he can take advantage of the "streamlined process" (including administrative proceedings and a PFR) that it says the INA put into place, Gov't Br. 42—that argument is part of a shell game. While it does not admit as much here, the government's position is that section 1252(g) bars litigation over Mr. Mahdawi's detention entirely, even on a PFR. *See* Br. for Resp't, *Khalil v. Blanche*, No. 26-60344 (5th Cir. Oct. 14, 2026) (arguing, in similar case, that section 1252(g) "unequivocally close[s] the door to aliens raising a First Amendment challenge to the commencement of immigration proceedings," which the government (wrongly) argues includes detention).

that are subject to the Attorney General's prosecutorial discretion to bring removal cases: the decisions "to 'commence proceedings, adjudicate cases, or execute removal orders.'" *AADC*, 525 U.S. at 482 (quoting 8 U.S.C. § 1252(g)). Contrary to *AADC*, the government reads (g)'s use of the phrase "arising from" to include much more. *Compare* Gov't Br. 31-33, *with AADC*, 525 U.S. at 485 n.9 (emphasizing that (g) is "explicitly limit[ed] to specific steps in the deportation process"). The Court explained in *AADC* that while there are other "decisions or actions that may be part of the deportation process," they do not fall within 1252(g)'s limited scope because they do not interfere with the Attorney General's *prosecutorial* discretion to seek a noncitizen's removal—the "particular evil" that section 1252(g) was directed against. *Id*. at 482, 485 n.9; *accord Mahdawi I*, 136 F.4th at 450. Since *AADC*, the Supreme Court has reaffirmed 1252(g)'s "narrow" ambit. *Regents*, 591 U.S. at 19 (2020); *Jennings*, 583 U.S. at 294 (plurality op.) (Section 1252(g) "refer[s] to just those three specific actions themselves" (citing *AADC*, 525 U.S. at 482-83)); *accord Suri II*, 184 F.4th at 285.

Section 1252(g) does not bar Mr. Mahdawi's retaliatory and punitive detention claims because his immigration proceedings were not "commenced" through detention. "[T]he decision to detain a noncitizen and the decision to remove one are legally separate," *Suri II*, 184 F.4th at 286. Indeed, detention and

removability are "each governed by different provisions and justified on different grounds." *Id.*; *compare* 8 U.S.C. § 1226 (detention statute), *with* 8 U.S.C. § 1227 (removability statute); *see* 8 C.F.R. § 1003.14(a) (providing removal proceedings commence upon filing a charging document with the immigration court without reference to detention).[9]

The distinction between removal and detention is confirmed by the legislative history of section 1252(g). *See* H.R. Rep. No. 109-72, at 175 (2005) (Conf. Rep.) (Congress sought to "eliminate habeas review only over challenges to removal orders" and specified that the Act "would not preclude habeas review over challenges to detention that are independent of challenges to removal orders."); *see Öztürk II*, 155 F.4th at 208 (Nathan, J., concurring in the denial of rehearing en banc) (citing *Kong*, 62 F.4th at 615); *see also St. Cyr*, 533 U.S. at 298. And in substance, the decision to detain pending removal must be justified on the separate basis, distinct from removability, that the person poses

[9] Indeed, the one jurisdiction-stripping provision in the INA that does explicitly reference detention claims is situated in the detention statute. *See Demore*, 538 U.S. at 516-17 (holding that even *that* statute, 8 U.S.C. § 1226(e), does not strip habeas review of constitutional and statutory detention claims).

a flight risk or danger. *See Zadvydas*, 533 U.S. at 690; *Miranda*, 34 F.4th at 346-47.[10]

Finally, "[t]his distinction . . . makes practical sense," because "[w]hile challenges to removal can be heard in a [PFR] after an order of removal has been entered by an immigration judge and affirmed by the [BIA], the same is not true of constitutional challenges to detention." *Mahdawi I*, 136 F.4th at 452. As a result, while "detention is but one of 'many . . . decisions or actions that may be *part of* the deportation process,' . . . it is outside the 'three discrete actions' § 1252(g) cordons off." *Öztürk II*, 155 F.4th at 208 (Nathan, J., concurring in denial of rehearing en banc) (emphasis added) (quoting *AADC*, 525 U.S. at 482).

This all plays out every day in practice. The government routinely initiates removal proceedings against individuals, based on a prima facie determination that they are removable, without detaining them. *See, e.g.*, Br. for Pet'rs, *United States v. Texas*, No. 22-58, 2022 WL 4278395, at *8-9 (U.S. Sep. 12, 2022) (noting that "perennial constraints on detention capacity" prevent executive from detaining everyone subject to removal). Indeed, most people in

---

[10] The government cites various cases that it suggests hold that detention and commencement of removal proceedings are one and the same for the purposes of section 1252(g), *see* Gov't Br. 34, but those cases are either distinguishable, *see Suri II*, 184 F.4th at 287 n.17, or simply wrong.

removal proceedings are not detained at all.[11] The government sometimes detains people prior to deciding to place them in removal proceedings in the first place. *See, e.g.*, 8 C.F.R. § 287.3(d) (contemplating an initial period of detention before DHS determines whether to issue an NTA). Thus, the government's decision to detain Mr. Mahdawi was not in any sense "one [and] the same," Gov't Br. 18, as its decision to "commence[ removal] proceedings," 8 U.S.C. § 1252(g), against him.[12]

Not even the panel, which determined that Mr. Mahdawi's claim was barred by another provision in the INA, bought the government's expansive reading of (g). *See Mahdawi III*, 183 F.4th at 113 n.9 (declining to address (g));

---

[11] *See, e.g.*, Transactional Records Access Clearinghouse, *Detention Drops As New Immigration Court Cases Surge* (June 26, 2026), https://perma.cc/ZNR4-M8RL.

[12] Whether section 1252(g) bars certain challenges to initial detention in cases involving *mandatory* detention under 8 U.S.C. § 1226(c) is not presented here, because Mr. Mahdawi was not mandatorily detained. The government misrepresents that the INA "provides that aliens in removal proceedings and subject to the foreign-policy charge under which Mahdawi has been deemed removable *require* detention pending removal proceedings." Gov't Br. 2 (emphasis added). But Mr. Mahdawi's detention does not fall within the mandatory detention categories of section 1226(c); it is instead discretionary under section 1226(a). *See Mahdawi I*, 136 F.4th at 451 (noting government concession that Mr. Mahdawi's detention was not mandatory). And though Mr. Mahdawi was ineligible for a bond hearing once the government chose to detain him, that was determined not by Congress, through the INA, but by DHS, through a regulation. *See* 8 C.F.R. § 1003.19(h)(2)(i)(C).

*see also Khalil*, 164 F.4th at 273 (same). *But see Mahdawi III*, 183 F.4th at 125 (Menashi, J., concurring) (advancing view that (g) bars detention claims). And other courts have squarely rejected it, concluding that section 1252(g) "does not preclude jurisdiction over the challenges to the legality of [a noncitizen's] detention," *Kong*, 62 F.4th at 609, because such claims "may be resolved without affecting pending proceedings," *Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999); *see also Öztürk I*, 136 F.4th at 398; *Suri II*, 184 F.4th 260; *Madu v. U.S. Atty. Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006); *Bello-Reyes v. Gaynor*, 985 F.3d 696, 698, 700 n.4 (9th Cir. 2021); *Kellici v. Gonzales*, 472 F.3d 416, 420 (6th Cir. 2006).

The government makes several atextual attempts to defend its construction. It contends that (g) bars Mr. Mahdawi's detention claim because, "like the commencement of proceedings, the decision to place someone in detention requires the Government's discretion," Govt Br. 36. But subsection (g) did not all insulate all discretionary decisions, but only three specific decisions, from review. *AADC*, 525 U.S. at 482, 485 n.9; *see Mahdawi I*, 136 F.4th at 450. Congress did not specify "placing someone in detention" in (g) alongside "commenc[ing removal] proceedings." The government also argues that in *Jennings*, the Supreme Court held that section 1252(g)—which was not at issue in *Jennings*—"presents a jurisdictional bar" to "challenging the decision to detain . . . in the first place." Gov't Br. 41 (citation modified). Nonsense. That was

a plurality opinion, which the government does not note—and even worse, the passage the government highlights was *not* "comparing § 1252(g) with § 1252(b)(9)," Gov't Br. 41—it was briefly analyzing (b)(9) itself, while noting that the provision had not been briefed by the parties and that the Court was not "attempt[ing] to provide a comprehensive interpretation" of it. 583 U.S. at 294 (plurality op.).

Last, as with (b)(9), *see infra* I.D, the government argues that (g) bars Mr. Mahdawi's detention claim because the retaliation he challenges was "also . . . the reason for the Government's decision to commence removal proceedings." Gov't Br. 33. But regardless of whether there was a shared "impetus" for its unconstitutional decisions regarding Mr. Mahdawi, *id.* at 40, his detention was an independent choice, causes independent harm, and may have been motivated by purposes different from those that motivated removal—especially because detention effectuated a more immediate censorship of Mr. Mahdawi's speech than the threat of removal proceedings. Detention is a literal restraint on his ability to engage in protected speech, association, or assembly on time-sensitive issues of public debate. As this Court has observed, "overlap, even substantial substantive overlap, does not make one claim arise out of the other, or necessitate that one claim controls the outcome of the other." *Öztürk I*, 136 F.4th at 400. And as the Fourth Circuit explained, the government's argument

would give section 1252(g) "a new broad and unnatural reading," *Suri II*, 184 F.4th at 289, allowing a nebulous allegation of hypothetical "overlap" to rewrite an explicitly limited statute. *See id.* at 288-89 & n.18; *see Öztürk II*, 155 F.4th at 208 (Nathan, J., concurring in the denial of rehearing en banc) ("Under Judge Menashi's and the government's theory, Congress used three specific words—'commence', 'adjudicate,' and 'execute'—to accomplish something extraordinarily general: eviscerate habeas corpus for noncitizens whenever the government detains them and also seeks to remove them."). Plus, Mr. Mahdawi is *not* "challenging the fact that he is detained, *on the ground that* he cannot be removed." Gov't Br. 34 (emphasis added). In any event, and entirely unacknowledged by the government, Mr. Mahdawi's independent Fifth Amendment challenge has no overlap with any hypothetical challenge to the commencement of removal proceedings as it is based on a lack of flight risk or danger, considerations that are totally external to removal and would never be reviewed on a PFR. JA15-16; JA573-74.[13]

[13] The government devotes much space to arguing that "[t]he mere fact that Mahdawi is presenting constitutional questions in connection with his detention" does not remove his detention claims from section 1252(g). Gov't Br. 36-39. Mr. Mahdawi does not make that argument.

### D. 8 U.S.C. § 1252(b)(9) does not bar habeas review of Mr. Mahdawi's detention claims.

The government further argues that 8 U.S.C. § 1252(b)(9) bars review of Mr. Mahdawi's unlawful detention claims, which instead must be channeled to the immigration courts through the PFR process. Gov't Br. 14-31. This argument, too, fails, for multiple reasons.

First, as mentioned above and as with (g), the government simply ignores the starting point for interpreting (b)(9): the presumptions that favor habeas review of detention claims. *See supra* I.A. Whatever else one might say about (b)(9), it is anything but a clear statement. *See Suri II*, 184 F.4th at 284.

Second, the text does not support the government's reading. Subsection (b)(9) provides that "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove [a noncitizen] . . . shall be available only in judicial review of a final order." 8 U.S.C. § 1252(b)(9). The text makes clear that (b)(9) only applies to claims challenging a final order of

---

Notably, though, in *AADC*, the Supreme Court left open the possibility that a constitutional claim otherwise foreclosed by section 1252(g) *would* escape that bar where "the alleged basis of discrimination is . . . outrageous." 525 U.S. at 491. And this Court has applied *AADC*'s outrageousness exception to a case involving retaliation against a noncitizen's speech. *See Ragbir v. Homan*, 923 F.3d 53, 63 (2d Cir. 2019), *cert. granted, judgment vacated sub nom. Pham v. Ragbir*, 592 U.S. 901 (2020). Mr. Mahdawi does maintain his argument that the government's retaliation against him here qualifies as outrageous under both *AADC* and *Ragbir*. *See* Dkt. 134 at 30-31.

removal, and there was none when the district court issued its bail order here. *See Suri II*, 184 F.4th at 289-90; Dkt.278 at 3-8 (Br. of Immigration Lawyers et al.). But even if (b)(9) does apply, the Supreme Court has held that the "arising from" language "does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." *Regents*, 591 U.S. at 19 (citation modified); *see Preap*, 586 U.S. at 402; *see also Johnson v. Guzman Chavez*, 594 U.S. 523, 533 n.4 (2021) (citing *Jennings*, 583 U.S at 291 (plurality op.)). Mr. Mahdawi's detention claims challenge none of those things.[14]

Third, (b)(9) must be read narrowly to avoid rendering Mr. Mahdawi's detention claims "effectively unreviewable." *Jennings*, 583 U.S. at 293 (plurality op.) (holding that (b)(9) must allow for a "meaningful chance for judicial review").[15] Even the government's authority from this Circuit makes clear that

[14] Citing only a one-Justice concurring opinion in *Jennings*, the government insists that "detention *is* an 'action taken to remove an alien,'" Gov't Br. 18 (citation modified) (quoting *Jennings*, 583 U.S. at 318 (Thomas, J., concurring)). But as explained above, detention and removal are distinct, and the Supreme Court's reading of (b)(9) in *Regents* and other cases rejects that formulation. *See also Jennings*, 583 U.S. at 295 n.3 (rejecting Justice Thomas's reading of (b)(9) to include detention claims).

[15] *Jennings*'s "meaningful review" analysis is not a creature of immigration law but sits comfortably within general administrative law. *See Khalil v. Joyce*, 780 F. Supp. 3d 476, 509-16 (D.N.J. 2025) (discussing *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), and other precedent in connection with the "meaningful review" required under the INA); *see also Aguilar v. ICE*, 510 F.3d

in (b)(9), Congress only meant to "consolidate[e] . . . claims *that may be brought in removal proceedings* into one final petition for review of a final order in the court of appeals." *Calcano-Martinez v. INS*, 232 F.3d 328, 340 (2d Cir. 2000) (quoted at Gov't Br. 15). And challenges to detention cannot be heard on a PFR of a removal order. *See Mahdawi I*, 136 F.4th at 452. "The point" of (b)(9) "is to channel claims into a single petition for review, not to bar claims that do not fit within that process." *E.O.H.C. v. Sec'y U.S. DHS*, 950 F.3d 177, 186 (3d Cir. 2020); *see Öztürk I*, 136 F.4th at 399; *Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007); *see also St. Cyr*, 533 U.S. at 313-14; *see also* H.R. Rep. No. 109-72, at 175.

These claims are "now or never": Mr. Mahdawi's "core argument is that his free speech and due process rights are being violated, *now*." *Mahdawi I*, 136 F.4th at 452. By subjecting him to retaliatory detention, the government seeks to censor his speech and that of others who would speak out in support of Palestinian rights or to criticize Israel. His detention deters him and others from speaking, and it effectuates the unconstitutional objective of censoring "timel[y]" political speech when it could still influence public debate. *Elrod v. Burns*, 427 U.S. 347, 374 n.29 (1976); *see Shuttlesworth v. Birmingham*, 394 U.S. 147, 163 (1969) (Harlan, J., concurring) ("[T]iming is of the essence in politics.

1, 14 (1st Cir. 2007) (interpreting (b)(9) in light of *Thunder Basin*); *Suri II*, 184 F.4th at 297 (citing *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191-92 (2023)).

. . . [W]hen an event occurs, it is often necessary to have one's voice heard promptly, if it is to be considered at all."). If Mr. Mahdawi were forced to wait until the end of a lengthy PFR process to raise his claims, the very government action that he challenges "would have already taken place." *Jennings*, 583 U.S. at 293 (plurality op.). Reading (b)(9) to bar Mr. Mahdawi's detention claims in such circumstances would be an "extreme," "staggering," and "absurd" interpretation that the statute cannot bear. *Jennings*, 583 U.S. at 293 (plurality op.).[16]

Fourth, the government argues that even if (b)(9) does not ordinarily channel detention claims, it does channel detention claims that are "inextricably intertwined" with removal claims because such claims amount to "indirect challenges to removal orders." Gov't Br. 15; *see Mahdawi III*, 183 F.4th

[16] This interpretation of "arising from" is bolstered by the fact that Congress has used this as a term of art in other jurisdiction-stripping provisions that have themselves been interpreted narrowly. *See, e.g. AADC*, 525 U.S. at 485 n.9 (interpreting the same language narrowly as to section 1252(g)). Thus, even if this Court determined that the ordinary meaning of "arising from" encompasses detention claims, ordinary meaning does not overcome any specialized meaning Congress intended in using a term of art, particularly when adopting the ordinary meaning would raise serious constitutional problems. *Cf. United States v. Hansen*, 599 U.S. 762 (2023) (narrowly interpreting terms with a broad ordinary meaning in a federal criminal statute to avoid First Amendment overbreadth problems and explaining that a court should not "stack[] the deck in favor of ordinary meaning" compared to "specialized meaning" where "the context of these words—the water in which they swim—indicates that Congress used them as terms of art.").

at 120 (characterizing the argument as targeting detention claims that "overlap" with removal claims). That is wrong for multiple reasons.

As an initial matter, this argument has no bearing whatsoever on Mr. Mahdawi's Fifth Amendment detention claim, which is totally external to removal. The panel accepted the *Khalil* majority's conclusory characterization that a Fifth Amendment challenge to detention based on a lack of flight risk or danger is a "repackage[d]" challenge to removal. *Mahdawi III*, 183 F.4th at 118 n.14 (quoting *Khalil*, 164 F.4th at 277); *see* Gov't Br. 19. That is wrong: flight risk and danger have no bearing on any of Mr. Mahdawi's ultimate arguments against removal.[17] Moreover, the panel's glib conclusion is hard to square with

[17] The *Khalil* majority fundamentally misunderstood the petitioner's Fifth Amendment claim, rendering its conclusion as to "repackage[ing]" (and the panel's breezy adoption of it) inapplicable here. There, the court reviewed a preliminary injunction that resolved an entirely different claim: a Fifth Amendment vagueness claim that went to the as-applied constitutionality of the FPG. 164 F.4th at 267. And the injunction under review rendered *both* detention and removal unconstitutional in one fell swoop, going even further to issue unusual commands to the immigration judge in the petitioner's removal proceedings. *Id.* That is likely why the court mistakenly concluded that the petitioner's Fifth Amendment challenge "depend[ed] on the unconstitutionally vague [FPG]." 164 F.4th at 277; *see Mahdawi III*, 183 F.4th at 120.

To be clear, Mr. Mahdawi's petition (like the petition in *Khalil*) does challenge the FPG on vagueness grounds, JA16, but that claim is not relevant here. Subsection 1252(b)(9) does not channel his First Amendment retaliation detention claim based on the government's improper censorship of his speech

its acceptance that binding precedent permits claims, on Fifth Amendment grounds, that detention pending removal has become "unreasonably prolonged." *Mahdawi III*, 183 F.4th at 121 (citing *Velasco Lopez v. Decker*, 978 F.3d 842, 852 (2d Cir. 2020)). If (b)(9) does not bar a claim that says one's detention violates the Fifth Amendment after 15 months, it does not bar a claim that says one's detention violates the Fifth Amendment on day one in the absence of evidence of flight risk or danger. In both cases, the Fifth Amendment claim is distinct from any hypothetical removal claim. And the last eighteen months make clear that is true for Mr. Mahdawi, as the government has continued to seek his removal throughout this habeas case, without interruption by the opinion of the district court, sustained by the stay panel, finding a likely Fifth Amendment violation and ordering release on that ground. *See Mahdawi I*, 136 F.4th at 452 (noting government concession that Mr. Mahdawi's "unlawful detention claims may be resolved without affecting pending removal proceedings").[18]

---

through detention, or his Fifth Amendment detention claim based on lack of danger or flight risk. *See Mahdawi I*, 136 F.4th at 450 n.3.

[18] This Court should not confuse any views on the relative *merits* of a prolonged detention challenge versus a day-one detention challenge, with the separate question of federal court *jurisdiction* to consider such claims.

Even as to Mr. Mahdawi's First Amendment claims, the government's "overlap" theory does not work.

For one, it completely bucks the presumptions in play, which require that Congress speak *clearly* to eliminate habeas review of detention. *See supra* I.A. The overlap theory flips these presumptions on their head, maintaining that because a *removal* claim is channeled to a PFR, any *detention* claim that could be construed as related must be channeled, too. That is backwards statutory analysis.

Moreover, the "overlap" theory is entirely speculative. There are many possible reasons that a PFR court would not even address a First Amendment challenge to removal. Indeed, Mr. Mahdawi has multiple arguments against removal that have nothing to do with the Constitution or his detention, including the government's failure to meet its statutory burden, which the first IJ in his case accepted when she terminated proceedings. *See* Dkt.226. In the end, the government's theory is that if a detained noncitizen *could potentially* bring a claim in removal proceedings, they are barred from bringing any overlapping claim as a challenge to detention in habeas—even if that never happens, or even if the detainee chooses not to bring the supposedly overlapping removal claim at all. But nowhere in the text of (b)(9) can this Court find a congressional command to bar habeas review of a detention claim that a

noncitizen *actually does bring* based on the mere *availability* of a future removal claim later on.[19]

In any event, "even substantial substantive overlap[] does not make one claim arise out of the other, or necessitate that one claim controls the outcome of the other." *Öztürk I*, 136 F.4th at 400. Mr. Mahdawi's First Amendment detention claim and any future First Amendment removal claim ask for different relief. And what he is asking for matters. As this Court has explained, when considering the effect of jurisdiction-stripping statutes, courts must look to the "substance of the relief that a plaintiff is seeking." *Öztürk I*, 136 F.4th at 400 (citing *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011), and *Ruiz v. Mukasey*, 552 F.3d 269, 274 n.3 (2d Cir. 2009)). These claims are not "one in the same." Gov't Br. 18. And even if a PFR court's removal holding did squarely apply

---

[19] Similarly speculative is the panel's suggestion, which the government apparently does not endorse, that a victorious habeas petitioner could, "'[w]ith a final judgment in hand, . . . use issue preclusion or law of the case in the later PFR, leaving that court nothing to decide.'" *Mahdawi III*, 183 F.4th at 120 (quoting *Khalil*, 164 F.4th at 275). Final judgment is not swiftly obtained, 18A Charles Alan Wright et al., *Federal Practice & Procedure* § 4432 (3d ed. 2005), and preliminary rulings (like bail orders) are not entitled to preclusive effect, *see id.* & n.4. Either way, the potential application of preclusion itself does not favor any particular party, and the vague specter of potential preclusion is not sufficient to rewrite the statute Congress wrote. *See Suri v. Trump* ("*Suri I*"), No. 25-1560, 2025 WL 1806692, at *1 n.1 (4th Cir. July 1, 2025) ("[D]ue process is not suspended merely because two courts may be asked similar questions. Simply stated, human rights do not cower before the speculative perils of duplicative litigation.").

to the detention claim, that ruling would come far too late to remedy the period of unconstitutional detention. For that, Mr. Mahdawi needs habeas.[20]

Even if Mr. Mahdawi's supposedly overlapping detention challenges could somehow be heard on a PFR, he cannot get "meaningful review" of those claims because the IJ and BIA do not have jurisdiction to decide constitutional issues, nor can they develop a sufficient factual record for expeditious review by the court of appeals. *See Öztürk I*, 136 F.4th at 400–401; *Suri II*, 184 F.4th at 294, 297. The government points to a policy memorandum it issued in the middle of

---

[20] Likewise, Mr. Mahdawi's detention claim does not present an "indirect challenge" to removal. *See* Gov't 27-28. The district court correctly held that a challenge to an unlawful "arrest and detention is different" from the "indirect attacks on removal orders" that this Court prohibited in *Delgado*. JA564–65. *Delgado* explicitly noted that district courts have jurisdiction to consider "the constitutionality of the arrest and detention." 643 F.3d at 55 (citing *Kellici*, 472 F.3d at 420). Moreover, the relief sought by the petitioner in *Delgado*—forcing adjudication of her I-212 waiver—was "inextricably linked" to the reinstatement of her removal order and, if granted, would "render the [removal] order invalid." *Id.* (citation modified). By contrast, ordering Mr. Mahdawi's release from unlawful detention did not "invalid[ate]" his removal proceedings, which have continued. And the government's convoluted attempt to distinguish *Kellici* fares no better: the Sixth Circuit explicitly concluded that the district court was not stripped of jurisdiction where petitioners "challenged only the constitutionality of the arrest and detention, *not* the underlying administrative order of removal." 472 F.3d at 420; *contra* Gov't Br. 27 (citing *Gonzalez-Alarcon v. Macias*, 884 F.3d 1266, 1275 (10th Cir. 2018) (section 1252(a)(5) barred challenge to detention where it was "based on the alleged invalidity of his removal order"); *Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012) (section 1252(a)(5) barred review of denial of asylum, withholding of removal, and CAT relief)).

Mr. Mahdawi's case that it says changed the rules for IJs, Gov't Br. 23-24, but that supposed change, mid-litigation, is belied by Mahdawi's own immigration case, where the BIA determined the Secretary's FPG determination was conclusive, and by the BIA's ruling in another related matter that the FPG determination is essentially unchallengeable in the immigration courts. Dkt.230 (BIA opinion, citing *Matter of M-K-*, 29 I. & N. Dec. 556, 561-63 (B.I.A. 2026) (declining constitutional challenge to FPG))*; Matter of Ruiz-Massieu*, 22 I. & N. Dec. 833 (B.I.A. 1999) (same). And a *Joseph* hearing cannot provide meaningful review, either. *See infra* I.E.2.

Fifth and last, construing (b)(9) to bar habeas review of Mr. Mahdawi's First Amendment claims would ignore Supreme Court precedent emphasizing the availability and need for prompt judicial review of First Amendment claims, including where the claim involves executive detention imposed for retaliatory purposes. *See Khalil*, 164 F.4th at 287 & nn.8-10 (Freeman, J., dissenting in part); *see also NRA v. Vullo*, 602 U.S. 175, 194 (2024) ("[T]hreaten[ing] to wield [government] power . . . to punish [protected] advocacy . . . violates the First Amendment."). When here-and-now speech impacts are involved, "the Constitution requires immediate judicial intervention" to mitigate the broad chilling effect that retaliatory actions can have on the exercise of First Amendment rights. *AADC*, 525 U.S. at 492 (Ginsburg, J., concurring). That

principle is consistent with reams of cases. *Khalil*, 780 F. Supp. 3d at 533-37 ("Our law's response to a here-and-now impact on political speech has been the same across the board: no unnecessary delay." (discussing cases)).[21]

If the panel opinion stands, the government could pretextually detain any noncitizen during a fierce public debate on any issue and silence them and others when their speech would have most salience to public discourse. Such censorship cannot be remedied later. *See Shuttlesworth*, 394 U.S. at 163 (Harlan, J., concurring). And the government has shown its willingness to silence speech on other topics through pretextual use of immigration authority, subjecting untold numbers of noncitizens to unreviewable executive detention they could otherwise challenge on First Amendment grounds. *See, e.g.*, *Ahmed v. Rubio*, No. 26-2509 (2d Cir. filed Sep. 9, 2026) (challenge by CEO of the Center for Countering Digital Hate to potential retaliatory arrest and detention for research identifying increased hate speech on Twitter following Elon Musk

---

[21] *See, e.g.*, *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 55-56 (1989) (delayed review might "seriously erode federal policy" by "only further harm[ing] the operation of a free press" (citation omitted)); *Oesterich v. Selective Serv. Sys. Local Bd. No. 11*, 393 U.S. 233 (1968) (immediate review of withdrawal of draft exemption even though petitioner could get administrative review); *Nat'l Socialist Party of Am. v. Vill. of Skokie*, 432 U.S. 43, 44 (1977) (denying review would "deprive [petitioner] of rights protected by the First Amendment during the period of appellate review"); *cf. Axon Enter., Inc.*, 598 U.S. at 191 (requiring immediate judicial review of "here-and-now injury" of being subject to an "illegitimate proceeding").

takeover); *Chung v. Rubio*, No. 25-1660 (2d Cir. filed July 7, 2025) (lawful permanent resident threatened with detention under FPG); *Coalition for Indep. Tech. Rsch. v. Rubio*, No. 26-815, 2026 WL 2030770 (D.D.C. July 14, 2026) (granting stay of agency policy targeting foreign nationals working on content moderation, misinformation, and fact-checking).

### E. If section 1252(g) and (b)(9) did bar Mr. Mahdawi's detention claims, they would violate the Suspension Clause.

If the government were correct that section 1252 prevents Mr. Mahdawi from accessing a federal court to challenge his unconstitutional detention in habeas before the entire course of executive-controlled immigration proceedings is complete, that interpretation would be unconstitutional as applied under the Suspension Clause. At the very least, the government's interpretation of section 1252 raises serious questions under the Suspension Clause, and where a statutory interpretation is not unambiguous, courts must apply the canon of constitutional avoidance. *Clark v. Martinez*, 543 U.S. 371, 381 (2005).

Noncitizens with ties to the United States like Mr. Mahdawi "may not be denied the privilege of habeas corpus." *Osorio-Martinez v. U.S. Att'y Gen.*, 893 F.3d 153, 177 (3d Cir. 2018); *see Velasco*, 978 F.3d at 850; *Castro v. DHS*, 835 F.3d 422, 446 (3d Cir. 2016). And, habeas, of course, "is at its core a remedy for

unlawful executive detention." *DHS v. Thuraissigiam*, 591 U.S. 103, 119 (2020) (citation omitted). As such, Congress may not strip federal courts of habeas jurisdiction unless it provides an adequate and effective alternative to habeas review. *Luna*, 637 F.3d at 96-97; *see Swain v. Pressley*, 430 U.S. 372, 381 (1977). Such an alternative to habeas must—at the absolute minimum—provide a petitioner with "a meaningful opportunity to demonstrate that he is being held" unlawfully. *Boumediene*, 553 U.S. at 779; *see Luna*, 637 F.3d at 97.

**1. A PFR is not an adequate and effective substitute for habeas with respect to a detention claim.**

A PFR that only allows Mr. Mahdawi to challenge his illegal detention months or years *after* its retaliatory chilling of speech or punitive purpose has been effectuated, without an opportunity to actually remedy the illegal detention, is not an adequate or effective alternative to habeas. *See Boumediene*, 553 U.S. at 792 ("cumulative effect" of detainees' inability to challenge the executive's "legal authority to detain them, contest the [administrative courts'] findings of fact, supplement the record on review," and "request an order of release" constituted unlawful suspension of the writ).

Both the panel and the government dispatch the Suspension Clause in a single footnote, concluding that the PFR process is an adequate substitute for

habeas. *Mahdawi III*, 183 F.4th at 122 n.16; Gov't Br. 30 n.4.[22] Likewise, in *Khalil*, the Third Circuit rejected the argument in a single sentence. 164 F.4th at 279 (citing exclusively *Luna*, 637 F.3d at 95). But both the panel here and the Third Circuit majority are "grave[ly]" wrong. *Khalil*, 176 F.4th at 300 (Krause, J., dissenting from denial of en banc review).

Indeed, *Luna* does not remotely support the panel's sweeping conclusion, which conflicts with the Supreme Court's Suspension Clause precedent. *See Boumediene*, 553 U.S. at 771 (rejecting adequacy and effectiveness of congressional substitute for habeas detention challenges); *see also Osorio-Martinez*, 893 F.3d at 177 n.22 (relying on the analysis in *Luna* to conclude that an INA provision violated Suspension Clause as applied to "Special Immigrant Juveniles" seeking judicial review of orders of expedited removal).

First, *Luna* addressed the adequacy of the PFR process for a petitioner who sought to challenge *removability*, not detention. 637 F.3d at 85. Indeed, it was even narrower than that—addressing the adequacy and effectiveness of

---

[22] The panel suggested (though did not hold) that Mr. Mahdawi might have forfeited an argument under the Suspension Clause. 183 F.4th at 122 n.16. He did not. Mr. Mahdawi won below on the meaning of section 1252 without resort to the Constitution (or even avoidance), but that does not at all mean that only briefly raising the issue in defending affirmance of the district court's opinion means the ground is off limits for a court of review. *See Montemuro v. Jim Thorpe Area Sch. Dist.*, 99 F.4th 639, 646-47 (3d Cir. 2024); *Hernandez v. Starbuck*, 69 F.3d 1089, 1093 (10th Cir. 1995).

the "statutory motion to reopen process" that is a minor feature of the PFR process. *Id.* at 97. And, relying on *Luna*, *Osorio-Martinez* concluded that even in a removal context, the Suspension Clause prevents Congress from stripping habeas jurisdiction where it has not provided for an adequate or effective substitute. 893 F.3d at 177-78. By contrast, what is at issue here is the basic, fundamental right to challenge one's unlawful *detention* by the executive, where "the need for collateral review is most pressing" and "the need for habeas corpus is more urgent." *Boumediene*, 553 U.S. at 783.

Second, as *Boumediene* and *Luna* make clear, the ability of any habeas alternative to provide "*appropriate orders for relief, including, if necessary, an order directing the prisoner's release*," is critical to the Suspension Clause analysis. *Boumediene*, 553 U.S. at 787 (emphasis added); *see Luna*, 637 F.3d at 97, 104 ("[W]hen Congress has replaced the writ of habeas with an adequate and effective substitute, 'it has granted to the courts broad remedial powers to secure the historic office of the writ.'" (quoting *Boumediene*, 553 U.S. at 776-77)); *see also Osorio-Martinez*, 893 F.3d at 177 n.22. Even after an immigration detainee waits months or years for the chance to access a federal court of appeals on a PFR, while that court might issue orders that lead to their release (by determining that their removal is unlawful), that court decision on removal will not and cannot address detention itself.

Third, *Luna* explained that "in the cases in which the Supreme Court has found a substitute to be adequate and effective, 'the purpose and effect of the substitute was to expedite consideration of the detainee's claims, not to delay or frustrate it.'" 637 F.3d at 97 (citation modified) (quoting *St. Cyr.*, 533 U.S. at 775-76); *see* 28 U.S.C. § 2243 (mandating speed in effectuating the habeas remedy). Here, barring Mr. Mahdawi's detention claim from habeas would delay federal court consideration for months or years because the purpose of removal proceedings is to assess removability and any claims for relief, like asylum—it is not aimed at assessing someone's detention.

Fourth, *Luna* emphasized that "because habeas is 'designed to restrain' the Government's power, the scope of the substitute procedure must not be 'subject to manipulation' by the Government." 637 F.3d at 97 (quoting *St. Cyr*, 533 U.S. at 765-66); *see Osorio-Martinez*, 893 F.3d at 177 n.22. But the government's position would permit brazen abuse of the Great Writ, enabling the government to raise an even patently spurious immigration charge against a noncitizen, including in admitted retribution for speech, and forestall federal court review of its unlawful actions by prolonging administrative removal

proceedings and/or terminating them after it has accomplished its desired detention.[23]

Fifth, at a minimum, a PFR cannot be an adequate and effective substitute for a claim of retaliatory, pretextual detention in violation of the First Amendment because, as explained above, the First Amendment requires prompt and effective review of speech claims.

**2. A Joseph hearing is not an adequate and effective substitute for habeas with respect to a detention claim.**

Both the panel and (now belatedly) the government invoke a separate administrative process that they speculate would have allowed Mr. Mahdawi to challenge his detention via an adequate and effective substitute for habeas: a hearing under *Matter of Joseph*, 22 I. & N. Dec. 799. *See Mahdawi III*, 183 F.4th at 121; Govt' Br. 25-26. But this is not what *Joseph* hearings are for, and they are

[23] Moreover, whatever its nominal independence, the immigration system remains entirely under the control of the executive branch. *See Duenas v. Garland*, 78 F.4th 1069, 1073 (9th Cir. 2023); *Öztürk v. Trump*, 779 F. Supp. 3d 462, 485-86 (D. Vt. 2025) (rejecting government's "practically limitless" argument "that no matter how egregious the type or quantity of First Amendment or due process violations committed by the government in detaining an individual, an Article III court cannot consider any alleged constitutional violations until after Article II employees, with no power to consider or address those violations, have moved the case through their lengthy process"); *see also* John Woodrow Cox, *Trump's DOJ Told a Judge How To Rule. Then It Pulled Her From Court*, Wash. Post (Oct. 25, 2026), https://perma.cc/6RKB-BKRZ.

manifestly inadequate as a substitute for habeas. *See* Dkt.274 (Br. of Amicus Curiae Legal Service Organizations and Law Clinics).

First, a *Joseph* hearing does not fit Mr. Mahdawi's case. It is established by regulation and agency precedent rather than statute, and is a limited threshold classification proceeding to address the narrow question of whether a person is "properly included" within one of the categories barred from custody redetermination. *See* 8 C.F.R. § 1003.19(h)(2)(i)-(ii). "At the hearing, the detainee may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that the I.N.S. is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention." *Demore*, 538 U.S. at 514 n.3; *see Rodriguez v. Robbins*, 804 F.3d 1060, 1078 (9th Cir. 2015) (*Joseph* review is limited in scope and addresses only whether the individual is properly included in a statutory category of non-citizens subject to mandatory detention), *rev'd on other grounds by Jennings*, 583 U.S. 281. But as discussed above, Mr. Mahdawi was not so held, *see supra* note 12, and while the regulation under which he was denied a bond hearing offers him a *Joseph* hearing, 8 C.F.R. § 1003.19(h)(2)(i)(C), neither the government nor the panel point to *any* instance where a *Joseph* hearing has actually been used in the context of the FPG or even outside the context of mandatory detention. That is likely why, before the Fourth Circuit, the

government represented that a noncitizen charged with the FPG did not have a path to release through *Joseph* because "once the decision to detain pending removal proceedings was made, an immigration judge has no authority to redetermine that custody decision." *Suri II*, 184 F.4th at 294 n.25 (quoting government submission).

Second, assuming *Joseph* is available, its application to someone like Mr. Mahdawi makes no sense. While some noncitizens placed in the mandatory detention regime of section 1226(c) might use *Joseph* to argue that, for example, the aggravated felony that formed the basis of their placement does not qualify under the statute, *see, e.g.*, *Joseph*, 22 I. & N. Dec. at 808; *In re Diaz*, 2010 WL 4972444 (B.I.A. Nov. 16, 2010), that argument has little purchase for someone charged with the FPG. What does it mean for someone like Mr. Mahdawi to argue that he is not "properly included" in the no-bond category of detainees? Perhaps he could argue that he was not properly charged under the FPG as a *technical* matter—but the BIA has already held, in his removal case after the IJ terminated proceedings on just those grounds, that that argument is simply unavailable. Dkt.230; *see Matter of M-K-*, 29 I. & N. Dec.at 559 (holding IJ cannot examine the Secretary of State's determination under 8 U.S.C. § 1227(a)(4)(C)(i)). And more fundamentally, Mr. Mahdawi's detention challenge is that, *even if* he can be ultimately removed on the FPG ground, his detention

violates the First and Fifth Amendments. That argument is not available in a *Joseph* hearing, which asks only if he is properly in the FPG category.

Third, a *Joseph* hearing also cannot provide someone like Mr. Mahdawi with adequate relief. *See Boumediene*, 553 U.S. at 787; *Luna*, 637 F.3d at 97, 104. Winning a *Joseph* hearing can only get a noncitizen a bond hearing and not release. *Joseph*, 22 I. & N. Dec. at 806. And because *Joseph* is a creature of agency law and regulation, it is subject to DHS's override with an automatic stay, which, if applied, would even further prolong the challenged unconstitutionally chilling retaliatory detention. *Id.* at 800; 8 C.F.R. § 1003.19(i)(2).

Fourth, a *Joseph* hearing, focused on asserted statutory misclassification, does not offer Mr. Mahdawi review of his challenges to his detention, which are constitutional, not statutory. Just like an IJ in regular immigration proceedings, an IJ in a *Joseph* hearing would not have jurisdiction to decide constitutional issues, nor could they develop a sufficient factual record for expeditious review by the court of appeals. *See Öztürk I*, 136 F.4th at 400-401; *Suri II*, 184 F.4th at 294, 297. Indeed, the Supreme Court, this Court, the First Circuit (which will hear the PFR from Mr. Mahdawi's order of removal), and the BIA have all held that the BIA—and by extension immigration courts—lack authority to address the kind of constitutional challenge to a statute that the panel suggests Mr. Mahdawi should try raising in a *Joseph* hearing. *See Califano v. Sanders*, 430 U.S.

99, 108 (1977); *United States v. Gonzalez-Roque*, 301 F.3d 39, 47 (2d Cir. 2002); *Ravindran v. INS*, 976 F.2d 754, 762 (1st Cir. 1992); *Matter of C-*, 20 I. & N. Dec. 529, 532 (B.I.A. 1992).[24]

Finally, Judge Menashi's solo suggestion, now (for the first time in the litigation) adopted by the government, that Mr. Mahdawi failed to exhaust his administrative remedies, *see Mahdawi III*, 183 F.4th at 133-36 (Menashi, J., concurring); Gov't Br. 43-44, because he did not first seek a *Joseph* hearing is wide of the mark. Even if the government had not forfeited this argument by never raising it below, *see Doe v. Trump Corp.*, 6 F.4th 400, 410 (2d Cir. 2021), it is wrong. Mr. Mahdawi challenged his removal under the FPG in a motion to terminate, *see* Dkt.226, 230, and that is the same question that would have been presented (and his claim denied) in a *Joseph* hearing. Further, exhaustion is subject to prudential exceptions, and all apply here. *See Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003) (noting exceptions to prudential exhaustion for habeas petitioners including when "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without

[24] Further counseling against the practicality of the government's adoption of the panel's suggestion, the government has argued that *Joseph* hearings are "preliminary custody hearings" that should never be "turn[ed] . . . into mini-trials" that "require[e] a full assessment of the merits of an individual's claims and defenses." *Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 12 F.4th 330, 334 (3d Cir. 2021) (quoting Appellees' Br. 47, 40).

immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question"); *see also Zhong v. DOJ*, 480 F.3d 104, 123 (2d Cir. 2007), *abrogated on other grounds by Santos-Zacaria v. Garland*, 598 U.S. 411 (2023). Mr. Mahdawi has plainly raised substantial constitutional questions about his detention. Beyond that, forcing him to go through a *Joseph* hearing: (1) would be futile, as the agency's law on the FPG does not permit immigration courts to look behind the Secretary of State's determination; (2) would not provide him with an adequate opportunity for the relief he seeks (release), as it would only yield a bond hearing and would be subject to an automatic stay; (3) would subject him to ongoing irreparable injuries, including punitive detention and censorship.

## II. The district court did not abuse its discretion in granting Mr. Mahdawi bail under *Mapp v. Reno*.

In *Mapp v. Reno*, this Court affirmed federal courts' inherent authority to grant bail to habeas petitioners, including individuals in immigration detention. 241 F.3d at 226-29. The Court acknowledged that Congress has the power to limit the courts' ability to grant bail to immigration detainees, but concluded that Congress had not done so, and that none of the INA's jurisdictional bars constrain a court's power to make bail determinations. *Id.* at 228-29.

Under *Mapp*, "a court considering a habeas petitioner's fitness for bail" must analyze (1) whether the habeas petition raises "substantial claims" and (2) whether "extraordinary circumstances" exist "that make the grant of bail necessary to make the habeas remedy effective." *Id.* at 230 (citation omitted). This Court and numerous courts within this circuit have ordered release pursuant to *Mapp* in contexts involving challenges to detention, removal, or a combination of both. *See, e.g.*, *Fulton v. Mullin*, 181 F.4th 292, 293-95 (2d Cir. 2026) (per curiam); *Vacchio v. Ashcroft*, 404 F.3d 663, 672-73 (2d Cir. 2005); *Patin v. Trump*, 824 F. Supp. 3d 484, 492-93 (D. Vt. 2026); *Avendaño Hernandez v. Decker*, 450 F. Supp. 3d 443 (S.D.N.Y. 2020); *D'Alessandro v. Mukasey*, No. 08-CV-914, 2009 WL 799957 (W.D.N.Y. Mar. 25, 2009); *S.N.C. v. Sessions*, 18 Civ. 7680, 2018 WL 6175902 (S.D.N.Y. Nov. 26, 2018); *Kiadii v. Decker*, 423 F. Supp. 3d 18 (S.D.N.Y. 2018). As those courts explain, to raise a substantial claim, "the Second Circuit does not require that the petitioner convince every court, let alone the court considering the bail application, that he will succeed; rather, he need only show that his claims are 'substantial.'" *D'Alessandro*, 2009 WL 799957, at *3 (citing *Mapp*, 241 F.3d at 229). At the same time, a broad range of circumstances may qualify as "extraordinary," including lack of flight risk or dangerousness, health issues, and the nature of the government behavior giving rise to the habeas claim. *See, e.g.*, *Coronel v. Decker*, 449 F. Supp. 3d 274, 289

(S.D.N.Y. 2020); *D'Alessandro*, 2009 WL 799957, at *3. Where, as in this case, the petitioner would face "the very outcome they seek to avoid" if they remained in detention pending determination of the merits, release is necessary to make the habeas remedy effective. *See Coronel*, 449 F. Supp. 3d at 289.[25]

### A. The district court retains inherent authority to order release on bail.

The government contends that 8 U.S.C. § 1226(e), enacted after this Court's decision in *Mapp*, "restricts" the district court's inherent authority to consider bail for habeas petitioners, and "[t]herefore, Mapp no longer remains good law." Gov't Br. 45. This is incorrect, and ignores on-point, intervening precedent from this Court expressly affirming courts' ability to order release on bail in light of section 1226(e). *See Öztürk I*, 136 F.4th at 401.

In *Elkimya v. DHS*, this Court found that the REAL ID Act "did not qualify our inherent authority to admit to bail petitioners in immigration cases." 484 F.3d 151, 154 (2d. Cir. 2007). Then-Judge Sotomayor explained that "Congress is presumed to be aware of a judicial interpretation of a statute" as permitting

[25] Respondents note in passing that "the en banc Court is not bound by *Mapp*," without providing any argument as to why *Mapp* was wrongly decided. Gov't Br. 45. *Mapp* continues to provide this Court and lower courts with a workable standard for distinguishing between extraordinary cases, such as this one, in which bail is justified, and run-of-the-mill cases in which it is not. *See, e.g.*, *Balde v. Genalo*, No. 26-cv-8227, 2026 WL 3010436 (S.D.N.Y. Oct. 6, 2026) (finding no extraordinary circumstances justifying release under *Mapp*).

release on bail in the immigration habeas context, "and the Real ID Act's silence regarding our holding in *Mapp* constitutes an implicit adoption" of this interpretation. *Id.* (citing *Lorillard v. Pons*, 434 U.S. 575, 580 (1978)). That *Elkimya* arose on a PFR is immaterial to its express recognition that the REAL ID Act did not abrogate *Mapp*'s inherent bail authority holding. 484 F.3d at 153. Consistent with the conclusion in *Elkimya*, this Court recently affirmed that, "because § 1226(e) 'contains no explicit provision barring habeas review,' the Supreme Court has held that its 'clear text' does not bar jurisdiction over a constitutional challenge to detention under § 1226." *Öztürk I*, 136 F.4th at 401 (citing *Demore*, 538 U.S. at 517); *see Velasco Lopez*, 978 F.3d at 850.[26] Other circuits agree. *See, e.g.*, *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) (under 1226(e), "district court had habeas jurisdiction to review [petitioner's] claims of constitutional and legal error"); *Al-Siddiqi v. Achim*, 531 F.3d 490, 494

[26] The government seizes on dicta in *Velasco Lopez* to suggest its holding does not apply to constitutional challenges to "initial detention," Gov't Br. 47, but the Court there was clear in its conclusion that section 1226(e) does not "limit habeas jurisdiction over constitutional claims or questions of law," full stop. *Velasco Lopez*, 978 F.3d at 850; *see Demore*, 538 U.S. at 516-17. Mr. Mahdawi's detention claims are not "cloak[ed] . . . in constitutional garb," Gov't Br. 47, but directly challenge the government's constitutional authority, and thus are not challenges to discretion under section 1226(e). *Cf. Saloum v. USCIS*, 437 F.3d 238 (2d Cir. 2006) (reviewing discretionary denial of a waiver of inadmissibility), and *Liu v. Holder*, 415 F. App'x 298, 300 (2d Cir. 2011) (reviewing discretionary asylum denial where Petitioner "failed to present any constitutional claim").

(7th Cir. 2008) (same); *Najera v. United States*, 926 F.3d 140, 141 (5th Cir. 2019) (same).

In light of this overwhelming precedent, Respondents' argument that section 1226(e) bars Mr. Mahdawi's release on bail is untenable.

**B. Mr. Mahdawi's release on bail was justified under *Mapp*.**

As required under *Mapp*, 241 F.3d at 230, the district court based its bail decision on unrebutted evidence of substantial questions and extraordinary circumstances presented by Mr. Mahdawi's detention, *see* JA567-76, not on the "premise" that this matter is "extraordinary . . . [because] it calls upon the ancient remedy of habeas," Gov't Br. 48. Specifically, the district court based its decision on (1) uncontroverted record evidence, including "the Government's public statements," that Mr. Mahdawi was targeted for arrest and detention due to his protected political speech, JA569-71, (2) the "over 125 letters of support" from a wide range of individuals, including "a striking number of . . . Jewish colleagues and professors," attesting to Mr. Mahdawi's "mild and peaceful nature, his deep intelligence, and his commitment to principles of non-violence and political activism," JA557; *see also* JA51-251; JA367-492 (letters of support), (3) careful consideration and rejection of the government's evidence that he poses a danger, JA574-75, and (4) the "extraordinary setting of this case" where a "legal resident[] . . . [is] being arrested and threatened with deportation for

stating [his] views on the political issues of the day." JA575.[27] As the stay panel observed last year, Respondents "do[] not contest the district court's findings that [Mr.] Mahdawi is neither a danger to the public nor a flight risk," *Mahdawi I*, 136 F.4th at 455. That continues to be the case. In support of its claim that no "extraordinary circumstances" justify Petitioner's release, the government fleetingly cites a hearsay statement from a 2015 document, Gov't Br. 48, but the district court carefully considered that document, weighed it against other evidence from both the time of that document and the present, and found that Petitioner "presents no danger to his community or others." JA574-75. The government points to no error, much less any showing of "clear error" that would be required to disturb the district court's findings. *Mattis*, 963 F.3d at 291.

Instead, Respondents rely on general statements about the executive branch's authority over immigration and the sweeping assertion that the court did not have jurisdiction to "probe beyond the Secretary's determination." Gov't

[27] Numerous courts have granted bail based on similar challenges to the government's policy of retaliation against and punishment of campus dissent or pro-Palestinian advocacy. *See, e.g.*, *Sarsour v. Swearingen*, 839 F. Supp. 3d 716, 730-36 (S.D. Ind. 2026); *Öztürk v. Trump*, 783 F. Supp. 3d 801 (D. Vt. 2025); *Suri v. Trump*, No. 25-cv-480, 2025 WL 1392143, at *1 (E.D. Va. May 14, 2025) (memorializing oral ruling); *Mohammed H. v. Trump*, 781 F. Supp. 3d 886, 896-97, (D. Minn. 2025).

Br. 48-49. But it is an "obligation of the federal courts to exercise the jurisdiction given them," *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), even in cases they "would gladly avoid," *Zivotofsky v. Clinton*, 566 U.S. 189, 194 (2012). Here, Mr. Mahdawi does not challenge the wisdom of a discretionary decision, but the legality of the Executive's action as against long-standing constitutional principles; thus courts "will not stand impotent before an obvious instance of a manifestly unauthorized exercise of power." *Baker v. Carr*, 369 U.S. 186, 217 (1962).

Finally, Respondents invoke "the public's interest" in the government's general enforcement of immigration laws, Gov't Br. 49, but there is no public interest in the unconstitutional enforcement of any law, and the continuation of unconstitutional government conduct "cuts sharply against the public interest," *Lopez Torres v. N.Y. State Bd. of Elections*, 462 F.3d 161, 207 (2d Cir. 2006), *rev'd on other grounds*, 552 U.S. 196 (2008) (citing *Council of Alt. Political Parties v. Hooks*, 121 F.3d 876, 883-84 (3d Cir. 1997) ("the public interest clearly favors the protection of constitutional rights")). This is particularly true where the unconstitutional enforcement of a law would censor a political debate on matters of public importance, including at the time when it is most relevant to current events. *See N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013) ("[S]ecuring First Amendment rights is in the public interest." (citing

*ACLU v. Ashcroft*, 322 F.3d 240, 247 (3d Cir. 2003)); *Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.*, 39 F.4th 95, 109 (3d Cir. 2022); *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 15 (1st Cir. 2012). Similarly, there is a strong public interest in ensuring that the executive branch acts lawfully, *Texas v. United States*, 809 F.3d 134, 187 (5th Cir. 2015), particularly with respect to the rights protected by the Great Writ, "itself an indispensable mechanism for monitoring the separation of powers," *Boumediene*, 553 U.S. at 765. Moreover, as the stay panel explained, Respondent's release on bail does not "prevent[] the government from continuing with[ ]the removal proceedings it has commenced." 136 F.4th at 455. Those removal proceedings have indeed proceeded apace during the pendency of this appeal. *See* Dkt.226, 227, 230, 232 (updates on status of removal proceedings).

The district court did not abuse its discretion in ordering Mr. Mahdawi's release.

## CONCLUSION

The Court should affirm the district court's bail order and remand to the district court for further litigation of Mr. Mahdawi's habeas petition.

Dated: November 13, 2026 *<u>/s/ Brett Max Kaufman</u>*

Nathan Freed Wessler
Brian Hauss
Esha Bhandari
Brett Max Kaufman
Michael K.T. Tan
Noor Zafar
Sidra Mahfooz
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, Floor 18
New York, NY 10004
(212) 549-2500
nwessler@aclu.org
bhauss@aclu.org
ebhandari@aclu.org
bkaufman@aclu.org
m.tan@aclu.org
nzafar@aclu.org
smahfooz@aclu.org

Andrew B. Delaney
MARTIN DELANEY & RICCI LAW GROUP
100 North Main Street
Barre, Vermont 05641
(802) 479-0568
andrew@mdrvt.com

Cyrus D. Mehta
David A. Isaacson
CYRUS D. MEHTA & PARTNERS PLLC
One Battery Park Plaza, 9th Floor
New York, New York 10004
(212) 425-0555
cm@cyrusmehta.com
disaacson@cyrusmehta.com

Lia Ernst
Monica H. Allard
Hillary A. Rich
ACLU FOUNDATION OF VERMONT
PO Box 277
Montpelier, VT 05601
(802) 223-6304
lernst@acluvt.org
mallard@acluvt.org
hrich@acluvt.org

Naz Ahmad
Mudassar Toppa
Shezza Abboushi Dallal
CLEAR PROJECT
MAIN STREET LEGAL SERVICES, INC.
CUNY School of Law
2 Court Square
Long Island City, NY 11101
(718) 340-4558
naz.ahmad@law.cuny.edu
mudassar.toppa@law.cuny.edu
shezza.dallal@law.cuny.edu

Luna Droubi
Matthew Melewski
Keegan Stephan
BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/26th Floor
New York, New York, 10016
(212) 277-5874
ldroubi@blhny.com
mmelewski@blhny.com
kstephan@blhny.com
talfoqaha@blhny.com

*Counsel for Petitioner–Appellee*

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2026, I electronically filed the foregoing document with the Clerk of the United States Court of Appeals for the Second Circuit by using the appellate ACMS system. Counsel in this case are registered ACMS users and service will be accomplished by the ACMS system.

Dated: November 13, 2026

*/s/ Brett Max Kaufman*
Brett Max Kaufman
*Counsel for Petitioner–Appellee*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitation of Local Rule 32.1(a)(4) because it contains 13,999 words and complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) because it has been prepared in a proportionally spaced typeface using Microsoft Word 14-point Charter typeface.

Dated: November 13, 2026

*/s/ Brett Max Kaufman*
Brett Max Kaufman
*Counsel for Petitioner–Appellee*